UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MEGAN TAYLOR,<br><br>    Plaintiff,<br><br>v.<br><br>SHUTTERFLY, INC.,<br><br>    Defendant. | Case No. 18-cv-00266-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; AND DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**<br><br>[Re: ECF 14, 38] |

Plaintiff Megan Taylor filed this purported class action against Defendant Shutterfly, Inc. ("Shutterfly") in state court. Compl., ECF 1-1. On January 11, 2018, Shutterfly removed this action to federal court. ECF 1. Before the Court is Shutterfly's motion to compel arbitration and stay proceedings. Mot., ECF 14. The motion to compel arbitration is based on an arbitration agreement in Shutterfly's Terms of Use. The Court heard oral argument on June 14, 2018. During the hearing, Taylor raised a new argument that the Court is required to determine whether Shutterfly's assertion of arbitrability is "wholly groundless" under *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006). The parties filed supplemental briefing on this narrow issue.

On August 9, 2018, Taylor submitted a motion for leave to file an amended complaint. Mot. for Leave, ECF 38. The briefing on Taylor's motion closed on August 30, 2018. Pursuant to Civil Local Rule 7-1(b), the Court takes Taylor's motion under submission without oral argument. Accordingly, the hearing scheduled for November 29, 2018 is hereby VACATED.

Having considered the parties' briefing, as well as the oral argument for Shutterfly's motion, the Court hereby GRANTS Shutterfly's motion to compel arbitration and stay proceedings, and DENIES without prejudice Taylor's motion for leave to file an amended

complaint.

## I. BACKGROUND

### A. Procedural Background

Taylor is an individual who lives in Illinois and alleges that she has been a Shutterfly customer since 2011. Compl. ¶¶ 2, 26. Shutterfly provides image publishing services and helps customers turn photos into "photobooks, cards, photo gifts, personal websites, among other things." *Id.* ¶ 18. Taylor alleges that Shutterfly engaged in misleading and deceptive advertising and induced her into purchasing a Shutterfly promotional deal on Groupon's website. *Id.* ¶¶ 1, 26–27. According to Taylor, Shutterfly did not disclose prior to her purchase that she was purchasing a promotional code, rather than a dollar credit, gift card or coupon with a $75 dollar value to spend on Shutterfly.com. *Id.* ¶¶ 20–27. Taylor further alleges that Shutterfly did not disclose that the promotion on Groupon could not be combined with any other sales or promotional codes that were offered on Shutterfly's website. *Id.* ¶ 23.

On or about December 8, 2017, Taylor sent Shutterfly a notice and demand that within 30 days Shutterfly should correct, repair, or rectify the allegedly unlawful and deceptive advertising practices. Compl. ¶ 53. A few days later, on December 12, 2017, Taylor initiated this action in state court. Taylor asserts the following class action claims: (1) false advertising (California Business and Professions Code §§ 17500, et seq.); (2) violation of the California Consumers Legal Remedies Act (California Civil Code §§ 1750, et seq.); (3) breach of contract; (4) fraud, deceit and/or misrepresentation; and (5) unfair, unlawful and deceptive trade practices (California Business and Professions Code §§ 17200, et seq.). *Id.* ¶¶ 37–82. Pursuant to section 382 of California Code of Civil Procedure and section 1781 of California Civil Code, the Complaint pleads a class action for the following class:

> All persons who, between December 8, 2013 and the present, purchased in the United States a deal on the Groupon website for dollar amount towards a purchase on the Shutterfly website.

*Id.* ¶ 28.

On March 7, 2018, Shutterfly filed its motion to compel arbitration and stay proceedings. On August 9, 2018, Taylor filed a motion for leave to file an amended complaint along with a

2

proposed First Amended Complaint ("FAC," ECF 38-1). Taylor states that the FAC "does not amend the operative facts nor does it include any new causes of action or new parties" but adds a "request for monetary relief under the California Legal Remedies Act." Mot. for Leave 2. According to Taylor, the FAC adds allegations "relating to [Shutterfly's] inclusion of and attempted enforcement of the arbitration provision, class action waiver, and public injunctive relief waiver in Shutterfly's Terms of Service." *Id.* The FAC also adds two additional putative classes:

> Compelled Arbitration Class
>
> All California residents who (1) asserted claims against Defendant on behalf of a potential class of persons, (2) asserted fraudulent conduct by Defendant, and (3) against whom, from December 8, 2013 through the present, Defendant enforced, or attempted to enforce, the Terms of Service arbitration provision.
>
> Public Injunction Relief Waiver Class
>
> All California residents who, from December 8, 2013 through the present, were customers of Defendant and subject to Terms of Service that purported to bar customers from bringing a claim on behalf of a class of similarly situated persons.

Proposed FAC ¶¶ 25–26. Taylor does not argue that her filing of the FAC would moot Shutterfly's motion to compel arbitration and stay proceedings.

### B. Shutterfly's Terms of Use

Shutterfly's Terms of Use govern a customer's use and access to Shutterfly's website and services. Ex. B to Landreth Decl. ¶ 3 ("Terms of Use"), ECF 14-5. To use Shutterfly's services, Taylor created a Shutterfly account and agreed to Shutterfly's Terms of Use. Ex. C to Landreth Decl., ECF 14-6. The Terms of Use agreement contains two relevant sections at issue, which are reproduced below in relevant part:

> **20. Miscellaneous**
>
> These Terms are governed by and construed in accordance with the laws of the State of California, United States of America, without regards to its conflict of law provisions. **You agree to submit to the exclusive jurisdiction of any State or Federal court located in the County of Santa Clara, California, United States of America, and waive any jurisdictional, venue or inconvenient forum objections to such courts**. If any provision of these Terms, or the application thereof to any person, place or circumstance, will be held by **a court of competent jurisdiction to be invalid, void or otherwise unenforceable**, such

3

provision will be enforced to the maximum extent possible, or, if incapable of such enforcement, will be deemed to be deleted from these Terms, and the remainder of these Terms and such provisions as applied to other persons, places and circumstances will remain in full force and effect. . . .

**22. Arbitration Agreement**

[1][1] If you are a Shutterfly customer in the United States . . ., you and Shutterfly agree that any dispute, claim or controversy arising out of or relating in any way to the Shutterfly service, these Terms of Use and this Arbitration Agreement, shall be determined by binding arbitration or in small claims court. . . .

[2] . . . If Shutterfly and you do not reach an agreement to resolve the claim within 30 days after the Notice is received, you or Shutterfly may commence an arbitration proceeding or file a claim in small claims court. . . .

[4] The arbitration will be governed by the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Agreement, and will be administered by the AAA. The AAA Rules and Forms are available online at www.adr.org, by calling the AAA at 1-800-778-7879, or by writing to the Notice Address. The arbitrator is bound by the terms of this Agreement. **All issues are for the arbitrator to decide, including issues relating to the scope and enforceability of this arbitration agreement**. . . .

[6] YOU AND SHUTTERFLY AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. Further, unless both you and Shutterfly agree otherwise, the arbitrator may not consolidate more than one person's claims with your claims, and may not otherwise preside over any form of a representative or class proceeding. **If this specific provision is found to be unenforceable, then the entirety of this arbitration provision shall be null and void**. **The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim.**

---

[1] The bracket indicates the paragraph number.

Terms of Use, sections 20 and 22. According to Taylor, the last two sentences of section 22, paragraph 6 of the Terms of Use is a poison pill provision (Opp'n 13, ECF 18) which voids the arbitration provisions due to an unenforceable public injunctive relief waiver provision (*id.* at 11).

## II.  LEGAL STANDARD

The parties agree that the Federal Arbitration Act ("FAA") applies. *See* Mot. 4; Opp'n 6. The FAA embodies a "national policy favoring arbitration and a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 345–46 (2011) (internal quotations and citations omitted). The FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"Generally, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 846–47 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983)). However, certain issues are presumptively reserved for the court. These include "gateway" questions of arbitrability, such as "whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) (citation omitted).

That said, parties may delegate the adjudication of gateway issues to the arbitrator if they "clearly and unmistakably" agree to do so. *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017). Because gateway issues of arbitrability would otherwise fall within the province of judicial review, courts "apply a more rigorous standard in determining whether the parties have agreed to arbitrate the question of arbitrability." *Momot*, 652 F.3d at 987–88. "[C]lear and unmistakable 'evidence' of agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Id.* at 988 (citation omitted) (alteration in original).

1    If there is no clear and unmistakable delegation, a district court engages in a limited two-
2    part inquiry to decide the gateway issues of arbitrability: first, it determines whether the arbitration
3    agreement is valid, and second, it determines whether the agreement encompasses the claims at
4    issue. *See, e.g.*, *Mitsubishi Motors Co. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 627–28 (1985).
5    When determining whether the arbitration clause encompasses the claims at issue, "all doubts are
6    to be resolved in favor of arbitrability." *Simula v. Autoliv*, 175 F.3d 716, 721 (9th Cir. 1999)
7    (interpreting the language "arising in connection with" in an arbitration clause to "reach[] every
8    dispute between the parties having a significant relationship to the contract and all disputes having
9    their origin or genesis in the contract").

### III. SHUTTERFLY'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Shutterfly contends that this Court must compel arbitration because the parties delegated arbitrability issues to the arbitrator. Mot. 5–7. Shutterfly also asserts that if the Court decides it must determine the gateway issues of arbitrability, the Court should find the parties' Arbitration Agreement to be valid and enforceable and that this agreement covers Taylor's claims. *See id.* at 7–9. Because the Arbitration Agreement contains a class action waiver, Shutterfly argues, the Court should strike Taylor's class claims and compel arbitration of her individual claims. *Id.* at 7, 9–10.

Because Shutterfly' argument regarding the delegation of gateway issues to the arbitrator is a threshold issue, the Court first addresses that argument.

#### A. Delegation to Arbitrator to Decide Arbitrability

Shutterfly argues that the parties "clearly and unmistakably" delegated arbitrability issues to the arbitrator. Mot. 6. As evidence, Shutterfly points to the Arbitration Agreement's statement that "[a]ll issues are for the arbitrator to decide, including issues relating to the scope and enforceability of this arbitration agreement." *Id.* (citing Terms of Use, section 22). In addition, Shutterfly contends that the Arbitration Agreement demonstrates the "comprehensive scope of the delegation by incorporating the AAA Commercial Arbitration Rules, which authorize the arbitrator to decide jurisdictional and arbitrability issues." *Id.* at 6–7 (citing Terms of Use, section

22); *see also* Ex. A to Cooper Decl. ("AAA Rules"), section R-7, ECF 14-2 ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.").

Taylor counters that although the Arbitration Agreement contains a delegation provision, section 20 of the Terms of Use includes a "severability provision" which states: "[i]f any provision of these Terms[] . . . will be held by a court of competent jurisdiction to be invalid, void or otherwise unenforceable, such provision will be enforced to the maximum extent possible, or, if incapable of such enforcement, will be deemed to be deleted from these Terms." Opp'n 7 (citing Terms of Use, section 20). In Taylor's view, a court has authority to decide whether the arbitration provision is unenforceable because the severability provision uses the phrase "court of competent jurisdiction" rather than "arbitrator." *Id.* On this basis, Taylor asserts that the delegation is ambiguous. *Id.*; *see also id.* at 8 n.4. Taylor also contends that two courts in this District have found that nearly identical delegation and severability provisions were conflicting and that this conflict precluded a finding of "clear and unmistakable" intent to delegate gateway issues to the arbitrator. *Id.* (citing *Vargas v. Delivery Outsourcing, LLC*, No. 15-CV-03408-JST, 2016 WL 946112, at *1 (N.D. Cal. Mar. 14, 2016); *Levi Strauss & Co. v. Aqua Dynamics Sys.*, Case No. 15-cv-04718-WHO, 2016 U.S. Dist. LEXIS 46738, at *20-24 (N.D. Cal. April 6, 2016)). Taylor further argues that California state courts have reached similar conclusions. *See id.* at 8–9.

In addition, Taylor challenges Shutterfly's reliance on the incorporation of AAA Rules. Opp'n 9. According to Taylor, the incorporation of AAA Rules can be evidence of a clear and unmistakable delegation only when the involved parties are "sophisticated." *Id.* at 9–10 (collecting cases). Taylor argues that Shutterfly has not provided any evidence that she is a sophisticated party and thus the incorporation of AAA Rules is insufficient to establish delegation. *Id.* at 10.

Shutterfly responds that the delegation is clear and unmistakable in light of the Ninth Circuit's opinion in *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1205 (9th Cir. 2016). Reply 2, ECF 19. Shutterfly also argues that Taylor's reliance on *Vagras* and *Levi Strauss* and state court

7

cases is unavailing because they predate *Mohamed* and are factually distinguishable. *Id.* at 3–4. According to Shutterfly, post-*Mohamed* district court cases have found that an express delegation clause was clear and unmistakable even if an agreement had a severability clause. *Id.* at 3–4 (collecting cases). As for Taylor's argument against Shutterfly's reliance on the incorporation of AAA Rules, Shutterfly responds that district courts have held that such an incorporation was evidence of clear and unmistakable delegation since the Ninth Circuit issued its opinion in *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015). Reply 5–6.

The Court first addresses the Ninth Circuit's decision in *Mohamed*. As mentioned, Taylor argues that there was no clear and unmistakable delegation because the Terms of Use contain a provision stating that if any provision is held by a court of competent jurisdiction to be invalid or unenforceable, then that provision will be enforced to the maximum extent possible or deemed deleted. Opp'n 7–8; Terms of Use, section 20. The Ninth Circuit in *Mohamed*, however, rejected a similar argument. In that case, two contracts at issue contained a venue provision granting state or federal courts in San Francisco exclusive jurisdiction over any disputes arising out of or in connection with the contracts.[2] *Mohamed*, 848 F.3d at 1209. The Ninth Circuit held that such language did not conflict with an express delegation provision. Specifically, the court explained that "[n]o matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies." *Id.* at 1209 (citation omitted). The Ninth Circuit further held that the conflict between the unambiguous delegation provision and the venue provision was artificial because the latter was intended for the aforementioned necessities as well as "to identify the venue for any other claims that were not covered by the arbitration agreement." *Id.* at 1209. In other words, an express delegation provision is not rendered ambiguous merely because a different section of the contract recognizes that the parties may need to invoke the jurisdiction of a court. On this basis, the Ninth Circuit held that the delegation provision "clearly and unmistakably delegated the question of arbitrability to

---

[2] *Mohamed* involved two agreements that were entered into in 2013 and 2014.

8

the arbitrator." *Id.*

To be clear, *Mohamed* did not concern the so-called severability provision which references the condition where "a court of competent jurisdiction" holds a provision in a contract unenforceable. However, *Mohamed*'s reasoning is applicable to this case. As the Ninth Circuit held, no matter how broad the arbitration clause, the parties may need to invoke the jurisdiction of a court for adjudicating claims that are not covered by their arbitration agreement or to seek other remedies. *Mohamed*, 848 F.3d at 1209. In those situations, the parties would need to submit to a court of competent jurisdiction whose adjudication may require the severance of provisions in their agreement. This is evidenced by the fact that the "court of competent jurisdiction" language in the Terms of Use directly follows a venue provision which has similar language to that in *Mohamed*. *See* Terms of Use, section 20 ("You agree to submit to the exclusive jurisdiction of any State or Federal court located in the County of Santa Clara, California."). Accordingly, here the reference to a "court of competent jurisdiction" in one provision of the Terms of Use does not render the express delegation clause of the Arbitration Agreement ambiguous. As the Ninth Circuit held in *Mohamed*, the purported conflict is "artificial." *See id.* at 1209.

Indeed, since *Mohamed* was decided, courts have reached the same conclusion. For example, the court in *MegaCorp Logistics* faced the same situation as in this case. *MegaCorp Logistics LLC v. Turvo, Inc.*, No. 18-CV-01240-EMC, 2018 WL 3619656, at *6 (N.D. Cal. July 30, 2018). There the parties' contract contained a provision that delegated to an arbitrator the "determination of the scope or applicability of [the contract] to arbitrate." *Id.* at *3. The contract also contained a provision that was "contrary to arbitration"—specifically, a provision stating that, "if any provision of the contract is held by a court of competent jurisdiction to be unenforceable, then the validity of the remaining provisions shall not be affected." *Id.*, at *6. Under *Mohamed*, the court in *MegaCorp Logistics* concluded that the "court of competent jurisdiction" language did not make the express delegation clause ambiguous. *Id.*; *cf. Miller v. Time Warner Cable Inc.*, No. 816CV00329, 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016) (holding that the contract's delegation clause was clear and unmistakable although the contract contained "a severability clause, separate and apart from the arbitration provision" and a carve-out provision); *McLellan v.*

9

*Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2017 WL 4551484, at *4 (N.D. Cal. Oct. 11, 2017) (holding that the "severability statement [did] not make ambiguous the parties' delegation of gateway issues" where some disputes may lie outside of the scope of the arbitration and their agreement contained carve-out and opt-out provisions).

On the other hand, the Court is unpersuaded by Taylor's reliance on the federal and state court cases which she cites in support of her position (Opp'n 7–8). Those cases predate *Mohamed*. For instance, Taylor relies on *Vargas v. Delivery Outsourcing, LLC*, No. 15-CV-03408-JST, 2016 WL 946112, at *1 (N.D. Cal. Mar. 14, 2016). *Vagras*, however, relied on *Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185 (N.D. Cal. 2015), which is the district court decision that was reversed by the Ninth Circuit in *Mohamed*. *See Vagras*, 2016 WL 946112, at *6. Likewise, *Levis Strauss* relies on the reversed district court decision in *Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185 (N.D. Cal. 2015). *See Levi Strauss & Co. v. Aqua Dynamics Sys.*, Case No. 15-cv-04718-WHO, 2016 U.S. Dist. LEXIS 46738, at *23–24 (N.D. Cal. April 6, 2016). Because those cases were decided before the Ninth Circuit's ruling in *Mohamed*, the Court rejects Taylor's reliance on those cases and instead applies *Mohamed* as other courts have done. *See MegaCorp Logistics*, 2018 WL 3619656, at *6.

The parties dispute whether the incorporation of AAA Rules into the Terms of Use shows clear and unmistakable delegation of the gateway issues to an arbitrator. In particular, the parties disagree on the application of *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015). In that case, the Ninth Circuit held that the incorporation of AAA Rules constituted a clear and unmistakable delegation of the gateway issues to the arbitrator where both parties were sophisticated. *Brennan*, 796 F.3d at 1130. The court made clear that its holding "should not be interpreted to require that the contracting parties be sophisticated or that the contract be 'commercial' before a court may conclude that incorporation of AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent." *Id.* As such, *Brennan* did not "foreclose the possibility that [its holding] could also apply to unsophisticated parties or to consumer contracts." *Id.*

The Court has reviewed the lower court cases cited by the parties. Courts have diverged on whether the holding in *Brennan* applies to contracts involving at least one unsophisticated

party. *Compare Ingalls v. Spotify USA, Inc.*, No. C 16-03533 WHA, 2016 WL 6679561, at *3 (N.D. Cal. Nov. 14, 2016) ("Every district court decision in our circuit to address the question since *Brennan* has held that incorporation of AAA rules was insufficient to establish delegation in consumer contracts involving at least one unsophisticated party.") *with Miller v. Time Warner Cable Inc.*, No. 816CV00329, 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016) ("[T]he greater weight of authority has concluded that the holding of [*Brennan*] applies similarly to non-sophisticated parties."). This Court need not reach that issue because as discussed above the parties' Arbitration Agreement in the Terms of Use "clearly and unmistakably" delegates the gateway issues to the arbitrator. That said, the Court notes that the incorporation of AAA rules, which immediately precedes the express delegation provision of the Arbitration Agreement (*see* Terms of Use, section 22), is further evidence that shows the parties' intent to delegate to the arbitrator. In fact, the Ninth Circuit in *Brennan* recognized that "the vast majority of the circuits that hold that incorporation of . . . AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts." 796 F.3d at 1130–31 (collecting cases).

For the foregoing reasons, the Court concludes that the parties "clearly and unmistakably" delegated the gateway issues of arbitrability to the arbitrator. *Portland General Electric*, 862 F.3d at 985. Due to the express delegation clause, this Court may not engage in the limited two-part inquiry to decide the gateway issues of arbitrability. As such, the Court does not address the parties' arguments relating to the two-part inquiry.

### B. Plaintiff's "Wholly Groundless" Argument

During oral argument, Taylor argued that even if the Court determines that the delegation was clear and unmistakable, the Court is required to evaluate whether the assertion of arbitrability is "wholly groundless" under *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006). Hearing Tr. 21:16–24; 28:19–29:2, ECF 30. On this basis, Taylor argued that the Court would need to determine whether the Arbitration Agreement was unenforceable. *See id.* at 21:9–15. Considering the importance of the issue and the fact that Taylor raised a new argument that was not included in her briefing, the Court allowed the parties to submit supplemental briefing.

11

After reviewing the parties' papers and the cases cited therein, the Court is unconvinced by Taylor's arguments. Taylor contends that the Federal Circuit applied Ninth Circuit law in conducting a "wholly groundless" inquiry and that district courts have followed suit. *See* Pl.s' Suppl. Br. 1, ECF 31 (citing *Qualcomm*, 466 F.3d at 1371). However, as a basis for conducting a limited inquiry to determine whether the assertion of arbitrability is "wholly groundless," the court in *Qualcomm* cited to a case decided by the California Court of Appeal not the Ninth Circuit. *See Qualcomm*, 466 F.3d at 1371 (citing *Dream Theater, Inc. v. Dream Theater,* 124 Cal.App.4th 547 (Ct. App. 2004)). The Court thus does not find any binding Ninth Circuit authority that calls for a limited "wholly groundless" inquiry. In fact, the Ninth Circuit has expressly stated that it has not decided whether courts are required to determine whether the assertion of arbitrability is "wholly groundless" or whether the delegation applies to claims that are at least "arguably covered" by the arbitration agreement.[3] *Portland General Electric*, 862 F.3d at 986 n.3. The Ninth Circuit further stated that one of its earlier opinions can be read to have rejected this approach although the holding may have been *dicta*. *Id.* (citing *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1076 (9th Cir. 2013)). Accordingly, the Court rejects Taylor's arguments.

Moreover, even if the "wholly groundless" inquiry was a requirement, Taylor's position is unavailing. Taylor argues that Shutterfly's assertion of arbitrability is wholly groundless because the Arbitration Agreement is void for containing a purportedly unenforceable public injunctive relief waiver provision and poison pill provision. Pl.s' Suppl. Br. 1–2. As such, Taylor's argument is directed to the enforceability of the Arbitration Agreement. However, the limited "wholly groundless" test asks only whether the asserted claims are *arguably* covered by the Arbitration Agreement but not whether that agreement is enforceable. *See, e.g.*, *Portland General Electric*, 862 F.3d at 986 n.3 (holding that regardless of whether the "wholly groundless" inquiry was a requirement, the test was satisfied because it was "at least arguable that the . . . claim . . . "ar[ose] out of or in connection with" the contract); *Qualcomm*, 466 F.3d at 1373 n.5 (explaining

---

[3] The "wholly groundless" and "arguably covered" inquiries are used interchangeably. *See Portland General Electric*, 862 F.3d at 986 n.3 (collecting cases that use either terminology); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1285 (10th Cir. 2017).

that the "wholly groundless" inquiry prevents a party from forcing arbitration of a claim that is "divorced" from the parties' agreement). Indeed, this Court "need not, and should not, determine whether [Taylor's claims] are in fact arbitrable" when conducting the "wholly groundless" inquiry. *Qualcomm*, 466 F.3d at 1374. Requiring this Court to determine the enforceability of the Arbitration Agreement would "invade the province of the arbitrator" who has been designated to determine the gateway issues of arbitrability. *Id.*; *see also DeVries v. Experian Info. Sols., Inc.*, No. 16-CV-02953-WHO, 2017 WL 2377777, at *3 (N.D. Cal. June 1, 2017) (holding that the court was precluded from determining the enforceability of the arbitration provision in light of a purported public injunction relief waiver because "the issues of arbitrability [was] delegated to the arbitrator").

The Court turns to the question whether Taylor's claims are arguably covered by the Arbitration Agreement. Here, the first paragraph of the Arbitration Agreement provides that the parties agreed to arbitrate disputes that "aris[e] out of or relat[e] . . . to the Shutterfly service, the[] Terms of Use[,] and this Arbitration Agreement." A review of Taylor's claims does not foreclose the possibility that Taylor's claims relate to Shutterfly's services, the Terms of Use, and the Arbitration Agreement. Taylor's false advertising claim is based on her allegations concerning Shutterfly's marketing of Groupon coupons that could be used on Shutterfly's website and Shutterfly's restrictions on the manner in which customers could redeem those coupons to purchase Shutterfly's services. *See* Compl. ¶¶ 38–39. The same allegations form the basis for Taylor's claims based on California Consumers Legal Remedies Act; breach of contract; fraud, deceit and/or misrepresentation; and unfair, unlawful and deceptive trade practices. *See id.* ¶¶ 51, 57–58, 65–66, 75, 78. Because Taylor's claims are based on her purchase and use of Shutterfly's services, it is at least arguable that Taylor's claims "aris[e] out of or relat[e] . . . to the Shutterfly service" as set forth in paragraph 1 of the Arbitration Agreement. Moreover, to the extent that Taylor asserts a claim for public injunctive relief, that claim arguably relates to the Arbitration Agreement's restrictions on seeking injunctive relief and thus may be covered by the parties' agreement to arbitrate. The Court therefore finds that Shutterfly's assertion that Taylor's claims are within the scope of arbitration is not "wholly groundless." *Portland General Electric*, 862

13

F.3d at 986 n.3 (holding that the test was satisfied because it was "at least arguable that the . . . claim . . . "ar[ose] out of or in connection with" the contract). This ruling does not determine whether Taylor's claims are in fact subject to arbitration. That issue has been delegated to the arbitrator.

### C. Conclusion

For the foregoing reasons, the Court concludes that Shutterfly's Terms of Use clearly and unmistakably delegates gateway issues of arbitrability to the arbitrator. Shutterfly's motion to compel arbitration is GRANTED.

Shutterfly also requests that the Court stay this action pending completion of the arbitration. Mot. 13. Taylor's only response is that "there is nothing to be referred to arbitration and [thus] no justification for a stay." Opp'n 16. This argument, however, has no basis because the Court grants Shutterfly's motion to compel arbitration. Therefore, Shutterfly's request for a stay of this action is GRANTED.

## IV. TAYLOR'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

On August 9, 2018, Taylor filed a motion for leave to file an amended complaint along with a proposed FAC. Taylor filed her motion before the last day to amend pleadings which was August 13, 2018. ECF 29. As such, she may seek leave to amend the pleadings pursuant to Federal Rule of Civil Procedure 15.

Rule 15(a)(2) provides that the Court "should freely give leave when justice so requires." "It is properly denied, however, if amendment would be futile." *Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (citation omitted).

Shutterfly argues that Taylor's proposed amendment is futile because all of her claims would be subject to arbitration. Opp'n to Mot. for Leave 3, ECF 39. Taylor counters that her claims are not subject to arbitration on the grounds that the Arbitration Agreement is unenforceable due to the inclusion of the alleged public injunction relief waiver provision and poison pill provision. Reply in Supp. of Mot. for Leave 2, ECF 40. Taylor further asserts that even if her claims were subject to arbitration, Shutterfly has not cited authority showing that amending the complaint would be futile under Rule 15. *Id.* at 2–3.

14

The Court disagrees with Taylor's arguments. Courts have held that when a plaintiff would be compelled to submit her amended claims to the arbitrator, the amendment would be futile. *See, e.g.*, *Pizzorno v. Draper*, No. CV 17-00182, 2017 WL 4712071, at *9 (C.D. Cal. July 7, 2017) (denying the plaintiff's motion for leave to amend as futile where the amended claims would be subject to arbitration); *Otay River Constructors v. Zurich Am. Ins. Co.*, No. 06CV2631, 2007 WL 3472947, at *4 (S.D. Cal. Nov. 14, 2007) (recognizing that "[w]here a court has determined that an arbitration clause is valid and covers [the plaintiff's] proposed allegations, the court has discretion to deny a motion to amend because such amendment would be futile inasmuch as the opposing party would be entitled to compel arbitration"); *The Detroit Edison Co. v. Burlington Northern and Santa Fe Railway Co.*, 442 F.Supp.2d 387, 394 (E.D. Mich. 2006) (collecting cases).

Here, Taylor does not argue that her amendment would make her claims fall outside the scope of the parties' Arbitration Agreement. In fact, Taylor represents that the FAC "does not amend the operative facts nor does it include any new causes of action." Mot. for Leave 2. Taylor instead argues that the Arbitration Agreement is unenforceable and thus the claims in her FAC are not subject to arbitration. However, as discussed in relation to Shutterfly's motion to compel arbitration, the parties have delegated the gateway issues of arbitrability to the arbitrator. Thus, even if Taylor were to amend her complaint, she would be compelled to submit her claims to the arbitrator to determine whether those claims are subject to arbitration, and thus the amendment would be futile. *See Pizzorno*, 2017 WL 4712071, at *9.

Accordingly, Taylor has not shown that she is entitled to amend her complaint under Rule 15. The Court therefore DENIES Taylor's motion for leave to file an amended complaint. This denial is without prejudice to Taylor's ability to submit her amended allegations and claims to the arbitrator. If Taylor does submit those claims and the arbitrator determines that certain claims which are alleged in her proposed amended complaint are beyond the scope of arbitration, Taylor may renew her request for leave to amend her complaint to pursue those claims when the stay in this case is lifted.

## V. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Shutterfly's motion to compel arbitration and stay proceedings is GRANTED.

(2) The Court STAYS this action pending the completion of arbitration.

(3) Within seven days of the resolution of the arbitration, the parties shall file a joint status report advising the Court of the resolution of the matter and any further action required by the Court.

(4) Taylor's motion for leave to file an amended complaint is DENIED without prejudice as set forth in this order.

**IT IS SO ORDERED.**

Dated: September 11, 2018

_____
BETH LABSON FREEMAN
United States District Judge