**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar. No. 262670)
HAYLEY A. REYNOLDS (State Bar No. 306427)
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Attorneys for Plaintiff, Taylor

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEGAN TAYLOR, an individual, on behalf of herself, the general public and those similarly situated, | Case No. 5:18-cv-00266-BLF |
| Plaintiff, | **PLAINTIFF'S MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | Date: August 12, 2021 |
| | Time: 9:00 a.m. |
| SHUTTERFLY, INC., AND DOES 1 THOUGH 50, INCLUSIVE | Courtroom: 3 – 5th Floor |
| Defendants. | The Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

NOTICE OF MOTION AND MOTION.............................................................................vi

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1
    A.   Introduction ......................................................................................................... 1
    B.   Background and Settlement Negotiations........................................................ 2
    C.   The Benefits Conferred on the Certified Class Under the Proposed Settlement of this Action............................................................................................ 4
        1.   Injunctive Relief........................................................................................ 4
        2.   Settlement Benefits ................................................................................... 5
        3.   Administrative Expenses, Attorneys' Fees and Costs, Representative Service Awards.............................................................................................. 7
    D.   Approval of the Settlement................................................................................ 7
        1.   Legal Framework ...................................................................................... 7
        2.   Adequacy of Notice.................................................................................. 9
        3.   Fairness, Adequacy, and Reasonableness of Settlement ....................... 10
           (a)   Procedural Concerns............................................................. 10
               i.   Adequate Representation of the Class .................... 11
               ii.   Arm's Length Negotiations..................................... 11
           (b)   Substantive Concerns ........................................................... 12
               i.   Strength of Plaintiff's Case and Risk of Continuing Litigation ................................................................. 12
               ii.   Effectiveness of Distribution Method.................... 15
               iii.   Terms of Attorneys' Fees........................................ 16
               v.   Equitable Treatment of Class Members .................. 16
               vi.   Counsel's Experience.............................................. 16
               vii.   Past Distributions.................................................... 16
    E.   The Class Should Be Conditionally Certified ........................................... 17
    F.   Approval of the Attorneys' Fees and Expenses........................................ 20
        1.   Plaintiff's Fee Request is Reasonable Under the Lodestar Approach............ 20
           (a)   Legal Standard ...................................................................... 20
           (b)   Analysis ................................................................................. 20
         2.   The Court is Not Obliged to "Cross-Check" Plaintiff's Counsel's Lodestar. .. 24
           (a)   This is not a Coupon Settlement, or It is Merely a "Mixed" Settlement Under 28 U.S.C § 1712.................................................................... 25
           (b)   As At Most a "Mixed" Coupon/Non-Coupon Settlement, the Lodestar- Based Fee Is Appropriate Without Need For A Cross-Check........... 27
           (c)   Regardless, a Lodestar Cross-Check Is Not Feasible or Practical. .... 29
        3.   The Catalyst Theory Would Support A Lodestar Award Even In The Absence of Any Settlement Relief. ..................................................................... 30
    G.   Approval of the Representative Incentive Awards. .............................. 31
    H.   Dates for the Final Approval Process............................................... 32
    I.   Conclusion.............................................................................. 33

# TABLE OF AUTHORITIES

## CASES

*Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ................................................................................................ 12

*Allied Fire Prot. v. Diede Constr., Inc.*, 127 Cal. App. 4th 150 (2005) ................................ 15

*Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407 (1991) ................................................ 21

*Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407 (1991) ................................................ 30

*Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935 (9th Cir. 2011) ........................ 20, 31

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ........................................... 14

*Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973 (9th Cir. 2008) ................................. 31

*Chaikin v. Lululemon USA Inc.*, No. 3:12-CV-02481-GPC-MDD, 2014 U.S. Dist. LEXIS 35258 (S.D. Cal. Mar. 14, 2014) ............................................................... 26

*Chambers v. Whirlpool Corp.*, 980 F.3d 645 (9th Cir. 2020) ............................................... 24

*Coles v. City of Oakland*, No. C03-2961 TEH, 2007 U.S. Dist. LEXIS 100533 (N.D. Cal. Jan. 4, 2007) .................................................................................. 30

*Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) .......................................................................................... 24, 28

*Davis v. Cole Haan, Inc.*, No. C-11-01826-JSW, 2013 U.S. Dist. LEXIS 151813 (N.D. Cal. Oct. 21, 2013) ................................................................................. 26

*Foos v. Ann, Inc.*, No. 11cv2794 L (MDD), 2013 U.S. Dist. LEXIS 136918 (S.D. Cal. Sept. 23, 2013) ............................................................................... 27

*Gibson & Co. Ins. Brokers, Inc. v. Jackson Nat. Life Ins. Co.*, CV06-5342 DSF (SHX), 2008 WL 618893 (C.D. Cal. Feb. 27, 2008) ............................................ 32

*Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 560-61 (2004), *as modified* (Jan. 12, 2005) .......................................................................... 31

*Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015) ................................................................................. 22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1101 (9th Cir. 1998) ......................................... 8, 10, 12

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) .................................................................. 20

*Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045 (N.D. Cal. Dec. 17, 2018) .................................................................... 8

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010) ............................................................ 15

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) .............................. 15

PLAINTIFF'S MOTION FOR APPROVAL
OF CLASS ACTION SETTELEMENT

*In re Easysaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018)...........................25, 28

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013) ...........................27, 28

*In re Mego Financial Corp,* 213 F. 3d 454 (9th Cir. 2000) ........................8, 12, 32

*In re Netflix Privacy Litig.*, No. 5:11-cv-00379, 2012 WL 2598819 (N.D. Cal. July
    5, 2012) .......................................................................... 10

*In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA, 2008 WL 5382544
    (N.D. Cal. Dec. 22, 2008) ................................................ 16

*In re Optical Disk Drive Prod. Antitrust Litig.,* No. 3:10-MD-2143 RS, 2016 WL
    7364803 (N.D. Cal. Dec. 19, 2016).................................. 22

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994)............... 23

*In re Wireless*, 253 F.R.D. 630 (S.D. Cal. 2008) .............................................. 17

*Johnson v. Triple Leaf Tea Inc.*, No. 3:14-cv-01570-MMC, 2015 U.S. Dist. LEXIS
    170800 (N.D. Cal. Nov. 16, 2015) .................................23, 28

*Kelly v. Wengler*, 822 F.3d 108 (9th Cir. 2016).............................................. 20

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988)........................................ 16

*Klein v. City of Laguna Beach*, No. 13-56973, -- F.3d --, 2016 WL 158600 (9th
    Cir. Jan. 14, 2016) .......................................................... 30

*Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19 (2000) ........................... 20

*LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748 (2nd Cir. 1998)............................... 23

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ........................7, 12

*Lipuma v. American Express Company*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005) .................... 14

*Louie v. Kaiser Found. Health Plan, Inc.*, No. 08-cv-0795, 2008 WL 4473183
    (S.D. Cal. Oct. 6, 2008) ................................................... 13

*Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 WL 1501095 (N.D. Cal. Mar.
    31, 2015)...................................................................24, 28

*MacDonald v. Ford Motor Co.*, No. 13-CV-02988-JST, 2015 WL 6745408 (N.D.
    Cal. Nov. 2, 2015) ......................................................... 30

*Mangold v. Cal. Pub. Utils. Comm'n,* 67 F.3d 1470 (9th Cir.1995)....................... 30

*Maria P. v. Riles*, 43 Cal. 3d 1281 (1987).................................................. 30

*Mendoza v. Tucson Sch. Dist. No.1*, 623 F.3d 1338 (9th Cir. 1980) ........................ 9

*Missouri v. Jenkins*, 491 U.S. 274 (1989) ................................................. 23

*Morey v. Louis Vuitton N. Am. Inc.*, No. 11cv1517 WQH (BLM), 2014 U.S. Dist.
    LEXIS 3331 (S.D. Cal. Jan. 10, 2014) ............................... 26

*Murillo v. Fleetwood Enterprises, Inc.*, 17 Cal.4th 985 (1998)..............................................31

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523 (C.D. Cal. 2004)..........11, 16

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615 (9th Cir. 1982, *cert denied*, 495 U.S. 1217 (1983).....................................................................12

*Ramos v. Countrywide Home Loans, Inc.*, 82 Cal. App. 4th 615 (2000)..................................21

*Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal.App.4th 785 (2006)..............................................................................................................................30

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)...............................................11

*Rosenburg v. I.B.M.*, No. CV-06-00430-PJH 2007, 2007 WL 128232 (N.D. Cal. 2007)..................................................................................................................................9

*Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673 (N.D. Cal. 2016)...................23, 28

*Serrano v. Priest ("Serrano III")*, 20 Cal. 3d 25 (1977) ........................................................21

*Simpao v. Gov't of Guam*, 369 F. App'x 837 (9th Cir. 2010) .................................................10

*Slaven v. BP Am., Inc.*, 190 F.R.D. 649 (C.D. Cal 2000).......................................................17

*Smith v. CRST Van Expedited, Inc.,* 10-CV-1116- IEG WMC, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013)........................................................................................................32

*Stewart v. Applied Materials, Inc.*, No. 15-cv-02632-JST, 2017 WL 3670711 (N.D. Cal. Aug. 25, 2017)....................................................................................................16

*Tchoboian v. FedEx Office & Print Servs., Inc.*, No. SA CV 10-01009 JAK (MLGx), 2014 U.S. Dist. LEXIS 184376 (C.D. Cal. Mar 25, 2014)..............................26

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989) .....................31

*Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370 (9th Cir. 1993), *cert denied,* 512 U.S. 1220 (1994)...................................................................................................................12

*True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ..................................25

*Valentino v Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir 1996)..............................................19

*Van Vranken v. Atlantic Richfield Co.,* 901 F. Supp. 294 (N.D. Cal. 1995)............................32

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)........................................................18

*Williamson v. McAfee, Inc.*, No. 5:14-cv-00158-EJD, 2017 U.S. Dist. LEXIS 15838 (N.D. Cal. Feb. 3, 2017)......................................................................................27

*Wren v. RGIS Inventory Specialists, No. 06-cv-05778-JCS*, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)......................................................................................................20

**STATUTES**

28 U.S.C. § 1715 ....................................................................................... 10

California Civil Code § 1750 ..................................................................... 16

California Code of Civil Procedure § 1021.5 ........................................... 16


**OTHER AUTHORITIES**

5 *Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.) ....................... 11

*Managing Class Action Litigation: A Pocket Guide For Judges* § IV(F) ................. 19

*Manual for Complex Litigation, Third* § 30.42 (1995) .............................. 11

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action
Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006) ............... 21

Wright & Miller, FEDERAL PRACTICE & PROCEDURE (3d ed. 2008) ........................ 9


**RULES**

Fed. R. Civ. P. 23(e) ................................................................................... 8

Fed. R. Civ. P. 23(e)(2) ............................................................................... 8

Fed. R. Civ. P. 23(e)(2)(A)-(B) ................................................................. 10

Fed. R. Civ. P. 23(e)(2)(C)-(D) ................................................................. 12

Fed. R. Civ. P. 23(e)(2)(C)(i) ................................................................. 12

Fed. R. Civ. P. 23(e)(2)(C)(ii) ................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S MOTION FOR APPROVAL
OF CLASS ACTION SETTLEMENT

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on August 12, 2021 at 9:00 a.m., or as soon as the matter may be heard, via Zoom videoconference, before the Honorable Beth Freeman, Plaintiff Megan Taylor ("Plaintiff")[1] shall and hereby does move the Court for an order:

(1) preliminarily approving the terms of the class action Settlement Agreement dated March 5, 2021, a true and correct copy of which is attached as **Exhibit 1** to the Declaration of Seth Safier filed herewith (the "Settlement");

(2) preliminarily certifying the settlement class;

(3) approving the form, contents, and manner of notice to class members; and

(4) setting a date for a final approval hearing.

A copy of the [Proposed] Order Granting Preliminary Approval of Class Action Settlement is attached to the Settlement Agreement as Exhibit C and also separately submitted herewith.

**PLEASE ALSO TAKE NOTICE** that, after expiration of the time for Class Members to opt out or object, and upon the occurrence of the final approval hearing, Plaintiff will seek entry of a further order:

(1) granting final approval to the Settlement and entering judgment thereon;

(2) requiring Defendant Shutterfly, Inc. ("Defendant") to provide additional disclosures when advertising Shutterfly General Spend Groupons in the future as further set forth in the Settlement;

(3) requiring Defendant to pay all Valid Claims made by Class Members under the Settlement;

(4) awarding a class representative incentive award of $5,000 to the named plaintiff Megan Taylor; and

(5) awarding attorneys' fees and expenses to Plaintiff's counsel in the amount of

---

[1] The capitalized terms used herein are defined in and have the same meaning as used in the Settlement Agreement unless otherwise stated.

1    $350,000.00.

2        A copy of the [Proposed] Order Granting Final Approval of Class Action Settlement is

3    attached to the Settlement Agreement as Exhibit D.

4        This Motion is based on Federal Rule of Civil Procedure 23, this Notice of Motion, the

5    supporting Memorandum of Points and Authorities, the Declaration of Seth Safier (the "Safier

6    Decl.") filed herewith, the Declaration of Steven Weisbrot (the "Weisbrot Decl.") filed herewith,

7    and the pleadings and papers on file in this action, and any other matter of which this Court may

8    take judicial notice.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR APPROVAL
OF CLASS ACTION SETTELEMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## A.    Introduction

After three years of litigation, the Parties have agreed to settle claims regarding Defendant's advertising of certain deals on Groupon.com. These deals were advertised in the format "$X for $Y to spend at Shutterfly;" they were sold for the price X ("Paid Value") which could be redeemed at the greater dollar value Y ("Promotional Value") towards a Shutterfly purchase within a set period of time (the "Shutterfly General Spend Groupons"). Plaintiff alleges that the advertising was false and misleading because Defendant did not disclose that the value $Y would be provided as a promotional code that could only be used toward full priced items and could not be combined with any other discounts offered on the Shutterfly website, including product discounts and free shipping.

Under the Settlement, Defendant has agreed to change its advertising of future Shutterfly General Spend Groupons to notify purchasers that they will receive a promotional code that cannot be combined with any other Shutterfly promotional codes or shipping codes. In addition, Defendant will provide settlement benefits to all Class Members. Class Members who did not yet redeem the Groupons they purchased will automatically receive a replacement Promotional Code worth 110% of the original Promotional Value, plus a Shipping Code for free shipping on a future purchase from Shutterfly.com. Class Members who already redeemed the Groupons towards a purchase at Shutterfly will automatically receive another Promotional Code worth 20% of the original Promotional Value, plus a Shipping Code for free shipping, both of which can be used on a future purchase from Shutterfly.com. Class Members who redeemed their Shutterfly General Spend Groupons who do not want the additional Promotional Code and Shipping Code can instead elect to obtain a Cash Refund equal to: (i) 10% of the Promotional Value of the Groupon plus (ii) 50% of the amount the Class Member paid Shutterfly for shipping in connection with the order in which the Groupon was redeemed. Defendant will also pay all costs of notice and administration for the Settlement.

Plaintiff seeks a $5,000 representative incentive award, and Plaintiff's counsel seeks an award of $350,000.00 in fees and costs. None of these sums comes at the expense of any amount of money set aside for the class. Plaintiff and her counsel have not yet received any compensation

for their more than 679 hours of work on this case (equating to a lodestar of $634,047.50, or for the more than $10,453.22 in out-of-pocket expenses they have incurred (for filing fees, etc.). The monetary relief obtained for the Class in the Settlement is likely superior to results that could have been achieved at trial, because it was not guaranteed that Plaintiff would prove: (i) that statements or omission in Defendants' materials were likely to deceive reasonable consumers; or (ii) the amount of damages or restitution due to the Class or to any individual Class Member.

As the fair, reasonable and adequate Settlement is the product of a non-collusive, adversarial negotiation, and Plaintiff's Counsel's request for fees and costs is fair and reasonable, Plaintiff respectfully requests that this motion be granted so that notice of the proposal can be given to the class.

**B.      Background and Settlement Negotiations**

On December 12, 2017, Plaintiff through her counsel Gutride Safier LLP filed a Class Action Complaint in Santa Clara County Superior Court against Defendant alleging claims for violations of the California Consumer Legal Remedies Act, Civil Code § 1750, *et seq* ("CLRA").; false advertising under California Business and Professions Code § 17500, *et seq.*; unfair business practices under California Business and Professions Code § 17200 *et seq.* ("UCL"); breach of contract, and fraud, deceit and/or misrepresentation; and seeking damages, an injunction and other relief.  .   Plaintiff sought to pursue these claims on behalf of herself and all persons who, between December 8, 2013 and the present, purchased in the United States a Shutterfly General Spend Groupon.

Plaintiff alleges in the Complaint that Defendant's advertising of the Shutterfly General Spend Groupons was false and misleading. On the website www.groupon.com, consumers were offered the ability to pay a dollar amount (the "Paid Value") to obtain a Shutterfly General Spend Groupon which could be redeemed for a higher dollar value (the "Promotional Value") towards a purchase on Defendant's Website until a specified deadline (the "Promotional Value Expiration Date"). If the Shutterfly General Spend Groupon was not redeemed before the Promotional Value Expiration Date, the Groupon can still be redeemed on Defendant's Website, but only for a value equal to the Paid Value. (For example, the Shutterfly General Spend Groupon "$20 for $40 to

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

Spend at Shutterfly" had a Paid Value of $20 and a Promotional Value of $40 until the Promotional Value Expiration Date. If not redeemed before the Promotional Value Expiration Date, that Groupon could thereafter be redeemed on Defendant's Website for the $20 Paid Value.) Plaintiff alleges that Defendant improperly failed to disclose that purchasers of a Shutterfly General Spend Groupon would actually receive a promotional code that could only be used toward full priced items and could not be combined with any other discounts offered on the Shutterfly website, including product discounts and free shipping.

On January 11, 2018, Defendant timely removed the Litigation to this Court and subsequently answered the Complaint, denying Plaintiff's allegations and asserting several affirmative defenses.

On March 7, 2018, Defendant filed a motion to compel arbitration based on an arbitration provision in the Shutterfly Terms of Use. Plaintiff opposed the motion by arguing, inter alia, that the arbitration provision was unenforceable. On September 11, 2018, the Court granted Defendant's motion to compel arbitration, ruling that the issue of enforceability was for the arbitrator to decide, and stayed the Litigation pending that decision. Thereafter, Plaintiff initiated arbitration and but argued that the arbitrator should refuse to hear the merits of Plaintiff's claims because the arbitration provision was unenforceable. On June 25, 2019, the arbitrator agreed that the arbitration provision was unenforceable.

On August 2, 2019, Plaintiff filed a motion requesting that the Court to confirm the arbitral award and lift the stay on the Litigation. The Court granted Plaintiff's motion on August 18, 2019. Thereafter, Plaintiff amended her complaint to include allegations that Defendant violated the CLRA by including an unlawful and unenforceable arbitration agreement in its Terms of Use.

On November 15, 2019, Defendant filed a motion to strike Plaintiff's class allegations or deny class certification. On March 19, 2020, the Court denied Defendant's motion.

Plaintiff's Counsel and Defendant's Counsel conducted a thorough examination and investigation of the facts and law relating to the matters in the Litigation. Such investigation and discovery included written discovery requests to, responses from, and production of documents by, both parties.

On January 27, 2020, the Parties participated in an all-day mediation conducted by the Honorable Richard Kramer (Ret'd) at JAMS in San Francisco, California. That mediation ultimately resulted in the settlement memorialized in the Settlement Agreement. The Agreement was arrived at after extensive arm's length negotiations conducted in good faith by counsel for the Parties, and is supported by Plaintiff. The Parties did not settle Attorneys' Fees and Costs until after relief had been fashioned for the Class.

Defendant agrees that the Settlement is fair and reasonable in light of the merits and risks of the case. While continuing to deny all allegations of wrongdoing and disclaiming any liability with respect to any and all claims, Defendant nevertheless chose to enter into the Settlement Agreement in order to avoid further burden, expense, uncertainty, inconvenience, and/or interference with its ongoing business operations in defending the Litigation and put to rest the Released Claims.

### C. The Benefits Conferred on the Certified Class Under the Proposed Settlement of this Action

The Settlement resolves claims between Shutterfly and the class of all United States residents who either (i) purchased a Shutterfly General Spend Groupon from June 1, 2015 to April 30, 2018 that was never redeemed; or, (ii) redeemed a Shutterfly General Spend Groupon that was purchased during that period. (Settlement ¶ 2.11.) Excluded Persons are (a) the Honorable Beth Labson Freeman and any member of her immediate family; (b) the Honorable Magistrate Virginia K. DeMarchi and any member of her immediate family; (c) any government entity; (d) Honorable Richard Kramer and any member of his immediate family; (e) Defendant; (f) any entity in which Defendant has a controlling interest; (g) any of Defendant's parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (h) any person who timely opts out of the Settlement. (Id.) Under the Settlement Agreement, Class Members (except any such Person who has filed a proper and timely request for exclusion from the Class), will agree to release all Allegations, Claims, or contentions related to the Released Claims. (Id.)

#### 1. Injunctive Relief

Defendant has agreed, upon Final Approval, that it will take the following actions:
On any future Shutterfly General Spend Groupon offered for sale by Shutterfly, Shutterfly shall

prominently state each of the following facts (unless such fact is untrue for the particular Shutterfly General Spend Groupon being offered):

(a)    "By purchasing this offer you will obtain a promotional code for use at the Shutterfly website."

(b)    "When you redeem the Groupon at Shutterfly, you cannot use any other Shutterfly promotional code on the same order to obtain additional discounts. Instead, you must pay the undiscounted price."

(c)    "When you redeem the Groupon at Shutterfly, you [also] cannot use any Shutterfly free shipping code on the same order. Instead, you must pay for shipping."

Defendant shall have the right to make revisions to these disclosures provided that the revised text is clear, accurate, complete, and non-misleading.

### 2.    Settlement Benefits

Defendant agrees to cause the following Settlement Benefits to be provided to Class Members as follows:

**<u>Shipping Code and Promotional Code for Class Members Who Purchased Unredeemed Shutterfly General Spend Groupons</u>**. Each Class Member who purchased an Unredeemed Shutterfly General Spend Groupon shall receive, without the need to submit a Valid Claim, the following: (1) one Shipping Code for free shipping; and (2) one Promotional Code in a dollar amount equal to 110% of the original Promotional Value of the Unredeemed Shutterfly General Spend Groupon. (For example, a customer who purchased a "$40 for $20" Groupon will receive a Shipping Code, plus a Promotional Code worth $44 towards a future Shutterfly purchase). Defendant shall also cancel the 18-digit code issued by Groupon to the Class Member associated with the Unredeemed Shutterfly General Spend Groupon.

**<u>Shipping Code and Promotional Code for Class Members Who Used Redeemed Shutterfly General Spend Groupons</u>**. Each Class Member who used a Redeemed Shutterfly General Spend Groupon shall receive, without the need to submit a Valid Claim, the following: (1) one Shipping Code for free shipping; and (2) one Promotional Code with a dollar amount equal to 20% of the original Promotional Value of the Shutterfly General Spend Groupon. (For example, a

customer who purchased a "$40 for $20" Groupon will receive a Shipping Code, plus a Promotional Code worth $8 towards a future Shutterfly purchase).

**Claim Process for Class Members Who Used Redeemed Shutterfly General Spend Groupons To Obtain Cash Refund In Lieu of a Shipping Code and Promotional Code.** In lieu of the Shipping Code and Promotional Code described above, each Class Member who used a Redeemed Shutterfly General Spend Groupon may elect to receive a Cash Refund by submitting a Valid Claim. The Cash Refund shall equal 10% of the Promotional Value of the Groupon, plus 50% of the amount the Class Member paid Shutterfly for shipping in connection with the order in which the Groupon was redeemed. (For example, a customer who purchased a "$40 for $20" Groupon and spent $5 for shipping the order will receive a cash refund of: (1) 10% of $40, i.e., $4.00, plus (2) 50% of $5, i.e., $2.50, for a total of a $6.50.) However, no Cash Refund of shipping payments shall be made with respect to the Shutterfly General Spend Groupons having the following 4-character codes: GP4W, GP7C, GP7D, GP7T, GP7U, GP9A, GP9B, GP7E, GP7F, GP7V, GP7W, GP9C, GP9D, GP7G, GP7H, GP7X, GP7Y, GP9E, GP9F, GP7Z, GP8A, GP9G, GP9H, because they already were stackable with free shipping codes when available.

If a Class Member submits a Claim Form that is untimely or otherwise deficient and does not constitute a Valid Claim, that Class Member will receive a Shipping Code and Promotional Code only.

The claim form is simple. The form can be completed online or downloaded and submitted by mail, and is designed to be completed in minutes. (Id. ¶¶ 4.3 and Ex. A.) In order for the Claim to be considered a Valid Claim, the Claim must contain the Class Member's name, mailing address, and email address. The majority of the Class, including all Class Members who purchased a Shutterfly General Spend Groupon that was not redeemed, will automatically receive benefits without the need to file a Claim.

There is no cap on the total number of claims that can be submitted and no pro-rata reduction. It is estimated that there are 109,000 Class Members, all of whom are entitled to an automatic Shipping Code and Promotional Code. Approximately 84,000 Class Members (those who redeemed the Groupons) will have the opportunity to file a claim for a Cash Refund in lieu of

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

receiving the automatic benefits.

### 3. Administrative Expenses, Attorneys' Fees and Costs, Representative Service Awards

All costs of notice and administration of the Settlement will be paid by Defendant. (Id. ¶ 5.17.) The parties propose that Angeion Group serve as the Settlement Administrator. The additional information required by N.D. Cal. Procedural Guidance for Class Action Settlements ("N.D. Cal. Guide") ¶ 2 regarding the selection of the settlement administrator is provided in the Safier Declaration. (Safier Decl. ¶ 52.)

In addition, the Settlement provides for a Class Representative Incentive Award from Defendant of $5,000 for Plaintiff. (Settlement ¶ 6.6.) Plaintiff provided assistance that enabled Plaintiff's Counsel to successfully prosecute this Litigation and reach a settlement, including traveling to and attending the JAMS mediation; locating and forwarding responsive documents and information; and responding to written discovery. (Safier Decl. ¶ 51.) She also stayed in contact with counsel through the three years of litigation and supervised its prosecution. She continued to prosecute the case even after this Court compelled arbitration, despite the fact that her individual damages were small, with the hope that the order of arbitration would eventually be vacated and she would be able to obtain class relief. The Incentive Award is designed to compensate Plaintiff for (1) the time and effort undertaken in and risks of pursuing this action (including the risk of liability for the costs of suit); and (2) because she is agreeing to a release broader than the one that will bind Class Members. (Settlement ¶ 8.2.)

Plaintiff's Counsel also requests an award of Attorneys' Fees and Costs of $350,000.00. (Id., ¶ 6.1.) The amount will reimburse them for their expenses and approximately 53% of their total lodestar. (Safier Decl. ¶ 34.) The reasonableness of this request is discussed in Section F, *infra*.

### D. Approval of the Settlement

#### 1. Legal Framework

Strong judicial policy favors settlement of class actions. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1269, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). Settlements of complex cases greatly contribute to the efficient utilization of

scarce judicial resources and achieve the speedy resolution of justice. "The claims, issues, or

defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P.

23(e). A decision "to approve or reject a settlement is committed to the sound discretion of the trial

judge because [s]he is exposed to the litigants, and their strategies, positions, and proof." *In re*

*Mego Fin. Corp,* 213 F. 3d 454, 458 (9th Cir. 2000). The Court must consider whether the

settlement as a whole is reasonable; it stands or falls in its entirety. *See Hanlon v. Chrysler Corp.*,

150 F.3d 1101, 1026 (9th Cir. 1998) ("*Hanlon*"). In addition, Rule 23(e) "requires the district court

to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at

1026. Under Ninth Circuit precedent, the district court must balance a number of factors including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely
> duration of further litigation; the risk of maintaining class action status throughout
> the trial; the amount offered in settlement; the extent of discovery completed and
> the stage of the proceedings; the experience and views of counsel; the presence of
> a governmental participant; and the reaction of the class members to the proposed
> settlement.

*Id.* Rule 23(e)(2) similarly requires the district court to consider whether:

> (A) the class representatives and Plaintiff's Counsel have adequately represented the class;

> (B) the proposal was negotiated at arm's length;

> (C) the relief provided for the class is adequate, taking into account:

>> (i) the costs, risks, and delay of trial and appeal;

>> (ii) the effectiveness of any proposed method of distributing relief to the class,
>> including the method of processing class-member claims;

>> (iii) the terms of any proposed award of attorney's fees, including timing of
>> payment; and

>> (iv) any agreement required to be identified under Rule 23(e)(3); and

> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court should apply "the framework set forth in Rule 23, while

continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v.*

*Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *13 (N.D. Cal. Dec.

17, 2018).

### 2. Adequacy of Notice

The proposed notice plan and claim form, which are attached to the Settlement as Exhibits A, B1, B2, B3, and B4 comport with the procedural and substantive requirements of Rule 23 and the N.D. Cal. Guide. Under Rule 23, due process requires that Class Members receive notice of the settlement using the best notice that is "practicable under the circumstances." *See* Fed. R. Civ. P. 23(c)(2)(B). The mechanics of the notice process are left to the discretion of the Court, subject only to the broad "reasonableness" standards imposed by due process. *See* 7A Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1786 (3d ed. 2008)*; see also Rosenburg v. I.B.M.*, No. CV-06-00430-PJH, 2007 U.S. Dist. LEXIS 53138 at *5 (N.D. Cal. July 12, 2007) (notice should inform class members of essential terms of settlement including claims procedure and their rights to accept, object or opt-out of settlement); N.D. Cal. Guide ¶¶ 3-5 (identifying information to be included in notice). In this Circuit, it has long been the case that a notice of settlement will be adjudged satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Mendoza v. Tucson Sch. Dist. No.1*, 623 F.3d 1338, 1352 (9th Cir. 1980)). The proposed Notice Plan satisfies these content requirements and is designed to reach a high percentage of the Class.

Notice of the settlement is to be provided to the Class as follows: (1) direct Email Notice via electronic mail to each Class Member for which Defendant has provided or the Claim Administrator can obtain an email address; (2) direct mailed notice to each other Class Member; and (3) publication of the Settlement Website at www.shutterflypromosettlement.com. (Settlement ¶¶ 5.4-5.7.)

The proposed notices inform Class Members about the proposed settlement; a summary of settlement benefits; their right to opt out and the information required by N.D. Cal. Guide ¶ 4 regarding opt outs; their right to object and the information required by N.D. Cal. Guide ¶ 5 regarding objections; the opportunity to file a claim to obtain a Cash Refund; and the prospective request for attorneys' fees, costs and a representative service award. The mailed notices refer Class Members to the settlement website where they can obtain the long-form notice, which provides more details about the case and the settlement, online and printable versions of the claim form and

the opt out forms, a fuller discussion of the release, and methods to obtain additional information. In addition, the settlement website will also contain a contact information page that will include address and telephone numbers for the Claim Administrator and Plaintiff's Counsel, the Settlement Agreement, the date of the final approval hearing, the motions for approval and for attorneys' fees and any other important documents in the case. Further, the administrator will provide a toll-free telephone number at which Class Members can obtain more information.

As explained in the declaration from the Claim Administrator filed herewith, the proposed Notice Program is the best notice practicable as it provides for individual direct notice to all reasonably identifiable Class Members, combined with a dedicated website and toll-free telephone line where Class Members can learn more about their rights and options pursuant to the terms of the Settlement. (Weisbrot Decl. ¶ 11). *See, e.g.*, *Simpao v. Gov't of Guam*, 369 F. App'x 837, 838 (9th Cir. 2010) (notice plan was "best notice practicable" where direct notice was mailed to class members among other methods); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379, 2012 U.S. Dist. LEXIS 93284 at *5 (N.D. Cal. July 5, 2012) (approving notice procedure that included emailing customers at last known email address).

The Class Action Fairness Act requires that Defendant give notice of the proposed class action settlement to appropriate state and federal officials and supply all of the information and documents set forth in 28 U.S.C. § 1715 (b)(1)-(8). The Claim Administrator will do so within ten days after the Settlement Agreement is filed with the Court. (Settlement ¶ 5.8.)

### 3. Fairness, Adequacy, and Reasonableness of Settlement

#### (a) Procedural Concerns

The Court must consider whether "the class representatives and Plaintiff's Counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B). As the Advisory Committee notes suggest, these are "matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)-(B) advisory committee's note to 2018 amendment. These concerns implicate factors such as the non-collusive nature of the negotiations, as well as the extent of discovery completed and stage of the

proceedings. *See Hanlon*, 150 F.3d at 1026.

### i. *Adequate Representation of the Class*

As discussed more fully in Section E, *supra*, Plaintiff has no conflicts of interest with the Settlement Class and has invested significant time and resources in this litigation. Plaintiff's Counsel has successfully represented numerous plaintiff classes, involving a variety of claims, in state and federal courts throughout the country and effectively represented the class interests in this case.

### ii. *Arm's Length Negotiations*

The Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation," both of which occurred here. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("*DIRECTV*"); 4 Newberg at § 11.24. "The extent of discovery [also] may be relevant in determining the adequacy of the parties' knowledge of the case." *DIRECTV*, 221 F.R.D. at 527 (quoting *Manual for Complex Litigation, Third* § 30.42 (1995)). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *DIRECTV*, 221 F.R.D. at 527 (quoting 5 *Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.)).

Here, before agreeing upon the terms of the settlement, the parties engaged in extensive factual investigation, which included document productions and interrogatories served and answered by the Parties. (Safier Decl. ¶¶ 17-19.) The parties also undertook extensive briefing and argument on various significant legal issues. *See* Section B, *supra*. The record was thus sufficiently developed that the parties were fully informed as to the viability of the claims and able to adequate evaluate the strengths and weaknesses of their respective positions and risks to both sides if the case did not settle. (Id.)

The parties negotiated the proposed settlement in good faith with the assistance of an

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

independent experienced mediator, the Honorable Richard Kramer (Ret'd). (Id. ¶ 20.) "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428-MHP, 2007 U.S. Dist. LEXIS 83147 at *3 (N.D. Cal. Oct. 30, 2007).

### (b) Substantive Concerns

Rule 23(e)(2)(C) and (D) set forth factors for conducting "a 'substantive' review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment. In determining whether "the relief provided for the class is adequate," the Court must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). In addition, the Court must consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

### i. Strength of Plaintiff's Case and Risk of Continuing Litigation

Consistent with Rule 23's instruction to consider "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in this circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026. Generally, the principal risks to be assessed are the difficulties and complexities of proving liability and damages. *See, e.g., Mego*, 213 F.3d at 458-59 (assessing risk of inability to prove fraudulent scheme in affirming settlement); *Linney v. Cellular Alaska Partnership*, 151 F.3d at 1240-1241 (9th Cir. 1998) (assessing risks involving fraudulent concealment and ability to obtain damages in affirming settlement); *Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993), *cert denied,* 512 U.S. 1220 (1994) (approving settlement based in part on "inherent risks of litigation"); *Class Plaintiffs*, 955 F.2d at 1292 (approving settlement based on uncertainty of claims and avoidance of summary judgment); *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982, *cert denied*, 495 U.S. 1217 (1983)) (approving settlement based in part on the

possibility that a judgment after a trial, when discounted, might not reward class members for their patience and the likely delay reflected in the "track record" for large class actions).

In considering whether to enter into the Settlement, Plaintiff, represented by counsel experienced in class action litigation, weighed the risks inherent in establishing all the elements of her claims in a jury trial, as well as the expense of trial and likely duration of post-trial motions and appeals. Plaintiff agreed to settle this litigation on these terms based on her careful investigation and evaluation of the facts and law relating to Plaintiff's allegations and consideration of the facts and views expressed by the mediators and Defendant during the settlement negotiations. *See Louie v. Kaiser Found. Health Plan, Inc.*, No. 08-cv-0795, 2008 U.S. Dist. LEXIS 78314, at *6 (S.D. Cal. Oct. 6, 2008) ("Plaintiff's Counsels' extensive investigation, discovery, and research weighs in favor of preliminary settlement approval.").

Plaintiff and Plaintiff's Counsel were aware that, in order to prevail at trial, she would have to prove that Defendant's Shutterfly General Spend Group advertisements were misleading and that Defendant's omissions were material; that consumers relied on the misrepresentations; the representation caused injuries; and that there were recoverable damages or restitution for the Class. Defendants also would likely oppose class certification. Although Plaintiff believes the evidence obtained in discovery established the prerequisites for certification as well as Defendant's liability and damages, Defendant vigorously denies those allegations. Among other things, Defendant was prepared to argue that its advertising was not misleading to a reasonable consume and that some of the Shutterfly General Spend Groupons explicitly disclaimed the ability to combine them with other offers or discounts. Further, Plaintiff faced substantial challenges in certifying a class and, if a class or classes were certified, establishing the amount of class-wide damages.

While Plaintiff's Counsel is confident in its positions and believe Plaintiff's claims are strong, Plaintiff's Counsel is also experienced and realistic enough to know that the recovery and certainty achieved through settlement, as opposed to the uncertainty inherent in the trial and appellate process, weighs heavily in favor of settlement, particularly given the above risks, which could easily have impeded Plaintiff's successful prosecution at trial and in an eventual appeal. (Safier Decl. ¶¶ 24-31.) Under the circumstances, Plaintiff and Plaintiff's Counsel appropriately

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

determined that the instant settlement outweighs the gamble of continued litigation. *Id.* Moreover, even if Plaintiff prevailed at trial, any recovery could be delayed for years by an appeal. *Id.* Thus, even in the best case, it could take years to secure any meaningful relief for Class Members. *See Lipuma v. American Express Company*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).

Further, a comparison of the settlement award to the potential damages that might be recovered for the Class at trial, given the risks of the litigation, supports the reasonableness of the Settlement. *See* N.D. Cal. Guide ¶1(d) (preliminary approval motion should set forth "potential recovery if plaintiffs were to prevail" and "likely recovery per plaintiff" under the settlement). Even after trial, Defendant might be successful at arguing that Class Members were not entitled to monetary compensation for their decision to purchase or redeem the Shutterfly General Spend Groupon, unless there was proof that there was a promotion or free shipping offer available on the Shutterfly website that would have been used if the Shutterfly General Spend Groupon could have been combined with other offers, and that such proof was not readily available. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131-32 (9th Cir. 2017) ("Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability."). Under the settlement, without the need for such proof, Class Members can automatically obtain (1) one Shipping Code for free shipping; and (2) one Promotional Code. The value of the Promotional Code depends on whether the Class Member's Groupon was redeemed. Class Members who purchased a Shutterfly General Spend Groupon that was not redeemed can receive Promotional Codes worth 110% of the original Promotional Value of the Unredeemed Shutterfly General Spend Groupon. Class Members who redeemed a Shutterfly General Spend Groupon can receive Promotional Codes worth 20% of the original Promotional Value of the Shutterfly General Spend Groupon. Class Members who redeemed a Shutterfly General Spend Groupon also have the option to instead obtain a Cash Refund equal to 10% of the Promotional Value of the Groupon, plus 50% of the amount the Class Member paid Shutterfly for shipping in connection with the order in which the Groupon was redeemed. There is also substantial value to Defendant's commitment to include a clear disclosure regarding what will be obtained when purchasing a Shutterfly General Spend

Groupon and with what other offers it cannot be combined. This is a very favorable outcome given the substantial risks of continuing with this complex litigation, and the uncertainty inherent in trial, as well as the advantages of obtaining an immediate benefit for Class Members and avoiding the substantial expenses of further litigation.

The Settlement release is no broader than a res judicata release that would be obtained after trial. It releases only claims that were or could have been asserted regarding the Shutterfly General Spend Groupons sold during the Class Period and the arbitration agreement included in the Terms of Use—the very issues in suit. *See Allied Fire Prot. v. Diede Constr., Inc.*, 127 Cal. App. 4th 150, 155 (2005) ("Res judicata serves as a bar to all causes of action that were litigated or that could have been litigated in the first action."); *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) ("the Ninth Circuit allows federal courts to release not only those claims alleged in the complaint, but also claims 'based on the identical factual predicate as that underlying the claims in the settled class action.'") (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)). Any Class Member's claims for personal injury against Defendant are specifically excluded from the release.

### ii.    *Effectiveness of Distribution Method*

The Court must consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, benefits (the Shipping Codes and Promotional Codes) are distributed automatically to all Class Members, without need for any claim form.

Class Members who redeemed a Shutterfly General Spend Groupon and who wish to elect a Cash Refund in lieu of the Shipping Code and Promotional Code must only submit a simple claim form with basic questions about class membership. The form can be completed online, or class members have the option to print and mail the claim form to the Claim Administrator. (Settlement ¶ 4.3.) Cash Refund payments will be made by digital distribution or mailed check. This procedure is claimant-friendly, efficient, cost-effective, proportional and reasonable. Pursuant to N.D. Cal. Guide ¶1(g), Plaintiff's Counsel estimates, based on its experiences with recent settlements in other cases and the input of the Claims Administrator, between 1,000 and 2,000 Class Members will submit a Claim. (Safier Decl. ¶ 53.) The remaining Class Members will

automatically receive the Shipping Code and Promotional Codes.

### iii.  Terms of Attorneys' Fees

Plaintiff's Counsel seeks an award of attorneys' fees and costs for all Plaintiff's Counsel in an amount of $350,000.00. That request is addressed in Section F, *infra*.

### v.  Equitable Treatment of Class Members

All Class Members are entitled to the same relief under the Settlement. Even though Class Members purchased or redeemed Shutterfly General Spend Groupons with various Promotional Values, each Class Member is entitled to receive a Shipping Code and the amount of the Promotional Code is a function of the Promotional Value of the Groupon purchased or redeemed. The Settlement also provides for an Incentive Award for the Representative Plaintiff, which is explained in Section F, *infra*.

### vi.  Counsel's Experience

Although not articulated as a separate factor in Rule 23(e), courts have given considerable weight to the opinion of experienced and informed counsel who support settlement. *See DIRECTV*, 221 F.R.D. at 528; *see also In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA, 2008 U.S. Dist. LEXIS 117351 at *4 (N.D. Cal. Dec. 22, 2008); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). In deciding whether to approve a proposed settlement of a class action, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Stewart v. Applied Materials, Inc.*, No. 15-cv-02632-JST, 2017 U.S. Dist. LEXIS 137130 at *6 (N.D. Cal. Aug. 25, 2017); *accord Omnivision*, 559 F. Supp. 2d at 1043 (same). Here, Plaintiff's Counsel came to recommend this Settlement after over 3 years of hard-fought litigation, during which it expended over 679 hours, which included briefing on a variety of significant contested legal issues. (Safier Decl. ¶¶ 1-15, 34.) Defendant is also represented by seasoned, class-action litigators who support the settlement. (Id. ¶ 22.)

### vii.  Past Distributions

The information requested by N.D. Cal. Guide ¶ 11 regarding past distributions in other comparable class settlements is provided in the Safier Declaration. (Safier Decl., Ex. 4.)

### E.    The Class Should Be Conditionally Certified

The Class consists of all United States residents who either (i) purchased a Shutterfly General Spend Groupon from June 1, 2015 to April 30, 2018 that was never redeemed; or, (ii) redeemed a Shutterfly General Spend Groupon that was purchased during that period. (Settlement ¶ 2.11.) Excluded Persons are (a) the Honorable Beth Labson Freeman and any member of her immediate family; (b) the Honorable Magistrate Virginia K. DeMarchi and any member of her immediate family; (c) any government entity; (d) Honorable Richard Kramer and any member of his immediate family; (e) Defendant; (f) any entity in which Defendant has a controlling interest; (g) any of Defendant's parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (h) any person who timely opts out of the Settlement. (Id.) Under the Settlement Agreement, Class Members (except any such Person who has filed a proper and timely request for exclusion from the Class), will agree to release the Released Parties from the Released Claims. (Id. ¶ 8.1.)

When a class settlement occurs before class certification has taken place, a court may conditionally certify an action for settlement purposes. *See In re Wireless*, 253 F.R.D. 630, 633 (S.D. Cal. 2008) ("parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes"). When certification is sought under Rule 23(a) and (b)(3), the Court's threshold task is to preliminarily determine whether the proposed settlement class satisfies the numerosity, commonality, typicality and adequacy requirements of Rule 23(a), and the predominance and superiority requirements of Rule 23(b)(3). *Id.* Here, the parties seek approval, for settlement purposes only, of a nationwide Settlement Class so that relief can be afforded to all consumers. All of the class certification elements are met here.

Numerosity is satisfied because approximately 110,000 Shutterfly General Spend Groupons were sold to Class Members (Weisbrot Decl. ¶ 14) and "joinder of all members is impracticable." Rule 23(a)(1); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal 2000) ("As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21.").

Typicality under Rule 23(a)(3) is a "permissive" standard that requires only that the representatives' claims be "reasonably coextensive with those of absent class members; they need

not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Plaintiff is typical because she was deceived as a result of Defendant's misleading advertising of the Shutterfly General Spend Groupons and she suffered the same injury as the rest of the Class.

Adequacy under Rule 23(a)(4) concerns whether the class representatives will "fairly and adequately protect the interests of the class." This inquiry involves two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Both requirements are met here. All of Plaintiff's interests are in line with the interests of the Class because she seeks the same relief as the Class, based upon the same claims and uniform business practices. Plaintiff has also vigorously prosecuted this action, as shown by her retention of experienced, competent counsel, production of documents and responses to interrogatories, and Plaintiff's participation in the negotiation of the Settlement. Plaintiff also assumed the risk of bearing Defendant's costs should the litigation have ultimately been unsuccessful. Safier Decl. ¶ 51.

Plaintiff's Counsel is competent and qualified to represent the Class. Plaintiff's Counsel has extensive experience with complex class actions, having served as Plaintiff's Counsel in numerous federal and state court consumer fraud actions that have resulted in millions of dollars being returned to consumers. Safier Decl. ¶ 21 and Ex. 2. Numerous courts have repeatedly found Plaintiff's Counsel to be adequate Plaintiff's Counsel, including many in this District. Id.

Commonality under Rule 23(a)(2) is established if plaintiff's and class members' claims "depend on a common contention…capable of class-wide resolution . . . meaning that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Because the commonality requirement may be satisfied by a single common issue, it is easily met. 1 NEWBERG ON CLASS ACTIONS § 3.10, at 3-50 (1992).

Here, there are numerous common questions, all of which predominate over any individualized issues, including: (1) whether Defendant's marketing and advertising materials were likely to deceive reasonable consumers; (2) whether Class Members were harmed by

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

Defendant's misleading advertising and omissions; (3) whether Class Members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and (4) whether Class Members are entitled to payment of restitution or damages plus interest thereon. Defendant sold Shutterfly General Spend Groupons with substantively similar advertisements. Regardless of the specific Shutterfly General Spend Groupon, Plaintiff alleges that Defendant's advertisements were false and misleading because of Defendant's failure to disclose material terms regarding the inability to use the Groupon in combination with other promotions offered on the Shutterfly website. Accordingly, this claim will present uniform issues of material fact for Class Members, including whether the advertisements were likely to deceive, whether Defendant's omissions were material to reasonable consumers, and whether damages can be proven.

Finally, Rule 23(b)(3)'s superiority analysis essentially looks to alternative methods of adjudication and whether maintenance of a class action would be fair and efficient. *See Valentino v Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir 1996); 2 Newberg at § 4.27. Superiority is satisfied here because: (1) prosecuting or defending separate actions at this stage would be impractical and inefficient; and (2) to the parties' knowledge, there is no other litigation concerning this controversy. *See* Fed. R. Civ. Proc., Rule 23(b)(3). Here, there are a multitude of consumers who were injured in small amounts. This "small individual damages" factor is significant and weighs heavily in favor of class certification, especially given the common scheme at issue. *See Miletak*, 2010 WL 809579 at *13.

Moreover, since this action will now settle, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."). Accordingly, common questions predominate, and a class action is the superior method of adjudicating this controversy.

### F.    Approval of the Attorneys' Fees and Expenses.[2]

#### 1.    Plaintiff's Fee Request is Reasonable Under the Lodestar Approach.

##### (a)    Legal Standard

Plaintiff requests the payment of attorneys' fees and expenses in the amount of $350,000.00, which is provided for in the Settlement Agreement separate and apart from the money made available to the Class for purposes of providing Shipping Codes, Promotional Codes, Cash Refunds, and notice and administration expenses. Under Ninth Circuit standards, in cases such as this where the relief is primarily injunctive and there is a fee-shifting statute (California Civil Code § 1750 and California Code of Civil Procedure § 1021.5), it is appropriate for a District Court to analyze an attorneys' fee request and issue an award based on the "lodestar" method. *Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Plaintiff's fee request is reasonable under this approach as Plaintiff's Counsel obtained both injunctive and monetary relief. Further, an attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted). To support an expense award, Plaintiff should file an itemized list of her expenses by category, listing the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. *See Wren v. RGIS Inventory Specialists,* No. 06-cv-05778-JCS, 2011 U.S. Dist. LEXIS 38667 at *30 (N.D. Cal. Apr. 1, 2011); N.D. Cal. Guide ¶ 6.

##### (b)    Analysis

Under the lodestar approach, "[t]he lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000); *accord Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative (i.e. fractional) "multiplier to take into account a variety

---

[2] Under the Settlement Agreement, Defendant agreed that it would not oppose Plaintiff's request for a Fee Award that does not exceed $350,000 provided that the Court grants final approval of the settlement. Settlement Agreement § VI. Although Defendant does not oppose Plaintiff's requested fee award, it takes this position of non-opposition without endorsing Plaintiff's arguments and evidence in support of the requested award.

of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained and the contingent risk presented." *Id.*; *see also Serrano v. Priest ("Serrano III")*, 20 Cal. 3d 25, 48-49 (1977); *Ramos v. Countrywide Home Loans, Inc.*, 82 Cal. App. 4th 615, 622 (2000); *Beasley v. Wells Fargo Bank,* 235 Cal. App. 3d 1407, 1418 (1991) (multipliers are used to compensate counsel for the risk of loss, and to encourage counsel to undertake actions that benefit the public interest).

Plaintiff's Counsel's lodestar through the date of this application is approximately $634,047.50. Safier Decl. ¶ 34. Plaintiff's Counsel's efforts to date included, without limitation:

- Pre-filing investigation;
- Drafting a class action complaint and one amended complaint;
- Drafting numerous case management conference statements and stipulations;
- Meeting-and-conferring with Defendant's counsel regarding the scope of discovery, the sufficiency of discovery responses and production, the retention of electronic documents, searches for electronically stored information, and the timing of production and briefing numerous discovery disputes;
- Reviewing Defendant's document production;
- Drafting and litigating multiple rounds of motions regarding enforceability of Defendant's arbitration provision;
- Participating in arbitration, including associated motion practice;
- Participating in JAMS mediation with the Honorable Richard Kramer (Ret'd) and drafting a mediation statement;
- Negotiating and drafting the Settlement Agreement along with corresponding documents, including claim forms, summary notice, long form notice, and benefits notice; and
- Preparing this Motion and supporting documentation.

*See* Safier Decl. ¶¶ 2-20.

Before the final approval hearing, Plaintiff's Counsel's efforts will also include, without limitation:

- Reviewing and responding to correspondence from Class Members;

1  • Supervising the work of the Claims Administrator; and

2  • Researching and drafting a reply in support of this motion and opposing objections, if any.

3  Safier Decl. ¶ 50.

4  Plaintiff's Counsel calculated their lodestar using Plaintiff's Counsel's regular billing rates,

5  which for the attorneys involved range from $450 to $1090 per hour and for the legal

6  assistant/paralegal is $315 per hour. Safier Decl. ¶¶ 34-36. These hourly rates are equal to market

7  rates in San Francisco for attorneys of Plaintiff's Counsel's background and experience. *Id.*; *see*

8  *also In re Optical Disk Drive Prod. Antitrust Litig.,* No. 3:10-MD-2143-RS, 2016 U.S. Dist.

9  LEXIS 175515 at *8 (N.D. Cal. Dec. 19, 2016) (approving hourly rates of $205 to $950);

10  *Gutierrez v. Wells Fargo Bank, N.A.*, No. C-07-05923-WHA, 2015 U.S. Dist. LEXIS 67298 at *5

11  (N.D. Cal. May 21, 2015), *appeal dismissed* (Oct. 30, 2015) (approving hourly rates of $475 to

12  $975). The hourly rates charged by GSLLP have been deemed reasonable in connection with the

13  approval of GSLLP's fee applications in approximately a dozen recent matters. *Id.* ¶¶ 36-45. Each

14  of the lawyers who did substantive work on the case graduated from top law schools; and the key

15  players have at least 10 and in some cases 20 years of litigation experience. *Id.* ¶ 46; Ex. 2.

16  A table setting forth hours worked is set forth in paragraph 34 of the Safier Declaration and

17  reprinted below:

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

| Timekeeper | Hours | GSLLP Rate | Total |
|---|---|---|---|
| Adam J. Gutride | 89.2 | $1,090 | $ 97,228.00 |
| Adriana Klompus | 1.8 | $315 | $ 567.00 |
| Anthony Patek | 1.9 | $890 | $ 1,691.00 |
| Ashley Garcia | 33 | $315 | $ 10,395.00 |
| Hayley Reynolds | 44.4 | $715 | $ 31,746.00 |
| Jessica Kagansky | 19.1 | $500 | $ 9,550.00 |
| Kristen Simplicio | 24.3 | $850 | $ 20,655.00 |
| Kyle Wilson | 16.6 | $450 | $ 7,470.00 |
| Marie McCrary | 193.5 | $990 | $ 191,565.00 |
| Matthew McCrary | 13.1 | $965 | $ 12,641.50 |
| Rajiv Thairani | 2.0 | $715 | $ 1,430.00 |
| Seth A. Safier | 193.2 | $1,090 | $ 210,588.00 |
| Stephen Raab | 1.3 | $890 | $ 1,157.00 |
| Tekesha Geel | 44 | $815 | $ 35,860.00 |
| Todd Kennedy | 1.6 | $940 | $ 1,504.00 |
| **TOTAL** | 679 | | **$ 634,047.50** |

These rates are the current rates charged by Plaintiff's Counsel, which is appropriate given the deferred and contingent nature of counsel's compensation. *See LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 764 (2nd Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment….") (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement.").

In any event, Plaintiff's Counsel's request of $350,000.00 for combined fees and costs (equating to approximately $340,000.00 in fees and $10,000.00 in expenses), comes in well *below* the fee amount of $634,047.50 calculated using the lodestar method. Thus, far from any "upward" multiplier, Plaintiff's Counsel's requested fee actually results in a fractional multiplier of .53, which further justifies the full requested fee award. *See, e.g.*, *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 690-91 (N.D. Cal. 2016) (holding negative lodestar multiplier to be indication of reasonableness of fee request); *Johnson v. Triple Leaf Tea Inc.*, No. 3:14-cv-01570-MMC, 2015 U.S. Dist. LEXIS 170800 at *6 (N.D. Cal. Nov. 16, 2015) (finding where "Plaintiff's Counsel's lodestar exceeded the negotiated award" to be "well within the range courts have allowed in the Ninth Circuit"); *Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 U.S. Dist.

LEXIS 42637 at *4 (N.D. Cal. Mar. 31, 2015) ("Plaintiff's Counsel's lodestar . . . result[s] in a negative multiplier of approximately .54. This is below the range found reasonable by other courts in California."); *Covillo v. Specialtys Café*, No. C-11-00594-DMR, 2014 U.S. Dist. LEXIS 29837 at *7 (N.D. Cal. Mar. 6, 2014) ("Plaintiff's requested fee award is approximately 65% of the lodestar, which means that the requested fee award results in a so-called negative multiplier, suggesting that the percentage of the fund is reasonable and fair.").

Plaintiff's Counsel requests that, in addition to reasonable attorneys' fees, the Court grant its application for reimbursement of out-of-pocket expenses incurred by it in connection with the prosecution of this litigation. As required by the N.D. Cal. Guide ¶ 6, the expenses incurred are itemized in counsel's declaration. Safier Decl., Ex. 3. The current total shown in GSLLP records is $10,453.22, although the amount may increase prior to final approval. Safier Decl. ¶ 49.

## 2. The Court is Not Obliged to "Cross-Check" Plaintiff's Counsel's Lodestar.

The Court is not required to perform a percentage based cross-check where the value of a permanent injunction is difficult to value monetarily. *See Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 547 (9th Cir. 2016) (holding that if "classwide benefits are not easily monetized, a cross-check is entirely discretionary," and the district court may make its award based entirely on the lodestar).

A recent Ninth Circuit decision, *Chambers v. Whirlpool Corp.*, 980 F.3d 645 (9th Cir. 2020)[3] ("*Whirlpool*"), provides that where 28 U.S.C § 1712 (of the Class Action Fairness Act ("CAFA")) applies to a settlement—i.e., where "coupons" are made available in a settlement—a court must apply a lodestar "cross-check," or in the alternative, articulate why it is not feasible in a particular case. *Id.*, at *26. Because the settlement in this case is not a "coupon settlement," section 1712 of CAFA and, by extension, *Whirlpool* do not apply. However, even if the Settlement were to be deemed a "mixed" coupon settlement, the Court should apply the lodestar methodology without the necessity of a cross-check because, as articulated below, it is infeasible.

---

[3] All pincites to *Whirlpool* are Lexis cites—i.e., *Chambers v. Whirlpool Corp.*, 2020 U.S. App. LEXIS 35366. A rehearing en banc has been requested in *Whirlpool*. *See Chambers v. Whirlpool Corp.*, Case No., 16-56666 (Dkt.## 168-169).

**(a)      This is not a Coupon Settlement, or It is Merely a "Mixed" Settlement Under 28 U.S.C § 1712.**

The Ninth Circuit has established three factors to determine whether a settlement is a coupon settlement under 28 U.S.C. § 1712 of the Class Action Fairness Act ("CAFA"): (i) "whether class members have 'to hand over more of their own money before they can take advantage of' a credit"; (ii) "whether the credit is valid only 'for select products or services'"; and (iii) "how much flexibility the credit provides, including whether it expires or is freely transferrable." *In re Easysaver Rewards Litig.*, 906 F.3d 747, 762 (9th Cir. 2018) *(citing In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 951 (9th Cir. 2015)).

Here, each of the factors indicate the Promotional Codes are not "coupons" within the meaning of CAFA. The Shipping Codes are likely "coupons" within the meaning of CAFA, which would make this, at most, a "mixed" settlement under CAFA. However, there are two additional wrinkles here which argue for the inapplicability of CAFA. First, persons who redeemed their Groupons are not limited to Promotional and Shipping Codes; they may obtain cash refunds. Second, while persons who did not redeem their Groupons are entitled only to Promotion and Shipping Codes, they are automatically being provided a more valuable version of the exact item they purchased.  To put it another way, the original purchase of a Groupon that class members made was itself a purchase of a "coupon," and under the settlement they are getting a better coupon than they originally purchased. The coupon provisions of CAFA were designed to require more scrutiny of settlements that provided only a "coupon" towards a further purchase, instead of remedying the underlying issue that led to the litigation. Here the more valuable "coupon" does address the underlying allegation that the original coupon (i.e. Groupon) had less value than purchasers would have understood.

**(i)      The Promotional Codes are not "Coupons" Within the Meaning of CAFA.**

Regarding the first factor, the Promotional Codes do not provide discounted products; they can be used to purchase products from Shutterfly's website and do not require Class Members to make any additional purchases. Thus, the Promotional Codes are not "coupons" under CAFA. *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1075 (C.D. Cal. 2010); *see also Chaikin v. Lululemon USA Inc.,* No. 3:12-CV-02481-GPC-MDD, 2014 U.S. Dist. LEXIS 35258, at *7 (S.D.

Cal. Mar. 14, 2014) (settlement providing $25 "credit vouchers" redeemable at Lululemon stores that "require[d] no additional purchase" was not a coupon settlement); *Foos,* 2013 U.S. Dist. LEXIS 136918, at *7-*8 (settlement providing $15 voucher for Ann Taylor merchandise with no minimum purchase required was not a coupon settlement); *Morey v. Louis Vuitton N. Am. Inc.*, No. 11cv1517 WQH (BLM), 2014 U.S. Dist. LEXIS 3331, at *17 (S.D. Cal. Jan. 10, 2014) (settlement providing $41 "Merchandise Certificate" redeemable at Louis Vuitton retail stores was not coupon settlement); *Tchoboian v. FedEx Office & Print Servs., Inc.*, No. SA CV 10-01009 JAK (MLGx), 2014 U.S. Dist. LEXIS 184376, at *6 (C.D. Cal. Mar 25, 2014) ("[C]ourts have distinguished between 'coupons,' which provide 'discounts on merchandise or services offered by the defendant,' and 'vouchers,' which provide 'free merchandise or services.'").

Regarding the second factor, the Promotional Codes can be redeemed toward most products and services offered by Shutterfly, including products that were excluded from the Shutterfly General Spend Groupons that Class Members purchased.

Regarding the third factor, Promotional Codes are not "coupons" because they do not expire, can be used at any time, and are freely transferrable. *See c.f.*, *Chaikin,* 2014 U.S. Dist. LEXIS 35258, at *3 (approving a class action settlement offering vouchers that expire within six months); *Foos*, 2013 U.S. Dist. LEXIS 136918, at *3 (same); *Davis v. Cole Haan, Inc.*, No. C-11-01826-JSW, 2013 U.S. Dist. LEXIS 151813, at *3 (N.D. Cal. Oct. 21, 2013) (finding a class action settlement was a coupon settlement, in part, because of "significant limitations" including that "the vouchers expire after six months").

**(ii)    This is Not a "Coupon" Settlement Because the Majority of the Class Can Obtain Cash Instead of the Promotional and Shipping Codes, and the Remainder Is Getting Relief that Directly Remedies the Underlying Alleged Harm.**

In *Whirlpool*, class members did not receive anything unless they filed a claim; they were required to file a claim to receive a coupon.[4] Most *Whirlpool* class members could only claim a

---

[4] *I.e.,* (i) a $100 or a 30% discount coupon for a new Whirlpool dishwasher if there is a future overheating incident within two years of the settlement notice date, or within 10 years of purchase for NewGen/Raptor owners and/or (ii) 10-20% "rebate" coupon to purchase a new Whirlpool dishwasher, which expires 120 days after the claim deadline. *Whirlpool*, 980 F.3d at *8-9.

coupon; they were ineligible to receive any cash compensation. Only 4% of filed claims

potentially involved cash. *See Whirlpool*, 980 F.3d at *10 (stating "put another way, only 4% of

the 133,040 filed claims—at most—could potentially involve cash reimbursement.") By contrast,

here Cash Refunds are available to approximately 69% of the Class (those who redeemed

Shutterfly General Spend Groupons).

It is true that Class Members who redeemed their Groupons and do nothing will

automatically receive a Promotional Code and Shipping Code. This default provision does not

change the analysis. *See Williamson v. McAfee, Inc.*, No. 5:14-cv-00158-EJD, 2017 U.S. Dist.

LEXIS 15838 (N.D. Cal. Feb. 3, 2017) (settlement was "not a coupon settlement, since class

members had the option to receive cash instead of value certificates, even though they received

certificates by default."); *See Foos v. Ann, Inc.*, No. 11cv2794 L (MDD), 2013 U.S. Dist. LEXIS

136918, at *7-*8 (S.D. Cal. Sept. 23, 2013) ("having a coupon option does not necessarily

transform a class action settlement into a coupon settlement under CAFA").

For the remaining Class Members (those who did not redeem), they will receive a free

Shipping Code and Promotional Code worth 110% of the Promotional Value of their expired

Groupon. However, those benefits are directly compensatory to the alleged underlying harm:

Plaintiff alleged that the original advertising of the Shutterfly General Spend Groupon was

misleading because the Groupon could not be used with free shipping codes and could not be

combined with other offers. The Settlement addresses both issues: it provides consumers free

shipping *and* a higher dollar amount towards their purchase than originally promised.

> **(b)** **As At Most a "Mixed" Coupon/Non-Coupon Settlement, the Lodestar- Based Fee Is Appropriate Without Need For A Cross-Check.**

At most, this settlement should be deemed to be a "mixed" settlement because it "involv[es]

coupon and non-coupon relief" under 1712(c). *See In re HP Inkjet Printer Litig.*, 716 F.3d 1173,

1184-85 (9th Cir. 2013) (holding section 1712(c) applies where a settlement provides both

coupons and other relief, such as equitable relief). Under § 1712(c), the percentage-of-redemption-

value method applies only to the portion of fees *attributable to obtaining the coupon relief.* 28

U.S.C. § 1712(c)(1) (stating that fees "based upon a portion of the recovery of the coupons shall be

calculated in accordance with subsection (a)," which sets forth the percentage-of-redemption-value methodology). But the remaining portion of fees attributable to "non-coupon relief" is calculated under § 1712(b) as a reasonable lodestar amount times any appropriate multiplier. *See* 28 U.S.C. § 1712(b) (stating that where "a portion of the recovery of the coupons is not used to determine the attorney's fees," it "shall be based upon the amount of time class counsel reasonably expended"). In short, the total fee award for "mixed" settlements under § 1712(c) is the sum of: (i) "a reasonable contingency fee based on the actual redemption value of the coupons" (§ 1712(a)); and (ii) "a reasonable lodestar amount to compensate class counsel for any non-coupon relief obtained" (§ 1712(b)). *In re HP Inkjet Printer Litig.*, 716 at 1184-85 .

In *In re Easysaver Rewards Litigation*, the Ninth Circuit explained that a district court in "mixed" settlements may opt to use the "lodestar approach provided that it does so without reference to the dollar value of [the coupon relief]." 906 F.3d at 759. Here, Class Counsel has not sought *any* fees based on a percentage of dollar value of coupons, and only bases its request on the lodestar. Further, Class Counsel's request of $350,000 for combined fees and costs (equating to approximately $339,546.78 in fees and $10,453.22 in expenses), comes in well *below* the fee amount of $634,047.50 calculated using the lodestar method. Thus, far from any "upward" multiplier, Class Counsel's requested fee results in a fractional multiplier of .53; in other words, Class Counsel has effectively "written off" approximately 360 hours expended on this litigation. *See, e.g.*, *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 690-91 (N.D. Cal. 2016) (holding negative lodestar multiplier to be indication of reasonableness of fee request); *Johnson v. Triple Leaf Tea Inc.*, No. 3:14-cv-01570-MMC, 2015 U.S. Dist. LEXIS 170800 at *6 (N.D. Cal. Nov. 16, 2015) (finding where "Class Counsel's lodestar exceeded the negotiated award" to be "well within the range courts have allowed in the Ninth Circuit"); *Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 U.S. Dist. LEXIS 42637 at *4 (N.D. Cal. Mar. 31, 2015) ("Class Counsel's lodestar . . . result[s] in a negative multiplier of approximately .54. This is below the range found reasonable by other courts in California."); *Covillo v. Specialtys Café*, No. C-11-00594-DMR, 2014 U.S. Dist. LEXIS 29837 at *7 (N.D. Cal. Mar. 6, 2014) ("Plaintiffs' requested fee award is approximately 65% of the lodestar, which means that the requested fee award results

in a so-called negative multiplier, suggesting that the percentage of the fund is reasonable and fair.")

At best, a very small number of the hours worked in this litigation—and far fewer than the approximately 360 hours that are being written off—are attributable to the Shipping Code component of the Settlement. Safier Decl. ¶ 48.[5] The bulk of the fees incurred in this litigation are attributable to preventing Defendant from enforcing the arbitration agreement. Plaintiff succeeded in invalidating that agreement and should be compensated for the time spent doing so. Plaintiff also succeeded in leading Defendant to change its practices with regard to its advertising of Shutterfly General Spend Groupons and to agree in settlement to improved disclosures. Finally, Plaintiff succeeded in obtaining Promotional Codes for all Class Members and Cash Benefits for any Class Member who submits a simple claim form—a claim form that is simpler than would likely be required in a post-trial claim process for a smaller refund. The Shipping Codes, i.e., the coupon provision of the settlement, is just icing on the cake, for those who Class Members do not want to file a claim. It would be incongruent to reduce Plaintiff's Counsel's fee award because it negotiated for, and obtained, an additional automatic benefit for Class Members who decided not to make a claim, a benefit that is greater than could be obtained at trial.

### (c)     Regardless, a Lodestar Cross-Check Is Not Feasible or Practical.

In this case, a "cross-check" of the lodestar (against a theoretical amount of benefit conferred) is not feasible or practical. Nearly all the litigation was driven by the dispute over the arbitration provision. The value of the injunctive relief obtained (and other changed practices) cannot be easily monetized, so a cross-check that focused only on the Cash Benefits, Promotional Codes, and the Shipping Codes made available or redeemed would severely undervalue the

---

[5] The Ninth Circuit reasoned that "attributable to" means "to explain as caused or brought about by: regard as occurring in consequence or on account of." *Id.* (quoting Webster's Third New International Dictionary (2002)). Then, in applying this term, the Ninth Circuit explained:

[A]n attorneys' fees award is 'attributable to' an award of coupons where the attorneys' fees award is a 'consequence' of the award of coupons. Or, put differently, attorneys' fees are 'attributable to' an award of coupons where 'the [singular] award of the coupons' is the condition precedent to the award of attorneys' fees.

*HP Inkjet*, 716 F.3d at 1181.

Settlement benefits. *See, e.g., Coles v. City of Oakland,* No. C03-2961 TEH, 2007 U.S. Dist. LEXIS 100533, at *50 (N.D. Cal. Jan. 4, 2007) (holding that injunctive relief obtained served public interest and that attorneys who serve public interest should be rewarded with lodestar-based fee); *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1418 (1991) (multipliers are used to compensate counsel for the risk of loss, and to encourage counsel to undertake actions that benefit public interest); *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal.App.4th 785, 820 (2006) (holding trial courts should calculate fee awards using the lodestar method "based on actual time expended, rather than a percentage of the recovery, so that pursuit of consumer warranty cases [is] economically feasible.")

### 3. The Catalyst Theory Would Support A Lodestar Award Even In The Absence of Any Settlement Relief.

Finally, even if the parties had not settled but had gone to trial, and even if Plaintiff had lost at trial, Plaintiff and her counsel could pursue the full requested fee award under the lodestar analysis for their work prior to trial invalidating the arbitration provision. *A fortiorari*, they should not receive a lower fee having obtained additional relief for the class in settlement.

Section 1021.5 of the California Code of Civil Procedure authorizes a court (including a federal court) to award attorneys' fees to a party who has achieved "the enforcement of an important right affecting the public interest." *See id.*; *see also Klein v. City of Laguna Beach*, No. 13-56973, 810 F.3d 693, 701 (9th Cir. Jan. 14, 2016) ("When California plaintiffs prevail in federal court on California claims, they may obtain attorneys' fees under section 1021.5.") (citing *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir.1995)). To be eligible for a fee award pursuant to C.C.P. § 1021.5, a party need not win at summary judgment or trial. Rather, as the California Supreme Court has explained:

> The appropriate benchmarks in determining which party prevailed are (a) the situation immediately prior to the commencement of suit, and (b) the situation today, and the role, if any, played by the litigation in effecting any changes between the two.

*Maria P. v. Riles*, 43 Cal. 3d 1281, 1291 (1987) (internal citations omitted); *accord MacDonald v. Ford Motor Co.*, No. 13-CV-02988-JST, 2015 WL 6745408, at *3 (N.D. Cal. Nov. 2, 2015).

A plaintiff who obtains changed practices, even during the litigation, meets the "prevailing

party" standard. *See, e.g., Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989) (explaining that under certain statutes, a "prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation"). It is not even necessary for the plaintiff to obtain an injunction or similar judicially enforceable result, if she was the "catalyst" for the desired result. *See Tipton-Whittingham*, 316 F.3d at 1062, *certified question answered,* 34 Cal. 4th 604 (2004) ("California law continues to recognize the catalyst theory and does not require 'a judicially recognized change in the legal relationship between the parties' as a prerequisite for obtaining attorney fees under Code of Civil Procedure section 1021.5."); *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 560-61 (2004), *as modified* (Jan. 12, 2005) (same); *accord Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 844 (9th Cir. 2007).

Further, a lawsuit that primarily, or even entirely, achieves non-monetary benefits is still eligible for a full lodestar fee. As the California Supreme Court has explained, "By permitting prevailing [parties] recover their attorney fees in addition to costs and expenses, our Legislature has provided injured consumers strong encouragement to seek legal redress in a situation in which a lawsuit might not otherwise have been economically feasible." *Murillo v. Fleetwood Enterprises, Inc.*, 17 Cal.4th 985, 994 (1998); *see also Bluetooth*, 654 F.3d at 941 (holding that lodestar award appropriate when the relief obtained is "not easily monetized," such as when injunctive relief is part of the settlement; *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (holding the lodestar figure is "presumptively a reasonable fee award.") Finally, it is important to note that reduction of the fees would not benefit the Class; rather, it would exclusively enrich (and benefit) Defendant.

**G.    Approval of the Representative Incentive Awards.**

This Court should also approve a $5,000 representative incentive award to the Plaintiff as it is just, fair and reasonable. In deciding whether to approve such an award, a court should consider: "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulty encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal

benefit (of lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atlantic Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995); *see also* N.D. Cal. Guide ¶ 7. Further, as a matter of public policy, representative incentive awards are necessary to encourage consumers to formally challenge perceived false advertising and unfair business practices.

Plaintiff took on substantial risk, most importantly the risk of publicity and notoriety. Safier Decl. ¶ 51. Plaintiff also worked with counsel throughout three years of litigation. *Id.* Plaintiff responded to discovery requests, including interrogatories and requests for production, searched her personal records for responsive documents, and attended the mediation. *Id.* Plaintiff also remained actively involved in the litigation prior to and after settlement. *Id.* She continued to prosecute the case even when it had been limited (by the arbitration provision) to her individual claims, which were only for a few dollars, solely with the hope that the case would eventually return to court and that class relief could be obtained. *Id.*

The proposed representative incentive award is reasonable in light of the Plaintiff's efforts and the relief to the Class resulting from this litigation. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L. Rev. 1303, 1333 (2006) (an empirical study of incentive awards to class action plaintiffs has determined that the average aggregate incentive award within a consumer class action case is $29,055.20, and that the average individual award is $6,358.80.); *see also Mego,* 213 F.3d at 463 (awarding the named plaintiff $5,000 involving a class of 5,400 people and a total recovery of $1.725 million); *Smith v. CRST Van Expedited, Inc.,* 2013 U.S. Dist. LEXIS 6049 *6 (S.D. Cal. Jan. 14, 2013) (finding the amount of the incentive payments requested, $15,000, is well within the range awarded in similar cases); *Gibson & Co. Ins. Brokers, Inc. v. Jackson Nat. Life Ins. Co.,* 2008 WL 618893 (C.D. Cal. Feb. 27, 2008) (awarding $5,000 incentive fee).

## H.  Dates for the Final Approval Process

Plaintiff requests that in connection with preliminary approval, this Court set a date for a final approval hearing. Subject to preliminary approval being entered by August 12, 2021, Plaintiff proposes the following schedule:

| Item | Proposed Due Date |
|---|---|
| Notice Date | September 10, 2021 |
| Deadline for objections, claims, opt-outs | November 9, 2021 |
| Replies in support of final approval and motion for attorneys' fees, costs and representative awards; response to objections | November 19, 2021 |
| Final approval hearing | December 2, 2021 |

## I.     Conclusion

For the reasons stated above, Plaintiff respectfully requests that this Court now grant preliminary approval to the proposed class action settlement, and that it grant final approval after the Class has been given notice and an opportunity to make claims, opt out or object.

Dated: March 5, 2021

**GUTRIDE SAFIER LLP**
/s/ Marie A. McCrary                              /
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar. No. 262670)
HAYLEY A. REYNOLDS (State Bar No. 306427)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Counsel for Plaintiff*