1

**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar. No. 262670)
HAYLEY A. REYNOLDS (State Bar No. 306427)
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

2

3

4

5

Attorneys for Plaintiff, Taylor

6

UNITED STATES DISTRICT COURT FOR THE

7

NORTHERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| MEGAN TAYLOR, an individual, on behalf of herself, the general public and those similarly situated, | Case No. 5:18-cv-00266-BLF |
| Plaintiff, | **DECLARATION OF SETH A. SAFIER IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | DATE: August 12, 2021 |
| SHUTTERFLY, INC., AND DOES 1 THOUGH 50, INCLUSIVE | TIME: 9:00 a.m. |
| Defendants. | CTRM: 3 – 5th Floor |
| | The Hon. Beth Labson Freeman |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, Seth A. Safier, declare and state that:

1.    I am an attorney licensed to practice law in the State of California and in this Court, and a partner in Gutride Safier LLP ("GSLLP" or "Firm"). My firm is counsel of record for Plaintiff Megan Taylor ("Plaintiff") in the above captioned matter against Shutterfly, Inc. ("Shutterfly" or "Defendant"). I submit this declaration in support of Plaintiff's Motion for Approval of Class Settlement. Unless otherwise noted, I have personal knowledge of the facts set forth in this declaration and could and would testify competently to them if called upon to do so. I discuss, in the following order, (a) the history of this litigation, which includes a summary description of the legal services provided by GSLLP in this litigation to date; (b) evaluation of the proposed settlement; (c) the risks borne by GSLLP; (d) the lodestar of GSLLP; and (e) GSLLP's continuing obligations in this litigation and under the Settlement Agreement, a true and correct copy of which is attached hereto as **Exhibit 1**.

A.    **History of This Litigation**

2.    On December 12, 2017, Plaintiff through her counsel Gutride Safier LLP ("GSLLP") filed a Class Action Complaint in Santa Clara County Superior Court against Defendant alleging claims for violations of the California Consumer Legal Remedies Act, Civil Code § 1750, *et seq.* (the "CLRA"); false advertising under California Business and Professions Code § 17500, *et seq.* ("FAL"); unfair, unlawful and deceptive trade practices under California Business and Professions Code § 17200, *et seq.* ("UCL"), breach of contract; and fraud, deceit, and/or misrepresentation, and seeking restitution, damages, an injunction and other relief. Plaintiff sought to pursue these claims on behalf of herself and all persons who, between December 8, 2013 and the present, purchased in the United States a Shutterfly General Spend Groupon.

3.    Plaintiff generally alleges in the Complaint that Defendant's advertising of the Shutterfly General Spend Groupons was false and misleading. On the website www.groupon.com, consumers were offered the ability to pay a dollar amount (the "Paid Value") to obtain a Shutterfly General Spend Groupon which could be redeemed for a higher dollar value (the "Promotional Value") towards a purchase on Defendant's Website until a specified deadline (the "Promotional

1    Value Expiration Date"). If the Shutterfly General Spend Groupon was not redeemed before the

2    Promotional Value Expiration Date, the Groupon can still be redeemed on Defendant's website, but

3    only for a value equal to the Paid Value. (For example, the Shutterfly General Spend Groupon "$20

4    for $40 to Spend at Shutterfly" had a Paid Value of $20 and a Promotional Value of $40 until the

5    Promotional Value Expiration Date. If not redeemed before the Promotional Value Expiration Date,

6    that Groupon could thereafter be redeemed on Defendant's Website for the $20 Paid Value.)

7    Plaintiff alleges that Defendant improperly failed to disclose that purchasers of a Shutterfly General

8    Spend Groupon would actually receive a promotional code that could only be used toward full

9    priced items and could not be combined with any other discounts offered on the Shutterfly website,

10   including product discounts and free shipping.

11       4.    GSLLP drafted and filed the Complaint against Shutterfly and caused it to be served.

12   Prior to doing so, GSLLP spent time communicating with Plaintiff concerning her claims, gathering

13   her documentation, and negotiating with her an engagement agreement. GSLLP also undertook

14   extensive pre-filing investigation, including without limitation, researching, tracking, and analyzing

15   Shutterfly's marketing and advertising, and reviewing Groupon and Shutterfly's websites and

16   online documents. Throughout this litigation, GSLLP has continued to monitor, research, and

17   review such materials. GSLLP also drafted and sent a demand letter to Shutterfly pursuant to the

18   CLRA on or about December 8, 2017. GSLLP drafted and sent a document preservation letter to

19   Shutterfly on or about January 5, 2018. Defendant timely removed the action to the Northern

20   District of California January 11, 2018. (Dkt. #1.)

21       5.    On January 18, 2018, Defendant answered the Complaint, denying Plaintiff's

22   allegations and asserting several affirmative defenses. (Dkt. #10.)

23       6.    On March 7, 2018, Defendant filed a motion to compel arbitration based on an

24   arbitration provision in the Shutterfly Terms of Use. (Dkt. #14.) GSLLP drafted Plaintiff's

25   opposition to the motion and argued, *inter alia,* that the arbitration provision was unenforceable.

26   (Dkt. #18.) On June 14, 2018, the Court held a hearing on Defendant's motion to compel

27   arbitration. During the hearing, the Court allowed the parties to file supplemental briefing relating

28

to the motion to compel arbitration. (Dkt. # 28.) GSLLP drafted and filed Plaintiff's supplemental brief on June 27, 2018. (Dkt. #31.)

7.     GSLLP met and conferred with Defendant to prepare a case management statement. GSLLP attended the case management conference held on June 14, 2018. Following the conference, the Court entered a case management order, which set Plaintiff's deadline to file a class certification motion on August 29, 2019. (Dkt. #29.) The Court set a trial date of February 28, 2022. (Id.) The case management order required the parties to meet and confer concerning the case schedule and submit a stipulation setting all deadlines not set by the Court in the case management order. (Id.) GSLLP met and conferred with Defendant's counsel as ordered and the parties submitted a stipulation setting the case schedule. (Dkt. # 33.)

8.     GSLLP drafted a motion for leave to file Plaintiff's Amended Complaint and filed it on August 9, 2018. (Dkt. #38.) The proposed First Amended Complaint, among other things, alleged and sought relief on the grounds that the arbitration agreement in Shutterfly's Terms of Use was unlawful and unenforceable. (Id.) Defendant opposed Plaintiff's motion for leave to amend. (Dkt. #39.) GSLLP drafted and filed Plaintiff's reply in support of her request for leave to amend her complaint. (Dkt. # 40.)

9.     GSLLP met and conferred with Defendant to negotiate a Stipulated Protective Order, which the parties filed on September 10, 2019. (Dkt. # 42.)

10.    On September 11, 2018, the Court held a hearing, which GSLLP attended, during which the Court granted Defendant's motion to compel arbitration, ruling that the issue of enforceability was for the arbitrator to decide, and stayed the case pending that decision. (Dkt. #45.) The Court denied Plaintiff's motion for leave to amend as moot. (Id.)

11.    Thereafter, GSLLP initiated arbitration on behalf of Plaintiff. GSLLP drafted and filed several briefs in the arbitration arguing that the arbitrator should refuse to hear the merits of Plaintiff's claims because the arbitration provision was unenforceable. Following several hearings, on June 25, 2019, the arbitrator ruled that the arbitration provision was unenforceable. The arbitrator found that the arbitration provision at issue contains a public injunctive relief waiver

1   which prohibits Plaintiff from seeking public injunctive relief in any forum in violation of *McGill v.*

2   *Citibank, N.A.*, 2 Cal. 5th 945 (2017). He further found that the arbitration agreement includes a

3   "poison pill" that makes the "entire arbitration provision null and void." On that basis, the arbitrator

4   remanded the arbitration back to Court.

5          12.    GSLLP drafted and filed a motion to confirm the arbitral award and lift the stay on

6   August 2, 2019. (Dkt. #48.) The Court granted Plaintiff's motion on August 18, 2019. (Dkt. #52.)

7          13.    GSLLP met and conferred with Defendant to prepare a case management statement.

8   GSLLP attended the case management conference held on September 12, 2019. After the

9   conference, the Court entered a case management order, which reset Plaintiff's deadline to file a

10  class certification motion to October 29, 2020. (Dkt. #58.) The trial date was unchanged. (Id.) The

11  case management order required the parties to meet and confer concerning the case schedule and

12  submit a stipulation setting all deadlines not set by the Court in the case management order. (Id.)

13  GSLLP met and conferred with Defendant's counsel as ordered and the parties submitted a

14  stipulation setting the case schedule. (Dkt. # 60.)

15         14.    On October 18, 2019, Plaintiff filed her Amended Complaint. (Dkt. # 62.)

16         15.    On November 15, 2019, Defendant filed a motion to strike Plaintiff's class

17  allegations or deny class certification. (Dkt. #63.) GSLLP drafted and filed on December 20, 2019

18  an opposition to Defendant's motion to strike. (Dkt. #66.) On March 19, 2020, the Court denied

19  Defendant's motion without a hearing. (Dkt. #72.) Defendant answered Plaintiff's Amended

20  Complaint on April 1, 2020. (Dkt. # 73.)

21         16.    GSLLP met and conferred with Defendant's counsel to negotiate a Supplemental

22  Stipulated Protective Order, which the parties filed on July 28, 2020.

23         17.    Plaintiff's Counsel and Defendant's Counsel conducted a thorough examination and

24  investigation of the facts and law relating to the matters in the Litigation. Such investigation

25  included, without limitation, the following. GSLLP drafted and served Plaintiff's discovery requests

26  on Shutterfly and served a subpoena on Groupon, Inc. In particular, Plaintiff propounded a lengthy

27  set of requests for production and interrogatories on Shutterfly. Defendant responded to Plaintiff's

28

SAFIER DECL. ISO MOTION FOR APPROVAL OF SETTLEMENT

1  discovery requests, initially refusing to produce basic categories of information and utilizing

2  lengthy objections. Multiple rounds of meet and confer efforts between GSLLP and Defendant's

3  counsel was required. Further, GSLLP drafted electronic search terms and a protocol so that

4  Shutterfly could gather relevant electronically stored information. When the parties could not reach

5  agreement on ESI search terms, GSLLP drafted, filed and argued a joint discovery dispute letter

6  addressing the issue. (Dkt. # 79.) GSLLP drafted and served a 30(b)(6) deposition notice.

7      18.    Shutterfly also served discovery requests, including document requests and

8  interrogatories on Plaintiff. GSLLP drafted Plaintiff's initial disclosures, discovery responses, and

9  worked with Plaintiff to gather and produce responsive documents.

10     19.    GSLLP also led met-and-confer efforts, including drafting written correspondence

11 and participating in telephonic conferences with Shutterfly's counsel, regarding other more general

12 discovery matters, such as the scope of discovery, Defendant's objections to Plaintiff's discovery

13 requests, the retention of electronic documents, Shutterfly's searches for electronically stored

14 information, the terms and scope of a stipulated protective order, the terms and scope of a stipulated

15 order regarding the production of electronically stored information, and the timing of discovery

16 responses and document productions. GSLLP reviewed all documents produced by Defendant in the

17 case, including information about each of the Shutterfly General Spend Deals offered by Defendant

18 and the sales of each.

19     20.    On January 27, 2020, the Parties participated in an all-day mediation conducted by

20 the Honorable Richard Kramer (Ret'd) at JAMS in San Francisco, California. Though unsuccessful

21 at first, that mediation laid the groundwork that ultimately resulted in the settlement memorialized

22 in this Agreement, after months of ongoing negotiations. This Agreement was arrived at after

23 extensive arm's length negotiations conducted in good faith by counsel for the Parties, and is

24 supported by Plaintiff. The Parties did not address (or negotiate regarding) attorneys' fees, expenses

25

26

27

28

SAFIER DECL. ISO MOTION FOR APPROVAL OF SETTLEMENT

1  or representative payment until after all the other materials terms of settlement for the Class had

2  been resolved.[1]

3  **B.    Evaluation of the Proposed Settlement Agreement**

4      21.    A true and correct copy of GSLLP's resume is attached as **Exhibit 2**. As can be seen

5  from the resume, GSLLP has substantial experience in the litigation, certification, and settlement of

6  class action cases. Indeed, as is further detailed in the resume, GSLLP has been appointed as class

7  counsel in more than 25 consumer cases and has overseen more than a dozen large class action

8  settlements. Numerous judges in this District and other jurisdictions have commended GSLLP for

9  its vigorous and effective advocacy and for the results achieved to curb false advertising and to

10  recover damages and obtain injunctive relief to benefit consumers. Some of these commendations

11  are recited in Exhibit 2.

12      22.    Based on my experience, Shutterfly's counsel are also highly experienced in this

13  type of litigation. It is thus my considered opinion that counsel for each side have fully evaluated

14  the strengths, weaknesses, and equities of the parties' respective positions and believe that the

15  proposed settlement fairly resolves their respective differences.

16      23.    The Settlement in this case is the product of arms-length negotiations between

17  experienced attorneys who are familiar with class action litigation and with the legal and factual

18  issues in this Litigation. The parties negotiated the proposed settlement in good faith with the

19  assistance of an independent, experienced mediator, Honorable Richard Kramer (Ret'd) at JAMS in

20  San Francisco, California. As stated, the parties also did not settle attorneys' fees or expenses until

21  they had reached agreement on all other material terms of the Settlement, including the class benefit

22  and notice.

23      24.    Plaintiff maintains that her claims are meritorious; that she would establish liability

24  and recover substantial damages if the case proceeded to trial; and that the final judgment recovered

25  in favor of Plaintiff and the Class would be affirmed on an appeal. But Plaintiff's ultimate success

26

27  [1] The capitalized terms used herein are defined in and have the same meaning as used in the Settlement
Agreement unless otherwise stated.

28

1  would require her to prevail, in whole or in part, at all of these junctures. Conversely, Defendant's

2  success at any one of these junctures could or would have spelled defeat for Plaintiff and the Class.

3  Thus, continued litigation posed significant risks and countless uncertainties, as well as the time,

4  expense and delays associated with trial and appellate proceedings.

5       25.    On the basis of my investigation into this case and experience with and knowledge of

6  the law and procedure governing the claims of Plaintiff and the Class, it is my belief that it is in the

7  best interests of the Class to enter into this Settlement. Indeed, in light of the risks, uncertainties and

8  delays associated with continued litigation, the Settlement represents a significant achievement by

9  providing guaranteed benefits to class members in the form of changed practices and direct

10  compensation.

11       26.    Plaintiff obtained settlement amounts for each Class Member in excess of the likely

12  recovery at trial. Class Members who did not yet redeem the Shutterfly General Spend Groupons

13  that they purchased will automatically receive a replacement Promotional Code worth 110% of the

14  original Promotional Value, plus a Shipping Code for free shipping on a future purchase from

15  Shutterfly.com. Class Members who already redeemed the Groupons towards a purchase at

16  Shutterfly will automatically receive another Promotional Code worth 20% of the original

17  Promotional Value, plus a Shipping Code for free shipping, both of which can be used on a future

18  purchase from Shutterfly.com. Class Members who redeemed their Shutterfly General Spend

19  Groupons who do not want the additional Promotional Code and Shipping Code can instead elect

20  to obtain a Cash Refund equal to: (i) 10% of the Promotional Value of the Groupon plus (ii) 50%

21  of the amount the Class Member paid Shutterfly for shipping in connection with the order in which

22  the Groupon was redeemed, by filing a simple claim form. No special proof is needed to show that

23  the Class Member was damaged. Additionally, there is substantial value to Defendant's changed

24  practices of notifying purchasers in future advertising of Shutterfly General Spend Groupons that

25  they will receive a promotional code that cannot be combined with any other Shutterfly promotional

26  codes or shipping codes, which will benefit both Class Members and other consumers.

27

28

27.    In addition, Defendant will incur costs in paying all the cost of all Shipping Codes, Promotional Codes, Valid Claims for Cash Refunds, plus an estimated $75,000.00 for notice and administration, plus over $350,000 for attorneys' fees, costs, and the Incentive Award payment.

28.    I am confident in the strength of Plaintiff's case, but I am also pragmatic regarding the risks in continuing with this Litigation, including the possibility of losing at trial. There was no guarantee that that Plaintiff would prove that Defendants engaged in any unlawful/harmful conduct. In addition, Class Members would need to prove that there were other promotions available on the Shutterfly website at the time that they redeemed their Groupons, requiring individualized testimony. Further, there would be no minimum guaranteed recovery per Class Member, and the average recovery per Class Member would likely be less than the value of the Shipping Code and Promotional Code.

29.    Moreover, even if Plaintiff prevailed at trial, any recovery could be delayed by an appeal. Thus, even in the best case, it could take additional years to get relief for the Class. The Settlement provides substantial relief to the Class without further delay.

30.    Under the circumstances, Plaintiff and GSLLP appropriately determined that the Settlement outweighs the gamble of continued litigation.

31.    On balance, given the risks associated with this Litigation, I believe that the recovery offered in this Settlement is excellent.

**C.    The Risks Borne by GSLLP**

32.    In accepting this case, GSLLP bore considerable risk. GSLLP took this case on a fully contingent basis, meaning that we were not paid for any of our time, and that we paid all costs and out of pocket expenses without any reimbursement to date. In evaluating the case at the outset, I concluded that there was a significant possibility that the total amount of class wide damages we would recover would be insufficient for GSLLP to be compensated for all the time it would expend, if GSLLP was limited to recovering a percentage of those class wide damages. However, because the statutes under which Plaintiff would be suing authorized fee-shifting to a prevailing plaintiff who achieved a benefit for the class members/general public (a.k.a. "private attorney general fees"), I

1  concluded that GSLLP could accept the engagement. Further, I recognized that GSLLP would be

2  contributing a substantial amount of time and advancing significant costs in prosecuting a class action,

3  with no guarantee of compensation or recovery, in the hopes of prevailing against a well-funded

4  defense. During the course of the litigation, GSLLP turned away other cases due to its involvement

5  with this matter. Among these were cases that were subsequently filed by other firms.

6       33.    Because Shutterfly was represented by a large, highly-skilled and well-resourced

7  litigation firm, there was increased risk that Plaintiff would not certify a class and/or receive a verdict

8  for the defense after a prolonged trial.

9  **D.    Lodestar and Expenses for GSLLP**

10      34.    Throughout the duration of this litigation, GSLLP has maintained contemporaneous

11  billing records for this case. Based on GSLLP's time records, GSLLP has spent approximately 679

12  hours prosecuting this litigation, although some timekeepers have not yet input time for the current

13  month and their totals are current only through February 28, 2021. (Thus, this total does not include

14  all work finalizing the settlement papers or the motion to approve and supporting declarations.) The

15  total number of hours, as well as the lodestar computed at our 2021 rates, is shown in the following

16  table:

17

18

19

20

21

22

23

24

25

26

27

28

SAFIER DECL. ISO MOTION FOR APPROVAL OF SETTLEMENT

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Adam J. Gutride | 89.2 | $1090 | $97,228.00 |
| Adriana Klompus | 1.8 | $315 | $567.00 |
| Anthony Patek | 1.9 | $890 | $1,691.00 |
| Ashley Garcia | 33.0 | $315 | $10,395.00 |
| Hayley Reynolds | 44.4 | $715 | $31,746.00 |
| Jessica Kagansky* | 19.1 | $500 | $9,550.00 |
| Kristen Simplicio* | 24.3 | $850 | $20,655.00 |
| Kyle Wilson* | 16.6 | $450 | $7,470.00 |
| Marie McCrary | 193.5 | $990 | $191,565.00 |
| Matt McCrary | 13.1 | $965 | $12,641.50 |
| Rajiv Thairani | 2.0 | $715 | $1,430.00 |
| Seth A. Safier | 193.2 | $1090 | $210,588.00 |
| Steven Raab | 1.3 | $890 | $1,157.00 |
| Tekesha Geel | 44.0 | $815 | $35,860.00 |
| Todd Kennedy | 1.6 | $940 | $1,504.00 |
| **TOTAL** | **679** | | **$634,047.50** |

* These attorneys are no longer with GSLLP. Their hourly rates reflect their rate at the time of their departure.

35.    The hourly rates shown for the attorneys and paralegals at GSLLP are the same as the regular rates charged in 2021 for their services in other litigation. The persons shown above are all attorneys, except for Ashley Garcia and Adriana Klompus, who are legal assistants.

36.    The hourly rates shown for the attorneys and paralegals at GSLLP are the same as the regular rates charged in 2020 for their services in other litigation. The rates for the attorneys involved range from $450 to $1090 per hour and for legal assistants is $315 per hour. The hourly rates charged by my firm have been deemed reasonable in connection with the approval of my firm's fee applications in approximately a dozen recent matters.

SAFIER DECL. ISO MOTION FOR APPROVAL OF SETTLEMENT

37.     Most recently, on June 22, 2020, Judge Ryu in *Carlotti v. Asus Computer International, Inc.*, Case No. 18-cv-03369-DMR (Dkt.# 86) reviewed, in detail, GSLLP's 2019 billing rates and approved them as "reasonable within the context of this case."

38.     On October 13, 2019, Judge Edward Davilla entered an order approving of GSLLP's 2019 rates as reasonable in *Fitzhenry-Russell v. The Coca-Cola Company*, Case No. 5:17-cv-00603-EJD (Dkt.# 95) (stating "For attorneys and staff at the Gutride Safier firm, these hourly rates are equal to market rates in San Francisco for attorneys of Plaintiffs' Counsel's background and experience.")

39.     On September 5, 2019, Judge Sontchi in *In re Arctic Sentinel, Inc., et al.,* Case No. 15-12465 (Bankr. Del.) (Dkt. #1331) entered an order approving of GSLLP's 2018 billing rates as "reasonable and commensurate with market rates charged by others with similar skills and experience."

40.     On April 10, 2019, Judge Cousins in *Fitzhenry-Russell et al. v. Dr Pepper Snapple Group, Inc. et al.* 5:17-cv-00564 entered an order approving of GSLLP's regular 2018 billing rates.

41.     On March 29, 2019, in *Pettit et al. v. Procter & Gamble Co.,* Case No. 3:15-cv-02150-RS, and on August 29, 2018, in *Koller et al. v. Med Foods, Inc., et al.,* Case No. 3:14-CV-2400-RS, Judge Richard Seeborg entered orders approving of GSLLP's regular 2018 billing rates as "reasonable" and as  "commensurate with those charged by attorneys with similar experience who appear in this Court."

42.     On March 16, 2018, Judge Winifred Smith of the Alameda County Superior Court entered an order approving of GSLLP's regular 2017 hourly billing rates as "on par with those of other attorneys of [GSLLP's] skill and experience in the San Francisco Bay Area" in *Kumar v. Safeway, Inc.*, Case No. RG 14726707.

43.     GSLLP's regular 2017 hourly billing rates were also approved on July 7, 2017 by Judge Gonzales Rogers in *Kumar v. Salov North America Corp.*, Case No. 14-cv-2411 (N.D.Cal.) (Dkt. #173) and on December 5, 2017, this Court in *Rainbow Business Solutions v. MBF Leasing*, Case No. 10-cv-1993 (N.D.Cal.) (Dkt. #729).

1    44.    On February 24, 2016, Judge Peter Kirwan of the Santa Clara County Superior Court

2    approved rates GSLLP's 2015 rates of $825 for Adam Gutride and $800 for me in *Mackinnon v.*

3    *IMVU, Inc.*, Case No. 111 CV 193767.

4    45.    On February 20, 2015, Judge Laurel Beeler entered an order approving of GSLLP's

5    2014 rates as reasonable in *Miller, et al. v. Ghirardelli Chocolate Company*, Case No. 12-cv-04936-

6    LB (N.D. Cal. Feb. 20, 2015) (Dkt. #170).

7    46.    Each of the lawyers who did substantive work on the case graduated from top law

8    schools; and the key players have at least 10 and in some cases 20 years of litigation experience. I

9    am a 1998 graduate from Harvard Law School. Mr. Gutride is a 1994 graduate from Yale Law

10    School. Ms. McCrary is a 2008 graduate of New York University Law School. The background and

11    qualifications of each of the other GSLLP attorneys who did substantive work on the case is

12    provided in the firm resume attached as Exhibit 2.

13    47.    I and Mr. Gutride were previously attorneys at the law firm of Orrick Herrington &

14    Sutcliffe. It is my understanding that attorneys at that firm in the litigation departments, with the same

15    number of years of experience as myself and Mr. Gutride are currently billing at hourly rates in excess

16    of $1,000 for law school graduates from 1994 and 1998. Similarly, the billing rates of Mr. McCrary,

17    Ms. McCrary, Mr. Patek, Mr. Kennedy, Mr. Raab and Ms. Reynolds would all be higher had they

18    remained at their prior firms, which include Quinn Emanuel, Cooley, Baker & Mckenzie and

19    O'Melveny & Myers LLP. I also believe the rates paid by Shutterfly to its firm in this case meets or

20    exceeds the rates requested for GSLLP. I believe that my firm's hourly rates are below market for

21    attorneys with similar backgrounds and experience.

22    48.    I have been involved in every step of this case from the inception to the final

23    resolution. A very small number of the hours worked in this litigation are attributable to the

24    Shipping Code component of the Settlement. Much of the fees incurred in this litigation were

25    attributable to preventing the Defendant from enforcing the arbitration agreement. Indeed,

26    Defendant flatly refused to resolve this litigation on a class-wide basis, until Plaintiff succeeded in

27    invalidating the arbitration agreement during arbitration. Plaintiff also succeeded in getting

28

SAFIER DECL. ISO MOTION FOR APPROVAL OF SETTLEMENT

1  Defendant to agree in settlement to improved disclosures in its Shutterfly General Spend Groupon

2  advertisements. Finally, Plaintiff succeeded in obtaining monetary benefits for Class Members

3  without the need to file a claim form. Class Members who redeemed their Shutterfly General Spend

4  Groupons—who already received some value for their purchase—have the opportunity to submit a

5  simple claim form to obtain a Cash Refund instead. In my view, the purported "coupon" provision

6  of the settlement—the Shipping Code—is just icing on the cake, for those who do not want to file a

7  claim. Only a tiny fraction of the total hours worked (maybe two or three) were devoted to

8  obtaining the Shipping Code—far fewer than the approximately 360 hours that are being written off

9  by virtue of the fractional multiplier of .53.

10    49.    Expenses are accounted for and billed separately and are not duplicated in GSLLP's

11  professional billing rate. GSLLP has not received reimbursement for expenses incurred in connection

12  with this litigation. As of February 28, 2021, GSLLP incurred a total of $10,453.22 in unreimbursed

13  actual third-party expenses in connection with the prosecution of these cases. The actual expenses

14  incurred in the prosecution of these cases are reflected on the computerized accounting records of my

15  firm prepared by bookkeeping staff, based on receipts and check records, and accurately reflect all

16  actual expenses incurred. We anticipate additional expenses not yet invoiced or paid, including

17  possible expenses for courtesy copies of this Motion. A complete breakdown of all expenses is

18  attached as **Exhibit 3**.

19  **E.    GSLLP's Continuing Obligations to Class Members**

20    50.    If this Court grants preliminary approval to the Settlement, GSLLP will establish

21  standardized procedures to ensure that all inquiries from Class Members are timely and accurately

22  handled. GSLLP will also work with the Claim Administrator to assure that settlement website

23  functions properly (i.e., is easy to use and properly designed). GSLLP will also work with the Claim

24  Administrator to assure that notice is disseminated in accordance with the terms of the Settlement

25  Agreement. GSLLP will receive weekly updates from the Claim Administrator regarding the

26  administration of the settlement. GSLLP will continue in this capacity should the Settlement be finally

27  approved. GSLLP will prepare for and appear at the fairness hearing. If the Settlement is approved

28

1    and fees awarded, GSLLP also will oppose any appeals that may be filed. Based on my experience

2    with class actions, I additionally anticipate that there will be another 50-75 hours of work before this

3    Litigation is entirely complete and an estimated 175-250 hours of work if this Court's judgment is

4    appealed.

5    **C.    Service Awards To Plaintiff**

6        51.    Plaintiff is requesting a Representative Incentive Award of $5,000.00. Plaintiff took

7    on substantial risk, most importantly the risk of publicity and notoriety and the risk of bearing

8    Defendant's costs should the Litigation have been ultimately unsuccessful. Plaintiff stayed in

9    contact and worked with GSSLP throughout three years of litigation during which she provided

10    assistance that enabled GSLLP to successfully prosecute this Litigation and reach a settlement,

11    including locating and forwarding responsive documents and information; responding to written

12    discovery; and traveling to attending mediation. She continued to prosecute the case even after this

13    Court compelled arbitration, despite the fact that her individual damages were only a few dollars

14    and she had nothing to gain by doing so, with the hope that the order of arbitration would eventually

15    be vacated and she would be able to obtain class relief. Plaintiff is also entering into a broader

16    release than the other Class Members. In my opinion, Plaintiff's participation in this litigation have

17    been exemplary.

18    **D.    Selection Of Claim Administrator**

19        52.    The proposed settlement administrator is Angeion. Defendant is bearing the costs of

20    claims administration. Defendant selected the administrator based on two competitive bids solicited

21    by Plaintiff from two well-known class action firms. Angeion has administered three other notice

22    programs and/or settlements involving my firm in the following cases: *Allen et al. v. Conagra*

23    *Foods, Inc.*, Case No. 3:13-cv-01279-WHO; *Koller v. Med Foods Inc. et al.*, Case No. 3:14-cv-

24    02400-RS; and *Carlotti v ASUS Computer International, et al.*, Case No. 4:18-cv-03369-DMR. My

25    colleagues at GSLLP have communicated with the principals at Angeion who will be responsible

26    for administering this settlement about the plan to provide notice and process benefits to Class

27

28

1  Members. Based on those communications and on my experience, I believe that Angeion will

2  adequately and professionally discharge its duties as settlement administrator.

3       53.     Pursuant to N.D. Cal. Procedural Guidance for Class Action Settlements ("N.D. Cal.

4  Guide") ¶1(g), GSLLP estimates, based on its experiences with recent settlements in other cases and

5  the input of Angeion and of the other administration firms solicited to bid on the case, there will be

6  between 1,000 and 2,000 claims for the Cash Refund. Note, however, that all Class Members will

7  receive a Shipping Code and Promotional Code without need to make a claim. The information

8  requested by N.D. Cal. Guide ¶ 11 regarding past comparable class settlements obtained by GSLLP

9  is provided in the chart attached hereto as **Exhibit 4**.

10       I declare under penalty of perjury under the laws of the United States that the foregoing is

11  true of my own personal knowledge.

12       Executed at San Francisco, California, this 5th day of March 2021.

13                         /s/ Seth A. Safier

14                         Seth A. Safier, Esq.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAFIER DECL. ISO MOTION FOR APPROVAL OF SETTLEMENT

# Exhibit 1

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement is entered into this ___th day of February, 2020, between Plaintiff Megan Taylor, individually and on behalf of the settlement Class she seeks to represent, on the one hand, and Defendant, Shutterfly, Inc., on the other hand, subject to both the terms and conditions hereof and the approval of the Court.

## I.    RECITALS

1.1.    On December 12, 2017, Plaintiff through her counsel Gutride Safier LLP filed a Class Action Complaint in Santa Clara County Superior Court against Defendant alleging claims for violations of the California Consumer Legal Remedies Act, Civil Code § 1750, *et seq.*; false advertising under California Business and Professions Code § 17500, *et seq.*; breach of contract; and fraud, deceit, and/or misrepresentation, and seeking restitution, damages, an injunction and other relief. Plaintiff sought to pursue these claims on behalf of herself and all persons who, between December 8, 2013 and the present, purchased in the United States a Shutterfly General Spend Groupon.

1.2.    Plaintiff alleges in the Complaint that Defendant's advertising of the Shutterfly General Spend Groupons was false and misleading. On the website www.groupon.com, consumers were offered the ability to pay a dollar amount (the "Paid Value") to obtain a Shutterfly General Spend Groupon which could be redeemed for a higher dollar value (the "Promotional Value") towards a purchase on Defendant's Website until a specified deadline (the "Promotional Value Expiration Date"). If the Shutterfly General Spend Groupon was not redeemed before the Promotional Value Expiration Date, the Groupon can still be redeemed on Defendant's Website, but only for a value equal to the Paid Value. (For example, the Shutterfly General Spend Groupon "$20 for $40 to Spend at Shutterfly" had a Paid

Value of $20 and a Promotional Value of $40 until the Promotional Value Expiration Date. If not redeemed before the Promotional Value Expiration Date, that Groupon could thereafter be redeemed on Defendant's Website for the $20 Paid Value.) Plaintiff alleges that Defendant improperly failed to disclose that purchasers of a Shutterfly General Spend Groupon would actually receive a promotional code that could only be used toward full priced items and could not be combined with any other discounts offered on the Shutterfly website, including product discounts and free shipping.

1.3.    On January 11, 2018, Defendant timely removed the Litigation to the United States District Court for the Northern District of California. The Litigation was assigned to the Honorable Beth Labson Freeman.

1.4.    On January 18, 2018, Defendant answered the Complaint, denying Plaintiff's allegations and asserting several affirmative defenses.

1.5.    On March 7, 2018, Defendant filed a motion to compel arbitration based on an arbitration provision in the Shutterfly Terms of Use.  Plaintiff opposed the motion by arguing, *inter alia,* that the arbitration provision was unenforceable. On September 11, 2018, the Court granted Defendant's motion to compel arbitration, ruling that the issue of enforceability was for the arbitrator to decide, and stayed the Litigation pending that decision.

1.6.    Thereafter, Plaintiff initiated arbitration and argued that the arbitrator should refuse to hear the merits of Plaintiff's claims because the arbitration provision was unenforceable. On June 25, 2019, the arbitrator ruled that the arbitration provision was unenforceable. On August 2, 2019, Plaintiff filed a motion to confirm the arbitral award and lift the stay on the Litigation. The Court granted Plaintiff's motion on August 18, 2019.

1.7.    On October 18, 2019, Plaintiff filed an amended complaint that, among other things, alleged and sought relief on the grounds that the arbitration agreement in Shutterfly's Terms of Use was unlawful and unenforceable.

1.8.    On November 15, 2019, Defendant filed a motion to strike Plaintiff's class allegations or deny class certification. On March 19, 2020, the Court denied Defendant's motion.

1.9.    Plaintiff's Counsel and Defendant's Counsel conducted a thorough examination and investigation of the facts and law relating to the matters in the Litigation. Such investigation and discovery included written discovery requests to, responses from, and production of documents by, both parties.

1.10.    On January 27, 2020, the Parties participated in an all-day mediation conducted by the Honorable Richard Kramer (Ret'd) at JAMS in San Francisco, California. That mediation ultimately resulted in the settlement memorialized in this Agreement, after months of ongoing negotiations. This Agreement was arrived at after extensive arm's length negotiations conducted in good faith by counsel for the Parties, and is supported by Plaintiff. The Parties did not settle Attorneys' Fees and Expenses until after relief had been fashioned for the Class.

1.11.    Defendant denies all of Plaintiff's allegations and charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation. Defendant also denies that Plaintiff, the Class, any Class Members, the Class, or any Class Member have suffered damage or harm by reason of any alleged conduct, statement, act or omission of Defendant. Defendant further denies that the Litigation meets the requisites for certification as a class action under Rule 23 of the Federal

Rules of Civil Procedure, except for purposes of settlement, or that the evidence is sufficient to support a finding of liability on any of Plaintiff's claims in the Litigation.

   1.12. Plaintiff's Counsel has analyzed and evaluated the merits of the Parties' contentions and this Settlement as it impacts all the Parties and the Class Members. Among the risks of continued litigation for Plaintiff are the risks of failing to certify a class in a contested proceeding or to prove liability or restitution and damages on a class-wide or individual basis. In particular, there may be difficulties establishing that statements or omission in Defendants' materials were likely to deceive reasonable consumers, and the amount of damages or restitution due to the Class or to any Class Member.  Plaintiff and Plaintiff's Counsel, after taking into account the foregoing along with other risks and the costs of further litigation, are satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate and equitable, and that a settlement of the Litigation and the prompt provision of effective relief to the Class are in the best interest of the Class Members.

   1.13. Defendant agrees that the Settlement is fair and reasonable in light of the merits and risks of the case. While continuing to deny all allegations of wrongdoing and disclaiming any liability with respect to any and all claims, Defendant nevertheless has chosen to enter into this Agreement in order to avoid further burden, expense, uncertainty, inconvenience, and interference with its ongoing business operations in defending the Litigation and put to rest the Released Claims.

   1.14. This Agreement reflects a compromise between the Parties, and shall in no event be construed as or be deemed an admission or concession by any Party of the truth of any allegation or the validity of any purported claim or defense asserted in any of the pleadings in the Litigation, or of any fault on the part of Defendant, and all such allegations are expressly denied.

Nothing in this Agreement shall constitute an admission of liability or be used as evidence of liability, by or against any Party.

      1.15.   The undersigned Parties agree, subject to approval by the Court, that the Litigation between Plaintiff, on the one hand, and Defendant, on the other hand, shall be fully and finally compromised, settled and released on the terms and conditions set forth in this Agreement.

      NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, and of the releases and dismissals of claims described below, the Parties agree to this Settlement, subject to Court approval, under the following terms and conditions.

## II.    DEFINITIONS

    A.    Capitalized terms in this Agreement shall be defined as follows:

      2.1.   "Administration Costs" means the actual and direct costs reasonably charged by the Claim Administrator for its services as provided for in this Agreement or as otherwise agreed to by the Parties and the Claim Administrator or as ordered by the Court.

      2.2.   "Agreement," "Settlement Agreement," or "Settlement" means this Class Action Settlement Agreement, including all exhibits (numbered A through E).

      2.3.   "Attorneys' Fees and Expenses" means such funds as may be awarded by the Court based on the Settlement described herein to compensate Plaintiff's Counsel, as determined by the Court and described more particularly in Section 6 of this Agreement.

      2.4.   "Benefits Notice" means a notice by email sent after the Effective Date to Class Members who did not submit a Claim for a Cash Refund, which shall provide such Class Members with a Shipping Code and Promotional Code in substantially the same form as Exhibit B5.

2.5.    "Cash Refund" means a check, which shall be made payable and delivered to a Claimant, as required by this Agreement.

2.6.    "Claim" means a request for relief pursuant to this Settlement submitted on a Claim Form by a Class Member to the Claim Administrator in accordance with the terms of this Settlement.

2.7.    "Claim Administrator" means Angeion Group, an independent entity, which the Parties will ask the Court to appoint, to provide services in the administration of this Settlement as described in Section 5.

2.8.    "Claim Filing Deadline" means sixty (60) days after the Notice Date.

2.9.    "Claim Form" means a claim form in substantially the same form as Exhibit A.

2.10.    "Claim Period" means the period beginning on the Notice Date and continuing until the Claim Filing Deadline.

2.11.    "Class" or "Class Members" means all United States residents who, in the United States, during the Class Period, either (i) purchased a Shutterfly General Spend Groupon from June 1, 2015 to April 30, 2018 that was never redeemed; or, (ii) redeemed a Shutterfly General Spend Groupon that was purchased during that period. Excluded from the Class are (a) the Honorable Beth Labson Freeman and any member of her immediate family; (b) the Honorable Magistrate Virginia K. DeMarchi and any member of her immediate family; (c) any government entity; (d) Honorable Richard Kramer and any member of his immediate family; (e) Defendant; (f) any entity in which Defendant has a controlling interest; (g) any of Defendant's parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (h) any person who timely opts out of the Settlement.

6

2.12.   "Class Notice" means the Settlement Website, Long Form Notice, Email Notice and Postcard Notice, collectively, which will be disseminated to Class Members pursuant to Federal Rule of Civil Procedure 23(c)(2) and 23(e) as described herein.

2.13.   "Class Period" means the period between June 2015 and April 2018.

2.14.   "Class Representative" means Plaintiff Megan Taylor.

2.15.   "Court" means the United States District Court for the Northern District of California.

2.16.   "Defendant" means Shutterfly, Inc.

2.17.   "Defendant's Counsel" means the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

2.18.   "Defendant's Website" means all digital content and webpages hosted by Defendant at the domain https://www.shutterfly.com.

2.19.   "Effective Date" means the latest of the following: (a) thirty-one (31) days after the entry of the Final Approval Order and Judgment if no objections are filed; (b) sixty (60) days after the entry of the Final Approval Order and Judgment if objections are filed and overruled and no appeal is taken from the Final Approval Order and Judgment, or if the appeal is taken only from the amount of the awarded Attorneys' Fees and Expenses or Incentive Award; or (c) if a timely appeal is made from the Final Approval Order and Judgment with respect to any issue other than the amount of Attorneys' Fees and Expenses or Incentive Award, three (3) business days after the date of the issuance of the mandate from the Court of Appeals affirming the Final Approval Order and Judgment in all respects and that affirmance is no longer subject to further appeal or review. The Effective Date is not dependent or conditioned upon the Court

approving Class Counsel's request for Attorney's Fees and Expenses or an Incentive Award to the Class Representative, or awarding the particular amounts sought.

2.20.  "Email Notice" means a notice by email in substantially the same form as Exhibit B2.

2.21.  "Final Approval" or "Final Approval Order" means an order, substantially in the form of Exhibit D, granting final approval of this Settlement (without material modification unless agreed upon by both Parties) as binding upon the Parties.

2.22.  "Final Approval Hearing" means the final hearing to be conducted by the Court on such date as the Court may order to determine the fairness, adequacy, and reasonableness of the Settlement in accordance with applicable jurisprudence, to be held after notice has been provided to Class Members in accordance with this Settlement, and where the Court will: (a) consider the merits of any objections to this Agreement and/or any aspect of the Settlement, (b) determine whether to grant Final Approval to the Settlement and enter the Final Approval Order and Judgment; (c) determine whether to approve an Incentive Award and in what amount; and (d) rule on Plaintiff's Counsel's application for Attorneys' Fees and Expenses.

2.23.  "Incentive Award" means any award sought by application to and approval by the Court that is payable to Plaintiff to compensate her for her efforts in bringing this Litigation and/or achieving the benefits of this settlement on behalf of the Class, as further discussed in Section 6. In no event shall the Incentive Award exceed Five Thousand Dollars ($5,000.00).

2.24.  "Judgment" means the final judgment dismissing the Litigation against Defendant with prejudice.

2.25.   "Litigation" means *Taylor v. Shutterfly, Inc.*, in United States District Court for the Northern District of California, Case No. 5:18-cv-00266-BLF.

2.26.   "Long Form Notice" means a notice in substantially the same form as Exhibit B1 that the Claim Administrator shall make available on the Settlement Website.

2.27.   "Notice Date" means the day on which the Claim Administrator initiates the Notice Plan, which shall be no later than thirty (30) days following the date of Preliminary Approval.

2.28.   "Notice Plan" means the procedure for providing notice to the Class, as set forth in Section 5.

2.29.    "Objection/Exclusion Deadline" means the deadline by which Class Members must submit objections to the Settlement or requests to be excluded from the Settlement, subject to the terms set forth in the Preliminary Approval Order, which is the date sixty (60) days after the Notice Date or such date otherwise ordered by the Court.

2.30.   "Parties" means the Class Representative and Defendant, collectively.

2.31.   "Party" means either the Class Representative or Defendant.

2.32.   "Plaintiff" means Megan Taylor.

2.33.   "Plaintiff's Counsel," or "Class Counsel" means the law firm of Gutride Safier LLP, which is counsel for the Class Representative.

2.34.   "Postcard Notice" means a notice substantially in the form of Exhibit B3.

2.35.   "Preliminary Approval" or "Preliminary Approval Order" means an order entered by the Court, substantially in the form of Exhibit C, preliminarily approving the terms and conditions of this Agreement and the Settlement without material modification unless agreed to by both Parties.

2.36.    "Preliminary Approval Hearing" means a hearing to be held by the Court to adjudicate whether to grant Preliminary Approval of the Settlement.

2.37.    "Promotional Code" means a code that a Class Member shall be sent after the Effective Date via email by the Claim Administrator, which can be redeemed towards the purchase of any one or more products on Defendant's Website consistent with the terms and conditions of this Agreement. The Promotional Code can be applied to merchandise purchases in an amount equal or greater than the value of the code. The Promotional Code shall be applied to the balance due, after applying any other promotional offers entered by the purchaser then applicable to the Shutterfly purchase, including the Shipping Code. Promotional Codes will not be valid on Tiny Prints products, prepaid, annual savings plans and video plans, yearbook orders, Groovebook, gift cards, cards sent using mailing services, designer review services, orders placed for in-store pick up and prior purchases, and cannot be combined with other code-based percentage-off or dollar-off offers. Taxes, shipping and handling may apply. The code shall be freely transferable subject to the terms applicable to all Groupons. Promotional Codes shall have no expiration date.

2.38.    "Protective Order" means the Stipulated Protective Order (Dkt. 44) and the Supplemental Stipulated Protective Order (Dkt. 77).

2.39.    "Redeemed Shutterfly General Spend Groupons" means Shutterfly General Spend Groupons that were redeemed on Defendant's website by the purchaser.

2.40.    "Released Claims" means all claims that were, or could have been, asserted in the Litigation that arise out of or relate to (i) the allegations that the Shutterfly General Spend Groupon promotions were false, misleading or deceptive, (ii) the allegations that Shutterfly committed breaches of contract or fraud in connection with the Shutterfly General

10

Spend Groupon promotions, (iii) the allegations that Shutterfly is liable for damages or penalties for including and/or trying to enforce an unlawful or unenforceable arbitration agreement in its Terms of Use, or (iv) the allegations that Shutterfly engaged in unfair or unlawful business practices with respect to its General Spend Groupon promotions and/or the arbitration agreement in its Terms of Use. The Released Claims shall not release any Class Member's claims for personal injury against Defendant or the Released Parties or rights to enforce this Agreement.

2.41.   "Released Parties" includes Defendant, Groupon, Inc., and each of their respective current and former parent companies, subsidiaries, divisions, and current and former affiliated individuals and entities, legal successors, predecessors (including companies they have acquired, purchased, or absorbed), assigns, joint ventures, and each and all of their respective officers, partners, directors, owners, stockholders, servants, agents, shareholders, members, managers, principals, investment advisors, consultants, employees, representatives, attorneys, accountants, lenders, underwriters, benefits administrators, investors, funds, and insurers, past, present and future, and all persons acting under, by, through, or in concert with any of them.

2.42.   "Settlement Benefit" means a Promotional Code and Shipping Code or a Cash Refund, as further described in Section 4 of this Agreement.

2.43.   "Settlement Website" means an internet website created and maintained by the Claim Administrator consistent with the entry of the Preliminary Approval Order to provide information regarding the Settlement and where Class Members can obtain information concerning requesting exclusion from or objecting to the Settlement and/or can submit a Claim. The URL of the Settlement Website shall be agreed to by the Parties.

2.44.   "Shipping Code" means a code that a Class Member shall be sent after the Effective Date via email by the Claim Administrator, which can be redeemed for free shipping

on a purchase of any one or more products on Defendant's Website consistent with the terms and conditions of this Agreement. The Shipping Code shall entitle the Class Member to free shipping and can be applied after any other promotional offers entered by the purchaser then applicable to the Shutterfly purchase, including the Promotional Code. The Shipping Code shall be freely transferable subject to the terms applicable to the Promotional Codes. Shipping Codes shall have no expiration date.

2.45.    "Shutterfly General Spend Groupon" are Groupons that Class Members purchased by paying a price ("Paid Value") which could then be redeemed at a greater dollar value towards a purchase on Defendant's Website within a set period of time ("Promotional Value"), subject to other terms and condictions. For example, the Shutterfly General Spend Groupon "$50 for $75 to Spend at Shutterfly" had a Paid Value of $50 and a Promotional Value of $75. For avoidance of doubt, the following internal codes are used by Defendant to identify the Shutterfly General Spend Groupons: GP4W, GP7C, GP7D, GP7E, GP7F, GP7G, GP7H, GP7T, GP7U, GP7V, GP7W, GP7X, GP7Y, GP7Z, GP8A, GP9A, GP9B, GP9C, GP9D, GP9E, GP9F, GP9G, GP9H, GP9J, GP9L, GP9N, GP9P, GPAG, GPAH, GPAL, GPAM, GPAN, GPAP, GPAQ, GPAR, GPAS, GPAT, GPA7, GPA8, GPA9, GPBA, GPBB, GPBV, GPBW, GPBX, GPBY, GPBZ, GPB8, GPB9, GPCA, GPCB, GPCC, GPCU, GPCV, GPCW, GPDA, GPDB, GPDC, GPDD, GPDE, GPDF, GPDG, GPDH, GPDJ, GPDQ, GPDR, GPDS, GPDT, and GPDU.

2.46.    "Undertaking" means an undertaking, substantially in the form of Exhibit E.

2.47.    "Unredeemed Shutterfly General Spend Groupons" means Shutterfly General Spend Groupons that were not redeemed on Defendant's website by the purchaser before the Groupon's Promotional Value Expiration Date.

2.48.    "Valid Claim" means a claim submitted in compliance with Section 4 of this Agreement.

B.    Conventions. All personal pronouns used in this Agreement, whether used in the masculine, feminine, or neuter gender, shall include all other genders and the singular shall include the plural and vice versa except where expressly provided to the contrary. All references herein to sections and exhibits refer to sections and exhibits of and to this Agreement, unless otherwise expressly stated in the reference. The headings and captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit, extend, or describe the scope of this Agreement or the intent of any provision thereof.

## III.   CHANGED PRACTICES AND INJUNCTIVE RELIEF

3.1.    Subject to the rights and limitations set forth in this Agreement, Defendant agrees that, upon Final Approval, the Court shall enter a Permanent Injunction requiring Defendant to take the following actions:

3.2.    On any future Shutterfly General Spend Groupon offered for sale by Shutterfly, Shutterfly shall prominently state each of the following facts (unless such fact is untrue for the particular Shutterfly General Spend Groupon being offered):

(a)    "By purchasing this offer you will obtain a promotional code for use at the Shutterfly website."

(b)    "When you redeem the Groupon at Shutterfly, you cannot use any other Shutterfly promotional code on the same order to obtain additional discounts. Instead, you must pay the undiscounted price."

(c)    "When you redeem the Groupon at Shutterfly, you [also] cannot use any Shutterfly free shipping code on the same order. Instead, you must pay for shipping."

3.3.    The obligations in this Section shall initiate ninety (90) days after the Effective Date ("Initiation Date"). The obligations shall remain in effect for two years from the Initiation Date.

## IV.    SETTLEMENT BENEFITS

4.1.    In full, complete, and final settlement and satisfaction of the Litigation and all Released Claims, and subject always to all of the terms, conditions, and provisions of this Agreement, including Court approval, Defendant agrees to cause the following Settlement Benefits to be provided as follows:

(a)    <u>Shipping Code and Promotional Code for Class Members Who Purchased Unredeemed Shutterfly General Spend Groupons</u>. Each Class Member who purchased an Unredeemed Shutterfly General Spend Groupon shall receive, without the need to submit a Valid Claim, the following: (1) one Shipping Code for free shipping; and (2) one Promotional Code in a dollar amount equal to 110% of the original Promotional Value of the Unredeemed Shutterfly General Spend Groupon. (For example, a customer who purchased a "$40 for $20" Groupon will receive a Shipping Code, and a Promotional Code worth $44 towards a future Shutterfly purchase). Defendant shall also cancel the 18-digit code issued by Groupon to the Class Member associated with the Unredeemed Shutterfly General Spend Groupon.

       (b)    <u>Shipping Code and Promotional Code for Class Members Who</u>

<u>Used Redeemed Shutterfly General Spend Groupons</u>. Each Class Member who used an

Redeemed Shutterfly General Spend Groupon shall receive, without the need to submit a Valid

Claim, the following: (1) one Shipping Code for free shipping; and (2) one Promotional Code

with a dollar amount equal to 20% of the original Promotional Value of the Shutterfly General

Spend Groupon. (For example, a customer who purchased a "$40 for $20" Groupon will receive

a Shipping Code, and a Promotional Code worth $8 towards a future Shutterfly purchase).

       (c)    <u>Claim Process for Class Members Who Used Redeemed Shutterfly</u>

<u>General Spend Groupons To Obtain Cash Refund In Lieu of a Shipping Code and Promotional</u>

<u>Code</u>. In lieu of the Shipping Code and Promotional Code described above, each Class Member

who used a Redeemed Shutterfly General Spend Groupon may elect to receive a Cash Refund by

submitting a Valid Claim. The Cash Refund shall equal 10% of the Promotional Value of the

Groupon, plus 50% of the amount the Class Member paid Shutterfly for shipping in connection

with the order in which the Groupon was redeemed. (For example, a customer who purchased a

"$40 for $20" Groupon and spent $5 for shipping the order will receive a cash refund of: (1) 10%

of $40, i.e., $4, plus (2) 50% of $5, i.e., $2.50, for a total of a $6.50.) However, no Cash Refund

of shipping payments shall be made with respect to the Shutterfly General Spend Groupons

having the following 4-character codes: GP4W, GP7C, GP7D, GP7T, GP7U, GP9A, GP9B,

GP7E, GP7F, GP7V, GP7W, GP9C, GP9D, GP7G, GP7H, GP7X, GP7Y, GP9E, GP9F, GP7Z,

GP8A, GP9G, GP9H, because they already were stackable with free shipping codes when

redeemed.

        (d)     If a Class Member submits a Claim Form that is untimely or otherwise deficient and does not constitute a Valid Claim, that Class Member will receive a Shipping Code and Promotional Code only.

        4.2.    A Claim shall be deemed to be a Valid Claim only if submitted on the Claim Form pursuant to the procedures set forth herein. Submission of a claim, regardless of whether it is determined to be a Valid Claim, shall confer no rights or obligations on any Party, any Class Member, or any other Person, except as expressly provided herein.

        4.3.    At the election of the Class Member, Claim Forms may be submitted in paper via first class mail to the Claim Administrator or online at the Settlement Website. For Claim Forms that are submitted online, the Class Member shall have the opportunity to preview and confirm information entered in the Claim Form prior to submitting the claim and to print a page immediately after the Claim Form has been submitted showing the information entered and the date and time the Claim Form was received. Claim Forms that are mailed must be postmarked no later than the Claim Filing Deadline, and Claim Forms that are submitted online through the Settlement Website must be submitted no later than the Claim Filing Deadline. Claim Forms that are postmarked or submitted online after that date will not be Valid Claims.

        4.4.    On the Claim Form, the Class Member must provide the unique identifying number (the Claimant ID) assigned to him or her by the Claim Administrator as stated in the notice that the Class Member received and certify the truth and accuracy of each of the following under the penalty of perjury, including by signing the Claim Form physically or by e-signature, or the Claim will not be considered a Valid Claim:

        (a)     The Class Member's name and mailing address; and

        (b)     The Class Member's email address

4.5.    <u>Election of Payment Method.</u> A Class Member who submits a Valid Claim may elect to receive payment by mailed check or electronic distribution (e.g., Paypal or Venmo). If no election is made, payment shall be sent by check, which will expire 180 days after mailing.

4.6.    <u>Distribution of Settlement Benefits</u>.  The Settlement Benefits shall be delivered by the Claim Administrator within thirty-five (35) days of the Effective Date.

(a)    <u>Benefits Notice to Class Members Who Purchased Unredeemed Shutterfly General Spend Groupons</u>. The Claim Administrator shall send a Benefits Notice, substantially in the form of Exhibit B5, via email to each Class Member who purchased an Unredeemed Shutterfly General Spend Groupon and did not opt out of the Settlement. The Benefits Notice sent to each such Class Member will: (1) provide the Shipping Code; (2) provide the unique Promotional Code worth 110% of the Promotional Value of the Unredeemed Shutterfly General Spend Groupon purchased by the Class Member; (3) provide instructions of how the codes may be redeemed including a link to Defendant's Website, and (4) notify the Class Member that his or her prior 18-digit code (the Unredeemed Shutterfly General Spend Groupon) is no longer valid.

(b)    <u>Benefits Notice to Class Members Who Redeemed Shutterfly General Spend Groupons and Did Not Submit a Valid Claim</u>. The Claim Administrator shall send a Benefits Notice, substantially in the form of Exhibit B5, via email to each Class Member who used a Redeemed Shutterfly General Spend Groupon, did not file a Valid Claim, and did not opt out of the Settlement. The Benefits Notice sent to each such Class Member will provide (1) the Shipping Code; (2) the unique Promotional Code worth 20% of the Promotional Value of

the Redeemed Shutterfly General Spend Groupon redeemed by the Class Member; and (3) instructions of how the codes may be redeemed including a link to Defendant's Website.

        (c)    <u>Cash Refund to Class Members Who Submit a Valid Claim</u>. No later than 10 days after the Effective Date, Defendants shall provide the Claim Administrator with the funds to mail Cash Refunds to all such Class Members identified by the Claim Administrator as having submitted a Valid Claim. A Cash Refund shall be deemed to be delivered to the Class Member on the date on which the Claim Administrator places the Cash Refund in the U.S. mail, regardless of the date on which the Class Member receives it. Cash Refunds must be negotiated within 180 days of issuance or they shall be void, and such unclaimed Cash Refunds shall be paid cy pres to the National Consumer's League.

        (d)    No Class Member shall have any claim against Defendant, Defendant's Counsel, the Class Representative, Class Counsel, or the Claim Administrator based on the mailings, distributions, or process of awarding a Settlement Benefit made in accordance with this Agreement or any order of the Court.

        (e)    Each Class Member is solely responsible for any tax consequence, including but not limited to penalties and interest, relating to or arising out of the receipt of any benefit under this Settlement.

**V.    CLASS NOTICE AND SETTLEMENT ADMINISTRATION**

    5.1.    Subject to Court approval, the Parties agree to the following procedures for giving notice of this Settlement to Class Members. The Parties also agree that providing notice to the Class Members in the manner described herein is the best and most fair and reasonable notice practicable under the circumstances.

5.2.    Within ten (10) days of entry of the Preliminary Approval Order or on such date otherwise ordered by the Court, Defendant shall provide the Claim Administrator with the following:

(a)    an electronic list that includes the following information with respect to each Class Member who purchased an Unredeemed Shutterfly General Spend Groupon for which Defendant have any of the following information: (i) first and last name; (ii) email address; (iii) the 18-digit code associated with each Shutterfly General Spend Groupon purchased by the Class Member; and (iv) the Paid Value and Promotional Value of the Shutterfly General Spend Groupon(s) that the Class Member purchased. The Parties acknowledge that Defendant does not have the mailing address for Class Members that purchased an Unredeemed Shutterfly General Spend Groupon.

(b)    an electronic list that includes the following information with respect to each Class Member that redeemed a Redeemed Shutterfly General Spend Groupon for which Defendant have any of the following information: (i) first and last name; (ii) email address; (iii) shipping address; (iv) the 18-digit code associated with each Redeemed Shutterfly General Spend Groupon purchased by the Class Member; (v) the 4-character campaign code associated by Shutterfly with the Groupon; (vi) the Paid Value and Promotional Value of the Redeemed Shutterfly General Spend Groupon(s) that the Class Member purchased; (vii) the amount (if any) paid for shipping on the order redeeming the Redeemed Shutterfly General Spend Groupon(s).

5.3.    Defendant agrees to utilize reasonable efforts to provide accurate data to the Claim Administrator as required by Section 5.2, which the Claim Administrator will rely

upon in sending Class Notice and administering this Settlement as described herein and will

provide a sworn declaration with the motion for Final Approval of the Settlement that Defendant

utilized reasonable efforts to provide accurate data (and a description of those efforts) to the

Claim Administrator.

   5.4. No later than the Notice Date, the Claim Administrator shall send a copy

of the Email Notice to those Class Members for whom an email address is available in the

records provided by Defendant pursuant to Section 5.2. In the case of Email Notice, such notice

shall be sent to the Class Member three times. If one or more of the emails is returned

undeliverable, Postcard Notice shall be sent by mail to the Class Member's shipping address, if it

is available in the records provided by Defendant pursuant to Section 5.2. If no shipping address

for a Class Member is available in the records provided by the Defendant and email sent to the

email address provided by Defendant is returned as undeliverable, the Claim Administrator shall

perform a single reverse lookup using an industry accepted source based on the email address

provided to attempt to obtain a valid updated email address to which Email Notice will be sent.

   5.5. No later than the Notice Date (unless such shipping address is later

obtained pursuant to the foregoing section), the Claim Administrator shall send a copy of the

Postcard Notice via First Class U.S. Mail to those Class Members for whom a shipping address

is available in Defendant's records but a valid email address is not available. The Claim

Administrator shall utilize the national change of address database or other appropriate skip-

tracing service that includes national change of address data to update the mailing list of the

Class Members for whom a mailing address is available, prior to sending Postcard Notice.

5.6.     Any mailed Postcard Notices returned to the Claim Administrator as undelivered and bearing a forwarding address shall be re-mailed by the Claim Administrator within five (5) business days following receipt of the returned mail.  If no forwarding address is available, and a skiptrace has not previously been performed on the Class Member, the Claim Administrator shall perform a single skip trace using an industry-accepted source, to conduct an address update and send the Postcard Notices to the mailing addresses identified by the skip-tracing.

5.7.     No later than the Notice Date, the Claim Administrator also shall launch the Settlement Website and toll-free number to provide information to potential Class Members. The Settlement Website shall contain the Notice in both downloadable PDF format and HTML format with a clickable table of contents; answers to frequently asked questions; a Contact Information page that includes the address for the Claim Administrator and addresses and telephone numbers for Plaintiff's Counsel; the Agreement; the signed order of Preliminary Approval; a downloadable and online version of the Claim Form; a downloadable and online version of the form by which persons may opt out of the Class; and (when it becomes available) Plaintiff's application for Attorneys' Fees and Expenses and Incentive Awards. The Settlement Website shall enable Class Members to submit Claims and opt-out requests electronically, and the Settlement Website and toll-free number will provide information about how to submit Claim Forms. The Notice and other documents referenced will be agreed upon by the Parties. The Settlement Website shall remain accessible until ninety (90) days after all Settlement Benefits are distributed.

5.8.     <u>CAFA Notice</u>. Before the deadline provided in the Class Action Fairness Act, 28 U.S.C. § 1715 (i.e., ten (10) days after the filing of a motion to obtain Preliminary

Approval of this Settlement), the Claim Administrator shall serve notice of this Settlement to appropriate state and federal officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. Defendant shall be responsible for drafting and preparing the notice in conformity with 28 U.S.C. § 1715 and for identifying the appropriate state and federal officials to be notified. Defendant shall certify to the Court on or before Preliminary Approval Hearing that it has complied with the notice requirements set forth in this Section.

5.9.    The Claim Administrator shall provide any information or declaration requested by the Parties to assist with seeking Preliminary Approval and/or Final Approval.

5.10.    The Parties each represent that she or it does not and will not have any financial interest in the Claim Administrator ultimately appointed and otherwise will not have a relationship with the Claim Administrator ultimately appointed that could create a conflict of interest.

5.11.    The Parties acknowledge and agree that the Claim Administrator is not an agent of the Class Representative, Class Counsel, Defendant, or Defendant's Counsel and that the Claim Administrator is not authorized by this Agreement or otherwise to act on behalf of the Class Representative, Class Counsel, Defendant, or Defendant's Counsel.

5.12.    The Parties and the Claim Administrator shall have the right, but not the obligation, to audit Claims and, if any fraud is detected or suspected, the Claim Administrator shall have the authority to deny Claims or otherwise scrutinize any filed Claims. The final determination of whether a Claim is valid shall be the responsibility of the Claim Administrator, subject to the supervision of the Parties and ultimate oversight of the Court.

5.13.    If a Class Member requests that the Claim Administrator and/or its agent or employee refer him/her to Class Counsel, or if a Class Member requests advice beyond merely ministerial information regarding applicable deadlines or procedures for submitting a Claim Form or other Settlement-related forms for which the Claim Administrator does not have an approved response, then the Claim Administrator and/or its agent or employee shall promptly refer the inquiry to Class Counsel.

5.14.    The Parties shall supervise the Claim Administrator in the performance of the notice functions set forth in this Section.

5.15.    At the time the Parties apply for Preliminary Approval, the Claim Administrator shall provide a declaration to the Court to support the Parties' request for appointment of the Claim Administrator. The declaration shall include a statement that the Claim Administrator shall accept a payment not to exceed $75,000 for performing its duties under this Settlement.

5.16.    At least fourteen (14) days prior to the Final Approval Hearing, the Claim Administrator shall certify to the Court that it has complied with the notice requirements set forth herein and shall provide a declaration which includes the following information: the total number of Class members; a sample copy of the Class Notice; the number of delivered and undeliverable Email Notices and Postcard Notices; the number of Class Members who submitted a Valid Claim; the number of Class Members who elected to opt out of the Class; and the number of Class Members who objected to the Settlement.

5.17.    Defendant shall be responsible for paying all reasonable costs of the Claim Administrator in an amount not to exceed $75,000.00.

DocuSign Envelope ID: 35A39382-EF72-493B-9B5D-0207AC4B6052

5.18.    Within two hundred and ten (210) days after the Effective Date, the Claim Administrator shall destroy all Class Member's identifying information received from Defendant and otherwise in connection with the implementation and administration of this Settlement.

5.19.    Upon completion of the implementation and administration of the Settlement, the Claim Administrator shall provide a declaration for filing with the Court containing the post-distribution information identified in the Court's Procedural Guidance for Class Action Settlements regarding Post-Distribution Accounting.

## VI.    ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS

6.1.    Plaintiff's Counsel may make application to the Court for an award of Attorneys' Fees and Expenses as compensation for the time and effort, undertaken in and risks of pursuing this Litigation, but agree that, combined, the requested Attorneys' Fees and Expense Award shall not exceed $350,000.00. Plaintiff's Counsel shall not be permitted to petition the Court for any additional payments for fees, costs or expenses from Defendant. Attorneys' Fees and Expenses shall be for all claims for attorneys' fees, costs and expenses, past, present, and future incurred in the Litigation in connection with claims against Defendant.

6.2.    Defendant covenants and agrees, that, provided Plaintiff's application for Attorneys' Fees and Expenses is consistent with Section 6.1, it shall not (a) oppose or submit any evidence or argument challenging or undermining Plaintiff's application for Attorneys' Fees and Expenses; (b) encourage or assist any person to oppose or submit any evidence or argument challenging or undermining Plaintiff's application for Attorneys' Fees and Expenses; or (c) encourage or assist any person to appeal from an order awarding Attorneys' Fees and Expenses.

6.3.    Defendant shall pay the award of Attorneys' Fees and Expenses, subject to the limitations stated in Section 6.1, within twenty-one (21) days of the Court's order granting an award of Attorneys' Fees and Expenses, provided that Plaintiff's Counsel provides an Undertaking, secured by assets that Defendant deems sufficient, to guarantee repayment of such amounts in the event that Final Approval or the award of Attorneys' Fees and Expenses is reversed or modified on appeal, substantially in the form of Exhibit D.

6.4.    Payment of any Attorneys' Fees and Expenses to Plaintiff's Counsel shall constitute full satisfaction by Defendant of any objection to pay any amounts to any person, attorney or law firm for attorneys' fees, expenses, or costs in the Litigation incurred by any attorney on behalf of Plaintiff, the Class, or the Class, and shall relieve Defendant and Defendant's Counsel of any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses, and/or costs to which any of them may claim to be entitled on behalf of Plaintiff, the Class, and/or the Class.

6.5.    Any Attorneys' Fees and Expenses paid to Plaintiff and Plaintiff's Counsel under this Section shall be paid separate and apart from the Promotional Codes, Shipping Codes, and Valid Claims and shall not take away from or otherwise reduce the monetary relief available to the Class.

6.6.    Plaintiff's Counsel may also make application to the Court for an Incentive Award for Plaintiff in an amount not to exceed $5,000.00, as compensation for Plaintiff's time and effort undertaken in and risks of pursuing this Litigation.

6.7.    The Incentive Award shall be the total obligation of Defendant to pay money to Plaintiff, in connection with the Litigation and this Settlement, other than amounts due to Plaintiff for any Valid Claim she submits pursuant to Section 4 of this Agreement, or

DocuSign Envelope ID: 35A39282-EF72-493B-98ED-B207AC4B6952

alternatively, any Promotional Code or Shipping Code she is entitled to pursuant to this Agreement.

6.8.    Defendant covenants and agrees that, provided Plaintiff's application for an Incentive Award is consistent with this Section, it shall not (a) oppose or submit any evidence or argument challenging or undermining Plaintiff's application for an Incentive Award; (b) encourage or assist any person to oppose or submit any evidence or argument challenging or undermining Plaintiff's application for an Incentive Award; or (c) encourage or assist any person to appeal from an order making an Incentive Award.

6.9.    Any Incentive Award awarded by the Court which does not exceed $5,000.00 shall be paid by Defendant to Plaintiff within twenty-one (21) days after the Effective Date.

6.10.    Plaintiff's Counsel and Plaintiff agree that the denial of, reduction or downward modification of, or failure to grant any application for Attorneys' Fees and Expenses or Incentive Award shall not constitute grounds for modification or termination of this Agreement, including the Settlement and releases provided for herein.

6.11.    Except as set forth in this Agreement, each Party shall bear his or its own fees, costs, and expenses.

## VII.    CLASS SETTLEMENT PROCEDURES

7.1.    <u>Conditional Class Certification</u>. The Parties reached this Agreement before Plaintiff filed a motion for class certification. Accordingly, Plaintiff shall include a request for conditional certification as part of her motion for Preliminary Approval that seeks certification of the Class for settlement purposes only.  As a material part of this Settlement, Defendant, while reserving all defenses if this Agreement is not finally approved, hereby

DocuSign Envelope ID: 35A39382-5E72-493B-9B5D-B207AC4B6052

stipulates and consents, solely for purposes of and in consideration of the Settlement, to

provisional certification of the Class. Defendant's stipulation and consent to class certification is

expressly conditioned upon the entry of a Preliminary Approval Order, a Final Approval Order

and Judgment, and as otherwise set forth in this Agreement. As part of its provisional stipulation,

Defendant further consents to the appointment of Class Counsel and the Class Representative to

represent the Class. The provisional certification of the Class, the appointment of the Class

Representative, and the appointment of Class Counsel shall be binding only with respect to this

Settlement and this Agreement. If the Court fails to enter a Preliminary Approval Order or a

Final Approval Order and Judgment, or if this Agreement and the Settlement proposed herein is

terminated, canceled, or fails to become effective for any reason whatsoever, or the Court enters

any order that increases the cost or burden of the Settlement on Defendant beyond what is set

forth in this Agreement, the class certification to which the Parties have stipulated solely for the

purposes of this Settlement, this Agreement, and all of the provisions of any Preliminary

Approval Order or any Final Approval Order shall be vacated by their own terms and the

Litigation will revert to its status as it existed prior to the date of this Agreement with respect to

class certification, the appointment of the Class Representative, and the appointment of Class

Counsel. In that event, Defendant shall retain all rights it had immediately preceding the

execution of this Agreement to object to the maintenance of the Litigation as a class action, the

appointment of the Class Representative, and the appointment of Class Counsel and, in that

event, nothing in this Agreement or other papers or proceedings related to this Settlement shall

be used as evidence or argument by any of the Parties concerning whether the Litigation may

properly be maintained as a class action under applicable law, whether the Class Representative

is an adequate or typical class representative, or whether Class Counsel is adequate or may be

appointed to represent the Class or any Class Members.

       7.2.   <u>Preliminary Approval</u>. As soon as practicable after the signing of this Agreement, Plaintiff shall move, with the support of Defendant, solely for purposes of this Settlement, for a Preliminary Approval Order, substantially in the form of Exhibit C. The Parties shall seek to schedule the Preliminary Approval Hearing to take place on shortened time, and no later than April 2021. The Parties shall seek to schedule a Final Approval Hearing to occur four (4) weeks after the Objection Deadline.

       7.3.   The Preliminary Approval Order and Class Notice shall advise prospective Class Members of their rights to exclude themselves from the Settlement, forgo the benefits of this Settlement, and reserve the right to pursue an individual action; to object to this settlement individually or through counsel; and to appear at the Final Approval Hearing.

       7.4.   <u>Exclusions</u>. Class Members and persons purporting to act on their behalf who decide to be excluded from this Settlement must submit to the Claim Administrator a written statement requesting exclusion from the Settlement by the Objection/Exclusion Deadline or by such date otherwise ordered by the Court.

       (a)   Such written request for exclusion must (i) contain the name and address of the person requesting exclusion; (ii) be made by submitting the online form on the Settlement Website or by mailing a valid exclusion request by First Class U.S. Mail to the Claim Administrator at the specified address as described in the Class Notice; (iii) include the statement that "I request to be excluded from the proposed class settlement in *Taylor v. Shutterfly, Inc..*, Case No. 5:18-cv-00266-BLF (N.D. Cal.);" (iv) be signed (or electronically signed) by the person requesting exclusion; and (v) be submitted online or postmarked on or before the Objection/Exclusion Deadline in order to be valid. For exclusion requests that are submitted

online, the Class Member shall have the opportunity to print a page immediately after submission showing the information entered and the date and time the request for exclusion was received. The Parties shall agree upon the appearance and content of the online request for exclusion form. Class Members shall be encouraged, but not required, to provide their email addresses in their requests for exclusion.

(b)    Class Members who fail to submit a timely and valid written request for exclusion consistent with this Section shall be deemed to be a member of the Class and as such shall be bound by all terms of the Settlement and the Final Approval Order and Judgment if the Settlement is approved by the Court.

(c)    A Class Member who is excluded from this Settlement shall not be bound by this Settlement or any Final Approval Order entered by the Court approving this Settlement, shall not be permitted to object to this Settlement, and shall not be entitled to receive any of the benefits of the Settlement.

(d)    If a Class Member submits both a Claim Form and an exclusion request, the Claim Form shall take precedence and be considered valid and binding, and the exclusion request shall be deemed to have been sent by mistake and rejected.

(e)    The Preliminary Approval Order shall provide that no person or entity shall purport to exercise any exclusion rights of any other person or entity, or purport to exclude other Class Members as a group, aggregate, or class involving more than one Class Member, or as an agent or representative, including for any parents, subsidiaries, or affiliates of the Class Member submitting the request for exclusion. Any such purported exclusion shall be void, and any Class Members who are the subject of the purported opt-out shall be treated as

Class Members for all purposes. Nothing in this provision shall bar a Class Member from retaining an attorney to exercise that Class Member's exclusion rights.

(f)       Within three (3) business days following the Objection/Exclusion Deadline, the Claim Administrator shall provide in writing to Class Counsel and Defendant's Counsel the names of those Class Members who have requested exclusion from the Settlement in a valid and timely manner, and no later than 14 days before the Final Approval Hearing, the Claim Administrator shall submit a declaration to the Court attaching that list.

(g)       The Class Representative acknowledges and agrees that she will not exclude herself from this Settlement.

7.5.    Defendant's Right to Terminate. If more than two percent (2%) of the Class submit a timely and valid request to opt out of the Class, Defendant shall have the unilateral right, but not obligation, to terminate this Agreement (and any obligations thereunder) within five (5) business days after the Claim Administrator provides Class Counsel and Defendant's Counsel the opt-out list described as described in Section 7.4(f) of this Agreement.

7.6.    Objections. Class Members and persons purporting to act on their behalf who wish to object to the fairness, reasonableness, or adequacy of the Settlement or this Agreement, any request for Attorneys' Fees and Expenses, or any request for an Incentive Award shall submit a written notice of objection in accordance with the following procedures:

(a)       Class Members who wish to object must submit a written statement of objection to the Class Action Clerk, United States District Court for the Northern District of California, postmarked or filed via the court's electronic filing system (ECF), on or before the Objection/Exclusion Deadline.

(b)     To be valid, an Objection must include: (a) a reference to this case, *Taylor v. Shutterfly, Inc.*, Case No. 5:18-cv-00266-BLF, and the name of the presiding judge, the Hon. Beth Labson Freeman, United States District Court for the Northern District of California; (b) the name, address, telephone number, and, if available, the email address of the person objecting, and if represented by counsel, of his/her counsel; (c) a written statement of all grounds for the Objection, accompanied by any legal support for such Objection; (d) Copies of any papers, briefs, or other documents upon which the Objection is based; (e) a statement of whether he/she intends to appear at the Final Approval Hearing, either with or without counsel; (f) a statement of his/her membership in the Class, including all information required by the Claim Form; and (g) a detailed list of any other objections submitted by the Class Member, or his/her counsel, to any class actions submitted in any court, whether state or otherwise, in the United States in the previous five (5) years. If the Class Member or his/her counsel has not objected to any other class action settlement in any court in the United States in the previous five (5) years, he/she shall affirmatively state so in the written materials provided in connection with the Objection to this Settlement. Failure to include this information and documentation may be grounds for overruling and rejecting the Objection. Any Class Member who fails to timely submit a written objection prior to the Objection/Exclusion Deadline shall be deemed to have waived his/her objections, and those objections will not be considered by the Court.

(c)     Any objecting Class Member may appear, in person or by counsel, at the Final Approval Hearing to show cause why this Settlement and this Agreement should not be approved as fair, adequate, and reasonable or to object to any request for a Attorneys' Fees and Expenses or Incentive Award. To appear in person or by counsel at the Final Approval Hearing, the objecting Class Member must include in his or her objection a Notice of Intention to

Appear. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Class Member (or his/her counsel) will present to the Court in connection with the Final Approval Hearing. Any Class Member who fails to submit a proper Notice of Intention to Appear will not be heard during the Final Approval Hearing.

(d)    Any Class Member who submits a timely written request for exclusion from the Settlement shall not be permitted to object to the Settlement. Any written objection submitted by a Class Member who has submitted a timely written request for exclusion from the Settlement will not be heard during the Final Approval Hearing and the Class Member's objection(s) shall be waived and shall not be considered by the Court at the Final Approval Hearing.

(e)    Any Class Member who submits a written objection in accordance with this Section shall be entitled to all of the benefits of the Settlement and this Agreement, provided the objecting Class Member complies with all the requirements set forth in this Agreement for submitting a timely and Valid Claim, and shall be bound by all terms of the Settlement and the Final Approval Order and Judgment if the Settlement is approved by the Court.

(f)    Class Counsel shall serve on Defendants' Counsel and file with the Court any written objections to the Settlement received within fifteen (15) days following the Objection/Exclusion Deadline.

7.7.    <u>Final Approval and Judgment</u>. After Preliminary Approval, Class Notice is provided to the Class Members, and the expiration of the Objection/Exclusion Deadline, a Final Approval Hearing shall be held on a date set by the Court. The Parties shall request that the Court enter the Final Approval Order, substantially in the form of Exhibit D.

7.8.    <u>Conditions Impacting Finality of Settlement</u>.

(a)    The Parties expressly agree that in the event of any of the following conditions: (i) the Court does not preliminarily approve the Settlement; (ii) the Court does not finally approve the Settlement; (iii) the Court does not enter the Final Approval Order and Judgment; (iv) the Court makes any material modification to the Settlement not agreed to by both Parties (including by conditioning the Preliminary Approval Order or Final Approval Order on any material change not agreed to by both Parties); (v) the Preliminary Approval Order or Final Approval Order is vacated, modified, or reversed, in whole or in part—except with respect to any rulings on any Attorneys' Fees and Expenses or Incentive Award; (vi) the opt-out rate for Class Members exceeds 2% of the total number of potential Class Members and Defendant, at its sole election, rescinds this Agreement on that basis as provided in Section 7.5; and/or (vii) this Settlement does not become final for any reason; then this Agreement shall be null and void *ab initio* and any order entered by the Court in furtherance of this Settlement shall be treated as withdrawn or vacated by stipulation of the Parties (subject to Court approval) and Defendant shall have no further obligation under this Agreement; provided, however, that in the event of the denial of Preliminary Approval or Final Approval, the Class Representative and/or Defendant may seek appellate review through a writ or pursue any other available appellate remedy in support of the Settlement or this Agreement. Nothing herein is intended to restrict or limit the rights of any of the Parties to appeal any order of this Court in the event the Settlement is not finally approved for any reason. During the pendency of any appeal of the denial of Preliminary Approval or Final Approval, this Agreement shall remain valid and binding.

(b)    If any of the conditions outlined in Section 7.8(a) occur such that this Settlement does not become final, the Parties shall proceed in all respects as if this

Agreement had not been executed; provided, however, that Defendant shall be responsible for the payment of reasonable Administration Costs actually incurred for services already incurred up to such time.

(c)     Notwithstanding the foregoing, neither the denial of, an appeal of, a modification of, nor a reversal on appeal of any Attorneys' Fees and Expenses or Incentive Award shall constitute grounds for cancellation or termination of this Agreement.

(d)     If Preliminary Approval is denied, the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Agreement on the latest of the following events (i) the thirty-first (31st) day following the denial of Preliminary Approval; or (ii) the conclusion of any appeal or writ of mandamus from the denial of Preliminary Approval.

(e)     If Final Approval is denied, the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Agreement on the latest of the following events: (i) the thirty-first (31st) day following the denial of Final Approval; or (ii) the conclusion of any appeal or writ of mandamus from the denial of Final Approval.

7.9.    <u>Effect if Settlement Not Approved or Agreement is Terminated</u>. This Agreement is entered into only for purposes of settlement. In the event that Preliminary Approval or Final Approval of this Agreement does not occur for any reason, including without limitation termination of this Agreement pursuant to Section 7.5, or if Final Approval is reversed on appeal, then no term or condition of this Agreement, or any draft thereof, or discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions shall have any effect, nor shall any such matter be admissible in evidence for any purpose in the

Litigation, or in any other proceeding; the Litigation may continue as if the Settlement had not

occurred; and the Parties returned to their pre-Settlement litigation posture. The Parties agree that

all drafts, discussions, negotiations, documentation or other information prepared in relation to

this Agreement, and the Parties' settlement discussions, shall be treated as strictly confidential

and may not, absent a court order, be disclosed to any person other than the Parties' counsel, and

only for purposes of the Litigation.

## VIII.  RELEASES

8.1.    <u>Releases By Class Members of Released Parties</u>. Upon the Effective Date,

Class Representative and Class Members, including any person claiming derivative rights of the

Class Representative or Class Member as such person's parent, child, heir, guardian, associate,

co-owner, attorney, agent, administrator, executor, devisee, predecessor, successor, assignee,

assigns, representative of any kind, shareholder, partner, director, employee or affiliate, shall

have unconditionally, completely, and irrevocably released and discharged the Released Parties

from the Released Claims. Upon the Effective Date, Class Representative and Class Members

shall be forever barred from initiating, maintaining, or prosecuting any Released Claims against

Released Parties.

8.2.    <u>Additional Releases Regarding Plaintiff and Released Parties</u>. In addition

to the releases granted by Plaintiff in the prior section, upon the Effective Date, Plaintiff, her

predecessors, successors, agents, assigns, attorneys and members of their families) on the one

hand, and Released Parties on the other hand, shall have unconditionally, completely, and

irrevocably released and forever discharged each other from and shall be forever barred from

instituting, maintaining, or prosecuting any and all claims, liens, demands, actions, causes of

action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal

or equitable or otherwise, known or unknown, that actually were, or could have been, asserted in

the Litigation, whether based upon any violation of any state or federal statute or common law or

regulation or otherwise, or arise directly or indirectly out of, or in any way relate to, the

Allegations that Plaintiff, on the one hand, and Released Parties, on the other hand, have had in

the past, or now have, whether or not related to the Released Claims.

       8.3.   <u>Waiver of Provisions of California Civil Code Section 1542</u>. The Class

Representative and Defendant shall, by operation of Final Approval and Judgment, be deemed to

have waived the provisions, rights and benefits of California Civil Code Section 1542, and any

similar law of any state or territory of the United States or principle of common law. In addition,

Class Members shall, by operation of Final Approval and Judgment, be deemed to have waived

the provisions, rights and benefits of California Civil Code Section 1542, and any similar law of

any state or territory of the United States or principle of common law, but only with respect to

the matters released as set forth Section 8.1 above. Section 1542 provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

       8.4.   <u>Exclusions</u>. None of the above releases include releases of claims to

enforce the terms of the Settlement provided for in this Agreement. Further, nothing in this

settlement shall be deemed to be a waiver of the right of Plaintiff or any Class Member to dispute

or challenge, in any other proceeding, the validity or enforceability of any arbitration agreement

that may exist between Plaintiff or such Class Member and Defendant.

## IX.  ADDITIONAL PROVISIONS

9.1.    No Collateral Attack.  This Agreement shall not be subject to collateral attack by any Class Members or their representatives any time on or after the Effective Date. Prohibited collateral attacks shall include, but are not limited to, assertions that a Class Member's claim should have been heard or decided by another forum, that a Class Member's claim was improperly denied, that the payment to a Class Member was improperly calculated, or that a Class Member's request for exclusion was improperly denied.

9.2.    Non-Disparagement. The Parties, Plaintiffs' Counsel, and Defendant's Counsel agree that they will not make or cause to be made any statements that disparage Plaintiff, Defendant or its employees, or any of the other Released Parties. The Parties, Plaintiff's Counsel, and Defendant's Counsel also agree that they will not encourage any person to disparage Plaintiff, Defendant or its employees, or any of the other Released Parties. Disparagement includes, but is not limited to, statements made by any internet posting or use of social media. Disparagement does not include statements that recite or refer to the allegations of the Lawsuit or terms of the Agreement, nor does it include any good faith claim or allegation of a legal violation in the future.

9.3.    Cooperation. All of the Parties, their successors and assigns, and their attorneys agree to work reasonably and cooperatively in order to obtain Court approval of this Agreement and to effectuate the Settlement, and to provide declarations to facilitate the Court's Preliminary Approval and Final Approval of the Settlement. The Parties further agree to cooperate in the Settlement administration process and implementation of the Settlement and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration and implementation of the Settlement.

9.4.    <u>Change of Time Periods</u>. The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by the written agreement of Plaintiff's Counsel and Defendant's Counsel, without notice to Class Members.

9.5.    <u>Time for Compliance</u>. If the date for performance of any act required by or under this Agreement falls on a Saturday, Sunday or court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Agreement.

9.6.    <u>Governing Law</u>. This Agreement is intended to and shall be governed by the laws of the State of California, without regard to conflicts of law principles.

9.7.    <u>Entire Agreement</u>. The terms and conditions set forth in this Agreement and its Exhibits constitute the complete and exclusive statement of the agreement between the Parties hereto relating to the subject matter of this Agreement, superseding all previous negotiations and understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement. The Parties further intend that this Agreement constitute the complete and exclusive statement of its terms as between the Parties, and that no extrinsic evidence whatsoever may be introduced in any agency or judicial proceeding, if any, involving the interpretation of this Agreement. In executing this Agreement, the Parties acknowledge that they have not relied upon any oral or written understandings, negotiations, agreements, statements, or promises that are not set forth in this Agreement. The Parties also acknowledge and agree that each has been represented by its own counsel with respect to the negotiating and drafting of this Settlement and this Agreement. All Exhibits to this Agreement as set forth herein are integrated herein and are to be considered terms of this Agreement as if fully set forth herein.

DocuSign Envelope ID: 35A39282-EF72-493B-98ED-0207AC4B6952

9.8.    <u>Modifications</u>. Any amendment or modification of the Agreement must be in writing signed by all of the Parties to this Agreement or their counsel. The Parties agree that nonmaterial amendments or modifications to this Agreement may be made in writing after Preliminary Approval without the need to seek the Court's approval. If the Court indicates, prior to Preliminary Approval or Final Approval, that the Settlement will not be approved unless certain changes are made, the Parties will attempt in good faith to reach an agreement as to any such changes prior to withdrawing from this Agreement. However, if no such agreement can be reached within thirty (30) days after the Court indicates that the Settlement will not be approved unless certain changes are made, then the Class Representative or Defendant may terminate and withdraw from this Agreement. Without further order of the Court, the Parties may agree in writing to reasonable extensions of time to carry out any of the provisions of this Agreement or the Preliminary Approval Order.

9.9.    <u>No Admissions</u>. If this Agreement does not become effective or is cancelled, withdrawn, or terminated for any reason, it shall be deemed negotiation for settlement purposes only and will not be admissible in evidence or usable for any purposes whatsoever in the Litigation or any proceedings between the Parties or in any other action related to the Released Claims or otherwise involving the Parties or any Released Party. Nothing in this Agreement may be construed as, or may be used as, an admission by the Class Representative that any of his claims are without merit. Nothing in this Agreement may constitute, may be construed as, or may be used as an admission by Defendant of any fault, wrongdoing, or liability whatsoever or that class certification is appropriate. Defendant continues to affirmatively deny all liability and all of the claims, contentions, Released Claims, and each and every allegation made by the Class Representative in the Litigation. This Agreement reflects, among other things,

the compromise and settlement of disputed claims among the Parties hereto, and neither this Agreement nor the releases given herein, nor any consideration therefore, nor any actions taken to carry out this Agreement are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or the validity of any claim, or defense, or of any point of fact or law (including but not limited to matters respecting class certification) on the part of any Party. Defendant expressly denies all the allegations in the complaint. Neither this Agreement, nor the fact of settlement, nor the settlement proceedings, nor settlement negotiations, nor any related document, shall be used as an admission of any fault or omission by the Released Parties, or be offered or received in evidence as an admission, concession, presumption, or inference of any wrongdoing by the Released Parties in any proceeding, except that this Agreement may be offered or received in evidence in such proceedings as may be necessary to consummate, interpret, or enforce this Agreement. Nothing in this Settlement shall be deemed an admission or agreement by any person as to the validity, invalidity, enforceability, or unenforceability of any arbitration agreement that may exist between such Class Member and Defendant.

      9.10.  <u>Advice of Counsel</u>. The determination of the terms of, and the drafting of, this Agreement have been by mutual agreement after extensive arm's-length, bilateral negotiations, with consideration by and participation of all Parties and their counsel. The presumption found in California Civil Code Section 1654 that uncertainties in a contract are interpreted against the party causing an uncertainty to exist is hereby waived by all Parties.

      9.11.  <u>No Tax Advice</u>. Neither Class Counsel nor Defendant's Counsel intends anything contained herein to constitute legal advice regarding the tax consequences of any amount paid hereunder nor shall it be relied upon as such.

9.12.    Conflicts. In the event of a conflict between this Agreement and any other document prepared pursuant to the Settlement, the terms of this Agreement supersede and control.

9.13.    No Waiver. Any failure by any Party to insist upon the strict performance by any other Party of any provision of this Agreement shall not be deemed a waiver of any provision of this Agreement and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

9.14.    Warranties. Each signatory to this Agreement hereby warrants that he/it has the authority to execute this Agreement and thereby bind the respective Party. The Class Representative warrants and represents that she is the sole and lawful owner of all rights, title, and interest in and to all of the Released Claims and that she has not heretofore voluntarily, by operation of law or otherwise, sold, assigned, or transfered or purported to sell, assign, or transfer to any other person or entity any Released Claims or any part or portion thereof.

9.15.    Binding Effect of the Agreement. This Agreement shall be valid and binding as to the Parties and their respective heirs, legal representatives, executors, administrators, successors, and assigns upon signing by all Parties.

9.16.    Execution in Counterparts. This Agreement shall become effective upon its execution by all of the undersigned. The Parties may execute this Agreement in counterparts and/or by fax or electronic mail, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

9.17.    Enforcement of this Agreement. The Court shall retain jurisdiction to enforce, interpret, and implement this Agreement.

9.18.   Notices. All notices to the Parties or counsel required by this Agreement,

shall be made in writing and communicated by mail and fax or email to the following addresses:

If to Plaintiff or Plaintiff's Counsel:

Marie A. McCrary, Esq.
Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Fax: (415) 449-6469
Email: shutterfly@gutridesafier.com

If to Defendant or Defendant's Counsel:

Brian D. Berry
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Telephone: 415-369-3554
Fax: 415-442-4870
Email: brian.berry@ogletree.com

9.19.   Confidentiality. The Parties, Plaintiff's Counsel, and Defendant's Counsel

agree to keep the existence and contents of the term sheet, Agreement, and all related settlement

communications confidential until the filing of the motion for Preliminary Approval. This

provision will not prevent the disclosure of such information prior to the filing of the motion for

Preliminary Approval with the Court to: (1) regulators, rating agencies, independent accountants,

advisors, financial analysts, agents, existing or potential insurers or reinsurers, experts, courts,

co-counsel, the Released Parties, any existing or potential investor of or any existing or potential

lender to any of the Released Parties, the Claim Administrator as may reasonably be required to

effectuate the Settlement, and/or as otherwise required to comply with any applicable law or

regulation; (2) any person or entity to whom the Parties agree in writing disclosure must be made

to effectuate the Settlement; and/or (3) Defendant or any of the Released Parties as necessary for any reasonable commercial purpose.

(a)    If contacted by a Class Member, Class Counsel may provide advice or assistance regarding any aspect of the Settlement requested by the Class Member. At no time shall any of the Parties or their counsel or their agents seek to solicit Class Members or any other persons to submit written objections to the Settlement, requests for exclusion from the Settlement; discourage Class Members from filing a Claim under the Settlement; or encourage Class Members or any persons to appeal from the Preliminary Approval Order and/or the Final Approval Order and Judgment.

(b)    The Class Representative and Class Counsel agree that the discussions and the information exchanged in the course of negotiating this Settlement and Agreement are confidential and were made available on the condition that they not be disclosed to third parties (other than experts or consultants retained by the Class Counsel in connection with the Litigation), that they not be the subject of public comment, and that they not be publicly disclosed or used by the Class Representative or Class Counsel in any way in the Litigation should it not settle or in any other proceeding.

9.20.    Confidential Documents. The parties reaffirm their obligation to comply with the Protective Order regarding confidential information. Class Counsel are entitled to retain an archival copy of the entire file (paper and/or electronic), including all pleadings, motion papers, transcripts, legal memoranda, correspondence, discovery, expert reports and exhibits thereto, or attorney work product, even if such materials contain material designated as confidential, provided Class Counsel complies with all aspects of the Protective Order.

9.21.    <u>Exhibits.</u> The Exhibits to the Agreement are an integral part of the Settlement and are hereby incorporated and made part of the Agreement.

9.22.    <u>Complete Resolution.</u> The Parties intend for this Agreement to be a complete and final resolution of all disputes between them with respect to the Litigation.

**APPROVED AND AGREED:**

DATED: March ___, 2021          MEGAN TAYLOR

3/2/2021

_____

Megan Taylor


DATED: March ___, 2021          SHUTTERFLY, INC.


By:_____

Name:_____

Its: _____

**APPROVED AND AGREED:**

DATED: February ___, 2021         MEGAN TAYLOR

_____
Megan Taylor


DATED: February Mar, 2021         SHUTTERFLY, INC.

By:_____

Name:_____Jason Sebring_____

Its:_____SVP & General Counsel_____

**APPROVED AS TO FORM:**

DATED: March ___, 2021                    GUTRIDE SAFIER LLP

3/2/2021

_____
Seth Safier, Esq.
Marie A. McCrary, Esq.
Attorneys for Plaintiff



DATED: March ___, 2021                    OGLETREE, DEAKINS, NASH, SMOAK & STEWART,
                                          P.C.


_____
Brian D. Berry, Esq.
Attorneys for Defendant

**APPROVED AS TO FORM:**

DATED: February ___, 2021          GUTRIDE SAFIER LLP

_____
Seth Safier, Esq.
Marie A. McCrary, Esq.
Attorneys for Plaintiff


DATED:  March 5, 2021          OGLETREE, DEAKINS, NASH, SMOAK & STEWART,
P.C.

_____
Brian D. Berry, Esq.
Attorneys for Defendant

# EXHIBIT A

| CLAIM FORM |
|---|

***Taylor v. Shutterfly, Inc.*** Case No. 5:18-cv-00266-BLF (U.S. District Court, Northern District of California)

There has been a class action settlement in this lawsuit. The Class includes individuals who between June 1, 2015 and April 30, 2018, in the United States, purchased a Shutterfly General Spend Groupon that was not redeemed and those who redeemed a Shutterfly General Spend Groupon purchased during that period.

**No claim form is required to benefit from the Settlement. All members of the Class will receive free Promotional and Shipping Codes to use at Shutterfly on a future purchase, even if they do not submit a claim form:**

> If your Groupon was **not redeemed** towards a purchase at Shutterfly, you will get codes for 110% of the original promotional value of your Groupon, plus free shipping. For example, if you paid Groupon $20 for "$40 to Spend at Shutterfly," you will receive a code for $44 to spend at Shutterfly (110% of $40) plus free shipping.

> If you **already redeemed** your Groupon towards a purchase at Shutterfly, you will get codes for 20% of the original promotional value of your Groupon, plus free shipping. For example, if you paid Groupon $20 for "$40 to Spend at Shutterfly," you will receive a code for $8 to spend at Shutterfly (20% of $40) plus free shipping.

**You have the option to get a Cash Refund by submitting this Claim Form, if you are in the Class and you already redeemed your Groupon towards a purchase at Shutterfly and you do not want the free Promotional and Shipping Codes**. Your cash refund will equal 10% of the original promotional value of your Groupon, plus 50% of the amount you paid for shipping on the order you redeemed the Groupon. For example, if you paid Groupon $20 for a "$40 to Spend at Shutterfly" deal and you then paid Shutterfly $10 for shipping when you redeemed the Groupon, you will receive a cash refund of $9 (10% of $40, plus 50% of $10). Your class notice states for the amount of the cash refund you could receive.

**Your completed claim form must be POSTMARKED OR SUBMITTED ONLINE by [Date] at 11:59 p.m., Pacific Time.** You may send the form by first-class mail, or the equivalent, to the address at the bottom of this form, or you may submit the form through www.shutterflypromosettlement.com. Only settlement class members or their legal representatives may submit a Claim Form. Information you provide on this form will be kept private and will not be disclosed to anyone other than the Court, the Claim Administrator, and the settling parties in this case. The Claim Administrator will use the email address that you provide on this Claim Form to communicate with you if communication is necessary and send your Shipping Code and Promotional Code. If your email address or other contact information changes after you submit this Claim Form, please contact the Claim Administrator at: [email address].

You can receive additional details about the settlement at www.shutterflypromosettlement.com or by calling [phone number]. **If you are submitting this Claim Form via mail, please send it to: Claim Administrator, [ADDRESS]**

| Claimant Information |
|---|

Claimant Identification Number (printed on the notice you received):_____

Claimant Name: _____
                First Name                          MI    Last Name

Street Address: _____

City: _____   State: _____   Zip Code: _____

E-mail Address: _____

| Payment Selection |
|---|

Please select **one** of the following payment options:

☐ **PayPal** - Enter your PayPal email address: _____

☐ **Venmo -** Enter the mobile number associated with your Venmo account: __ __ __-__ __ __-__ __ __ __

☐ **Physical Check -** Payment will be mailed to the address provided above.

**Certification under Penalty of Perjury**

**I hereby certify under penalty of perjury that:** I am a member of the Class. I redeemed my Groupon towards a purchase at Shutterfly. I wish to obtain the Cash Refund instead of the free Promotional and Shipping Codes. The information provided in this Claim Form is accurate and complete to the best of my knowledge. I understand that claims will be audited for veracity, accuracy, and fraud. Claims Forms that are not valid and/or illegible can be rejected. I understand that by not opting out of the settlement, I have given a complete release of all settled claims.

Signature: _____    Date: _____

EXHIBIT B-1

**Attention All Persons Who Purchased a Shutterfly General Spend Groupon Between June 1, 2015 and April 30, 2018 that Was Not Redeemed, or Redeemed a Shutterfly General Spend Groupon Purchased During that Period**

### This notice may affect your rights. Please read it carefully.

*A court has authorized this notice. This is not a solicitation from a lawyer.*

- The notice concerns a case called *Taylor v. Shutterfly, Inc.,* Case No. 5:18-cv-00266-BLF, pending in the United States District Court for the Northern District of California.

- This class action Settlement will resolve a lawsuit against Shutterfly, Inc. ("Defendant"). The lawsuit affects all United States residents who, either (i) purchased a Shutterfly General Spend Groupon between June 1, 2015 to April 30, 2018 that was not redeemed; or, (ii) redeemed a Shutterfly General Spend Groupon purchased during that period.

- The lawsuit contends that Defendant engaged in false and misleading advertising of deals on Groupon.com, committed breaches of contract and fraud in connection with these deals, and included an unenforceable arbitration clause in its Terms of Use. The deals involved a price paid ("Paid Value") for the Groupon which could be redeemed at a greater dollar value ("Promotional Value") towards a Shutterfly purchase within a set period of time. For example, the Groupon "$20 for $40 to Spend at Shutterfly" had a Paid Value of $20 and a Promotional Value of $40. These deals are called the "Shutterfly General Spend Groupons". Plaintiff alleges that Shutterfly failed to disclose to purchasers that they would receive a promotional code that could be used only toward full priced items and could not be combined with any other discounts offered on the Shutterfly website, including product discounts and free shipping. The lawsuit seeks a Court order to mandate that Defendant provide additional notice of the terms of the Shutterfly General Spend Groupons and provide monetary compensation to customers that purchased the Shutterfly General Spend Groupons.

- Defendant denies any wrongdoing. It contends that it has complied with the law in all respects and at all times and properly informed customers of the potential for these charges.

- To settle the case, Defendant has agreed to provide notice in their advertising of Shutterfly General Spend Groupons that purchasers will receive a promotional code that cannot be combined with any other Shutterfly promotional codes or shipping codes. In addition, Defendant will provide, to Class Members who purchased Shutterfly General Spend Groupon that were never redeemed, an automatic Shipping Code for free shipping on a future purchase from Shutterfly.com and a Promotional Code worth 110% of the original Promotional Value of the Shutterfly General Spend Groupon. Defendant will also provide, to Class Members who redeemed their Shutterfly General Spend Groupons, an automatic Shipping Code for free shipping on a future purchase from Shutterfly.com and a Promotional Code worth 20% of the original Promotional Value of the Shutterfly General Spend Groupon. Class Members who redeemed their Shutterfly General Spend Groupons and who do not want the Shipping Code and Promotional Code can instead obtain a Cash Refund equal to 10% of the Promotional Value of the Groupon, plus 50% of the amount the Class Member paid Shutterfly for shipping in connection with the order in which the Groupon was redeemed. To be eligible for a Cash Refund, the Class Member must submit a Valid Claim.

- The lawyers who brought the lawsuit ("Class Counsel") will ask the Court for up to $350,000.00 to be paid by Defendant as Attorneys' Fees and Expenses for investigating the facts, litigating the case, and negotiating the Settlement. Class Counsel also will ask for $5,000 for the Plaintiff who

brought this lawsuit. That payment is called the "Class Representative Incentive Award."

- Your legal rights are affected whether or not you act. Read this notice carefully.

This notice summarizes the proposed Settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement available at [website], or contact the Claim Administrator at [address] or by telephone at [phone number].

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

| YOUR RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **Do Nothing and Receive a Promotion Code and Free Shipping Code** | You will automatically receive the Shipping Code and a Promotional Code. You also will receive the benefit of the revised notice in future advertisements of Shutterfly General Spend Groupons. You will not receive a Cash Refund. Also, you will have no right to sue later for the claims released by the Settlement. | none |
| **Submit a Claim Form** | The only way to receive an Cash Refund under the Settlement. This option is only available to Class Members who redeemed a Shutterfly General Spend Groupon. | **[DATE]** |
| **Opt-Out** | Get out of the lawsuit and the Settlement. This is the only option that allows you to ever bring or join another lawsuit raising the same legal claims against Defendant. You will receive no Cash Refund, Shipping Code, or Promotional Code from this Settlement. | **[DATE]** |
| **File Objection** | Write to the Court about any aspect of the Settlement you don't like or you don't think is fair, adequate, or reasonable. (If you object to any aspect of the Settlement, you must submit a written Objection by the Objection Deadline.) | **[DATE]** |
| **Go to a Hearing** | Speak in Court about the Settlement. (If you object to any aspect of the Settlement, you **must** submit a written Objection by the Objection Deadline noted above.) | **[DATE]** |

- These rights and options—and the deadlines to exercise them—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Shipping Code, Promotion Codes, and Cash Refunds will be provided to Class Members only if the Court approves the Settlement. If there are appeals, these benefits will not be provided until the appeals are resolved and the Settlement becomes effective. Please be patient.

- **Fairness Hearing**
  On [DATE], at [TIME], the Court will hold a hearing to determine: (1) whether the proposed Settlement should be approved as fair, reasonable, and adequate and should receive final approval;

(2) whether Class Counsel's Application for Attorneys' Fees and Expenses should be granted; and (3) whether the application for the Class Representative Incentive Award should be granted. The hearing will be held in the United States District Court of the Northern District of California, before the Honorable Beth Labson Freeman, 280 South 1st Street, San Jose, CA 95113, in courtroom 3 on the Fifth Floor, or such other judge assigned by the Court. This hearing date may change without further notice to you. Consult the Settlement Website at [website], or the Court docket in this case available through Public Access to Court Electronic Records ("PACER") (http://www.pacer.gov), for updated information on the hearing date and time.

**Important Dates**

| | |
|---|---|
| [DATE] | Claims Deadline |
| [DATE] | Objection Deadline |
| [DATE] | Opt-Out Deadline |
| [DATE] | Fairness Hearing |

## Table of Contents

1.  How Do I Know If I Am Affected By The Settlement? ................................................. 1
2.  What Is The Lawsuit About? ....................................................................................... 1
3.  Why Is There A Lawsuit? ............................................................................................ 1
4.  Why Is This Case Being Settled? ............................................................................... 1
5.  What Can I Get In The Settlement? ............................................................................ 2
6.  How Do I Make A Claim? ............................................................................................ 3
7.  When Do I Get My Benefits? ...................................................................................... 3
8.  What Do Plaintiffs And Their Lawyers Get? ............................................................... 3
9.  What Happens If I Do Not Opt-Out From The Settlement? ......................................... 4
10. How Do I Opt-Out From The Settlement? ................................................................... 5
11. How Do I Object To The Settlement? .......................................................................... 5
12. When Will The Court Decide If The Settlement Is Approved? ..................................... 6
13. How Do I Get More Information? .................................................................................. 7

1.      **How Do I Know If I Am Affected By The Settlement?**

If you are a United States resident who, any time between June 1, 2015 to April 30, 2018, (i) purchased a Shutterfly General Spend Groupon that was never redeemed; or, (ii) redeemed a Shutterfly General Spend Groupon that was purchased during that period.

This lawsuit is a class action. A class action is a lawsuit in which the claims and rights of many people are decided in a single court proceeding. One or more people—sometimes called "class representatives"—sue on behalf of people who have similar claims. All of the people who have similar claims form a "class" and are "class members." A settlement in a class action—if approved by the Court as fair, reasonable, and adequate—resolves the claims for all class members, except those who choose to exclude themselves from the class.

2.      **What Is The Lawsuit About?**

A lawsuit was brought by Plaintiff relating to Defendant's advertising of deals on Groupon.com. These deals were sold for a price paid ("Paid Value") which could be redeemed at a greater dollar value ("Promotional Value") towards a purchase at Shutterfly within a set period of time. For example, the Groupon "$20 for $40 to Spend at Shutterfly" had a Paid Value of $20 and a Promotional Value of $40. The deals are called the "Shutterfly General Spend Groupons." Plaintiff alleges that Shutterfly failed to disclose to purchasers that they would receive a promotional code that could only be used toward full priced items and could not be combined with any other discounts offered on the Shutterfly website, including product discounts and free shipping. Plaintiff contends that Defendant's conduct is deceptive and unlawful.

Defendant denies that there is any factual or legal basis for Plaintiff's allegations. Defendant denies making any misrepresentations and, therefore denies any liability. In the lawsuit, Defendant has asserted defenses to the claims raised by Plaintiff on behalf of the Class. The Court has not determined whether Plaintiff or Defendant is correct. If the Settlement does not become effective (for example, because it is not finally approved, or the approval is reversed on appeal), then this litigation will continue.

3.      **Why Is There A Lawsuit?**

Defendant denies that there is any legal entitlement to a refund or any other monetary relief. Plaintiff contends that the Defendant engaged in a scheme to mislead consumers about the Shutterfly General Spend Groupons and how they could be redeemed on the Shutterfly website. Among other things, the lawsuit seeks to recover, on behalf of all Class Members, money damages as a result of the alleged misrepresentations.

4.      **Why Is This Case Being Settled?**

The Court has not decided in favor of either side in the lawsuit. Neither Plaintiff nor Defendant has won or lost.

Instead, Class Counsel have investigated the facts and applicable law concerning the Plaintiff's and Class's claims and Defendant's defenses and determined that the proposed settlement is in the best

interests of the Class. Plaintiff filed her original lawsuit on December 12, 2017 in Santa Clara County Superior Court on behalf of herself and a proposed class of other persons who, between December 8, 2013 and the present, purchased in the United States a Shutterfly General Spend Groupon. Defendant removed the lawsuit to the United States District Court of the Northern District of California on January 11, 2018. Defendant asked the Court to compel the Plaintiff to arbitrate her claims individually, rather than proceeding in Court on behalf of a Class. Plaintiff opposed the motion by arguing that the arbitration provision was unenforceable. The Court granted Defendant's motion to compel arbitration, ruling that the issue of enforceability was for the arbitrator to decide, and stayed the Litigation pending that decision. Plaintiff initiated arbitration. Plaintiff then successfully argued that the arbitrator should refuse to hear the arbitration because the agreement was unenforceable. The Court confirmed the arbitrator's decision and allowed the lawsuit to proceed. Defendant then moved to strike Plaintiff's class allegations or deny certification of the Class. The Court denied that motion.

Class Counsel has conducted a thorough examination and investigation into the facts and law at issue. The parties participated in a mediation session with the Honorable Richard Kramer, retired San Francisco Superior Court judge.

Counsel for both Plaintiffs and Defendant have determined that there is significant risk to both sides in continuing the litigation. For example, Class Counsel has concluded that there may be substantial difficulties establishing that statements or alleged omissions in Defendant's materials were likely to deceive reasonable consumers and the amount of damages or restitution due to the Class or to any Class Member. And both sides want to avoid the uncertainty, delay, and expense of continuing to litigate.

The Parties have engaged in mediation and several rounds of settlement discussions. After considering the risks and costs of further litigation, the Parties have concluded that it is desirable that the Plaintiff's claims be settled and dismissed on the terms of the Settlement Agreement.

Plaintiff and Class Counsel have concluded that the terms and conditions of the Settlement are fair, reasonable, adequate, and equitable, and that the Settlement is in the best interest of the Class Members. The Settlement allows Class Members to obtain a Shipping Code for free shipping on a future order from the Shutterfly Website and a Promotional Code redeemable towards the purchase price on a future order from the Shutterfly Website automatically, without having to submit a claim. Alternatively, Class Members who redeemed Shutterfly General Spend Deals can instead choose to submit a Claim to receive a Cash Refund equal to 10% of the Promotional Value of the Groupon redeemed, plus 50% of the amount the Class Member paid Shutterfly for shipping in connection with the order in which the Groupon was redeemed.

## 5.    What Can I Get In The Settlement?

If you purchased a Shutterfly General Spend Groupon that was never redeemed, you will automatically receive, without having to submit a Claim, a Shipping Code for free shipping on a future order from the Shutterfly Website and a Promotional Code worth 110% of the Promotional Value of the Groupon purchased. The Promotional Code is redeemable towards the purchase price of a future order from the Shutterfly Website. The 18-digital code associated with the Shutterfly General Spend Groupon you purchased will no longer be valid.

If you redeemed a Shutterfly General Spend Groupon, you will automatically receive, without having to submit a Claim, a Shipping Code for free shipping on a future order from the Shutterfly Website and a Promotional Code worth 20% of the Promotional Value of the Groupon you redeemed. The

Promotional Code is redeemable towards the purchase price of a future order from the Shutterfly Website. If you redeemed a Shutterfly General Spend Groupon, and you do not want a Shipping Code and Promotional Code, you can instead file a claim. If you timely submit a Valid Claim form, you will receive a Cash Refund equal to 10% of the Promotional Value of the Groupon you redeemed, plus 50% of the amount you paid for shipping in connection with the order in which the Groupon was redeemed. Claims will be paid only if deemed valid and only after the Court approves the Settlement.

The Settlement also requires Defendant to clarify that future purchasers of any Shutterfly General Spend Deals will receive a promotional code that cannot be used with any other Shutterfly promotional code or free shipping code on the same order to obtain additional discounts.

## 6.     How Do I Make A Claim?

To make a Claim for a Cash Refund, you must fill out the Claim Form available on this Settlement Website, [website]. You can submit the Claim Form online, or you can print it and mail it to the Claim Administrator at: [address]. Claim Forms must be submitted online or postmarked on or before 11:59 p.m. Pacific Time on [DATE] by the Claim Administrator.

Please note that a Claim Form that is not properly filled out and signed or that is not submitted or postmarked by the deadline or is determined to be fraudulent will be invalid and disregarded by the Claim Administrator.

## 7.     When Do I Get My Benefits?

Timely submitting a Claim Form does not provide a guaranteed benefit. A Final Approval Hearing will be scheduled for [DATE]. If the Court approves the Settlement and there are no appeals, then the Shipping Codes, Promotional Codes, and Cash Refunds will be distributed approximately 35 days after the Settlement is no longer subject to appeal or review, unless otherwise ordered by the Court. If the Court does not approve the Settlement, or if the Settlement is overturned on appeal, no Shipping Code, Promotional Codes, or Cash Refunds will be issued.

## 8.     What Do Plaintiffs And Their Lawyers Get?

To date, Class Counsel has not been compensated for any of their work on this case. As part of the Settlement, Class Counsel may apply to the Court to award them an amount not to exceed $350,000 from Defendant to pay their Attorneys' Fees and Expenses.. An award to Class Counsel does not reduce the funds available to pay members of the Class.

In addition, the named Class Representative in this case may apply to the Court for a Class Representative Incentive Award up to $5,000. This payment is designed to compensate the named Class Representative for the time, effort, and risks she undertook in pursuing this litigation to benefit the Class.

A copy of Class Counsel's motion for an award for Attorneys' Fees and Expenses and for a Class Representative Incentive Award is available on the Settlement Website. The Court will determine the amount of Attorneys' Fees and Expenses as well as the amount of Class Representative Incentive Award.

9.    **What Happens If I Do Not Opt-Out From The Settlement?**

If you are a Class Member and you do not Opt-Out from the Settlement, you will be legally bound by all orders and judgments of the Court, and you will also be legally bound to the Releases of the Claims in the Settlement. This means that in exchange for being a Class Member and being eligible for the Shipping Code, Promotional Code, and Cash Refunds in the Settlement, you will not be able to sue, continue to sue, or be part of any other lawsuit against Shutterfly, Inc., Groupon, Inc. and/or any of the Released Parties that involves the same legal Claims as those resolved through this Settlement.

**You will not be responsible for any out-of-pocket costs or attorneys' fees concerning this case if you stay in the class.**

Staying in the class means that you agree to the following terms of the Settlement that describe exactly the legal claims that you give up:

a)   If the Court grants final approval of the settlement, Class Members, including any person claiming derivative rights of the Class Class Member as such person's parent, child, heir, guardian, associate, co-owner, attorney, agent, administrator, executor, devisee, predecessor, successor, assignee, assigns, representative of any kind, shareholder, partner, director, employee or affiliate, shall have unconditionally, completely, and irrevocably released and discharged the Released Parties from the Released Claims. "Released Claims" means all claims that were, or could have been, asserted in the Litigation that arise out of or relate to (i) the allegations that the Shutterfly General Spend Groupon promotions were false, misleading or deceptive, (ii) the allegations that Shutterfly committed breaches of contract or fraud in connection with the Shutterfly General Spend Groupon promotions, (iii) the allegations that Shutterfly is liable for damages or penalties for including and/or trying to enforce an unlawful or unenforceable arbitration agreement in its Terms of Use, or (iv) the allegations that Shutterfly engaged in unfair or unlawful business practices with respect to its General Spend Groupon promotions and/or the arbitration agreement in its Terms of Use. The Released Parties are Defendant, Groupon, Inc., and each of their respective current and former parent companies, subsidiaries, divisions, and current and former affiliated individuals and entities, legal successors, predecessors (including companies they have acquired, purchased, or absorbed), assigns, joint ventures, and each and all of their respective officers, partners, directors, owners, stockholders, servants, agents, shareholders, members, managers, principals, investment advisors, consultants, employees, representatives, attorneys, accountants, lenders, underwriters, benefits administrators, investors, funds, and insurers, past, present and future, and all persons acting under, by, through, or in concert with any of them.

b)   With respect to the Released Claims set forth in the preceding paragraph, each Class Member shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to section 1542 of the California Civil Code, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN**

**BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Class Members understand and acknowledge the significance of these waivers of California Civil Code section 1542 and any other applicable federal or state statute, case law, rule or regulation relating to limitations on releases. In connection with such waivers and relinquishment, the Class Members acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts that they now know or believe to be true with respect to the subject matter of the Settlement, but that it is their intention to release fully, finally, and forever all Released Claims with respect to the Released Parties, and in furtherance of such intention, the release of the Released Claims will be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

c) The Parties shall be deemed to have agreed that the release set forth herein will be and may be raised as a complete defense to and will preclude any action or proceeding based on the Released Claims.

The full text of the settlement agreement, which includes all of the provisions about settled claims and releases, is available at [website].

## 10.    How Do I Opt-Out From The Settlement?

You can Opt-Out from the Class—that is, be excluded from the Class—if you wish to retain the right to sue Defendant separately for the Released Claims. If you Opt-Out, you cannot obtain any benefits from the Settlement, such as a Shipping Code, Promotional Code, or Cash Refund. In addition, if you Opt-Out, you cannot submit an Objection to the Settlement.

To Opt-Out, you must complete the online form at the Settlement Website or mail an Opt-Out request to the Claim Administrator at [address]. If mailed, the Opt-Out request must be signed by the Class member requesting exclusion, contain the Class member's full name and address; and the following statement: "I request to be excluded from the proposed class settlement in *Taylor v. Shutterfly, Inc.*, Case No. 5:18-cv-00266-BLF (N.D. Cal.)."

**To be valid, the Opt-Out request must be submitted online or postmarked on or before the Opt-Out Deadline, which is** [DATE]**.**

## 11.    How Do I Object To The Settlement?

You can ask the Court to deny approval of the Settlement by timely filing an Objection with the Court. You can't ask the Court to require a larger Settlement; the Court can only approve or disallow the Settlement. If the Court denies approval to the Settlement, no Shipping Codes, Promotonal Codes, or Cash Refunds will be issued, and the lawsuit will continue.

You can also ask the Court to disapprove the requested payments to Plaintiff and to Class Counsel. If those payments are disapproved, no additional money will be paid to the Class. Instead, the funds earmarked for Plaintiff and her attorneys will be retained by Defendant.

You may also appear at the Final Approval Hearing, either in person or through your own attorney.

Questions? Visit [website] or call [phone number].

If you appear through your own attorney, you are responsible for paying that attorney. **If you want to raise an objection to the Settlement at the Final Approval Hearing, you must submit that objection in writing, by the Objection Deadline, which is** [DATE]**.**

If you want to raise an Objection to the Settlement at the Final Approval Hearing, you must submit that Objection in writing to the Class Action Clerk, United States District Court for the Northern District of California, San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, or file via the Court's electronic filing system (ECF). Your Objection must be postmarked (if mailed) or submitted via ECF by the Objection Deadline set forth above. Any Objection must include: (a) a reference to this case, *Taylor v. Shutterfly, Inc.*, Case No. 5:18-cv-00266-BLF (N.D. Cal.) and the name of the presiding judge, the Hon. Beth Labson Freeman; (b) the name, address, telephone number, and, if available, the email address of the Person objecting, and if represented by counsel, of his/her counsel; (c) a written statement of all grounds for the Objection, accompanied by any legal support for such Objection; (d) whether he/she intends to appear at the Final Approval Hearing, either with or without counsel; (e) a statement of his/her membership in the Class, including all information required by the Claim Form; and (f) a detailed list of any other objections submitted by the Class Member, or his/her counsel, to any class actions submitted in any court, whether state or otherwise, in the United States in the previous five (5) years. If the Class Member or his/her counsel has not objected to any other class action settlement in any court in the United States in the previous five (5) years, he/she shall affirmatively state so in the written materials provided in connection with the Objection to this Settlement. Failure to include this information and documentation may be grounds for overruling and rejecting your Objection.

If you want to appear, either personally or through counsel, at the Final Approval Hearing in order to present argument regarding your Objection, you also must include in your Objection a Notice of Intention to Appear. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that you or your attorney will present to the court in connection with the Final Approval Hearing. If you fail to submit a proper Notice of Intention to Appear, you (or your attorney) may not be heard during the Final Approval Hearing.

**If you fail to comply with these requirements or fail to submit your Objection and Notice of Intention to Appear by the deadline (which is** [DATE]**), you may be deemed to have waived all objections and may not be entitled to speak at the Final Approval Hearing on** [DATE]**.**

If you file an Objection to the Settlement but still want to submit a Claim in the event the Court approves the Settlement, you must still timely submit a Claim Form according to the instructions described above.

## 12.    When Will The Court Decide If The Settlement Is Approved?

The Court will hold a hearing on [DATE], to consider whether to approve the Settlement. The hearing will be held in the United States District Court of the Northern District of California, before the Honorable Beth Labson Freeman, in the San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, or such other judge assigned by the Court. The courtroom will be assigned later and can be obtained from the Settlement Website or the Clerk of the Court. Virtual attendance may be possible; please check the Settlement Website and the Court's website at cand.uscourts.gov for more information

The hearing is open to the public. This hearing date may change without further notice to you. Consult the Settlement Website at [website] or the Court docket in this case available through Public Access to Court Electronic Records PACER (http://www.pacer.gov), for updated information on the

hearing date and time.

| 13. | **How Do I Get More Information?** |
|---|---|

You can inspect many of the court documents connected with this case on the Settlement Website. Other papers filed in this lawsuit are available by accessing the Court docket in this case available through PACER (http://www.pacer.gov).

You can contact the Claim Administrator at [address] or by telephone at [phone number].

You can also obtain additional information by contacting Class Counsel:

> Marie A. McCrary
> GUTRIDE SAFIER LLP
> 100 Pine Street, Suite 1250
> San Francisco, CA 94111
> Tel: 415-639-9090
> www.gutridesafier.com

Please do not address any questions about the Settlement or Litigation to the Clerk of the Court or the Judge.

EXHIBIT B-2

To:         [Customer email address]

From:      Class Action Claim Administrator

Subject:    Notice of Class Action Settlement – [Claimant Identification Number]

---

### Claimant Identification Number
[UNIQUE CLAIM ID NUMBER]

### Why Am I Receiving This Notice?

You are receiving this notice because, according to the records of Groupon and Shutterfly, you purchased one or more Shutterfly General Spend Groupons between June 1, 2015 and April 30, 2018 that were never redeemed, or you redeemed one or more Shutterfly General Spend Groupons purchased during that period.

If the Settlement is approved, you will automatically receive the following:

- One Promotional Code worth [SPECIFIC AMOUNT FOR CLASS MEMBER] towards a future purchase from Shutterfly.com.
[repeat prior line for each promotional code]
- [number] of Shipping Code[s]. Each Shipping Code can be used for free shipping on a future purchase from Shutterfly.com.

You do not need to submit a Claim to receive these benefits.

[PARAGRAPH FOR CLASS MEMBERS WHO REDEEMED]: Instead of the Shipping and Promotional Codes set forth above, you have the right to make a claim to receive a cash refund for [SPECIFIC AMOUNT FOR CLASS MEMBER]. Read below for information about how to file your Claim.

For more information about the method used to calculate the amount of the settlement benefits you may receive, review the Long Form notice available at www.shutterflypromosettlement.com.

### What's this about?
A class action Settlement has been reached in a case against Shutterfly, Inc ("Shutterfly"). The case alleges that Shutterfly engaged in false and misleading advertising of deals on Groupon.com. These deals were in the form of "$X for $Y to Spend at Shutterfly." They are referred to in the lawsuit as the "Shutterfly General Spend Groupons." Plaintiff alleges that Shutterfly failed to disclose to purchasers that they would receive a promotional code that could only be used toward full priced items and could not be combined with any other discounts offered on the Shutterfly website, including product discounts and free shipping. Shutterfly denies any wrongdoing, and the Court has made no determination about whether Plaintiff's allegations or Shutterfly's defenses have merit. The lawsuit is *Taylor v. Shutterfly, Inc.*, in United States District Court for the Northern District of California, Case No. 5:18-cv-00266-BLF. The Settlement requires Shutterfly to change its business practices and compensate consumers.

## Does The Class Include Me?

You are an eligible Class Member if you are a United States resident who, (i) purchased Shutterfly General Spend Groupon any time between June 1, 2015 to April 30, 2018 that was never redeemed; or, (ii) redeemed a Shutterfly General Spend Groupon purchased during that period.

## How Do I Make A Claim?

You do not need to file a claim to obtain the Shipping and Promotional Codes set forth above. Those will be sent to you automatically if the Settlement is approved.

[PARAGRAPH FOR CLASS MEMBERS WHO REDEEMED SHUTTERFLY GENERAL SPEND GROUPON(S)]: However, if you want a Cash Refund instead of the Shipping and Promotional Codes, you must **file a claim online or to print a claim form to mail in, click <link>here</link>.** The deadline to submit claims is [Date]. If your claim is valid, you will receive the cash refund amount shown above.

## What are the Other Settlement Benefits

The Settlement also requires Shutterfly to ensure that their advertising of Shutterfly General Spend Groupons discloses to consumers that they will receive a promotional code that cannot be combined with any other Shutterfly promotional codes or shipping codes.

## What are my rights?

You may make Object, Opt-Out, or do nothing. If you **Opt-Out of the Settlement**, you may pursue a separate lawsuit, but you will not receive Shipping and Promotional Codes [or a Cash Refund]. Your Opt-Out request must be received by the Claim Administrator by [Date]. If you do not Opt-Out, you give up your right to bring a separate lawsuit. **To object**, you must submit a written Objection that complies with the requirements in the applicable Settlement Notice available at www.shutterflypromosettlement.com. Your Objection must be filed with the Court by [Date]. **If you do nothing and you are a Class Member,** you will be releasing claims against Shutterfly that relate to the allegations in the lawsuit.

## What will happen next?

The Court presiding over the case will hold a Fairness Hearing to review the Settlement. This hearing will be held on [Date], in the U.S. District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, before the Honorable Beth Labson Freeman. The Court will decide whether to approve the Settlement and to make certain awards to be paid by Shutterfly, including whether to award Attorneys' Fees and Costs of up to $350,000, plus $5,000 to the Plaintiff as a Class Representative Incentive Award. The Application for Attorneys' Fees and Expenses is available on www.shutterflypromosettlement.com. You may, but don't have to, attend the hearing. Shipping Codes and Promotional Codes will be issued to the Class Members only if the Settlement is approved and any Objections are resolved. Please be patient.

## How can I get more information?

For more information, visit www.shutterflypromosettlement.com or contact the Claim Administrator at [phone number] or [mailing address]. Please do not telephone the Court to inquire about this settlement.

EXHIBIT B-3

# NOTICE OF
# CLASS ACTION SETTLEMENT

*Taylor v. Shutterfly*
Settlement Claims Administrator
[Address]
[Phone]

First-Class
Mail
US Postage
Paid
Permit #__

## To Persons Who Purchased Shutterfly General Spend Groupons Between June 1, 2015 and April 30, 2018 that Were Not Redeemed, or Redeemed Shutterfly General Spend Groupons Purchased During that Period

## Please read to learn your rights in the settlement

I|||||||||||||||||||||||||
Postal Service: Please do not mark barcode

«Claimant ID»
«First1» «Last1»
«C/O»
«Addr1»  «Addr2»
«City», «St»  «Zip»

---

Claimant Id: [ID]

A proposed class action settlement has been reached with Shutterfly Inc. ("Defendant"), regarding its advertisement and sale of Shutterfly General Spend Groupons. The settlement resolves a lawsuit entitled *Taylor v. Shutterfly, Inc.*, Case No. 5:18-cv-00266-BLF (the "Lawsuit"), United States District Court, Northern District of California (the "Court"). The Court authorized this notice.

The Lawsuit alleges that Defendant falsely advertised deals it sold on Groupon.com for a price paid ("Paid Value") which could be redeemed at a greater dollar value ("Promotional Value") towards a Shutterfly purchase ("Shutterfly General Spend Groupons") by failing to disclose that the Groupon could not be redeemed at the same time as any other discounts offered on the Shutterfly website, including product discounts and free shipping. Defendants deny all allegations and claims. The Court has not decided the Lawsuit, but the parties have agreed to a class settlement to resolve the dispute.

You are receiving this notice because, according to the records of Groupon and Shutterfly, you purchased one or more Shutterfly General Spend Groupons that were never redeemed, or you redeemed one or more Shutterfly General Spend Groupons. If the Settlement is approved, you will automatically receive the following benefits:

**- One Promotional Code worth [SPECIFIC AMOUNT FOR CLASS MEMBER] towards a future purchase from Shutterfly.com.**
**[repeat prior line for each promotional code]**
**- [number] of Shipping Code[s]. Each Shipping Code can be used for free shipping on a future purchase from Shutterfly.com.**

**[PARAGRAPH FOR CLASS MEMBERS WHO REDEEMED]: Instead of the Shipping and Promotional Codes set forth above, you have the right to make a claim to receive a cash refund for [SPECIFIC AMOUNT FOR CLASS MEMBER]. Read below for information about how to file your Claim.**

The settlement website, www.shutterflypromosettlement.com, also contains a more detailed notice of the terms of the settlement, answers to frequently asked questions, and other information about the Lawsuit. If you cannot access the website, you can obtain detailed notice by contacting the Claim Administrator at the address or phone number on the reverse side of this card.

If the settlement is approved by the Court, any legal claims you have against the Defendants that were or could have been raised in the Lawsuit related to the allegations in the Lawsuit will be released. If you wish to preserve your right to bring a separate lawsuit, you must opt out of the settlement. Alternatively, you have the right to object to the settlement. Your opt-out request or objection must be received by [Date]. For details on how to opt-out or object, visit the settlement website at www.shutterflypromosettlement.com.

The Court will hold a final approval hearing on [Date] at [Time] to consider whether to approve the settlement. Class Counsel will ask the Court to award them $350,000 in fees, costs and expenses, and $5,000 as an incentive to the consumer who started the Lawsuit. You may appear at the hearing, but you do not have to.

**For more information, please visit the settlement website at www.shutterflypromosettlement.com**

# EXHIBIT B-4

To:          [Customer email address]

From:        Class Action Claim Administrator

Subject:     Class Action Settlement Benefits Inside

---

### Why Am I Receiving This Notice?

You are receiving this notice because you are entitled to Court-approved benefits under a Class Action Settlement relating to Groupon deals for use at Shutterfly.com. Under the settlement, you are being provided:

(1) a Shipping Code for free shipping on a future purchase from Shutterfly.com

**Your Shipping Code is [CODE]**

and (2) a unique Promotional Code worth [SPECIFIC AMOUNT FOR CLASS MEMBER; 20% of the original Promotional Value of the Shutterfly General Spend Groupon for redeemed; or 110% of the original Promotional Value of the Shutterfly General Spend Groupon for unredeemed] that may be applied towards a future purchase from Shutterfly.com.

**Your Promotional Code is [CODE]**

The Promotional Code can be applied to merchandise purchases in an amount equal or greater than the value of the code. The Promotional Code shall be applied to the balance due, after applying any other promotional offers entered by the purchaser then applicable to the Shutterfly purchase, including the Shipping Code. Promotional Codes will not be valid on Tiny Prints products, prepaid, annual savings plans and video plans, yearbook orders, Groovebook, gift cards, cards sent using mailing services, designer review services, orders placed for in-store pick up and prior purchases, and cannot be combined with other code-based percentage-off or dollar-off offers. Taxes, shipping and handling may apply. The code shall be freely transferable subject to the terms applicable to all Groupons. The Promotional Code will never expire.

You may use the Shipping Code and the Promotional Code on the same purchase.  You will be able to enter the codes during the checkout process on Shutterfly.com.

### What's this about?

The United States District Court for the Northern District of California approved a class action Settlement in a case against Shutterfly, Inc ("Shutterfly"). The lawsuit was *Taylor v. Shutterfly, Inc.*, in United States District Court for the Northern District of California, Case No. 5:18-cv-00266-BLF.

For more information, visit www.shutterflypromosettlement.com.  Please do not telephone the Court to inquire about this settlement.

# EXHIBIT C

1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT
                          NORTHERN DISTRICT OF CALIFORNIA
8

9

10   MEGAN TAYLOR, individually and on behalf of all          CASE NO. 5:18-cv-00266-BLF
     others similarly situated,

11          Plaintiff,                                         **[PROPOSED] ORDER GRANTING**
                                                               **MOTION FOR PRELIMINARY**
12                  v.                                         **APPROVAL OF CLASS ACTION**
                                                               **SETTLEMENT**
13
     SHUTTERFLY, INC., and DOES 1-50,
14
                    Defendants.
15

16

17          Plaintiff Megan Taylor ("Plaintiff") has moved the Court for preliminary approval of a

18   proposed class action settlement with Defendant Shutterfly, Inc. ("Defendant"), the terms and

19   conditions of which are set forth in the Settlement Agreement filed with the Court on [Date]

20   ("Settlement Agreement"). The capitalized terms used in this Order shall have the same meaning

21   as defined in the Settlement Agreement except as otherwise expressly provided.

22                                         **RECITALS**

23   **A.     Procedural History**

24           This case concerns Defendant Shutterfly, Inc.'s ("Shutterfly" or "Defendant") advertising

25   and selling of deals on Groupon.com that were sold between June 1, 2015 to April 30, 2018 (the

26   "Class Period") for a price paid ("Paid Value") which could be redeemed at a greater dollar value

27   ("Promotional Value") towards a purchase on Shutterfly's website within a set period of time (the

28   "Shutterfly General Spend Groupons"). For example, the Groupon "$20 for $40 to Spend at

     Shutterfly" had a Paid Value of $20 and a Promotional Value of $40.

Plaintiff contends that Shutterfly failed to disclose to purchasers that they would receive a promotional code that could only be used toward full priced items and could not be combined with any other discounts offered on the Shutterfly website, including product discounts and free shipping, and included an unenforceable arbitration clause in its Terms of Use. Plaintiff alleged claims for violations of the California Consumer Legal Remedies Act, Civil Code § 1750, *et seq.*; false advertising under California Business and Professions Code § 17500, *et seq.*; breach of contract; and fraud, deceit, and/or misrepresentation, and seeking restitution, damages, an injunction and other relief. She sought to pursue these claims on behalf of herself and all persons who, between December 8, 2013 and the present, purchased in the United States a Shutterfly General Spend Groupon.

Defendant denies Plaintiff's allegations. It contends that the advertising of the Shutterfly General Spend Groupons is, and has always been, truthful and not misleading. Defendant therefore denies any liability, and denies that Plaintiff or any class members have suffered injury. Defendant further denies that this case meets the requirements for class certification under Fed. R. Civ. P. 23, except for purposes of settlement.

The history of this litigation is summarized in Part 1 of the Settlement Agreement. In brief, this case was filed on December 12, 2017 in California Superior Court, and Defendant removed the case to this Court on January 11, 2018. Defendant asked the Court to compel the Plaintiff to arbitrate her claims individually. Plaintiff opposed the motion by arguing, *inter alia*, that the arbitration provision was unenforceable. After the Court held that the issue of enforceability was for the arbitrator to decide, granted Defendant's motion to compel arbitration, and stayed the Litigation pending that the arbitrator's decision, Plaintiff initiated arbitration. Plaintiff successfully argued that the arbitrator should refuse to hear the arbitration because the agreement was unenforceable. The Court confirmed the arbitrator's decision. Defendant then moved to strike Plaintiff's class allegations or deny certification of the Class. The Court denied that motion. The Parties engaged in significant discovery, including written discovery requests to, responses from, and production of documents by, both parties.

On January 27, 2020, the Parties to this case participated in an all-day mediation conducted by the Honorable Richard Kramer (Ret'd) at JAMS in San Francisco, California. That mediation resulted in the Settlement that is the subject of this Order.

**B.    Summary of Settlement Terms**

The terms of the Settlement are summarized in the proposed Long Form Notice to Class Members, which is attached as Exhibit B1 to the Settlement Agreement. Under the proposed settlement, Class members who purchased a Shutterfly General Spend Groupon that was never redeemed are entitled to a Shipping Code for free shipping on a future purchase on the Shutterfly Website and a Promotional Code worth 110% of the original Promotional Value of the Shutterfly General Spend Groupon purchased. Class members who redeemed a Shutterfly General Spend Groupon are entitled to a Shipping Code for free shipping on a future purchase on the Shutterfly Website and a Promotional Code worth 20% of the original Promotional Value of the Shutterfly General Spend Groupon or at their option, a Cash Refund equal to 10% of the Promotional Value of the Groupon, plus 50% of the amount the Class Member paid Shutterfly for shipping in connection with the order in which the Groupon was redeemed. Cash Refunds are available only to Class members who file claims according to the instructions in the Long Form Notice, but the Shipping Code and Promotional Codes will be distributed to Class Members automatically without the need for a claim.

As part of the Settlement, Class Counsel may apply to this Court for an award of attorneys' fees and expenses of up to $350,000, as well as up to $5,000 as an Incentive Award to Plaintiff. Such amounts are not payable until eapproved by the Court, and the Court will defer any ruling on the appropriateness of such awards until the Final Approval Hearing.

**C.    Notice and Administration**

Class Notice is to be provided as described in the Settlement Agreement consistent with a notice plan designed by [IDENTIFY], the Claim Administrator, a well-known and experienced class action administrator. The Claim Administrator also will also receive and process Claim Forms and send Benefits Notice to Class Members who are entitled to receive a Shipping Code and Promotional Code. In brief, Class Notice will be provided via: (1) direct Email Notice to those

Class Members for whom an email address is available; (2) direct Postcard Notice mailed to those Class Members for whom a mailing address is available but an email address is not available; and (3) publication on a Settlement Website, located at www.shutterflypromosettlement.com.

All of the notices will link or point to the Settlement Website, which will contain a detailed class notice, including the procedures for class members to exclude themselves from the Settlement or object, as well as a copy of the Settlement Agreement and motion papers filed in connection with the Settlement.

### FINDINGS AND CONCLUSIONS

The Court has read and considered the Motion and all of the supporting documents, including the Settlement Agreement and its Exhibits, including the proposed Class Notice. The Court finds that there is a sufficient basis for granting preliminary approval of the Settlement Agreement, authorizing dissemination of the Class Notice, and authorizing the steps needed to determine whether the Settlement Agreement should be finally approved and the Litigation dismissed.

Accordingly, it is HEREBY ORDERED that:

1.    The proposed Settlement Agreement, submitted with the Motion, is preliminarily approved as likely to be approved under Federal Rule of Civil Procedure ("Rule") 23(e)(2) and as meriting notice to the Class for its consideration. Considering the factors set forth in Rule 23(e)(2), the Court preliminarily finds as follows:

   a.  Class Representatives and Class Counsel have adequately represented the Class.

   b.  The Settlement was negotiated at arm's length with the assistance of a well-respected and experienced private mediator.

   c.  The relief provided to the Class in the form of injunctive and monetary relief is adequate given the risks and uncertainty of trial.

   d.  The proposed award of Attorneys' Fees and Costs is reasonable.

   e.  The proposal treats all similarly situated Class Members equally relative to each other.

2. The Settlement also complies with the Northern District of California's Procedural Guidance for Class Action Settlements, https://www.cand.uscourts.gov/ClassActionSettlementGuidance.

3. Based upon the submissions of the Parties, and for the purposes of this Settlement only, the Court conditionally makes the following findings:

    a. Members of the Class are so numerous as to make joinder impracticable.

    b. There are questions of law and fact common to the Class, and such questions predominate over any questions affecting only individual Class Members for purposes of the Settlement.

    c. Plaintiff's claims and the defenses thereto are typical of the claims of the Class Members and the defenses thereto for purposes of the Settlement.

    d. Plaintiff and her counsel have, and will continue to, fairly and adequately protect the interests of the Class Members in this action with respect to the Settlement.

    e. The proposed Settlement is superior to all other available methods for fairly and efficiently resolving this action.

4. Accordingly, for settlement purposes only, the Court conditionally certifies a Class comprised of all United States residents who, in the United States, during the Class Period, either (i) purchased a Shutterfly General Spend Groupon that was never redeemed; or, (ii) redeemed a Shutterfly General Spend Groupon. For avoidance of doubt, the Class includes purchasers of each of the following Shutterfly General Spend Groupons: GP4W, GP7C, GP7D, GP7E, GP7F, GP7G, GP7H, GP7T, GP7U, GP7V, GP7W, GP7X, GP7Y, GP7Z, GP8A, GP9A, GP9B, GP9C, GP9D, GP9E, GP9F, GP9G, GP9H, GP9J, GP9L, GP9N, GP9P, GPAG, GPAH, GPAL, GPAM, GPAN, GPAP, GPAQ, GPAR, GPAS, GPAT, GPA7, GPA8, GPA9, GPBA, GPBB, GPBV, GPBW, GPBX, GPBY, GPBZ, GPB8, GPB9, GPCA, GPCB, GPCC, GPCU, GPCV, GPCW, GPDA, GPDB, GPDC, GPDD, GPDE, GPDF, GPDG, GPDH, GPDJ, GPDQ, GPDR, GPDS, GPDT, and GPDU.

5. The Court finds it appropriate to establish the following exclusions from the Class: (a) the undersigned judge and any member of her immediate family; (b) the Honorable Magistrate

Virginia K. DeMarchi and any member of her immediate family; (c) any government entity; (d) Honorable Richard Kramer (Ret'd) and any member of his immediate family; (e) Defendant; (f) any entity in which Defendant has a controlling interest; (g) any of Defendant's parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (h) any person who timely opts out of the Settlement.

6.     The Court conditionally appoints Plaintiff Megan Taylor to serve as Class Representative for the Class.

7.     The Court conditionally appoints the law firm of Gutride Safier LLP to serve as Class Counsel.

8.     A Final Approval Hearing shall be held before this Court at [Time] on [Date], before the undersigned at the San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, in courtroom 3 on the Fifth Floor, to address: (a) whether the proposed settlement should be finally approved as fair, reasonable, and adequate, and whether the Final Approval Order should be entered, and (b) whether Class Counsel's application for attorneys' fees, costs, and a payment to the Class Representative should be approved. The Final Approval Hearing may be postponed, adjourned, or continued by further order of this Court.

9.     The Court finds that the terms of the Settlement Agreement are sufficiently fair, reasonable, and adequate to allow dissemination of the Class Notice to members of the Class. This determination is not a final finding that the Settlement is fair, reasonable and adequate, but it is a determination that probable cause exists to disseminate Class Notice to the Class Members and hold a hearing on final approval of the proposed Settlement.

10.     The Court appoints and designates [ADMINISTRATOR] as the Claim Administrator.

11.     The Court approves, as to form and content, the Claim Form and the Class Notice, substantially similar to the forms attached as Exhibits [  ] to the Settlement Agreement. The Claim Form and the Notices are written in plain English, are easy to comprehend, and fully comply with the requirements of the Due Process Clause of the United States Constitution, Rule 23, and any other applicable law. The Parties shall have discretion to jointly make non-material minor

revisions to the Claim Form or the Class Notice. Responsibility regarding settlement administration, including, but not limited to, notice and related procedures, shall be performed by the Claim Administrator, subject to the oversight of the Parties and this Court as described in the Settlement Agreement. The costs of providing Class Notice to the Class Members shall be borne by Defendant.

12.    Defendant shall pay the Claim Administrator's reasonable costs associated with the administration of the Settlement, distribution of Class Notice pursuant to the Settlement Agreement, and any other tasks assigned to the Claim Administrator under the Settlement Agreement, by Defendant and the Class Representative's mutual written agreement, or as this Court may order up to $75,000.

13.    Defendant shall provide a declaration attesting that it utilized reasonable efforts to provide accurate Class Member data (and a description of those efforts) to the Claim Administrator set forth herein and the Settlement Agreement not less than fourteen (14) days prior to the Final Approval Hearing.

14.    The Claim Administrator shall provide a declaration attesting to its compliance with the Notice obligations set forth herein and the Settlement Agreement not less than fourteen (14) days prior to the Final Approval Hearing. The declaration shall include: the total number of Class Members; a sample copy of the Class Notice; the number of delivered and undeliverable Email Notices and Postcard Notices; the number of Class Members who submitted a Valid Claim; the number and names of Class Members who elected to opt out of the Class; and the number of Class Members who objected to the Settlement.

15.    Any Class Member wishing to make a claim must submit a Claim Form to the Claim Administrator, pursuant to the instructions set forth in the Class Notice. Claim Forms to be mailed must be postmarked, and Claims Forms to be submitted online through the Settlement Website must be submitted, no later than [DATE].

16.    Each Class Member who wishes to be excluded from the Settlement must submit to the Claim Administrator a written statement requesting exclusion from the Settlement. Such requests for exclusion must be made by submitting the online form on the Settlement Website or

by mailing a valid exclusion request by First Class U.S. Mail to the address specified in the Class Notice. Such requests for exclusion must be submitted online or postmarked on or before         . To be effective, the request for exclusion must:

      a.  Include the Class Member's full name and address;

      b.  Explicitly and unambiguously state his or her desire to be excluded from the Settlement such as including the statement that "I request to be excluded from the proposed class settlement in *Taylor v. Shutterfly, Inc.*, Case No. 5:18-cv-00266-BLF (N.D. Cal.);"; and

      c.  Be individually and personally signed (or electronically signed) by the Class Member (if the Class Member is represented by counsel, it must also be signed by such counsel).

17.    Any Class Member who fails to submit a timely and valid written request for exclusion consistent with this Order shall be deemed to be a member of the Class and as such shall be bound by all terms of the Settlement proceedings, orders, and judgments of this Court pertaining to the Class pursuant to the Settlement Agreement unless determined otherwise by the Court.

18.    Class Members (whether styled as an exclusion request, an objection, or a comment) as to which it is not readily apparent whether the Class Member meant to request an exclusion from the Class will be evaluated jointly by counsel for the Parties, who will make a good-faith evaluation if possible. Any uncertainties about whether a Class Member requested to exclude himself or herself from the Class will be resolved by the Court.

19.    The Claim Administrator shall provide in writing to Defendant's Counsel and Class Counsel the names of those Class Members who have requested exclusion from the Settlement in a valid and timely manner within fifteen (15) days following the Objection/Exclusion Deadline, and Plaintiff's Counsel shall file that list with the Court, with service on Defendant's Counsel.

20.    Any member of the Class who elects to be excluded shall not receive any benefits of the Settlement, shall not be bound by the terms of the Settlement Agreement or any Final Approval Order, and shall have no standing to object to the Settlement or intervene in the

Litigation. Members of the Class who do not wish to be bound by a judgment in favor of or against the Class must exclude themselves from the Litigation.

21.    Any Class Member who does not submit a valid and timely request for exclusion may submit an objection to the Settlement Agreement. Any Class Member (if the Class Member is represented by counsel, the objection additionally must be signed by such counsel) who intends to object to the Settlement or the Settlement Agreement (including Class Counsel's requested Attorneys' Fees and Expense application) must submit a written notice of objection to the Class Action Clerk for this Court by [DATE], which must be individually and personally signed by the Class Member, and must include:

    a.   A reference to this case, *Taylor v. Shutterfly, Inc.*, Case No. 5:18-cv-00266-BLF, and the name of the presiding judge, the Hon. Beth Labson Freeman, United States District Court for the Northern District of California;

    b.   The objecting Class Member's full name, address, and telephone number, and, if available, email address;

    c.   An attestation that the objector is a member of the Class;

    d.   A written statement of all grounds for the Objection, accompanied by any legal support for the Objection;

    e.   Copies of any papers, briefs, or other documents upon which the Objection is based;

    f.   The name, address, email address, and telephone number of any attorney representing the objector;

    g.   A list of all cases in which the Class Member and/or his or her counsel filed or in any way participated—financially or otherwise—objecting to a class settlement in any court in the United States during the preceding five (5) years;

    h.   If the Class Member or his or her counsel has not objected to any other class settlement in any court in the United States in the previous five (5) years, he or she shall affirmatively state; and

    i.   A statement indicating whether the objector and/or his or her counsel intends to appear at the Final Approval Hearing and, if so, a list of all persons, if any, who will be called to testify in support of the Objection.

22.    Objecting Class Members or their counsel who wish to appear at the Final Approval Hearing must make such request by filing with the Court and serving upon Class Counsel and

Defendant's Counsel at the following addresses a Notice of Intention to Appear at least fourteen (14) days prior to the Final Approval Hearing:

Class Counsel

Marie McCrary
Gutride Safier LLP
100 Pine St., Suite 1250
San Francisco, California 94111

Defendant's Counsel

Brian D. Berry
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA 94111

Plaintiff shall file any reply in support of Final Approval and for any award of attorneys' fees, costs and a class representative payment (including responses to any timely and valid objection to the Settlement Agreement) no later than seven (7) days prior to the Final Approval Hearing. Such materials shall be served on Class Counsel, Defendant's Counsel, and on any member of the Class (or his or her counsel, if represented by counsel) to whose objection to the Settlement Agreement the memoranda or other materials respond and must be posted to the Settlement Website within one day of filing.

23.    Following the Final Approval Hearing, and based upon the entire record in this matter, the Court will decide whether the Settlement Agreement should be finally approved and, if so, whether an award of Attorneys' Fees and Expenses of up to $350,000 should be awarded to Class Counsel, and whether an Incentive Award of up to $5,000 should be awarded to Plaintiff.

24.    If the Court determines the Settlement is reasonable, fair, and adequate, the Court will issue a Final Order and Judgment memorializing its decision in the form contemplated by Exhibit [ ] of the Settlement Agreement. The Court will also issue an Order awarding reasonable fees and expenses to Class Counsel in an amount determined by the Court but in no event more than $350,000.

25.    All further proceedings and deadlines in this action are hereby stayed except for those required to effectuate the Settlement Agreement and this Order.

26.     Pending final determination of whether the Settlement should be approved, Plaintiff and each Class Member, and any person purportedly acting on behalf of any Class Member(s), are hereby enjoined from commencing, pursuing, maintaining, enforcing, or proceeding, either directly or indirectly, any Released Claims in any judicial, administrative, arbitral, or other forum, against any of the Released Parties, provided that this injunction shall not apply to the claims of Class members who have timely and validly requested to be excluded from the Class. This injunction will remain in force until the Effective Date or until such time as the Parties notify the Court that the Settlement has been terminated. This injunction is necessary to protect and effectuate the Settlement, this Order, and this Court, authority regarding the Settlement, and is ordered in aid of this Court's jurisdiction and to protect its judgments.

27.     In the event that the proposed Settlement is not finally approved by the Court, or in the event that the Settlement Agreement becomes null and void or terminates pursuant to its terms, this Order and all orders entered in connection herewith shall become null and void, shall be of no further force and effect, and shall not be used or referred to for any purposes whatsoever in this Litigation or in any other case or controversy, in such event the Settlement Agreement and all negotiations and proceedings directly related thereto shall be deemed to be without prejudice to the rights of any and all of the Parties, who shall be restored to their respective positions as of the date and time immediately preceding the execution of the Settlement Agreement.

28.     Counsel for the Parties are hereby authorized to utilize all reasonable procedures in connection with the administration of the Settlement which are not materially inconsistent with either this Order or the terms of the Settlement Agreement.


Dated: _____ _____, 2021


                                              _____
                                              Hon. Beth Labson Freeman
                                              U.S. District Judge

# EXHIBIT D

EXHIBIT D – FINAL APPROVAL ORDER

1
2
3
4 UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
5
6 MEGAN TAYLOR, individually and on behalf of all others similarly situated,

CASE NO. 5:18-cv-00266-BLF

7

**[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

8        Plaintiff,

9                       v.

10 SHUTTERFLY, INC., and DOES 1-50,

11                              Defendants.

12
13        Plaintiff Megan Taylor ("Plaintiff" or "Class Representative") has moved the Court for

14 final approval of a proposed class action settlement with Defendant Shutterfly, Inc. ("Shutterfly"

15 or "Defendant"), the terms and conditions of which are set forth in the Settlement Agreement filed

16 with the Court on [DATE] ("Settlement Agreement") (Dkt. _____). For the reasons described

17 more fully below, the Court GRANTS final approval of the Settlement. All capitalized terms used

18 in this Order have the meaning as defined in the Settlement Agreement.

19                       **PROCEDURAL HISTORY**

20        This case concerns Defendant Shutterfly, Inc.'s ("Shutterfly" or "Defendant") advertising

21 and selling of deals on Groupon.com that were sold between June 1, 2015 to April 30, 2018 (the

22 "Class Period") for a price paid ("Paid Value") which could be redeemed at a greater dollar value

23 ("Promotional Value") towards a purchase on Shutterfly's website within a set period of time (the

24 "Shutterfly General Spend Groupons"). For example, the Groupon "$20 for $40 to Spend at

25 Shutterfly" had a Paid Value of $20 and a Promotional Value of $40. The procedural history is

26 summarized in the Order Granting Preliminary Approval (Dkt. __.)

27
28

## SUMMARY OF SETTLEMENT TERMS

Under the Settlement Agreement, Defendant is stipulating to add the following disclosures to the terms and conditions of any Shutterfly General Spend Groupons offered for sale ninety (90) days after the Effective Date (unless such fact is untrue for the particular Shutterfly General Spend Groupon being offered): (i) "By purchasing this offer you will obtain a promotional code for use at the Shutterfly website."  (ii) "When you redeem the Groupon at Shutterfly, you cannot use any other Shutterfly promotional code on the same order to obtain additional discounts. Instead, you must pay the undiscounted price." And (iii) "When you redeem the Groupon at Shutterfly, you [also] cannot use any Shutterfly free shipping code on the same order. Instead, you must pay for shipping."

The terms of the Settlement are summarized in the proposed Long Form Notice to Class Members, which is attached as Exhibit B1 to the Settlement Agreement. Under the proposed settlement, Class members who purchased a Shutterfly General Spend Groupon that was never redeemed are entitled to a Shipping Code for free shipping on a future purchase on the Shutterfly Website and a Promotional Code worth 110% of the original Promotional Value of the Shutterfly General Spend Groupon purchased. Class members who redeemed a Shutterfly General Spend Groupon are entitled to a Shipping Code for free shipping on a future purchase on the Shutterfly Website and a Promotional Code worth 20% of the original Promotional Value of the Shutterfly General Spend Groupon or at their option, a Cash Refund equal to 10% of the Promotional Value of the Groupon, plus 50% of the amount the Class Member paid Shutterfly for shipping in connection with the order in which the Groupon was redeemed. Cash Refunds are available only to Class members who file claims according to the instructions in the Long Form Notice, but the Shipping Code and Promotional Codes will be distributed to Class Members automatically without the need for a claim.

## NOTICE AND SETTLEMENT ADMINISTRATION

The Settlement Agreement is being administered by a well-known, independent claims administrator, [ ]. Following the Court's Preliminary Approval Order, [ ] established the Settlement Website at [ ], which contained the Class Notice, including the procedures for Class

Members to submit claims or exclude themselves, a contact information page that includes address and telephone numbers for the Claim Administrator and the parties, the Settlement Agreement, the signed Preliminary Approval Order, online and printable versions of the Claim Form and the opt out forms, and answers to frequently asked questions. In addition, the papers in support of final approval and Plaintiff's application for Attorneys' Fees and Expenses and Incentive Award were placed on the Settlement Website after they were filed. The Claim Administrator also operated a toll-free number for Class Member inquiries.

Class Notice was provided via direct notice which referred Class Members to the Settlement Website. ([record citations]) In particular, Class Notice was provided via: (1) direct Email Notice to those Class Members for whom an email address was available; (2) direct Postcard Notice mailed to those Class Members for whom a physical mailing address was available but an email address was not available; (3) publication in [NEWSPAPER]; and (4) publication on a Settlement Website, located at [ ].

In total, the notice program is estimated to have reached at least [ ]% of Class Members an average of three times each. ([record cite]).

Class Members were given until [_____] to object to or exclude themselves from the proposed Settlement. A total of _____ Claims were received by the Claim Administrator. Of these, ____ Claims were deemed valid. A total number of _____ Shipping Codes for free shipping and Promotional Codes worth a total of _____ were sent to Class Members. _____ Cash Refunds were paid (total value _____).

## ANALYSIS

**A.    JURISDICTION**

This court has jurisdiction under 28 U.S.C. § 1332(d)(2).

**B.    CERTIFICATION OF THE CLASS**

The Court finds that the prerequisites of Rule 23 have been satisfied for certification of the Class for settlement purposes because: Class Members are so numerous that joinder of all members is impracticable; there are questions of law and fact common to the Class; the claims and defenses of the Class Representative are typical of the claims and defenses of the Class she

represents; the Class Representative has fairly and adequately protected the interests of the Class with regard to the claims of the Class she represents; common questions of law and fact predominate over questions affecting only individual Class Members, rendering the Class sufficiently cohesive to warrant a class settlement; and the certification of the Class is superior to individual litigation and/or settlement as a method for the fair and efficient resolution of this matter.

For purposes of the Settlement and this Final Approval Order and Judgment, the Court hereby finally certifies the following Class: All United States residents who, in the United States, during the Class Period, either (i) purchased a Shutterfly General Spend Groupon that was never redeemed; or, (ii) redeemed a Shutterfly General Spend Groupon. For avoidance of doubt, the Class includes purchasers of each of the following Shutterfly General Spend Groupons: GP4W, GP7C, GP7D, GP7E, GP7F, GP7G, GP7H, GP7T, GP7U, GP7V, GP7W, GP7X, GP7Y, GP7Z, GP8A, GP9A, GP9B, GP9C, GP9D, GP9E, GP9F, GP9G, GP9H, GP9J, GP9L, GP9N, GP9P, GPAG, GPAH, GPAL, GPAM, GPAN, GPAP, GPAQ, GPAR, GPAS, GPAT, GPA7, GPA8, GPA9, GPBA, GPBB, GPBV, GPBW, GPBX, GPBY, GPBZ, GPB8, GPB9, GPCA, GPCB, GPCC, GPCU, GPCV, GPCW, GPDA, GPDB, GPDC, GPDD, GPDE, GPDF, GPDG, GPDH, GPDJ, GPDQ, GPDR, GPDS, GPDT, and GPDU.

Excluded from the Class are (a) the undersigned judge and any member of her immediate family; (b) the Honorable Magistrate Virginia K. DeMarchi and any member of her immediate family; (c) any government entity; (d) Honorable Richard Kramer (Ret'd) and any member of his immediate family; (e) Defendant; (f) any entity in which Defendant has a controlling interest; (g) any of Defendant's parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (h) all persons who have filed a timely Request for Exclusion to opt out of the Class.

For the purpose of this Settlement, the Court hereby finally approves Plaintiff as the Class Representative and the law firm of Gutride Safier LLP as Class Counsel.

## C.    NOTICE AND CLAIMS ADMINISTRATION

The Notice Plan provides notice to class members directly.  The Court reaffirms the

finding it made in the order granting preliminary approval that the notice plan provided the best practicable notice to the members of the class and satisfied the requirements of due process. The Court also finds, based on the evidence described above, that the notice plan reached at least [percent]% of the settlement class members an estimated average of [number] times each.  (Dkt. _____.) This notice comports with due process.  *See, e.g., Ellison v. Madden, Ltd.*, No. CV115935PSGAGRX, 2013 U.S. Dist. LEXIS 202269, at *3 (C.D. Cal. May 7, 2013) (approving a notice plan reaching 77%); *In re: Whirlpool Corp. Front–Loading Washer Prod. Liab. Litig.*, No. 1:08-WP-65000, 2016 U.S. Dist. LEXIS 130467, at *9 (N.D. Ohio Sept. 23, 2016) (approving notice plan reaching approximately 77.5 percent of Class Members).

## D.    FINAL APPROVAL OF SETTLEMENT

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate after considering whether: (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (d) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).[1] In reviewing the proposed settlement,

---

[1] Prior to the amendments to Rule 23, which took effect December 1, 2018, the Ninth Circuit had enumerated a similar list of factors to consider in evaluating a proposed class settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (enumerating the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement"). In the notes accompanying the Rule 23 amendments, the Advisory Committee explained that the amendments were not designed "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Accordingly, this Court applies the framework of Rule 23 while "continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045 *13 (N.D. Cal. Dec. 17, 2018).

the Court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027.

For the reasons further detailed below and discussed at the Final Approval hearing, the Court finds that the proposed settlement is fair and appropriate under the Rule 23(e)(2) factors. Plaintiff's claims are based on the marketing and selling of the Shutterfly General Spend Groupons. There would be a battle of the experts regarding consumer understanding, materiality of the representations, and the computation of damages, if any. Proceeding to trial would have been costly; recovery was not guaranteed; and there was the possibility of protracted appeals. Counsel for both Parties were highly experienced and they provided detailed declarations explaining why they supported the Settlement, and there is no factual basis to support any allegation of collusion or self-dealing.

### 1. Class Representative and Class Counsel Have Adequately Represented the Class.

In the Preliminary Approval Order, this Court found that the Class Representative and Class Counsel adequately represented the interests of the Class. This Court has seen no evidence to contradict my previous finding, and reconfirm it here. Class Counsel has vigorously prosecuted this action through discovery and formal mediation. Counsel therefore "possessed sufficient information to make an informed decision about settlement." *Hefler*, 2018 U.S. Dist. LEXIS 213045 *18.

### 2. The Settlement Was Negotiated at Arm's Length.

This Court finds that the Settlement is the product of serious, non-collusive, arms' length negotiations by experienced counsel with the assistance of a well-respected and experienced mediator, retired San Francisco Superior Court Judge Richard Kramer, at JAMS. *See, e.g., G. F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Hefler*, 2018 U.S. Dist. LEXIS 213045 *19 ("[T]he Settlement was the product of arm's length negotiations through two full-day mediation sessions and multiple follow-up calls

supervised by former U.S. District Judge Layn Phillips."). Further, before agreeing upon the terms of the Settlement, the Parties conducted factual investigation, which included document production, interrogatories, and informal discovery. The record was thus sufficiently developed that the Parties were fully informed as to the viability of the claims and able to adequately evaluate the strengths and weaknesses of their respective positions and risks to both sides if the case did not settle.

The Court has independently and carefully reviewed the record for any signs of collusion and self-dealing, and finds that no collusion or self-dealing occurred. Specifically, the Court finds that Class Counsel did not compromise the claims of the Class in exchange for higher fees.

### 3.    The Relief to the Class is Adequate Recovery to the Class

Although not articulated as a separate factor in Rule 23(e), "[t]he relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment. "The Court therefore examines 'the amount offered in settlement.'" *Hefler*, 2018 U.S. Dist. LEXIS 213045 *18 (quoting *Hanlon*, 150 F.3d at 1026).

### a.    Injunctive Relief

"Injunctions are the primary form of relief available under the UCL to protect consumers from unfair business practices, while restitution is a form of ancillary relief." *Kwikset v. Superior Court*, 51 Cal. 4th 310, 337 (2011). The Settlement requires Defendant to change the representations it makes when it markets and advertises future Shutterfly General Spend Groupons beginning ninety (90) days after the Effective Date. The Parties bargained for and reached agreement that the Defendant would prominently state each of the following facts (unless such fact is untrue for the particular Shutterfly General Spend Groupon being offered): (i) "By purchasing this offer you will obtain a promotional code for use at the Shutterfly website." (ii) "When you redeem the Groupon at Shutterfly, you cannot use any other Shutterfly promotional code on the same order to obtain additional discounts. Instead, you must pay the undiscounted price." And (iii) "When you redeem the Groupon at Shutterfly, you [also] cannot use any Shutterfly free shipping code on the same order. Instead, you must pay for shipping."

It is appropriate for the Court, in assessing whether the class is benefited by the settlement, to take into account the injunctive relief obtained, even if the Court is unable to determine the exact monetary value of such relief. *See Kumar v. Salov*, 737 Fed. Appx. 341, 342 (2018) (affirming settlement approval based on findings that class counsel reached an "excellent result" for the class, including achieving the class's non-monetary goal of "get[ting] the defendants to improve their practices"); *Allen v. Bedolla*, 787 F.3d 1218, 1225 (9th Cir. 2015) (citing *Bluetooth*) ("As a whole, the settlement appears to afford valuable relief, much by injunction, that will benefit the class"); *In re Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014) ("a court need not determine the 'value' of

particular injunctive relief"); *Laguna v. Coverall N. Am., Inc.,* 753 F.3d 918, 924 (9th Cir. 2014) (Ninth Circuit has "never required a district court to assign a monetary value to purely injunctive relief"), vacated on other grounds, 772 F.3d 608 (9th Cir. 2014); *cf. Allen* at 1225 (holding that district court could not award attorneys' fees on a percentage-of-benefit basis unless it made findings about value of that relief); *Bluetooth*, 645 F.3d at 941 (holding that lodestar-based award of fees is particularly "appropriate in class actions brought under fee-shifting statutes . . . where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation."). The settlement's inclusion of injunctive relief can be considered as a class benefit even if the injunction benefits not just class members, but the general public. *See, e.g.*, *In re TracFone Unlimited Service Plan Litigation,* 112 F. Supp. 3d 993, 1005 (N.D. Cal. 2015) ("The Court finds that the injunctive relief will have significant value for both class members and the general public.").

### b.      Monetary Relief

Defendant also agreed to provide monetary benefits to Class Members. Class Members who purchased a Shutterfly General Spend Groupon that was never redeemed will receive a Shipping Code for free shipping on a future purchase on the Shutterfly Website and a Promotional Code worth 110% of the original Promotional Value of the Shutterfly General Spend Groupon purchased. Class members who redeemed a Shutterfly General Spend Groupon will receive a Shipping Code for free shipping on a future purchase on the Shutterfly Website and a Promotional Code worth 20% of the original Promotional Value of the Shutterfly General Spend Groupon unless they elect to file a Claim to receive a Cash Refund equal to 10% of the Promotional Value of the Groupon, plus 50% of the amount the Class Member paid Shutterfly for shipping in connection with the order in which the Groupon was redeemed. Cash Refunds are available only to Class members who file claims according to the instructions in the Long Form Notice, but the Shipping Code and Promotional Codes will be distributed to Class Members automatically without the need for a claim.

Based on the record evidence and argument the parties submitted in connection with the Settlement, as well as the familiarity the Court has developed with this case, the Court finds that this monetary recovery is fair, reasonable and adequate, particularly given the overall claimed actual damages amount, risks of proceeding to trial, and the amount made available to claimants.

### 4. The Strength of Plaintiff's Case and Risk of Continuing Litigation

No class had been certified prior to the Settlement. Plaintiff faced serious risk at the certification stage, and if she prevailed, at trial. Both class certification and trial likely would have required expert analysis to establish, among other things, that the marketing and advertising of the Shutterfly General Spend Groupon was misleading and material to consumer purchasing decisions and that the Class Members were damaged.

### 5. Effectiveness of Distribution Method

As noted above, the Court concludes that the distribution method and claims process is reasonable. All Class Members automatically receive benefits under the Settlement, without the need to file a Claim. Class Members who redeemed a Shutterfly General Spend Groupon may submit a Valid Claim via a relatively simple claim form with basic questions about class membership.

### 6. The Terms of the Proposed Award of Attorneys' Fees and Expenses.

As noted in section E below, the Court finds the proposed award of Attorneys' Fees and Expenses is reasonable.

### 7. Other Agreements

The Court is required to consider "any agreements required to be identified under Rule 23(e)(3)." The Parties have attested, and the Court finds, that there are no such agreements.

### 8. The Proposal Treats Class Members Equitably Relative to Each Other

All Class Members who submit a Valid Claim are entitled to the same relief under the Settlement.

### 9. The Response of Class Members

Out of an estimated _____ Class Members, there were __ opt-outs and __ objections. In

comparison, there were _____ Valid Claims, according to the report of the Claim Administrator. This is an overwhelmingly positive response. *See Churchill Village, LLC v. General Electric,* 361 F.3d 566, 577 (9th Cir. 2004) (explaining that a court may infer appropriately that a class action settlement is fair, adequate, and reasonable when few class members object to it); *Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *16 (N.D. Cal. Mar. 24, 2017) (holding "the indisputably low number of objections and opt-outs, standing alone, presents a sufficient basis upon which a court may conclude that the reaction to settlement by the class has been favorable); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."); *see also, e.g., In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *4 (N.D. Cal. Aug. 25, 2016) (stating that, "[i]n an analysis of settlements where notice relied on media notice exclusively, the claims rate ranged between 0.002% and 9.378%, ***with a median rate of 0.023%***") (emphasis added).

### 10.   Costs of Administering the Settlement

The Claim Administrator has submitted an invoice for its expenses incurred to date and expected to be incurred through the completion of its work, in the amount of $_____. Included in this invoice is the amount for all taxes due. The Court finds that such amounts are reasonable.

### E.   ATTORNEYS' FEES

Class Counsel requests an award of $350,000.00 in attorneys' fees and expenses. Defendant does not oppose this request. *See, e.g., In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 2017 WL 1047834, at *4 (N.D. Cal., Mar. 17, 2017 ("Volkswagen's agreement not to oppose the application does not evidence collusion and was not obtained by Class Counsel to Class Members' detriment.") The record is undisputed that the settlement negotiation was overseen by an experienced mediator and that the attorneys' fees and expenses requested do not diminish the amount of monetary relief available to Class Members. *See, e.g., G. F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"). Thus, the Court finds that the negotiations about fees, costs,

and an incentive award could not have had any negative impact on the benefits made available to class members.

This Court is required to analyze an attorneys' fee request based on either (1) the "lodestar" method or (2) a percentage of the total benefit made available to the settlement class, including costs, fees, and injunctive relief. *See e.g.*, *Nwabueze v. AT&T, Inc.*, No. C 09-01529 SI, 2014 U.S. Dist. LEXIS 11766, at *2-3 (N.D. Cal. Jan. 29, 2014); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289, at *11-12 (E.D. Cal. Sept. 2, 2011); *Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 U.S. Dist. LEXIS 86266, at *13-14 (N.D. Cal. Nov. 16, 2007). The Court is not required to base attorney's fees based only on the amount paid to Class Members who submitted claims. *See Williams v. MGM-Pathe Communs. Co*., 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar."); *accord Ellsworth v. U.S. Bank, N.A.,* No. 3-12-cv-02506-LB, 2015 U.S. Dist. LEXIS 191662, at *4 (N.D. Cal. Sept. 24, 2015) ("precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the actual amount that is ultimately claimed"); *Miller v. Ghirardelli Chocolate Co.,* No. 12-cv-04936-LB, 2015 U.S. Dist. LEXIS 20725, at *5 (N.D. Cal. Feb. 20, 2015) (same). The Court concludes that the lodestar approach is appropriate for this case, particularly since the primary form of relief is injunctive.

**1.  Plaintiff's Fees Request is Reasonable Under the Lodestar Approach.**

Under the lodestar approach, "[t]he lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000); *see also Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'") (alteration in original) (internal citation omitted) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a

positive or negative "multiplier to take into account a variety of other factors, including the quality

of the representation, the novelty and complexity of the issues, the results obtained and the

contingent risk presented." *Id.*; *see also Serrano v. Priest ("Serrano III")*, 20 Cal. 3d 25, 48-49

(1977); *Ramos v. Countrywide Home Loans, Inc.* 82 Cal. App. 4th 615, 622 (2000); *Beasley v.*

*Wells Fargo Bank,* 235 Cal. App. 3d 1407, 1418 (1991) (multipliers are used to compensate

counsel for the risk of loss, and to encourage counsel to undertake actions that benefit the public

interest). The Court should take into account the value of injunctive relief when assessing fees

under the lodestar approach, but need not determine a specific monetary value associated with that

relief.  *See Hohenberg v. Drey (In re Ferrero Litig.)*, 583 F. App'x 665, 668 (9th Cir. 2014)

("Under the lodestar method, a court need not determine the 'value' of particular injunctive relief

because fees are calculated through an assessment of time expended on the litigation . . . the

injunctive relief in this case is meaningful and consistent with the relief requested in plaintiffs'

complaint. . . The district court did not abuse its discretion in approving a settlement that

compensated counsel under the lodestar method for procuring such relief."); *Laguna v. Coverall*

*N. Am., Inc.*, 753 F.3d 918, 924 (9th Cir. 2014) *vacated on other grounds*, 772 F.3d 608 (9th Cir.

2014) ("[W]e have never required a district court to assign a monetary value to purely injunctive

relief. To the contrary, we have stated that courts cannot 'judge with confidence the value of the

terms of a settlement agreement, especially one in which, as here, the settlement provides for

injunctive relief.'"); *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) (a district court still

"should consider the value of the injunctive relief as a 'relevant circumstance'" in its fee

determination).

    Class Counsel has provided detailed declarations showing that it incurred a lodestar of

$_____.  The Court finds that the hours claimed were reasonably worked and that the rates

charged are reasonable and commensurate with those charged by attorneys with similar experience

who appear in this Court.  The Court also finds that Plaintiff's counsel represented their clients

with skill and diligence and obtained an excellent result for the class, taking into account the

possible outcomes at, and risks of proceeding to, trial.

    Class counsel requests a fee award of $350,000.00, which equals approximately __% of its

lodestar.  Thus, far from any "upward" multiplier, Class Counsel's requested fee actually results in a "negative" (more accurately, a "fractional") multiplier of 0.__.  The fact that Plaintiff's counsel are seeking substantially less in fees than they reasonably incurred further demonstrates the reasonableness of the fee award. *See, e.g.*, *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 690-91 (N.D. Cal. 2016) (holding fractional lodestar multiplier to be indication of reasonableness of fee request); *Johnson v. Triple Leaf Tea Inc.*, No. 3-14-cv-01570-MMC, 2015 U.S. Dist. LEXIS 170800, at *6 (N.D. Cal. Nov. 16, 2015) (finding where "Class Counsel's lodestar exceeded the negotiated award" to be "well within the range courts have allowed in the Ninth Circuit"); *Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 U.S. Dist. LEXIS 42637, at *4 (N.D. Cal. Mar. 31, 2015) ("Class Counsel's lodestar . . . result[s] in a negative multiplier of approximately .54.  This is below the range found reasonable by other courts in California."); *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837, at *7 (N.D. Cal. Mar. 6, 2014) ("Plaintiffs' requested fee award is approximately 65% of the lodestar, which means that the requested fee award results in a so-called negative multiplier, suggesting that the percentage of the fund is reasonable and fair."); *Walsh v. Kindred Healthcare*, No. C 11-00050 JSW, 2013 U.S. Dist. LEXIS 176319, at *3 (N.D. Cal. Dec. 16, 2013) ("The Court concludes that, on the facts of this case, the lodestar is reasonable, especially in light of the fact that Settlement Class Counsel have applied a negative multiplier, and seek an award that is less than their base lodestar."); *Wehlage v. Evergreen at Arvin LLC*, No. 4:10-CV-05839-CW, 2012 U.S. Dist. LEXIS 144152, at *1 (N.D. Cal. Oct. 4, 2012) ("Class Counsel do not seek a multiplier on their lodestar, and in fact the requested fee is a negative multiplier (-.79).  The Court finds that this award is appropriate here."); *Lymburner v. U.S. Fin. Funding, Inc.*, No. C-08-00325 EDL, 2012 U.S. Dist. LEXIS 14752, at *6 (N.D. Cal. Feb. 7, 2012) ("[T]he negative multiplier in this case supports the reasonableness of the fee request."); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, at *16 (N.D. Cal. Nov. 26, 2007) ("Even if the court accepted the unadjusted lodestar from plaintiffs' counsel ($922,884.75), the correlating multiplier of 0.74 would still reflect a negative multiplier, further suggesting that the requested percentage based fee is fair and reasonable.").

## 2.   The Court is Not Obliged to "Cross-Check" Plaintiffs' Counsel's Lodestar.

The Court is not required to perform a percentage based cross-check and finds it inappropriate to do so here as the value of a permanent injunction is difficult to value monetarily. *See Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 547 (9th Cir. 2016) (holding that if "classwide benefits are not easily monetized, a cross-check is entirely discretionary," and the district court may make its award based entirely on the lodestar).

A recent Ninth Circuit decision, *Chambers v. Whirlpool Corp.*, 980 F.3d 645 (9th Cir. 2020)[2] ("*Whirlpool*"), provides that where 28 U.S.C § 1712 (of the Class Action Fairness Act ("CAFA")) applies to a settlement—i.e., where "coupons" are made available in a settlement—a court must apply a lodestar "cross-check," or in the alternative, articulate why it is not feasible in a particular case. *Id.*, at *26. Because the settlement in this case is not a "coupon settlement," section 1712 of CAFA and, by extension, *Whirlpool* do not apply. However, even if this settlement were to be deemed a "mixed" coupon settlement, the Court should apply the lodestar methodology without the necessity of a cross-check because, as articulated below, it is infeasible.

## 3.   This is not a Coupon Settlement, or Merely a "Mixed" Settlement Under 28 U.S.C § 1712.

The Ninth Circuit has established three factors to determine whether a settlement is a coupon settlement under 28 U.S.C. § 1712 of the Class Action Fairness Act ("CAFA"): (i) "whether class members have 'to hand over more of their own money before they can take advantage of' a credit"; (ii) "whether the credit is valid only 'for select products or services'"; and (iii) "how much flexibility the credit provides, including whether it expires or is freely transferrable." *In re Easysaver Rewards Litig.*, 906 F.3d 747, 762 (9th Cir. 2018) *(citing In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 951 (9th Cir. 2015)).

Here, each of the factors indicate the Promotional Codes are not "coupons" within the meaning of CAFA. The Shipping Codes are likely "coupons" within the meaning of CAFA, which would make this, at most, a "mixed" settlement under CAFA. However, there are two additional

---

[2] All pincites to *Whirlpool* are Lexis cites—i.e., *Chambers v. Whirlpool Corp.*, 2020 U.S. App. LEXIS 35366. A rehearing en banc has been requested in *Whirlpool*. *See Chambers v. Whirlpool Corp.*, Case No., 16-56666 (Dkt.## 168-169).

wrinkles here which argue for the inapplicability of CAFA. First, persons who redeemed their Groupons are not limited to Promotional and Shipping Codes; they may obtain cash refunds. Second, while persons who did not redeem their Groupons are entitled only to Promotion and Shipping Codes, they are automatically being provided a more valuable version of the exact item they purchased. To put it another way, the original purchase of a Groupon that class members made was itself a purchase of a "coupon," and under the settlement they are getting a better coupon than they originally purchased. The coupon provisions of CAFA were designed to require more scrutiny of settlements that provided only a "coupon" towards a further purchase, instead of remedying the underlying issue that led to the litigation. Here the more valuable "coupon" does address the underlying allegation that the original coupon (i.e. Groupon) had less value than purchasers would have understood.

### a. The Promotional Codes are not "Coupons" Within the Meaning of CAFA

Regarding the first factor, the Promotional Codes do not provide discounted products; they can be used to purchase products from Shutterfly's website and do not require Class Members to make any additional purchases. Thus, the Promotional Codes are not "coupons" under CAFA. *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1075 (C.D. Cal. 2010); *see also Chaikin v. Lululemon USA Inc.,* No. 3:12-CV-02481-GPC-MDD, 2014 U.S. Dist. LEXIS 35258, at *7 (S.D. Cal. Mar. 14, 2014) (settlement providing $25 "credit vouchers" redeemable at Lululemon stores that "require[d] no additional purchase" was not a coupon settlement); *Foos,* 2013 U.S. Dist. LEXIS 136918, at *7-*8 (settlement providing $15 voucher for Ann Taylor merchandise with no minimum purchase required was not a coupon settlement); *Morey v. Louis Vuitton N. Am. Inc.*, No. 11cv1517 WQH (BLM), 2014 U.S. Dist. LEXIS 3331, at *17 (S.D. Cal. Jan. 10, 2014) (settlement providing $41 "Merchandise Certificate" redeemable at Louis Vuitton retail stores was not coupon settlement); *Tchoboian v. FedEx Office & Print Servs., Inc.*, No. SA CV 10-01009 JAK (MLGx), 2014 U.S. Dist. LEXIS 184376, at *6 (C.D. Cal. Mar 25, 2014) ("[C]ourts have distinguished between 'coupons,' which provide 'discounts on merchandise or services offered by the defendant,' and 'vouchers,' which provide 'free merchandise or services.'").

Regarding the second factor, the Promotional Codes can be redeemed toward most products

and services offered by Shutterfly. The only excluded products are the same products that were

excluded from the Shutterfly General Spend Groupons Class Members initially purchased.

Regarding the third factor, Promotional Codes are not "coupons" because they do not expire,

can be used at any time, and are freely transferrable. *See c.f.*, *Chaikin,* 2014 U.S. Dist. LEXIS

35258, at *3 (approving a class action settlement offering vouchers that expire within six months);

*Foos*, 2013 U.S. Dist. LEXIS 136918, at *3 (same); *Davis v. Cole Haan, Inc.*, No. C-11-01826-

JSW, 2013 U.S. Dist. LEXIS 151813, at *3 (N.D. Cal. Oct. 21, 2013) (finding a class action

settlement was a coupon settlement, in part, because of "significant limitations" including that

"the vouchers expire after six months").

**b.  This is Not a "Coupon" Settlement Because the Majority of the Class Can Obtain Cash Instead of the Promotional and Shipping Codes, and the Remainder Is Getting Relief That Directly Remedies the Underlying Alleged Harm.**

In *Whirlpool*, class members did not receive anything unless they filed a claim; they were

required to file a claim to receive a coupon.[3] Most *Whirlpool* class members could only claim a

coupon; they were ineligible to receive any cash compensation. Only 4% of filed claims

potentially involved cash. *See Whirlpool*, 980 F.3d at *10 (stating "put another way, only 4% of

the 133,040 filed claims—at most—could potentially involve cash reimbursement.") By contrast,

here Cash Refunds are available to 69% of the Class (those who redeemed Shutterfly General

Spend Groupons).

It is true that Class Members who redeemed their Groupons and do nothing will

automatically receive a Promotional Code and Shipping Code. This default provision does not

change the analysis. *See Williamson v. McAfee, Inc.*, No. 5:14-cv-00158-EJD, 2017 U.S. Dist.

LEXIS 15838 (N.D. Cal. Feb. 3, 2017) (settlement was "not a coupon settlement, since class

members had the option to receive cash instead of value certificates, even though they received

certificates by default."); *See Foos v. Ann, Inc.*, No. 11cv2794 L (MDD), 2013 U.S. Dist. LEXIS

136918, at *7-*8 (S.D. Cal. Sept. 23, 2013) ("having a coupon option does not necessarily

---

[3] *I.e.,* (i) a $100 or a 30% discount coupon for a new Whirlpool dishwasher if there is a future overheating incident within two years of the settlement notice date, or within 10 years of purchase for NewGen/Raptor owners and/or (ii) 10-20% "rebate" coupon to purchase a new Whirlpool dishwasher, which expires 120 days after the claim deadline. *Whirlpool*, 980 F.3d at *8-9.

transform a class action settlement into a coupon settlement under CAFA").

For the remaining Class Members (those who did not redeem), they will receive a free Shipping Code and Promotional Code worth 110% of the Promotional Value of their expired Groupon. However, those benefits are directly compensatory to the alleged underlying harm: Plaintiffs alleged that the original advertising of the Shutterfly General Spend Groupon was misleading because the Groupon could not be used with free shipping codes and could not be combined with other offers. The Settlement addresses both issues: it provides consumers free shipping *and* a higher dollar amount towards their purchase than originally promised.

### c. As At Most a "Mixed" Coupon/Non-Coupon Settlement, the Lodestar-Based Fee Is Appropriate Without Need For A Cross-Check.

At most, this settlement should be deemed to be a "mixed" settlement because it "involv[es] coupon and non-coupon relief" under 1712(c). *See In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1184-85 (9th Cir. 2013) (holding section 1712(c) applies where a settlement provides both coupons and other relief, such as equitable relief). Under § 1712(c), the percentage-of-redemption-value method applies only to the portion of fees *attributable to obtaining the coupon relief*. 28 U.S.C. § 1712(c)(1) (stating that fees "based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (a)," which sets forth the percentage-of-redemption-value methodology). But the remaining portion of fees attributable to "non-coupon relief" is calculated under § 1712(b) as a reasonable lodestar amount times any appropriate multiplier. *See* 28 U.S.C. § 1712(b) (stating that where "a portion of the recovery of the coupons is not used to determine the attorney's fees," it "shall be based upon the amount of time class counsel reasonably expended"). In short, the total fee award for "mixed" settlements under § 1712(c) is the sum of: (i) "a reasonable contingency fee based on the actual redemption value of the coupons" (§ 1712(a)); and (ii) "a reasonable lodestar amount to compensate class counsel for any non-coupon relief obtained" (§ 1712(b)). *In re HP Inkjet Printer Litig.*, 716 at 1184-85 .

In *In re Easysaver Rewards Litigation*, the Ninth Circuit explained that a district court in "mixed" settlements may opt to use the "lodestar approach provided that it does so without reference to the dollar value of [the coupon relief]." 906 F.3d at 759. Here, Class Counsel has not

sought *any* fees based on a percentage of dollar value of coupons, and only bases its request on the lodestar. Further, Class Counsel's request of $350,000 for combined fees and costs (equating to approximately $339,546.78 in fees and $10,453.22 in expenses), comes in well *below* the fee amount of $[     ] calculated using the lodestar method. Thus, far from any "upward" multiplier, Class Counsel's requested fee results in a fractional multiplier of [    ]; in other words, Class Counsel has effectively "written off" approximately [      ] hours expended on this litigation. *See, e.g.*, *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 690-91 (N.D. Cal. 2016) (holding negative lodestar multiplier to be indication of reasonableness of fee request); *Johnson v. Triple Leaf Tea Inc.*, No. 3:14-cv-01570-MMC, 2015 U.S. Dist. LEXIS 170800 at *6 (N.D. Cal. Nov. 16, 2015) (finding where "Class Counsel's lodestar exceeded the negotiated award" to be "well within the range courts have allowed in the Ninth Circuit"); *Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 U.S. Dist. LEXIS 42637 at *4 (N.D. Cal. Mar. 31, 2015) ("Class Counsel's lodestar . . . result[s] in a negative multiplier of approximately .54. This is below the range found reasonable by other courts in California."); *Covillo v. Specialtys Café*, No. C-11-00594-DMR, 2014 U.S. Dist. LEXIS 29837 at *7 (N.D. Cal. Mar. 6, 2014) ("Plaintiffs' requested fee award is approximately 65% of the lodestar, which means that the requested fee award results in a so-called negative multiplier, suggesting that the percentage of the fund is reasonable and fair.")

At best, a very small number of the hours worked in this litigation—and far fewer than the approximately [     ] hours that are being written off—are attributable to the Shipping Code component of the Settlement. (Safier Decl., ¶ [    ].)[4] The bulk of the fees incurred in this litigation are attributable to preventing Defendant from enforcing the arbitration agreement. Plaintiff succeeded in invalidating that agreement and should be compensated for the time spent doing so.

---

[4] The Ninth Circuit reasoned that "attributable to" means "to explain as caused or brought about by: regard as occurring in consequence or on account of." *Id.* (quoting Webster's Third New International Dictionary (2002)). Then, in applying this term, the Ninth Circuit explained:

> [A]n attorneys' fees award is 'attributable to' an award of coupons where the attorneys' fees award is a 'consequence' of the award of coupons. Or, put differently, attorneys' fees are 'attributable to' an award of coupons where 'the [singular] award of the coupons' is the condition precedent to the award of attorneys' fees.

*HP Inkjet*, 716 F.3d at 1181.

19

Plaintiff also succeeded in leading Defendant to change its practices with regard to its advertising of Shutterfly General Spend Groupons and to agree in settlement to improved disclosures. Finally, Plaintiff succeeded in obtaining Promotional Codes for all Class Members and Cash Benefits for any Class Member who submits a simple claim form—a claim form that is simpler than would likely be required in a post-trial claim process for a smaller refund. The Shipping Codes, i.e., the coupon provision of the settlement, is just icing on the cake, for those who Class Members do not want to file a claim. It would be incongruent to reduce Plaintiff's Counsel's fee award because it negotiated for, and obtained, an additional automatic benefit for Class Members who decided not to make a claim, a benefit that is greater than could be obtained at trial.

### d.  Regardless, a Lodestar Cross-Check Is Not Feasible or Practical.

In this case, a "cross-check" of the lodestar (against a theoretical amount of benefit conferred) is not feasible or practical. Nearly all the litigation was driven by the dispute over the arbitration provision. The value of the injunctive relief obtained (and other changed practices) cannot be easily monetized, so a cross-check that focused only on the Cash Benefits, Promotional Codes, and the Shipping Codes made available or redeemed would severely undervalue the Settlement benefits. *See, e.g., Coles v. City of Oakland,* No. C03-2961 TEH, 2007 U.S. Dist. LEXIS 100533, at *50 (N.D. Cal. Jan. 4, 2007) (holding that injunctive relief obtained served public interest and that attorneys who serve public interest should be rewarded with lodestar-based fee); *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1418 (1991) (multipliers are used to compensate counsel for the risk of loss, and to encourage counsel to undertake actions that benefit public interest); *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal.App.4th 785, 820 (2006) (holding trial courts should calculate fee awards using the lodestar method "based on actual time expended, rather than a percentage of the recovery, so that pursuit of consumer warranty cases [is] economically feasible.")

### e.  The Catalyst Theory Would Support A Lodestar Award Even In The Absence of Any Settlement Relief.

Finally, even if the parties had not settled but had gone to trial, and even if Plaintiff had lost at trial, Plaintiff and her counsel would still be entitled to the full requested fee award under the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

lodestar analysis for their work prior to trial invalidating the arbitration provision. *A fortiorari*, they should not receive a lower fee having obtained additional relief for the class in settlement.

Section 1021.5 of the California Code of Civil Procedure authorizes a court (including a federal court) to award attorneys' fees to a party who has achieved "the enforcement of an important right affecting the public interest." *See id.*; *see also Klein v. City of Laguna Beach*, No. 13-56973, 810 F.3d 693, 701 (9th Cir. Jan. 14, 2016) ("When California plaintiffs prevail in federal court on California claims, they may obtain attorneys' fees under section 1021.5.") (citing *Mangold v. Cal. Pub. Utils. Comm'n,* 67 F.3d 1470, 1478 (9th Cir.1995)). To be eligible for a fee award pursuant to C.C.P. § 1021.5, a party need not win at summary judgment or trial. Rather, as the California Supreme Court has explained:

> The appropriate benchmarks in determining which party prevailed are (a) the situation immediately prior to the commencement of suit, and (b) the situation today, and the role, if any, played by the litigation in effecting any changes between the two.

*Maria P. v. Riles*, 43 Cal. 3d 1281, 1291 (1987) (internal citations omitted); accord *MacDonald v. Ford Motor Co.*, No. 13-CV-02988-JST, 2015 WL 6745408, at *3 (N.D. Cal. Nov. 2, 2015).

A plaintiff who obtains changed practices, even during the litigation, meets the "prevailing party" standard. *See, e.g., Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989) (explaining that under certain statutes, a "prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation"). It is not even necessary for the plaintiff to obtain an injunction or similar judicially enforceable result, if she was the "catalyst" for the desired result. *See Tipton-Whittingham*, 316 F.3d at 1062, *certified question answered,* 34 Cal. 4th 604 (2004) ("California law continues to recognize the catalyst theory and does not require 'a judicially recognized change in the legal relationship between the parties' as a prerequisite for obtaining attorney fees under Code of Civil Procedure section 1021.5."); *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 560-61 (2004), *as modified* (Jan. 12, 2005) (same); *accord Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 844 (9th Cir. 2007).

Further, a lawsuit that primarily, or even entirely, achieves non-monetary benefits is still eligible for a full lodestar fee. As the California Supreme Court has explained, "By permitting

21

prevailing [parties] to recover their attorney fees in addition to costs and expenses, our Legislature has provided injured consumers strong encouragement to seek legal redress in a situation in which a lawsuit might not otherwise have been economically feasible." *Murillo v. Fleetwood Enterprises, Inc.*, 17 Cal.4th 985, 994 (1998); *see also Bluetooth*, 654 F.3d at 941 (holding that lodestar award appropriate when the relief obtained is "not easily monetized," such as when injunctive relief is part of the settlement; *Camacho*, 523 F.3d at 978 (holding the lodestar figure is "presumptively a reasonable fee award.")

### f.  Reduction of the Fees Would Not Serve Class Member or Public Interests

Finally, it is important to note that reduction of the fees would not benefit the Class; rather, it would exclusively enrich (and benefit) Defendant.

## F.  LITIGATION COSTS

Class counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters.); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Here, class counsel seeks reimbursement of $[ ] in litigation expenses and provide records that document their claim. ([cite to declarations].) The costs will be paid separately from amounts paid to Class Members who made Valid Claims and will not in any way reduce what is paid to them. No objection has been made to any cost item or amount.  Accordingly, the Court finds that these submissions support an award $[ ] in costs.

## G.  CLASS REPRESENTATIVE INCENTIVE AWARD

The district court must evaluate named plaintiffs' awards individually, using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir.

2003). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit recently emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013). Here Plaintiff is seeking an Incentive Award of $5,000.

Here, the Plaintiff came forward to represent the interests of thousands of others, with very little personally to gain, as her individual alleged damages were very small. Plaintiff compiled documents and answered interrogatories in response to discovery requests, regularly corresponded with counsel telephonically and by email, traveled to and attended mediation, and took the substantial risk of litigation which, at a minimum, involves a risk of losing and paying the other side's costs. (Safier Decl. ¶ __.) Because false advertising laws depend, in part, on private enforcement, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others. Thus, the Court approves the $5,000 incentive award for Plaintiff.

**H.    COMPLIANCE WITH CLASS ACTION FAIRNESS ACT**

The record establishes that Defendant served the required notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, with the documentation required by 28 U.S.C. § 1715(b)(1-8).

**I.    REQUIRED CHANGES TO DEFENDANT'S ADVERTISING**

As required by the Settlement Agreement, no later than [DATE: 90 days after the Effective Date of the Settlement Agreement], Shutterfly shall prominently state each of the following when advertising any Shutterfly General Spend Groupon for sale (unless such fact is untrue for the particular Shutterfly General Spend Groupon being offered):

        (a)    "By purchasing this offer you will obtain a promotional code for use at the Shutterfly website."

(b)    "When you redeem the Groupon at Shutterfly, you cannot use any other Shutterfly promotional code on the same order to obtain additional discounts. Instead, you must pay the undiscounted price."

(c)    "When you redeem the Groupon at Shutterfly, you [also] cannot use any Shutterfly free shipping code on the same order. Instead, you must pay for shipping."

These obligations shall remain in effect for two years from the Initiation Date. Nothing in this paragraph shall be interpreted to interfere with Defendant's obligations to comply with all applicable state and federal laws.

**J.    DISTRIBUTION OF SETTLEMENT BENEFITS AND PAYMENT OF ADMINISTRATIVE COSTS**

No later than 35 days after the Effective Date, the Claim Administrator shall distribute Shipping Codes and Promotional Codes to Class Members by sending the Benefits Notice to Class Members as set forth in Part [ ] of the Settlement Agreement. No later than 10 days after the Effective Date, Defendant shall pay the Claim Administrator the total amount necessary to pay all Cash Refunds, so that the Claim Administrator can distribute such Cash Refunds to eligible Class Members no later than 35 days after the Effective Date. Defendant shall also pay the Claim Administrator its reasonable costs and expenses in processing claims and administering the Settlement.

Upon completion of the implementation and administration of the Settlement, the Claim Administrator shall provide a declaration for filing with the Court containing the post-distribution information required by Local Rule 1 regarding Post-Distribution Accounting.

**K.    RELEASES AND EFFECT OF THIS ORDER**

**1.    Releases by Plaintiff and Class Members**

Upon the Effective Date, Class Representative and Class Members, including any person claiming derivative rights of the Class Representative or Class Member as such person's parent, child, heir, guardian, associate, co-owner, attorney, agent, administrator, executor, devisee, predecessor, successor, assignee, assigns, representative of any kind, shareholder, partner, director, employee or affiliate, shall have unconditionally, completely, and irrevocably released

and discharged the Released Parties from the Released Claims. Upon the Effective Date, Class Representative and Class Members shall be forever barred from initiating, maintaining, or prosecuting any Released Claims against Released Parties. None of the Class Members releases claims to enforce the terms of the Settlement and none of the Class Members releases their rights to dispute or challenge, in any other proceeding, the validity or enforceability of any arbitration agreement that may exist between such Class Member and Defendant.

"Released Claims" means all claims that were, or could have been, asserted in the Litigation that arise out of or relate to (i) the allegations that the Shutterfly General Spend Groupon promotions were false, misleading or deceptive, (ii) the allegations that Shutterfly committed breaches of contract or fraud in connection with the Shutterfly General Spend Groupon promotions, (iii) the allegations that Shutterfly is liable for damages or penalties for including and/or trying to enforce an unlawful or unenforceable arbitration agreement in its Terms of Use, or (iv) the allegations that Shutterfly engaged in unfair or unlawful business practices with respect to its General Spend Groupon promotions and/or the arbitration agreement in its Terms of Use. The Released Claims shall not release any Class Member's claims for personal injury against Defendant or the Released Parties or rights to enforce this Agreement.

**2.    Additional Releases by Plaintiff**

In addition to the releases granted by Plaintiff in the prior section, upon the Effective Date, Plaintiff, her predecessors, successors, agents, assigns, attorneys and members of their families) on the one hand, and Released Parties on the other hand, shall have unconditionally, completely, and irrevocably released and forever discharged each other from and shall be forever barred from instituting, maintaining, or prosecuting any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, whether based upon any violation of any state or federal statute or common law or regulation or otherwise, that Plaintiff, on the one hand, and Released Parties, on the other hand, have had in the past, or now have, whether or not related to the Released Claims.

**3.    Waiver of Provisions of California Civil Code § 1542**

By operation of this Order and Judgment, Plaintiff and Defendant shall with respect to the released claims set forth above in subsections 1 and 2, and Class Members shall with respect to the released claims set forth above in subsection 1, be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to section 1542 of the California Civil Code, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Plaintiff, Defendant and Class Members understand and acknowledge the significance of these waivers of California Civil Code section 1542 and any other applicable federal or state statute, case law, rule or regulation relating to limitations on releases.

### 4.    Other Effects of This Order

No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with the Settlement Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any Party of any fault, liability or wrongdoing of any kind whatsoever to any other Party. Neither the Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim made by the Class Members or Class Counsel, or of any wrongdoing or liability of the persons or entities released under this Order and Judgment and the Settlement Agreement, or (b) is or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any of the persons or entities released under this Order and Judgment and the Settlement Agreement, in any proceeding in any court, administrative agency, or other tribunal. Defendant's agreement not to oppose the entry of this Order and Judgment shall not be construed as an admission or concession by Defendant that class

certification was appropriate in the Litigation or would be appropriate in any other action.

Except as provided in this Order, Plaintiff shall take nothing against Defendant by his Complaint. This Order shall constitute a final judgment binding the Parties and Class Members with respect to this Litigation.

The Litigation is hereby dismissed on the merits and with prejudice and final judgment shall be entered thereon, as set forth in this Order.

Without affecting the finality of the judgment hereby entered, the Court reserves jurisdiction over the implementation of the Settlement Agreement. In the event the Effective Date does not occur in accordance with the terms of the Settlement Agreement, then this Order and any judgment entered thereon shall be rendered null and void and shall be vacated, and in such event, all orders and judgments entered and releases delivered in connection herewith shall be null and void and the Parties shall be returned to their respective positions ex ante.

Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any provisions of the Settlement Agreement.

There is no just reason for delay in the entry of this Judgment, and immediate entry by the Clerk of the Court is expressly directed.


Dated: _____ _____, 2021


_____
Hon. Beth Labson Freeman
U.S. Magistrate Judge

# EXHIBIT E

1    **GUTRIDE SAFIER LLP**
     SETH A. SAFIER (State Bar No. 197427)
2    MARIE A. MCCRARY (State Bar No. 262670)
     100 Pine Street, Suite 1250
3    San Francisco, California 94111
     Telephone: (415) 639-9090
4    Facsimile:  (415) 449-6469

5
     Attorneys for Plaintiffs
6

7                          UNITED STATES DISTRICT COURT

8                         NORTHERN DISTRICT OF CALIFORNIA

9

10
     MEGAN TAYLOR, an individual, on          CASE NO. 5:18-cv-00266-BLF
11   behalf of himself, the general public and
     those similarly situated,                **UNDERTAKING RE ATTORNEYS' FEES**
12                                             **AND COSTS**

13              Plaintiff,

14                v.

15   SHUTTERFLY, INC., and DOES 1-50,

16              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

-1-

1

2      **WHEREAS**, on [DATE] the Court awarded $[AMOUNT] in attorneys' fees and

3  expenses ("Attorneys' Fee Award") to Class Counsel Gutride Safier LLP (the "Gutride Safier

4  Firm"), to be distributed according to the terms of the Settlement Agreement; and

5      **WHEREAS**, as required by the Class Action Settlement Agreement (the "Settlement

6  Agreement") in this matter, the Gutride Safier Firm, and its principals Adam Gutride, Esq.

7  ("Gutride") and Seth Safier, Esq. ("Safier") (each of the foregoing defined persons and entities

8  being an "Obligor" and collectively being "Obligors") desire to provide for the benefit of

9  Defendant Shutterfly, Inc. (collectively, "Defendant") an undertaking for repayment of any award

10  of Attorneys' Fees Award that any of the Obligors may be paid as attorneys' fees, costs or

11  expenses in connection with the Settlement Agreement (the "Undertaking"),

12      **NOW, THEREFORE**, each of the undersigned Obligors, on behalf of himself as an

13  individual and as an agent for the Gutride Safier Firm, hereby submits himself and the Gutride

14  Safier Firm on whose behalf he has executed this Undertaking to the jurisdiction of the Court for

15  the purpose of enforcing the provisions of this Undertaking. Capitalized terms used herein

16  without definition have the meanings given to them in the Settlement Agreement. The Obligors

17  are jointly and severally obligated with respect to all the terms of this Undertaking.

18      In the event the Attorneys' Fee Award is vacated in full, then within seven (7) days after

19  the order vacating the Attorneys' Fee Award becomes final, the Obligors shall repay to Defendant

20  the entire amount of the Attorneys' Fee Award, plus interest.  In the event the Attorneys' Fee

21  Award is reduced (either on appeal or by other Court order), then within seven (7) days after the

22  order reducing the Attorneys' Fee Award becomes final, the Obligors shall repay to Defendant

23  the amount by which the Attorneys' Fee Award was reduced, plus interest.

24      Interest shall be computed at the Prime Rate on the amount to be repaid to Defendant,

25  from the date that amount was paid to Plaintiff's Counsel until the date of repayment by Obligors

26  to Defendant.

27      In the event the Obligors fail to timely repay any amounts that are owed to Defendant

28  pursuant to this Undertaking, the Court shall, upon application of Defendant and notice to

-2-

Plaintiff's Counsel, summarily issue orders, including but not limited to judgments and attachment orders, against the Obligors, jointly and severally, as set forth above, and may make appropriate findings for sanctions for contempt of court. Any such judgments shall accrue interest at the applicable interest rate set forth in 28 U.S.C. § 1961.

The Obligors each hereby pledges and grants a continuing security interest to Defendant in all of his or its assets and the assets of his respective undersigned law firm (collectively, "Assets") to secure the obligations set forth in this Undertaking (including the interests accruing thereon), and hereby agrees to execute and deliver such further documentation and take such further action as Defendant may request in order to enforce its security interest. "Assets" means all properties and assets of any nature, including, without limitation, the full extent of each Obligor's right, title and interest in and to the following property (whether now existing or hereafter arising or acquired, wherever located):

(1)     All intangible property, including without limitation, all present and future accounts, accounts receivable, agreements, contracts, leases, contract rights, rights to payment (including, without limitation, any award or other legally enforceable payment of attorneys' fees, costs, and expenses for services rendered), interest in litigation, commercial tort claims, choses in actions, instruments, documents, chattel paper, security agreements, guaranties, letters of credit, undertakings, surety bonds, insurance policies, notes and drafts, and all forms of obligations owing to each Obligor or in which each Obligor may have any interest, however created or arising and whether or not earned by performance;

(2)     All real property interests identified in Exhibit E1, including without limitation, all fee or leasehold interests in such real property and any improvements or fixtures thereon or rights related or appurtenant thereto;

(3)     All goods and equipment now owned or hereafter acquired, including, without limitation, all machinery, fixtures, vehicles, and any interest in any of the foregoing, and all attachments, accessories, accessions, replacements, substitutions, additions, and improvements to any of the foregoing, wherever located;

(4)    All other contract rights and general intangibles now owned or hereafter acquired, including, without limitation, goodwill, trademarks, service marks, trade styles, trade names, patents, patent applications, leases, license agreements, purchase orders, customer lists, route lists, infringements, claims, computer programs, computer discs, computer tapes, literature, reports, catalogs, design rights, income tax refunds, payments of insurance and rights to payment of any kind;

(5)    All deposit accounts, securities, securities entitlements, securities accounts, investment property, letters of credit and certificates of deposit now owned or hereafter acquired and each Obligor's books relating to the foregoing, including the accounts identified in Exhibit E2; and

(6)    Each Obligor's books and records relating to the foregoing and any and all claims, rights and interests in any of the above and all substitutions for, additions and accessions to and proceeds thereof.

Obligors represent and warrant that the combined market value of the assets pledged hereunder as security for the obligations herein, net of all liens and encumbrances, is greater than the Attorneys' Fee Award.  Obligors shall, upon request by Defendant, provide documentation deemed sufficient by Defendant to evidence such the market value of such assets and the existence of any prior liens or encumbrances thereon.

Each Obligor agrees, as applicable, that he or it will not change its state of organization or locations at which any of the Assets are located without giving Defendant at least thirty (30) days prior written notice thereof. In addition, the Gutride Safier Firm agrees that it will not (i) change its name, federal employer identification number, entity structure or identity, (ii) create or operate under any new fictitious names, without giving Defendant at least thirty (30) days prior written notice thereof, or (iii) pledge or encumber any of the Assets to another person or entity without the prior written consent of Defendant. The Obligors further agree to maintain liquid funds in an account with a domestic bank that is an FDIC member or a domestic brokerage account held by an SPIC member that exceed the amount of the Attorneys' Fee Award until the termination of this Undertaking.  The Obligors agree to identify that domestic bank or brokerage to Defendant's

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Counsel on the date this Undertaking is executed and, if the funds are to be moved to another bank or brokerage, to notify Defendant's Counsel of that fact and the identity of the new bank or brokerage at least three (3) days beforehand.

Each Obligor hereby authorizes Defendant to file UCC financing statements covering the Assets without Obligor's signature in all applicable jurisdictions. With respect to the Assets identified in Exhibit E1, each Obligor shall, upon request by Defendant, execute (and cause any spouse or domestic partner to execute, if applicable) one or more deeds of trust or mortgages to evidence the security interests granted herein in favor of Defendant by each Obligor to secure their obligations pursuant to this Undertaking, but only if Defendant agree in writing to cancel and reconvey any such deeds of trusts and mortgages to the Obligors (and any spouses or domestic partners) who executed them, within three (3) days after the expiration of this Undertaking, and to indemnify Obligors for any losses incurred by Obligors as a result of Defendant's failure to do so.  With respect to the Assets identified in Exhibit E2, each Obligor shall, upon request by Defendant, execute (and cause any spouse or domestic partner to execute, if applicable) one or more account control agreements to evidence the security interests granted herein in favor of Defendant by each Obligor to secure their obligations pursuant to this Undertaking.

In the event of a default by Obligors in their repayment obligations, the Obligors each shall cooperate with Defendant in identifying their respective Assets and shall take no steps to conceal any such Assets or otherwise render them unavailable to satisfy their joint and several obligations pursuant to this Undertaking.

The undersigned stipulate, warrant, and represent that they have both actual and apparent authority to enter into this stipulation, agreement and Undertaking on behalf of the undersigned law firm. This Undertaking may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures by facsimile or email shall be as effective as original signatures. The undersigned declare under penalty of perjury under the laws of the State of California and the United States that they have read and understand the foregoing and that it is true and correct.

1

2

3

4

5

     This Undertaking and all obligations set forth herein shall expire on the fourteenth (14) day after which the Final Approval and any Attorneys' Fee Award have been affirmed on appeal and are not subject to further judicial review, or if no such appeal is filed, upon the fourteenth (14) day after the expiration of the time in which to bring such an appeal.

6

7

ADAM GUTRIDE

8

DATED: [Date]

9
                                   _____
                                     Adam Gutride

10

11

SETH SAFIER

12

13

DATED: [Date]
                                     _____

14
                                     Seth Safier

15

16

GUTRIDE SAFIER LLP

17

18

DATED: [Date]          by: _____

19
                                     Adam Gutride, Partner

20

DATED: [Date]          by: _____

21
                                     Seth Safier, Partner

22

23

24

25

26

27

28

1

2

**EXHIBIT E1:  REAL PROPERTY**

3

[To be completed]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT E2:  BANK AND BROKERAGE ACCOUNTS

[To be completed]

# Exhibit 2

### GUTRIDE SAFIER LLP RESUME

Gutride Safier LLP represents investors, small businesses, consumers and employees in a wide-array of class action litigation throughout the country. The attorneys of GSLLP are skilled litigators with years of experience at all levels of federal and state court. GSLLP is based in San Francisco, California, and has office addresses in Seattle, Washington and Boulder, Colorado. Members of the firm are licensed to practice in California, Texas, Colorado, New York, Massachusetts, Oregon, Washington, and the District of Columbia.

As described in detail below, GSLLP attorneys have represented consumers and small businesses in appeals to the Ninth Circuit (Section A), have obtained important victories on legal issues at the district court level (Section B), achieved settlements in class action cases to make available to class members over $500 million in cash and other settlement benefits (Section C), and have won praise from numerous judges (Section D). As shown in the individual attorney biographies, GSLLP attorneys have strong academic credentials and extensive experience litigating complex cases (Section E). GSLLP has been appointed as class counsel in over a dozen cases (Appendix A) and is currently counsel for plaintiffs in many other cases asserting class claims that have not yet been certified in both federal and state court (Appendix B).

### A.    Key Appellate Cases

- ***McArdle v. AT&T Mobility LLC, et al.***, **772 F. App'x 575, No. 17-17246 (9th Cir. June 28, 2019) (certiorari denied June 1, 2020)**
  The Ninth Circuit ruled in favor of our client, affirming the district court order that invalidated AT&T's arbitration agreement, pursuant to *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), because the provision contained a public injunctive relief waiver. The Ninth Circuit held that **the Federal Arbitration Act did not preempt California's *McGill* rule** and that AT&T's arbitration agreement was null and void in its entirety.

- ***Davidson v. Kimberly-Clark Corp.***, **873 F.3d 1103 (9th Cir. 2017)**
  The Ninth Circuit ruled in favor of our client, reversing the district court. It held that our client had **Article III standing to seek injunctive relief** regarding the false labeling of "flushable wipes," even though she was already on notice of the misrepresentation. This ruling resolved a split among the district courts. The *en banc* petition was denied.

- ***Just Film, Inc. v. Buono***, **847 F.3d 1108 (9th Cir. 2017)**
  The Ninth Circuit ruled in favor of our client, affirming the district court order certifying two nationwide classes of small business owners defrauded in a scheme that involved equipment leases and credit card processing services. The Ninth Circuit **upheld certification despite differences** between claims of named plaintiffs and certain absent class members and even though assessment of damages would require individual inquiry.

- ***Just Film, Inc. v. Merch. Servs., Inc.***, **474 F. App'x 493 (9th Cir. 2012)**
  The Ninth Circuit ruled in favor of our client, affirming a district court's order

issuing a **preliminary injunction prior to class certification,** to prevent further collection activities in connection with equipment leases. The Ninth Circuit held that the district court "did not abuse its discretion by finding sufficient evidence to support its preliminary injunction, which was carefully tailored to maintain the status quo where class certification is pending and the plaintiff has shown that a class-wide injunction is necessary to remedy the alleged class-wide harm."

- ***Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011)**
  The Ninth Circuit ruled in favor of our clients, reversing district court orders that had dismissed certain claims and denied class certification on other claims. The Ninth Circuit held that our clients had pled viable claims that they were deceived into registering for a coupon program with a paid monthly subscription by a website "click through" and that the defendant was liable to all consumers, even those who may have wanted to enroll. The Court held that a showing of class-wide reliance was not required for certification of a UCL claim and established the standard that "California has created what amounts to a conclusive presumption that **when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury**; restitution is the remedy."

- ***Chavez v. Blue Sky Nat. Bev. Co.,* 340 F. App'x 359 (9th Cir. 2009)**
  The Ninth Circuit ruled in favor of our client, reversing a district court order that had dismissed a case involving soda labeling. The Ninth Circuit **recognized the "benefit of the bargain" theory for standing in consumer class actions** and held that plaintiff stated a claim based on his allegations that "he purchased beverages that he otherwise would not have purchased in absence of the alleged misrepresentations [and] lost the purchase price, or part thereof, that he paid for those beverages." After the case was remanded, it was eventually certified and became one of the first food and beverage labeling cases certified in the Northern District of California. *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D.Cal. 2010) (certifying nationwide class).

## B.    Important Recent District Court Cases

- **Dismissal of Anticompetitive Claims Against Small Business Owners.**
  GSLLP represented Veronica Foods, a small local distributor of "Ultra-Premium" olive oils, in a lawsuit filed by the North American Olive Oil Association, representing large olive oil producers, accusing Veronica Foods and its retailers of defaming the NAOOA and its members in *North American Olive Oil Association v. D'Avolio et al.*, No. 16-cv-06986 (E.D.N.Y. Dec. 19, 2016). The district court agreed with Defendants' arguments that Veronica Foods' "UP" mark was not misleading, and that the NAOOA had failed to state any facts supporting its contention that Veronica Foods' advertisements disparaged the NAOOA or its members. Judge Feuerstein granted Veronica's motion to dismiss with prejudice and without leave to amend. (Dkt. #70).

- **Denial of Motions for Summary Judgment by Peter Thomas Roth.**

GSLLP represents consumers in a case for fraud, false advertising, and unfair competition against prestige cosmetic company Peter Thomas Roth, based on false claims in its advertising for its Water Drench and Rose Stem Cell product lines in *Kari Miller and Samantha Paulson v. Peter Thomas Roth LLC and Peter Thomas Roth Labs LLC*, No. 19-cv-00698 (N.D. Cal. Dec. 19, 2016). Noting the "helpful" expert reports submitted by plaintiffs' expert Michael Pirrung, Ph.D., the district court held that plaintiffs had presented sufficient evidence of a proper jury question as to (i) whether hyaluronic acid absorbs 1,000 times its weight in water and (ii) whether the rose stem cell products help regenerate and repair human skin. Judge Alsup denied in relevant part both PTR's motions for summary judgment. *Miller v. Peter Thomas Roth*, No. 19-cv-0698 (Dkt. #104).

- **Certification of Nationwide Settlement Class**
  GSLLP represents consumers in the first, or nearly the first, case to propose a methodology for establishing predominance in a nationwide class settlement after the Ninth Circuit's decision in *In re Hyundai and Kia Fuel Economy Litig.*, No. 15-65014 (9th Cir. Jan. 23, 2018). The district court accepted the methodology and certified a nationwide class where the class representatives were from a variety of states that collectively represented the variations among the laws of all states. Judge Seeborg granted final approval of the settlement. *Koller v. Med Foods, Inc.*, No. 14-cv-02400-RS (Dkt. #169).

- **Arbitration and Public Injunctive Relief**
  GSLLP represents consumers in the first, or nearly the first, case to apply *McGill v. Citibank*, N.A., 2 Cal. 5th 945 (2017) to invalidate an arbitration agreement that contained a waiver of public injunctive relief. *McArdle v. AT&T Mobility LLC, et al.*, Case No. CV-09-01117 (N.D. Cal) (Dkt. #287). This was also the first case to rule that AT&T's arbitration provision was invalid, after the U.S. Supreme Court had upheld the enforceability of that exact provision, on other grounds, in an earlier case. *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333 (2011) (examining class action waiver). The district court held in *McArdle* that, despite *Concepcion,* the *McGill* ruling was not preempted by the Federal Arbitration Act, and it invalidated the arbitration agreement which purported to waive public injunctive relief in all forums.

- **Pleading and Certification of Claims Where Product Quality Varies**
  GSLLP represents consumers in two cases that were the first (or among the first) in the Northern District of California in which courts found that the named plaintiffs had standing, and then later, met the requirements for class certification, where the plaintiffs had alleged that some, but not necessarily all, of the products (olive oil) failed to meet the represented grade (extra virgin). In *Koller v. Med Foods, et al.*, 3:14-cv-02400-RS (N.D. Cal. Jan. 6, 2015) (Dkt. #49), the defendant moved to dismiss based on its argument that the plaintiff lacked standing because he did not allege he tested the quality of the olive oil that he purchased and it was theoretically possible that the oil he purchased met the standard for extra virgin. The court rejected the argument, finding that "[i]n the event [plaintiff] is able to prove his allegations that the oil generally does not warrant that label because of its quality when first bottled and/or because of

3

[defendant's] packaging and handling practices, it would hardly be a defense that some bottles may nevertheless meet the minimum standards when purchased." *Id.* at 6; *see also Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2015 U.S. Dist. LEXIS 12790, at *13 (N.D. Cal. Feb. 3, 2015) (denying dismissal based on standing and holding that "[w]hether some bottle of olive oil might not have degraded, despite the mixing, packaging, and shipping defects alleged, does not defeat the claim."). The defendant in one of the cases raised similar unsuccessful arguments in opposition to certification. *Koller v. Med Foods, Inc.*, No. 14-cv-02400-RS, 2017 U.S. Dist. LEXIS 141025, at *6 (N.D. Cal. Aug. 24, 2017) (finding common questions predominate and rejecting defendant's argument that "putative class member only has claims if the specific bottle he or she purchased no longer met EVOO standards, and as a result, the liability inquiry is inherently individual and not subject to class-wide resolution").

## C.    Examples of Class Settlements Obtained by GSLLP

- *McArdle v. AT&T Mobility LLC, et al.*, Case No. CV-09-01117 (N.D. Cal) (Dkt. # 395) (international roaming rates) (current customers choice of automatic free day of international roaming or up to $50 account credit and former customers up to $50 cash refund)

- *Carlotti v. ASUS Computer International et al.*, 4:18-cv-03369-DMR (N.D. Cal. June 22, 2020) (Dkt. #86) (gaming laptops) (choice of $210 credit certificate or $110 cash (or choice of $105 credit or $55 cash without certain proof of purchase) for claimants who experienced relevant issues with their laptops)

- *Fitzhenry-Russell v. The Coca-Cola Company*, 5:17-cv-00603-EJD (N.D. Cal. Oct. 3, 2019) (Dkt. #95) (ginger ale) ($2.45 million non-reverting common fund: $0.80 per unit purchased with a guaranteed minimum of $4.00 per household-claimant)

- *In re Arctic Sentinel, Inc.* (*Miller v. Fuhu, Inc.*), Case No. 15-bk-12465 (Bankr. D. Del. May 7, 2019) (Dkt. #1301) (electronic tablets) (up to $30 per defective tablet purchased and up to $10 per other tablet purchased)

- *Fitzhenry-Russell, et al. v. Keurig Dr Pepper Inc., et al.*, 17-cv-00564-NC (N.D. Cal. Apr. 10, 2019) (Dkt. #350) (ginger ale) ($0.40 per unit purchased with a guaranteed minimum of $2.00 per claimant)

- *Pettit v. Procter & Gamble Company,* Case No. 15-cv-02150-RS (N.D. Cal. Mar. 29, 2019) (Dkt. #135) (flushable wipes) ($0.60 per package purchased)

- *Koller v. Med Foods Inc., et al.*, Case No. 3:14-cv-02400 (N.D. Cal. Aug. 29, 2018) (Dkt. #169) (olive oil) ($7 million non-reverting common fund)

4

- *Kumar v. Safeway Inc.*, Case No. RG 14726707 (Alameda County Super. Ct. Mar. 16, 2018) (olive oil) ($0.50 in cash or $1.50 in vouchers per bottle purchased)

- *Rainbow Business Solutions, Inc., et al. v. MBF Leasing LLC, et al.,* Case No. 10-cv-01993-CW (N.D. Cal. Dec. 5, 2017) (Dkt. #730) (credit card terminal leases) (refunds of overcharged property taxes and improper debits up to $9.2 million)

- *Kumar v. Salov North America Corp.*, Case No. 14-cv-2411-YGR (N.D. Cal. July 7, 2017) (Dkt. #173) (olive oil) (per-purchase payments of $0.50 per bottle on a claims-made basis up to $5 million) (settlement upheld on appeal)

- *Machlan v. Nehemiah Manufacturing Co., et al.*, Case No. CGC-14-538168 (San Francisco Super. Ct. June 5, 2017) (flushable wipes) ($1 per package purchased)

- *Mackinnon v. IMVU, Inc.*, Case No. 111-cv-193767 (Santa Clara Super. Ct. Feb. 24, 2016) (online music purchases) (automatic 60% refund of amounts paid)

- *Miller, et al. v. Ghirardelli Chocolate Company*, Case No. 12-cv-04936-LB (N.D. Cal. Feb. 20, 2015) (Dkt. #170) (white chocolate) ($5.25 million non-reverting common fund)

- *Rainbow Business Solutions, Inc., et al. v. Merchant Services, Inc., et al.,* Case No. 10-cv-01993-CW (N.D. Cal. Dec. 11, 2013) (Dkt. # 578) (credit card processing services) ($350 per claimant)

- *Mancini, et al v Ticketmaster, et al.*, Case No. 07-cv-01459-DSF-JTL (C.D. Cal. Aug. 2, 2013) (Dkt. #510) (monthly coupon subscription service) ($23 million reverting common fund)

- *Chavez v. Blue Sky Natural Beverage Co., et al.*, 3:06-cv-06609-JSW (N.D. Cal. June 1, 2012) (Dkt. #318) (soda) (50% refund of purchase price up to maximum of $100 per claimant)

- *Embry v. Acer America Corp.*, Case No. 09–01808 JW (N.D. Cal. Feb. 4, 2012) (Dkt. #218) (computer operating system software) (cash refunds up to $50, new operating software, and/or repairs at defendant expense, to claimants)

- *Witthoff v. Honest Tea, Inc.*, Case No. CGC-10-504987 (San Francisco Super. Ct. Jan. 10, 2012) (kombucha) (100% cash refunds to class members with proof of purchase; up to $6 in coupons to those without proof of purchase)

- *Gauss v. Millennium Products, Inc.*, Case No. CGC-10-503347 (San Francisco Super. Ct. Nov. 22, 2011) (kombucha) (same as *Witthoff*)

- *Cho v. Seagate Technology (US) Holdings, Inc.*, Case No. CGC-06-453195 (San Francisco Super. Ct. June 22, 2010) (hard disk capacity) (refunds to claimants of

5% of purchase price or drive management software valued at $40)

- *Deaton et al. v. Hotwire*, Case Number CGC-05-437631 (San Francisco Super. Ct., December 24, 2009) (online hotel reservation taxes and fees) (refunds on claims-made basis up to $5,490,000)

- *Nelsen v. PeoplePC*, Case No. CGC-07-460240 (San Francisco Super. Ct. Aug. 8, 2008) (subscription to dial-up Internet) (refunds up to $30 per claimant)

- *Siemers v. Wells Fargo & Co. et al.*, 05-cv-04518 (N.D. Cal. Feb. 5, 2008) (Dkt. # 408) (securities fraud regarding mutual fund fees) (common fund of $1,098,500)

- *Vroegh v. Eastman Kodak Co. et al.*, Case No. CGC-04-428953 (San Francisco Super. Ct. Nov. 20, 2006) (flash memory capacity) (cash refunds to claimants of 5% of purchase price or 10% discount off future purchases)

- *Chavez v. Netflix, Inc.*, Case No. CGC-04-434884 (San Francisco Super. Ct. April 28, 2006) (DVD rental subscriptions) (free month of membership for former subscribers (retail value up to $17.99) and free month subscription upgrade for current subscribers (retail price $6.00)

- *Safier v Western Digital,* Case No. 3:05-cv-03353-BZ (N.D. Cal June 15, 2006) (Dkt. #45) (hard disk capacity) (hard drive management software valued at $30)

**D.    Selected Praise for GSLLP's Work**

Many judges have commended GSLLP's work as class counsel. *See, e.g., Fitzhenry-Russell v. The Coca-Cola Company*, 5:17-cv-00603-EJD (N.D. Cal. Oct. 3, 2019) (Dkt. #95) (finding "Class Counsel has vigorously prosecuted this action through dispositive motion practice, extensive discovery, and formal mediation" and that "counsel represented their clients with skill and diligence and obtained an excellent result for the class"); *Fitzhenry-Russell et al. v. Keurig Dr. Pepper, Inc., et al.*, Case No.17-cv-00564-NC (N.D. Cal. April 10, 2019) (Cousins, J.) (finding that GSLLP "achieved a strong result through skillful litigation and settlement negotiation"); *Pettit v. Procter & Gamble Company*, Case No. 15-cv-02150-RS (N.D. Cal. Mar. 29, 2019) (Dkt. #135) (Seeborg, J.) (finding that GSLLP "represented their clients with skill and diligence and obtained an excellent result for the class"); *Kumar v. Salov North America Corp.*, Case No. 14-cv-2411-YGR (N.D. Cal. July 7, 2017) (Dkt. # 173) (Gonzales-Rogers, J.) (same); *Koller v. Med Foods Inc., et al.*, Case No. 3:14-cv-02400 (N.D. Cal. Aug. 29, 2018) (Dkt. #169) (Seeborg, J.) (finding that GSLLP were "highly qualified counsel who, throughout this case, vigorously and adequately represented their [clients'] interests"); *Kumar v. Safeway Inc.*, Case No. RG 14726707 (Alameda County Super. Ct. March 16, 2018) (Smith, J.) (same); *Rainbow Business Solutions, Inc., et al. v. MBF Leasing LLC, et al.*, Case No. 10-cv-01993-CW (N.D. Cal., Dec. 5, 2017) (Dkt. #730) (Wilken, J.) (same); *Mackinnon v. IMVU, Inc.*, Case No 111-cv-193767 (Santa Clara Super. Ct. Feb. 24, 2016) (Kirwan, J.); *Chavez v. Blue Sky Natural Beverage Co., et al.*, 3:06-cv-06609-JSW (N.D. Cal., June 1, 2012) (Dkt. #318) (White, J.); *Embry v. Acer America Corporation*, Case No. 09–cv-01808-JW (N.D. Cal. Feb. 4, 2012) (Dkt.

#218) (Ware, J.) (same); *Mancini, et al v Ticketmaster, et al.*, Case No. 07-cv-01459-DSF-JTL (C.D. Cal. August 2, 2013) (Dkt. #510) (Fischer, J.) (similar).

## E.     The Lawyers of Gutride Safier LLP

### Adam J. Gutride

Mr. Gutride is a founding partner of Gutride Safier LLP and has served as co-lead counsel in each of the cases litigated by the firm.

Mr. Gutride has successfully argued several of the seminal consumer class action cases in the United States Court of Appeals for the Ninth Circuit.  These include *Just Film v. Buono*, 847 F.3d 1108 (2017), which established that a class could be certified to pursue claims under the federal Racketeering and Corrupt Practices Act even though class members suffered different injuries; *Stearns v. Ticketmaster,* 655 F.3d 1015 (2011), which established that a class can be certified even without proof that all persons in the class were misled; and *Chavez v. Blue Sky,* 340 Fed. Appx. 359 (2009), apparently the first food labeling case decided in the Ninth Circuit, which affirmed that deceptive statements on a soda can were actionable if they motivated the purchase.

Mr. Gutride also has defeated motions to dismiss and obtained class certification and in most cases multimillion-dollar settlements in numerous other nationwide and multistate class actions involving product mislabeling, false advertising and unfair practices. His cases have involved olive oil, white chocolate, ginger ale, flushable wipes, flash memory, hard disk drives, computer operating systems, and video rentals by mail. Mr. Gutride was appointed to the Plaintiffs' Steering Committee in *In re Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litig.*, Case No. 19-md-02913-WHO (N.D. Cal.). Mr. Gutride spoke at the 2013 National Institute on Class Actions regarding food mislabeling.

Previously, Mr. Gutride litigated at the San Francisco based law firms of Keker & Van Ness and Orrick Herrington & Sutcliffe. During that period, Mr. Gutride represented the governor of California before the California Supreme Court and handled a nationwide securities class action against Merrill Lynch. Mr. Gutride also has served as an Instructor in Legal Research and Writing at the Hastings Law School of the University of California.

Mr. Gutride is a member of the state bar of California and several federal courts. Mr. Gutride received his juris doctorate from Yale Law School and his bachelor of arts from the University of Chicago.

### Seth A. Safier

Mr. Safier is a founding partner of Gutride Safier LLP and has served as co-lead counsel in each of the cases listed above. Prior to founding Gutride Safier with Mr. Gutride, Mr. Safier was general counsel at an internet company and also worked as a litigator at Orrick Herrington & Sutcliffe. Mr. Safier also has served as an Instructor of Legal Research and Writing at the Hastings Law School of the University of California.

Mr. Safier is a member of the California State Bar and numerous federal courts. Mr. Safier received his juris doctorate from Harvard Law School and his bachelor of arts from Brandeis University.

## Marie A. McCrary

Marie McCrary is a partner at Gutride Safier LLP. Prior to working with Gutride Safier, Ms. McCrary worked on complex litigation at Bell Nunnally & Martin LLP in Dallas and Carroll Burdick & McDonough, LLP in San Francisco. Prior to that, Ms. McCrary was an attorney at Quinn Emanuel Urquhart & Sullivan, LLP. Ms. McCrary has experience in complex matters involving contract disputes and business torts, patent and trade dress litigation, class actions, and creditors' rights issues.

Ms. McCrary is a member of the California, Massachusetts, Texas, and Colorado bar associations. She is admitted to practice in the United States District Court in each of the following districts: the Northern District of California, the Central District of California, the Eastern District of California, the Northern District of Texas, the Southern District of Texas, the Eastern District of Texas, and the District of Massachusetts. Ms. McCrary received her juris doctorate from New York University and her bachelor of science degree from Truman State University. Ms. McCrary was the 2004 and 2005 national champion in parliamentary debate (NPDA, NPTE).

## Matthew T. McCrary

Mr. McCrary is a partner at Gutride Safier LLP. Prior to working with Gutride Safier, Mr. McCrary conducted complex litigation for McDermott, Will, and Emery, LLP and Baker & McKenzie, LLP. Mr. McCrary has experience litigating complex matters involving contract disputes and business torts, white collar crime, class actions, securities and antitrust issues.

Mr. McCrary is licensed to practice law in Massachusetts, Texas, and Colorado. He is admitted to practice in the United States District Court in each of the following districts: the Northern District of Texas, the Eastern District of Texas, the District of Massachusetts, and the District of Colorado. Mr. McCrary received his juris doctorate from the University of Texas at Austin School of Law and his bachelor of arts degree from the University of North Texas. Following law school, Mr. McCrary clerked for the Ninth Circuit Court of Appeals, the Honorable Carlos T. Bea.

Mr. McCrary successfully argued the seminal consumer class action case, *Davidson et al. v. Kimberly-Clark Corporation, et al.,* 873 F.3d 1103, in the United States Court of Appeals for the Ninth Circuit, which established that a putative class representative had Article III standing to pursue injunctive relief even though she was already on notice of the misrepresentation.

## Todd Kennedy

Mr. Kennedy is of counsel at Gutride Safier LLP. Prior to working with Gutride Safier, Mr. Kennedy conducted complex litigation for Quinn Emanuel Urquhart & Sullivan, LLP. At Quinn, Todd successfully litigated some of the world's largest patent cases, for both plaintiffs and defendants. He helped achieve complete defense jury verdicts for Google in the company's

only two patent trials—both of which were in the Eastern District of Texas, the favored venue for plaintiffs. On the plaintiffs' side, Mr. Kennedy successfully represented Sony Electronics in enforcing ten digital television patents in a series of lawsuits spanning five jurisdictions.

Mr. Kennedy clerked for one year on the Eighth Circuit U.S. Court of Appeals, and two years on the U.S. District Court for the Western District of Missouri.

Mr. Kennedy is a member of the California State Bar, the Washington State Bar, and numerous federal courts. He received his juris doctorate from the Yale Law School. He received his bachelor of arts from University of Missouri.

**Anthony J. Patek**

Mr. Patek is an attorney at Gutride Safier LLP.  Prior to working with Gutride Safier, Mr. Patek conducted complex litigation for Cooley, LLP and HelixIP LLP.  At Cooley and HelixIP, Anthony represented Ronald A. Katz Technology Licensing, Inc. and Zenith Electronics in their efforts to enforce their patent portfolios against numerous infringers. Representing patent owner Evolutionary Intelligence, he defeated seven petitions for inter partes reviews, and won an eighth petition on the merits at trial before the Patent Trial and Appeal Board. He has also represented major pharmaceutical and software companies and prestigious research universities in multimillion-dollar lawsuits.  He has also handled significant pro bono litigation and was the lead attorney for the petitioner in *Mengstu. v. Holder*, 560 F.3d 1055 (9th Cir. 2009), a decision establishing that victims of ethnicity-based civil wars are eligible for asylum.

Mr. Patek clerked for the United States District Court for the District of Nevada, the Hon. Edward C. Reed.  Anthony is a former Co-Chair of the American Bar Association's Sub-Committees on Patent Infringement and Non-Practicing Entity Litigation.

Mr. Patek is a member of the California State Bar and numerous federal courts. He received his juris doctorate from the University of California, Berkeley, Boalt Hall School of Law. He received a master of science from Stanford University and his bachelor of science from University of Michigan.

**Stephen M. Raab**

Mr. Raab is an attorney at Gutride Safier LLP. Prior to working with Gutride Safier, Mr. Raab handled litigation and insurance matters in the Pacific Northwest, at Forsberg & Umlauf, P.S. and Gordon & Polscer, L.L.C. Before that, Mr. Raab conducted complex litigation as a member of the Trial group in the New York office of Dorsey & Whitney LLP.

Mr. Raab is licensed in New York, Oregon, and Washington and practices in federal and state courts.  He received his juris doctorate from New York University and his bachelor of arts degree from Amherst College.

Mr. Raab has obtained final approval of a class settlement with a major manufacturer of laptops and has represented plaintiffs asserting claims against large corporations in cases involving food labeling, product labeling and warranties, hidden and unlawful charges, and bait-and-switch tactics (by the dominant tax preparation companies). Previously, Mr. Raab

represented insurance companies regarding coverage and exposure in complex cases, including class actions, environmental investigations and cleanups, product liability claims, medical malpractice claims, food contamination claims, software disputes, and potential bad faith liability. Mr. Raab has also previously defended a major corporation in a class action involving digital cameras, helping defeat a motion for class certification in the Southern District of New York. In sum, Mr. Raab has litigated both on behalf of and against sophisticated companies, and he has prevailed for his clients on dispositive motions and on appeals.

**Rajiv Thairani**

Mr. Thairani is an attorney at Gutride Safier LLP. Prior to working with Gutride Safier, Mr. Thairani was a litigation associate at Latham & Watkins LLP. Mr. Thairani has experience litigating complex matters involving human trafficking, white collar crime, SEC violations and consumer class actions.

While at Latham & Watkins, Mr. Thairani helped represent 47 plaintiffs in the largest human trafficking civil action in United States history. The clients were among more than 500 Indian laborers whom Signal International illegally recruited to conduct post-Hurricane Katrina repair work in the Gulf of Mexico. After Signal International won the initial class certification battle, Latham & Watkins joined a team of firms coordinated by the Southern Poverty Law Center that filed individual suits on behalf of the plaintiffs. The action resulted in a $20 million settlement for the victims.

Mr. Thairani is a member of the New York State Bar. He received his juris doctorate from Duke University School of Law where he was awarded the Frank Warren Snepp Jr. Scholarship and was a staff editor on the Duke Journal of Constitutional Law and Public Policy. He obtained his bachelor of arts from the University of California, Los Angeles in political science.

**Hayley Reynolds**

Hayley Reynolds is an attorney at Gutride Safier LLP. Prior to working with Gutride Safier, Ms. Reynolds advised departments within Santa Clara County government as a deputy county counsel. Before that, Ms. Reynolds was a litigation associate at O'Melveny & Myers LLP, where she litigated complex matters involving employment, anti-trust, and intellectual property.

Ms. Reynolds also served as an adjunct faculty member at U.C. Hastings, teaching a moot court course for first year law students. Prior to law school, Hayley worked as a Legal Coordinator for the Center for Science in the Public Interest principally focused on advocating for food labeling reform.

Ms. Reynolds is a member of the California State Bar. She received her juris doctorate from U.C. Hastings. Before joining the office, Hayley completed a clerkship for Magistrate Judge Susan van Kuelen of the United States District Court for the Northern District of California.

**Tekesha Geel**

Ms. Geel is a lawyer at Gutride Safier LLP. Prior to joining Gutride Safier, Ms. Geel worked on complex litigation and transactional matters at King & Spalding, Motley Rice, and other boutique firms in the Southeast. Ms. Geel has experience litigating matters involving mass torts, insurance coverage, defamation, privacy, and intellectual property.

Tekesha Geel has worked for plaintiffs and defendants in many high-profile cases. On behalf of plaintiffs, she assisted in prosecuting to judgment a $30 million securities class action against a semiconductor company, over statements regarding a popular computer processing chip. She successfully pursued a patent infringement claim against a large pharmaceutical corporation on behalf of a state medical university and one of its research professors. She also litigated antitrust class action claims against numerous banking entities in one of the largest rate-fixing cases to date. On the defense side, she represented a multi-national automobile manufacturer in successfully resolving over 200 class action complaints pending in a multi-district litigation with a total reported settlement value of $1.65 billion. She also helped defend several Fortune 500 companies against claims of defamation and vicarious liability.

Ms. Geel is a member of the Georgia State Bar. She received her Juris Doctorate from Emory University School of Law, where she was a Notes and Comments Editor and then Executive Managing Editor of the Emory Law Journal. While in law school, Ms. Geel worked with the Federal Trade Commission to investigate allegations of consumer fraud in the mortgage industry and potential insurance company liability for FTC judgments. Ms. Geel was selected to assist with editing the 11th edition of the seminal textbook Prosser, Wade and Schwartz's Torts Cases and Materials.

Ms. Geel clerked for The Honorable Robert Benham of the Georgia Supreme Court. She obtained her Bachelor of Arts degree from Yale University. During college, Ms. Geel won prestigious internships at Goldman Sachs and Merrill Lynch, where she assisted with the integration of emerging technologies and implementation of data security measures.

**F.    Trial Experience of Gutride Safier LLP Attorneys**

This section summarizes the trial experience in class and complex litigation of the attorneys in GSLLP.

In March 2020, GSLLP attorneys Mr. Gutride, Mr. Safier, Ms. McCrary, and Mr. McCrary tried to the bench the case of *Saliani et al. v. Bay Area Toll Authority, et al.,* Case Nos. CGC-14-540384; CGC-15-549048; CGC-16-550947 (San Francisco County Superior Court). Plaintiffs alleged violations of the California Due Process Clause and California's consumer protection law related to unlawful penalties charged for toll invoices that were not received and the denial of administrative review.

While Mr. Gutride was a student at Yale Law School, he was a member of the trial team in a class action against the U.S. Government on behalf of Haitian refugees intercepted at sea and detained at the U.S. Naval Base in Guantanamo Bay, Cuba.  That case, *Haitian Centers Council et al. v. Sale*, 823 F. Supp. 1028 (E.D.N.Y 1993), included an 11-day bench trial. Although Mr. Gutride was a junior member of the trial team, he conducted the direct examination of a U.S. Government contractor regarding the conditions at Guantanamo and objected to the cross-

examination by the Assistant U.S. Attorney. Mr. Gutride also assisted in setting trial strategy and in drafting motions in limine and proposed findings of fact. Mr. Gutride travelled to Guantanamo to interview the clients and to negotiate with U.S. Government officials about conditions.

More recently, Mr. Gutride assisted in the jury trial in the case of *Western MacArthur Co. et al, v. USF&G, Inc.*, Alameda County Super. Ct. Case No. 721595, an insurance coverage case that involved underlying claims by tens of thousands of injured persons. Mr. Gutride supervised the drafting of and argued all or substantially all the motions in limine. Mr. Gutride also supervised the culling and introduction into evidence of deposition testimony from dozens of witnesses, both by way of video recordings and live readings, as well as the evidentiary objections pertaining thereto. Mr. Gutride was present at trial each day and was involved in strategy regarding jury selection, expert testimony, and other issues. The trial, before Judge Bonnie Sabraw, lasted for six weeks before the case settled for more than $900 million.

In June 2016, Mr. Gutride and Mr. Safier tried to an arbitrator the case of *McArdle v. AT&T, Inc.*, a case alleging that AT&T violated California's consumer protection statutes concerning the international roaming fees imposed on mobile phone subscribers for incoming calls that were not answered. The case was pled as a class action, and a motion for class certification was briefed, but Judge Claudia Wilken denied the motion without prejudice, ordered that the plaintiff arbitrate his individual claims and stayed the litigation pending arbitration.

Mr. Kennedy served on the trial teams on behalf of Google in *Bright Response v. Google Inc. et al.*, 2:07-cv-00279 (E.D. Tex.) and *Function Media, L.L.C. v. Google, Inc. et al.*, 2:07-cv-00371 (E.D. Tex.), which involved highly technical cases of patent infringement.  In both cases, he and his team achieved complete jury verdicts of invalidity and non-infringement for Google. Mr. Kennedy prepared the expert and fact witnesses for direct and cross-examination, drafted the cross-examination of the inventor, drafted motions in limine and responses and objections to exhibits, made deposition designations, and drafted and assisted in the preparation of the closing statement.

Ms. McCrary was second-chair on the trial team in *Freight Train Advertising, LLC v. Chicago Rail Link*, L.L.C., Case No. 11-cv-2803 (N.D. Ill.), a contract and false representations case, in which both parties alleged breach of a multimillion-dollar contract involving outdoor advertising. The case proceeded to a bench trial at which Ms. McCrary conducted cross-examination and argued to the court.

Mr. McCrary served on the trial team in *Adams v. Pilgrim's Pride Corp.*, No. 2:09-CV-397 (E.D. Tex.), a mass action involving thousands of poultry growers who brought federal antitrust claims under the Packer's and Stockyard's Act against Pilgrim's Pride Corporation, as well as claims under various state deceptive trade practices acts. The case proceeded in three separate trials, all to the bench. At the trials, Mr. McCrary cross-examined multiple adverse witnesses, made objections to opposing counsel's direct examinations, prepared motions for judgment as a matter of law, responded to a motion to strike the economics expert, and prepared trial briefs on various legal issues.

## APPENDIX A

Gutride Safier LLP was appointed class counsel to represent consumers, small businesses, employees and investors in each of the following cases:

Food and Beverage Labeling

- *Fitzhenry-Russell v. The Coca-Cola Company*, 5:17-cv-00603-EJD (N.D. Cal.) (plaintiffs alleged violation of California's consumer protection laws for the false advertising of Seagram's ginger ale as "made with real ginger")

- *Fitzhenry-Russell, et al. v. Dr. Pepper Snapple Group, Inc., et al.*, 4:17-cv-00564-NC (N.D. Cal.) (plaintiffs alleged violation of California's consumer protection laws for the false advertising of Canada Dry ginger ale as "made from real ginger")

- *Koller v. Med Foods Inc., et al.*, Case No. 3:14-cv-02400 (N.D. Cal.) (plaintiff alleged violation of California's consumer protection laws for the false advertising of the Bertolli and Carapelli brand olive oils as "extra virgin" and "imported from Italy" when the olive oils do not originate from Italy and do not meet the requirements for "extra virgin" olive oil)

- *Kumar v. Salov North America Corp.,* Case No. 14-cv-2411-YGR (N.D. Cal.) (plaintiff alleged violation of California's consumer protection laws for the false advertising of the Filippo Berio brand olive oils as "imported from Italy" when the olive oils do not originate from Italy)

- *Kumar v. Safeway Inc.*, Case No. RG 14726707 (Alameda County Superior Court) (plaintiff alleged violation of California's consumer protection laws for the false advertising of Safeway Select brand olive oils as "extra virgin" and "imported from Italy" when the olive oils do not originate from Italy and do not meet the requirements for "extra virgin" olive oil)

- *Miller, et al. v. Ghirardelli Chocolate Company*, Case No. 12-cv-04936-LB (N.D. Cal.) (plaintiffs alleged violation of California's consumer protection laws for the false advertising of baking chips as containing white chocolate even though they did not, and falsely labeling some products as "all natural" though they were made with non-natural ingredients)

- *Witthoff v. Honest Tea, Inc.*, Case No. CGC-10-504987 (San Francisco County Superior Court) (plaintiff alleged violation of California's consumer protection laws for the false advertising of the kombucha beverages, a fermented tea drink, as a non-alcoholic beverage despite the fact that the beverage continued to ferment after leaving the factory, allowing the alcohol content of the beverage to be as high as 3%)

- *Gauss v. Millennium Products, Inc.*, Case No. CGC-10-503347 (San Francisco County Superior Court) (plaintiff alleged violation of California's consumer protection laws for the false advertising of the "GT's Kombucha" and "Synergy" brands of kombucha beverages, fermented tea drinks, as a non-alcoholic beverage

despite the fact that the beverages continued to ferment after leaving the factory, allowing the alcohol content of the beverage to be as high as 3%)

- *Chavez v. Blue Sky Natural Beverage Co., et al.*, 3:06-cv-06609-JSW (N.D. Cal.) (plaintiff alleged violation of California's consumer protection laws for the false advertising of the Blue Sky beverages as made in and/or originated from Santa Fe, New Mexico when the beverages were not manufactured in Santa Fe or New Mexico)

Product Labeling

- *Carlotti v. ASUS Computer International et al.*, 4:18-cv-03369-DMR (N.D. Cal.) (plaintiff alleged breaches of warranties and violations of California's consumer protection laws related to deceptive marketing of ASUS gaming laptops and related to manufacturing and design defects in the laptops)

- *Pettit v. Procter & Gamble Company,* Case No. 15-cv-02150-RS (N.D. Cal.) (plaintiff alleged violation of California's consumer protection laws for false advertising of the Charmin Freshmates flushable wipes as being "flushable" when the wipes are not suitable for flushing and clog household plumbing and city sewers)

- *Machlan v. Nehemiah Manufacturing Co., et al.*, Case No. CGC-14-538168 (San Francisco County Superior Court) (plaintiff alleged violation of California's consumer protection laws for false advertising of Kandoo flushable wipes advertising as being "flushable" when the wipes are not suitable for flushing and clog household plumbing and city sewers)

- *In re Arctic Sentinel, Inc.* (*Miller v. Fuhu, Inc.*), Case No. 15-bk-12465 (Bankr. D. Del.) (plaintiff alleged violation of California's consumer protection laws related to the Nabi tablets, which were sold with defective power adapters that did not recharge the tablets)

- *Embry v. Acer America Corporation*, 09-cv-01808-JW (N.D. Cal.) (plaintiff alleged violation of California's consumer protection laws for false advertising of its computers as including a specified version of Microsoft Windows despite the computers not including the software, which resulted in users typically losing their user-installed applications and user files if the computer's hard drive failed)

- *Cho v. Seagate Technology (US) Holdings, Inc.*, Case No. CGC-06-453195 (San Francisco County Superior Court) (plaintiff alleged violation of California's consumer protection laws related to Seagate overstating the storage capacity of its computer hard drives by approximately 7 percent)

- *Vroegh v. Eastman Kodak Co. et al.*, Case No. CGC-04-428953 (San Francisco County Superior Court) (plaintiff alleged violation of California's consumer protection laws related to Eastman Kodak Co. overstating the storage capacity of flash memory drives by approximately 4 percent)

14

- *Safier v Western Digital,* Case No. 3:05-cv-03353-BZ (N.D. Cal) (plaintiff alleged violation of California's consumer protection laws related to Western Digital overstating the storage capacity of hard disk drives by approximately 4 percent)

Subscriptions and Online Purchasing Fraud

- *Mackinnon v. IMVU, Inc.*, Case No. 1-11-cv-193767 (Santa Clara County Superior Court) (plaintiff alleged violation of California's consumer protection laws related to the limited playback of audio products that consumers purchased for real money to play in the IMVU virtual universe).

- *Deaton v. Hotwire, Inc.*, Case No. CGC-05-437631 (San Francisco County Superior Court) (plaintiff alleged violation of California's consumer protection laws related to Hotwire's added "service fees" to each hotel reservation made on its website for "taxes and fees" that were actually variable amounts designed to disguise the true cost of the room)

- *Nelsen v. PeoplePC, Inc.*, Case No. CGC-07-460240 (San Francisco County Superior Court) (plaintiff alleged violation of California's consumer protection laws related to PeoplePC's practice of continuing to charge customers for its dialup Internet service even when they requested cancellation)

- *Mancini, et al. v. Ticketmaster et al.,* 2:07-cv-01459-DSF-JTL (C.D. Cal.), (plaintiff alleged violation of the federal Electronic Funds Transfer Act and consumer protection laws related to Defendants failure to disclose to customers on Ticketmaster's website that they would be enrolled in an online coupon service with reoccurring charges)

- *Chavez v. Netflix, Inc.*, Case No. CGC-04-434884 (San Francisco County Superior Court) (plaintiff alleged violation of California's consumer protection laws related to Netflix advertising its online video rental service)

Securities

- *Siemers v. Wells Fargo & Co. et al.*, Case No. 05-4518 WHA (N.D. Cal.) (plaintiff alleged violation of §12(a)(2) of the Securities Act of 1933 and §10(b) of the Securities Exchange Act of 1934 related to an undisclosed kickback scheme)

Employment

- *Haven v Betz & Sons,* Case No. CGC-05-438719 (San Francisco County Superior Court) (plaintiff alleged violation of California's wage and hour laws)

Toll Processing/Government

- *Saliani et al. v. Bay Area Toll Authority, et al.,* Case Nos. CGC-14-540384; CGC-15-549048; CGC-16-550947 (San Francisco County Superior Court) (plaintiffs allege violation of the California Due Process Clause and California's consumer

protection law related to unlawful penalties charged for toll invoices that were not received and the denial of administrative review)

Small Business Leasing and Credit Card Processing

- *Rainbow Business Solutions, Inc., et al. v. MBF Leasing LLC, et al.,* Case No. 10-cv-01993-CW (N.D. Cal.) (plaintiffs alleged violation of state and federal laws including violations of the Racketeer Influenced and Corrupt Organizations Act and Fair Credit Reporting Act relating to the illegal collection of taxes on leased equipment, resulting in small businesses being overcharged)

**APPENDIX B**

In addition, Gutride Safier LLP is currently serving as plaintiffs' counsel of record in each of the following cases with class allegations in which a class has not yet been certified:

Food and Beverage Labeling

- *Lauchung-Nacarino v. Hostess Brands, Inc. et al.*, Case No. 3:20-cv-05971 (N.D. Cal.) (plaintiff alleges violations of consumer protection laws for falsely advertising Carrot Cake Donettes, which contain no carrot cake)

- *Minor v. Baker Mills, Inc. et al.*, Case No. 3:20-cv-02901 (N.D. Cal.) (plaintiff alleges violations of consumer protection laws for false advertising regarding the amount of protein in defendants' pancake and waffle mixes)

- *Niles v. Beverage Marketing USA, Inc.*, Case No. 2:19-cv-01902-EJD (E.D.N.Y.) (plaintiffs allege violations of consumer protection laws for the false advertising of Arizona Green Tea with Ginseng and Honey as containing ginseng and "ginseng for energy")

Product Labeling

- *In re Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litig.*, Case No. 19-md-02913-WHO (N.D. Cal.) (plaintiffs allege violations of consumer protection laws related to the marketing of e-cigarettes, and product liability claims related to the e-cigarettes) (Adam Gutride appointed to Plaintiffs' Steering Committee) (Dkt. #341)

- *Clair et al. v. Peter Thomas Roth, LLC et al.*, Case No. 1:20-cv-01220 (S.D.N.Y.) and *Miller v. Peter Thomas Roth, LLC*, Case No. 5:19-cv-00698-WHA (N.D. Cal.) (plaintiffs allege violations of California's consumer protection laws for the false advertising of "Water Drench" and "Rose Stem Cell" skin care products)

- *Scanlon v. Curtis International Ltd. et al.*, Case No. 19-CV-01882 (Merced County Super. Ct.) (plaintiff alleges violations of California's consumer protection laws for false advertising concerning the brightness of home theater projectors)

Other Deceptive Practices

- *Silver et al. v. Stripe, Inc.*, 4:20-cv-08196-DMR (N.D. Cal.) (plaintiffs allege privacy violations and interception of communications in connection with online shopping transactions)

- *Elgindy et al. v. AGA Service Co. et al.*, Case No. 4:20-cv-06304 (N.D. Cal.) (plaintiffs allege violations of consumer protection laws related to defendants' deceptive, unfair, and unlawful acts and practices in charging consumers hidden fees in connection with travel insurance and event ticket insurance)

- *Dobner v. StubHub, Inc.*, Case No. 3:20-cv-04786 (N.D. Cal.) (plaintiff alleges common law claims and violations of consumer protection laws related to defendants' deceptive, unfair, and unlawful acts and practices in failing to provide refunds for postponed and rescheduled live events) (consolidated under *In re StubHub Refund Litigation*, Case No. 4:20-md-02951-HSG)

- *Snow et al. v. Eventbrite Inc.*, Case No 3:20-cv-03698 (N.D. Cal.) (plaintiff alleges common law claims and violations of consumer protection laws related to defendant's deceptive, unfair, and unlawful acts and practices in failing to provide refunds for postponed and rescheduled live events)

- *Hansen v. Ticketmaster Entertainment, Inc. et al.*, Case No. 3:20-cv-02685 (N.D. Cal.) (plaintiff alleges common law claims and violations of consumer protection laws related to defendants' deceptive, unfair, and unlawful acts and practices in failing to provide refunds for postponed and rescheduled live events)

- *Taylor v. Shutterfly Inc.*, Case No. 5:18-cv-00266 (plaintiff allege violations of consumer protection laws related to defendants' deceptive, unfair, and unlawful acts and practices in selling Groupon deals for the purchase of photo products)

- *Cullen et al. v. Shutterfly Lifetouch, LLC et al.*, Case No. 5:20-cv-06040-BLF (N.D. Cal.) (plaintiffs allege violations of consumer protection laws related to defendants' deceptive, unfair, and unlawful acts and practices in sending unsolicited photographs to households with a request for payment)

- *Brekhus et al. v. Google LLC et al.*, Case No. 5:20-cv-05488-BLF (N.D. Cal. (plaintiffs allege violations of consumer protection laws, privacy laws, and wiretap laws related to defendants' deceptive, unfair, and unlawful acts and practices in recording audio in customers' homes)

- *Moretti v. The Hertz Corporation, et al.*, Case No. 1:14-cv-00469-LPS (Del.) (plaintiff alleges violations of consumer protection laws related to Hertz, Dollar, Thrifty and Firefly brand rental cars advertising in rates in U.S. dollars during the online reservation process and advertising insurance as "optional," but converting the cost to pesos at an inflated exchange rate and charging a mandatory insurance fee when consumers pick up the cars in Mexico) (stayed and subject to bankruptcy proceeding *In re The Hertz Corporation*, Case No. 1:20-bk-11218 (D. Del.)

- *Olosoni et al. v. H&R Block, Inc., et al.*, Case No. 3:19-cv-03610-SK (N.D. Cal.) (plaintiffs allege violations of consumer protection laws related to defendants' deceptive, unfair, and unlawful acts and practices in steering taxpayers into paid services, rather than the free filing services they are seeking and to which the taxpayers are entitled)

# Exhibit 3

| | | | | |
|---|---|---|---|---|
| **Arbitrators/Mediators (E121)** | 5,988.00 | | | |
| | | 9/12/18 | American Arbitration Association | Costs to initiate arbitration | 200.00 |
| | | 11/19/19 | JAMS | 1/27/20 - Mediation | 5,700.00 |
| | | 2/6/20 | JAMS | 1/27/20 - Mediation | 88.00 |
| | | | | | 5,988.00 |
| | | | | | |
| **Court Fees (E112)** | 435.00 | | | | |
| | | 12/13/17 | S&R Services | New case filing fee; invoice 11096 | 435.00 |
| | | | | | |
| **Delivery Svcs & Msgrs (E107)** | 725.37 | | | | |
| | | 12/13/17 | S&R Services | Filing of complaint and new case filing fees | 155.00 |
| | | 12/14/17 | S&R Services | Service of complaint and summons on Shutterfly, Inc. | 65.00 |
| | | 4/9/18 | S&R Services | Delivery of Chambers copy of Opp to Motion to Compel Arbitration | 70.00 |
| | | 6/28/18 | S&R Services | Delivery of Chambers copy of Supp Opp to Mot to Compel Arb | 50.00 |
| | | 8/23/18 | S&R Services | Service of subpoena on Groupon | 135.00 |
| | | 8/6/19 | Lone Star Legal LLC | Delivery of Chambers copy of Motion to Confirm Arbitral Award | 44.18 |
| | | 12/23/19 | XR Legal Document | Delivery of Chambers copy of Opp to Motion to Strike Class Allegations | 77.44 |
| | | 8/24/20 | S&R Services | Delivery of Chambers copy of Joint Discovery Dispute Letter | 128.75 |
| | | | | | 725.37 |
| | | | | | |
| **Court Transcripts** | 119.65 | | | | |
| | | 6/14/18 | Irene Rodriguez | Transcript of hearing on motion to compel arbitration | 27.00 |
| | | 9/12/19 | Joan Columbini | Transcript of case management conference | 92.65 |

| | | | | 119.65 |
|---|---|---|---|---|
| **Litigation Sup Vendors (E118)** | 3.99 | | | |
| | | 11/2/20 | CS Disco | Costs of hosting electronic documents | 3.99 |
| **Meals (E111)** | 578.89 | | | |
| | | 2/16/19 | Eddie Merlot's | Marie McCrary - Meal with client during meeting | 306.37 |
| | | 1/26/20 | Einstein's | Marie McCrary - Meal during mediation travel | 11.63 |
| | | 1/26/20 | Marlowe | Marie McCrary - Meal with client during mediation travel | 136.13 |
| | | 1/26/20 | Starbucks | Marie McCrary - Coffee with client during mediation travel | 11.95 |
| | | 1/27/20 | Amoura | Marie McCrary - Meal during mediation travel | 22.17 |
| | | 1/27/20 | Wayfare Tavern | Marie McCrary - Meal with client during mediation travel | 78.64 |
| | | 1/27/20 | Lunch | Seth Safier - meal during mediation | 12.00 |
| | | | | | 578.89 |
| **Online Research (E106)** | 305.47 | | | |
| | | 4/18/18 | Pacer Service Center | Marie McCrary charges | 32.60 |
| | | 7/13/18 | Pacer Service Center | Seth Safier charges | 19.10 |
| | | 4/7/19 | Lexis Nexis | Research charges | 55.28 |
| | | 4/12/19 | Pacer Service Center | Marie McCrary charges | 3.10 |
| | | 5/7/19 | Pacer Service Center | Kristen Simplicio charges | 9.90 |
| | | 5/7/19 | Lexis Nexis | Research charges | 21.38 |
| | | 8/7/19 | Lexis Nexis | Research charges | 8.23 |
| | | 9/7/19 | Lexis Nexis | Research charges | 23.74 |
| | | 10/2/19 | Pacer Service Center | Marie McCrary charges | 20.10 |
| | | 10/7/19 | Lexis Nexis | Research charges | 5.52 |

| Date | Vendor | Description | Amount |
|---|---|---|---|
| 1/7/20 | Lexis Nexis | Research charges | 33.47 |
| 2/7/20 | Lexis Nexis | Research charges | 2.22 |
| 8/7/20 | Lexis Nexis | Research charges | 15.38 |
| 9/7/20 | Lexis Nexis | Research charges | 46.94 |
| 10/7/20 | Lexis Nexis | Research charges | 7.01 |
| 11/6/20 | Pacer Service Center | Hayley Reynolds charges | 1.50 |
| | | | 305.47 |

**Postage (E108)**     13.18

| Date | Vendor | Description | Amount |
|---|---|---|---|
| 12/8/17 | USPS | Seth Safier mailing of CLRA letter | 13.18 |

**Travel**

   **Local Travel (E109)**     182.60

| Date | Vendor | Description | Amount |
|---|---|---|---|
| 6/14/18 | Block Parking Lot | Seth Safier for parking at motion to compel arbitration hearing | 10.00 |
| 6/14/18 | CCSF MTA IPS Parking Meter | Seth Safier for parking at motion to compel arbitration hearing | 1.25 |
| 6/14/18 | S. Safier | Mileage for motion to compel arbitration hearing | 70.85 |
| 9/12/19 | CSJ Smart Meter | S. Safier for parking at case management conference | 0.50 |
| 9/12/19 | CSJ Smart Meter | S. Safier for parking at case management conference | 2.00 |
| 9/12/19 | S. Safier | Mileage for case management conference | 58.00 |
| 1/27/20 | Embarcadero | S. Safier for parking for mediation | 20.00 |
| 1/28/20 | Impark | S. Safier for parking for mediation | 20.00 |
| | | | 182.60 |

   **Out-of-Town Travel (E110)**     2,101.07

| Date | Vendor | Description | Amount |
|---|---|---|---|
| 1/6/20 | United Air | Marie McCrary - flight to mediation | 317.80 |

| Date | Vendor | Description | Amount |
|---|---|---|---|
| 1/7/20 | United Air | Mel Taylor - flight to mediation | 450.80 |
| 1/10/20 | United Air | Mel Taylor - change fee for mediation | 200.00 |
| 1/10/20 | United Air | Marie McCrary - change fee for mediation | 200.00 |
| 1/26/20 | Uber | Marie McCrary - travel for mediation | 33.09 |
| 1/27/20 | Uber | Marie McCrary - travel for mediation | 10.16 |
| 1/27/20 | Uber | Marie McCrary - travel for mediation | 8.51 |
| 1/28/20 | Uber | Marie McCrary - travel for mediation | 35.39 |
| 1/28/20 | Mimii's Ride to Fly | Marie McCrary - transportation to Airport for mediation | 125.00 |
| 1/28/20 | Palace Hotel | Marie McCrary and Mel Taylor - Lodging for mediation | 533.58 |
| 1/28/20 | Palace Hotel | Marie McCrary and Mel Taylor - Lodging for mediation | 6.98 |
| 1/29/20 | Megan Taylor | Megan Taylor - travel reimbursement | 179.76 |
| | | | 2,101.07 |

**Total Expense**          10,453.22

# Exhibit 4

**Recent GSLLP Settlements Class Cases**

| Case Name | *Pettit v. Procter & Gamble Company* | *Koller v. Deoleo USA, Inc.* | *Kumar v. Safeway, Inc.* | *Kumar v. Salov North America Corporation* | *Machlan v. Procter & Gamble Company, et al* | *Miller v. Ghirardelli Chocolate Company* |
|---|---|---|---|---|---|---|
| CASE BACKGROUND | | | | | | |
| Case No. | 3:15-cv-2150 (N.D.Cal.) | 4:14-cv-2400 (N.D. Cal.) | RG 14-726707 (Alameda Sup. Ct.) | 4:14-cv-2411 (N.D. Cal.) | GCG 14-538168 (San Francisco Sup. Ct.) | 3:12-cv-4936 (N.D. Cal.) |
| Issue | Wipes were falsely advertised as "flushable" and safe for sewers and septic systems | Olive oil falsely advertised as "extra virgin" and "Imported from Italy" | Olive oil falsely advertised as "extra virgin" and "Imported from Italy" | Olive oil falsely advertised as "Imported from Italy" | Wipes were falsely advertised as "flushable" and safe for sewers and septic systems | Products falsely advertised as "white chocolate" and "all natural" |
| Date Filed | April 6, 2015 | May 23, 2014 | May 23, 2014 | May 23, 2014 | March 21, 2014 | August 17, 2012 |
| Date of Final Approval | March 29, 2019 | August 29, 2018 | March 16, 2018 | July 7, 2017 | June 6, 2017 | February 20, 2015 |
| Settlement Class | All consumers who purchased the challenged product in the United States between April 6, 2011 and November 26, 2018, excluding purchases in the | All consumers in the United States who purchased the extra virgin olive oil products between May 23, 2010 and April 16, 2018, and/or who purchased any of the challenged olive oil products between May 23, 2010 and | All consumers in the United States who purchased the extra virgin olive oil products between May 23, 2010 and December 16, 2016, and/or who purchased any of the challenged olive oil products | All consumers in the United States who purchased the challenged products between May 23, 2010 and June 30, 2015 | All consumers in California who purchased the challenged products between March 21, 2010 and December 9, 2016 | All consumers in the United States who purchased the challenged products between August 17, 2008 and October 2, 2014 |

| Case Name | *Pettit v. Procter & Gamble Company* | *Koller v. Deoleo USA, Inc.* | *Kumar v. Safeway, Inc.* | *Kumar v. Salov North America Corporation* | *Machlan v. Procter & Gamble Company, et al* | *Miller v. Ghirardelli Chocolate Company* |
|---|---|---|---|---|---|---|
| | State of New York and purchases for purposes of resale. | December 31, 2015 | between January 1, 2012 and July 31, 2015 | | | |
| | | | | | | |
| **NOTICE** | | | | | | |
| Print Notice | People Magazine, Good Housekeeping, National Geographic, press release through PR News Wire | San Francisco Chronicle, People Magazine, press release through PR News Wire | East County Times | People Magazine, Good Housekeeping Magazine | Press release through PR News Wire | People Magazine, Oakland Tribune |
| Online Notice | 101 million impressions targeted at likely class members | 58 million impressions targeted at likely class members | 89.3 million impressions targeted at likely class members | 165.5 million impressions targeted at likely class members | 11.1 million impressions targeted at likely settlement class members | 316 million impressions targeted at likely class members |
| Direct Notice | None | None | Notice provided at point of sale to past purchasers using club card purchase history | None | Direct notice sent to 10 class members for whom the defendant had contact information | Direct notice sent to 21,358 class members who had purchased products from the defendant's website |

| Case Name | *Pettit v. Procter & Gamble Company* | *Koller v. Deoleo USA, Inc.* | *Kumar v. Safeway, Inc.* | *Kumar v. Salov North America Corporation* | *Machlan v. Procter & Gamble Company, et al* | *Miller v. Ghirardelli Chocolate Company* |
|---|---|---|---|---|---|---|
| Other Notice | None | Publication on www.topclassactions.com | Publication on www.topclassactions.com | Publication on www.topclassactions.com | None | None |
| Cost of Notice | Unknown | $432,700 | Unknown | Unknown | Unknown | $765,002.15 |
| | | | | | | |
| **CLAIMS** | | | | | | |
| Total Value | Claims Made | $7 million common fund | Claims Made | Claims Made | Claims Made | $5.3 million common fund |
| Claims Received | 137,068 valid claims | 255,581 valid claims | 15,164 valid claims | 53,030 valid claims | 19,077 valid claims | 83,783 valid claims |
| Total Value of Claims | $537,879 | $3,996,336.81 | $46,335.50 | $210,985.00 | $170,436 | $902.907.63 |
| Claim Cap Without Proof of Purchase | $4.20 | $25 | $1.25-$7.50, depending on product purchased and whether class member elected cash or Safeway gift card | $5 | $50 | $24 |
| Claim Cap With Proof of Purchase | $30.00 | None (unlimited) | None (unlimited) | None (unlimited) | None (unlimited) | None (unlimited) |
| Other Monetary Relief | None | If money is left in fund, the claim amount will be increased pro rata, up to five times the | Class members could receive three times as much if they elected to receive | None | None | None |

| Case Name | *Pettit v. Procter & Gamble Company* | *Koller v. Deoleo USA, Inc.* | *Kumar v. Safeway, Inc.* | *Kumar v. Salov North America Corporation* | *Machlan v. Procter & Gamble Company, et al* | *Miller v. Ghirardelli Chocolate Company* |
|---|---|---|---|---|---|---|
| | | initial amount | the funds in the form of a Safeway gift card (approximately two-thirds of claimants elected the gift card) | | | |
| Average Recovery Per Claimant | $3.92 | Not yet calculated | $3.05 | $3.98 | $8.93 | $10.78 |
| Approx. Size of Class | 3,900,000 | 39,340,000 | Unknown | 3,679,000 | Unknown | Unknown |
| Approx. Number of Households [1] | 2,000,000 | 20,174,359 | Unknown | 1,886,667 | Unknown | Unknown |
| Household Claims Rate | 6.8% | 1.2% | Unknown | 2.8% | Unknown | Unknown |
| | | | | | | |
| **OTHER RELIEF** | | | | | | |
| Injunctive Relief | Changes to labeling; improved | Changes to labeling, changes to packaging, changing | Changes to labeling; changes to packaging | Changes to labeling | Changes to labeling | Changes to labeling |

---

[1] The Census Bureau reports that there is an average of 1.95 adults per household in the United States. *See* https://www.census.gov/data/tables/2018/demo/families/cps-2018.html (Table AVGI), last accessed January 4, 2019.

| Case Name | *Pettit v. Procter & Gamble Company* | *Koller v. Deoleo USA, Inc.* | *Kumar v. Safeway, Inc.* | *Kumar v. Salov North America Corporation* | *Machlan v. Procter & Gamble Company, et al* | *Miller v. Ghirardelli Chocolate Company* |
|---|---|---|---|---|---|---|
|  | product design and testing methodologies | to testing methodologies |  |  |  |  |
| Value of Injunctive Relief | No monetary estimate provided | Estimated to save class members $68.3 million | Estimated to save class members $5,279,450 | Estimated to save class members $19.9 million | No monetary estimate provided | Estimated to save class members $13.46 million |
| Cy Pres | None | Consumers Union and Center for Food Safety | None | None | None | Consumers Union; National Consumer Law Center; University of California, Davis, Food Science & Technology Department; Florida State University, Food & Nutritional Science Department |
|  |  |  |  |  |  |  |
| **FEES, COSTS, AND INCENTIVES** |  |  |  |  |  |  |
| Lodestar | $2,574,041.83 | $2,2257,030.29 | $1,792,602.80 | $1,470,507.50 | $927,975 | $1,711,710 |
| Total Fees & Costs Awarded (Costs) | $2,150,000 (costs: $261,611.11) | $2,250,319.73 (costs: $150,319.73) | $1,426,500 (costs: $119,325.45) | $982,500 (costs: $108,268.20) | $650,000 (costs: $29,065.60) | $1,662,572.12 (costs: $87,572.15) |
| Incentive | $1,000-$5,000 | $1,000-$5,000 | $6,490 | $2,500 | $5,000 | $10,000 |

| Case Name | *Pettit v. Procter & Gamble Company* | *Koller v. Deoleo USA, Inc.* | *Kumar v. Safeway, Inc.* | *Kumar v. Salov North America Corporation* | *Machlan v. Procter & Gamble Company, et al* | *Miller v. Ghirardelli Chocolate Company* |
|---|---|---|---|---|---|---|
| | | | | | | |

**Recent GSLLP Settlements in Product Labeling Cases**

| Case Name | *Fitzhenry-Russell v. Keurig Dr. Pepper, Inc.* | *Fitzhenry-Russell v. The Coca-Cola Company* | *Carlotti v. Asus Computer International, et al* | | |
|---|---|---|---|---|---|
| **CASE BACKGROUND** | | | | | |
| Case No. | 17-cv-00564-NC (N.D. Cal.) | | 18-CV-03369-DMR (N.D. Cal.) | | |
| Issue | False advertising of Canada Dry ginger ale as "made from real ginger") | False advertising of Seagram's ginger ale as "made with real ginger") | Product Defect; | | |
| Date Filed | December 28, 2016 | February 6, 2017 | May 4, 2018 | | |
| Date of Final Approval | April 10, 2019 | October 1, 2019 | June 22, 2020 | | |
| Settlement Class | All persons who, between December 28, 2012 and June 26, 2018, purchased any Canada Dry Ginger Ale Products in the state of California. | All persons who, between April 1, 2013 and the date of Preliminary Approval, | All persons in the United States who purchased a new ASUS Rog Strix GL502VS or ASUS Rog Strix GL502VSK laptop computer from Defendants or an authorized | | |

| Case Name | *Fitzhenry-Russell v. Keurig Dr. Pepper, Inc.* | *Fitzhenry-Russell v. The Coca-Cola Company* | *Carlotti v. Asus Computer International, et al* | | | |
|---|---|---|---|---|---|---|
| | | purchased any Seagram's Ginger Ale Product in the United States | retailer of Defendants between May 4, 2014 and November 19, 2019. | | | |
| | | | | | | |
| **NOTICE** | | | | | | |
| Print Notice | People Magazine, Good Housekeeping, and press release through PR News Wire | People Magazine, press release through PR News Wire | People Magazine, USA Today, and press release through PR News Wire | | | |
| Online Notice | 37.8 million impressions targeted at likely class members | 26 million impressions targeted at likely class members | 17.14 million impressions targeted at likely class members | | | |
| Direct Notice | Direct notice sent to class members for whom the defendant had contact | Direct notice sent to class members | Direct notice sent to class members for whom the defendant had | | | |

| Case Name | *Fitzhenry-Russell v. Keurig Dr. Pepper, Inc.* | *Fitzhenry-Russell v. The Coca-Cola Company* | *Carlotti v. Asus Computer International, et al* | | | |
|---|---|---|---|---|---|---|
| | information | for whom the defendant had contact information | contact information | | | |
| Other Notice | Publication on www.topclassactions.com | Publication on www.topclassactions.com | Publication on www.topclassactions.com Publication on Defendants' social media accounts (Facebook and Twitter) | | | |
| Cost of Notice | Unknown | Unknown | Unknown | | | |
| | | | | | | |
| **CLAIMS** | | | | | | |
| Total Value | Claims Made | Common Fund | Claims Made | | | |
| Claims Received | 92,048 | 128,887 | 31,932 (some excluded) | | | |
| Total Value of Claims | $443,344.40 | $1,266,259.20 | $881,984.15 (excluding repairs and extended warranties) | | | |
| Claim Cap | $5.20 | $10.40 | $210 credit/$110 | | | |

| Case Name | *Fitzhenry-Russell v. Keurig Dr. Pepper, Inc.* | *Fitzhenry-Russell v. The Coca-Cola Company* | *Carlotti v. Asus Computer International, et al* | | | |
|---|---|---|---|---|---|---|
| Without Proof of Purchase | | | cash | | | |
| Claim Cap With Proof of Purchase | $40.00 | $80.00 | $105 credit/$55 cash | | | |
| Other Monetary Relief | none | none | none | | | |
| Average Recovery Per Claimant | $4.82* | $.982 | unknown | | | |
| Approximate Size of Class | 2,380,000 | unknown | 24,798 | | | |
| Approximate Number of Households[2] | 683,908 | 26 million | unknown | | | |
| Household Claims Rate | 13% | .65% | unknown | | | |
| | | | | | | |
| **OTHER RELIEF** | | | | | | |
| Injunctive Relief | Changes to labeling | Changes to labeling | Changes to labeling | | | |
| Value of Injunctive Relief | No monetary estimate provided | No monetary estimate provided | No monetary estimate provided; additional | | | |

---

[2] According to Mediamark Research and Intelligence data, there the average number of adults per household in California is 2.61.

| Case Name | *Fitzhenry-Russell v. Keurig Dr. Pepper, Inc.* | *Fitzhenry-Russell v. The Coca-Cola Company* | *Carlotti v. Asus Computer International, et al* | | | |
|---|---|---|---|---|---|---|
| | | | warranty repairs and extended warranties provided | | | |
| Cy Pres | None | $160,694.26 | None | | | |
| | | | | | | |
| | | | | | | |
| Lodestar | $4,364,398.50 | $796,877.50 | $847,936.72 | | | |
| Total Fees & Costs Awarded (Costs) | $2,250,000 (costs: $407,611.95) | $820,000 (costs: $85,000) | $787,500 | | | |
| Incentive | $5,000 | $11,000 | $5,000 | | | |
| | | | | | | |