1

2

3

4

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5

6   MEGAN TAYLOR, individually and on behalf of all
others similarly situated,

7

8          Plaintiff,

9                v.

10   SHUTTERFLY, INC., and DOES 1-50,

11          Defendants.

12

CASE NO. 5:18-cv-00266-BLF

[PROPOSED] ORDER GRANTING
FINAL APPROVAL OF CLASS ACTION
SETTLEMENT

AS MODIFIED BY THE COURT

13          Plaintiff Megan Taylor ("Plaintiff" or "Class Representative") has moved the Court for

14   final approval of a proposed class action settlement with Defendant Shutterfly, Inc. ("Shutterfly"

15   or "Defendant"), the terms and conditions of which are set forth in the Settlement Agreement filed

16   with the Court on August 20, 2021 ("Settlement Agreement") (Dkt. 98-2). For the reasons

17   described more fully below, the Court GRANTS final approval of the Settlement. All capitalized

18   terms used in this Order have the meaning as defined in the Settlement Agreement.

19                              **PROCEDURAL HISTORY**

20          This case concerns Defendant Shutterfly, Inc.'s ("Shutterfly" or "Defendant") advertising

21   and selling of deals on Groupon.com that were sold between June 1, 2015 to April 30, 2018 (the

22   "Class Period") for a price paid ("Paid Value") which could be redeemed at a greater dollar value

23   ("Promotional Value") towards a purchase on Shutterfly's website within a set period of time (the

24   "Shutterfly General Spend Groupons"). For example, the Groupon "$20 for $40 to Spend at

25   Shutterfly" had a Paid Value of $20 and a Promotional Value of $40. The procedural history is

26   summarized in the Order Granting Motion for Preliminary Approval of Class Settlement (the

27   "Preliminary Approval Order") (Dkt. 99.)

28

### SUMMARY OF SETTLEMENT TERMS

Under the Settlement Agreement, Defendant is stipulating to add the following disclosures to the terms and conditions of any Shutterfly General Spend Groupons offered for sale ninety (90) days after the Effective Date (unless such fact is untrue for the particular Shutterfly General Spend Groupon being offered): (i) "By purchasing this offer you will obtain a promotional code for use at the Shutterfly website."  (ii) "When you redeem the Groupon at Shutterfly, you cannot use any other Shutterfly promotional code on the same order to obtain additional discounts. Instead, you must pay the undiscounted price." And (iii) "When you redeem the Groupon at Shutterfly, you [also] cannot use any Shutterfly free shipping code on the same order. Instead, you must pay for shipping."

The terms of the Settlement are summarized in the proposed Long Form Notice to Class Members, which is attached as Exhibit B1 to the Settlement Agreement. Under the proposed settlement, Class Members who purchased a Shutterfly General Spend Groupon that was never redeemed are entitled to a Shipping Code for free shipping on a future purchase on the Shutterfly Website and a Promotional Code worth 110% of the original Promotional Value of the Shutterfly General Spend Groupon purchased. Class Members who redeemed a Shutterfly General Spend Groupon are entitled to a Shipping Code for free shipping on a future purchase on the Shutterfly Website and a Promotional Code worth 20% of the original Promotional Value of the Shutterfly General Spend Groupon or at their option, a Cash Refund equal to 10% of the Promotional Value of the Groupon, plus 50% of the amount the Class Member paid Shutterfly for shipping in connection with the order in which the Groupon was redeemed. Cash Refunds are available only to Class Members who file claims according to the instructions in the Long Form Notice, but the Shipping Code and Promotional Codes will be distributed to Class Members automatically without the need for a claim.

### NOTICE AND SETTLEMENT ADMINISTRATION

The Settlement Agreement is being administered by a well-known, independent claims administrator, Angeion Group, LLC ("Angeion"). Following the Court's Preliminary Approval Order, Angeion established the Settlement Website at www.shutterflypromosettlement.com,

which contained the Class Notice, including the procedures for Class Members to submit claims or exclude themselves, a contact information page that includes address and telephone numbers for the Claim Administrator and the parties, the Settlement Agreement, the Preliminary Approval Order, online and printable versions of the Claim Form and the opt out forms, and answers to frequently asked questions. (Dkt. 101 ¶ 18.) In addition, the papers in support of final approval and Plaintiff's application for Attorneys' Fees and Expenses and Incentive Award were placed on the Settlement Website after they were filed. (Id.) The Claim Administrator also operated a toll-free number for Class Member inquiries. (Id. ¶ 19.)

Class Notice was provided via direct notice which referred Class Members to the Settlement Website. (Id. ¶¶ 11-18.) In particular, Class Notice was provided via: (1) direct Email Notice to those Class Members for whom an email address was available; (2) direct Postcard Notice mailed to those Class Members for whom a physical mailing address was available but a valid email address was not available; and (3) publication on a Settlement Website. Id.

In total, the Claim Administrator is estimated to have delivered more than 225,000 notices via mail and email. (Id. ¶¶ 11-17.) In particular, on September 10, 2021, the Claim Administrator caused E-Mail Notice to be sent to the 96,177 Class Members with valid email addresses. (Id. ¶ 11.) On September 11, 2021, Angeion caused Postcard Notice to be mailed to the 1,051 Class Members who did not have a valid email address but had a mailing address. (Id. ¶ 12.) On September 23, 2021, Angeion caused Postcard notice to be mailed to 708 Class Members to whom E-Mail Notice had bounced back as undeliverable. (Id. ¶¶ 13-14.)

Class Members were given until November 9, 2021 to object to or exclude themselves from the proposed Settlement. A total of 2,444 Claims were received by the Claim Administrator. (Id. ¶ 21.) Of these, 2,425 Claims were deemed valid. (Id.) Cash Refunds will paid totaling $39,740.02. (Id.) In addition to the 2,425 Class Members that submitted valid Claim Forms for a cash refund, 63,098 additional Redeemer Class Members will receive Benefits Notice providing them with promotional codes worth a total of $815,730.00 and free shipping codes. (Id.) An additional 30,420 Non-Redeemer Class Members will receive Benefits Notice providing them promotional codes worth a total of $1,656,165.50 and free shipping codes. (Id.) There are also

2,183 Both Class Members that will receive Benefits Notice providing them with promotional codes worth a total of $163,323.00 and free shipping codes. (Id.)

## ANALYSIS

### A.    JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1332(d)(2).

### B.    CERTIFICATION OF THE CLASS

A class action is maintainable only if it meets the four requirements of Rule 23(a):

> (1)    the class is so numerous that joinder of all members is impracticable;
>
> (2)    there are questions of law or fact common to the class;
>
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiff seeks certification under Rule 23(b)(3), Prelim. App. Mot., ECF No. 94 at 17–19, which requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

When it granted preliminary approval of this class action settlement, this Court concluded that these requirements were satisfied. *See* ECF No. 99 ¶ 3. The Court is not aware of any facts that undermine that conclusion, but reviews briefly each of the Rule 23 requirements again.

Under Rule 23(a), the Court concludes that joinder would be impracticable where approximately 110,000 Shutterfly General Spend Groupons were sold to Class Members. Weisbrot Decl., ECF No. 94-2 ¶ 14; *see Rannis v. Recchia*, 380 Fed.Appx. 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members."). The commonality requirement is met because key issues in the case are the same

for all class members, including: (1) whether Defendant's marketing and advertising materials were likely to deceive reasonable consumers; (2) whether Class Members were harmed by Defendant's misleading advertising and omissions; (3) whether Class Members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and (4) whether Class Members are entitled to payment of restitution or damages plus interest thereon. The claims of the class representative are typical of those of the Settlement Class, as she was deceived by Defendant's misleading advertising of the Shutterfly General Spend Groupons and she suffered the same injury as the rest of the Class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (typicality requires that the claims of the class representatives are "reasonably co-extensive with those of absent class members"). Finally, to determine Plaintiff's adequacy, the Court must resolve two questions: (1) does the named Plaintiff or her counsel have any conflicts of interest with other class members and (2) will the named Plaintiff and her counsel prosecute the action vigorously on behalf of the class? *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal citations omitted). There is no evidence of any conflict of interest that would preclude Plaintiff from acting as a class representative or her counsel from acting as Class Counsel. Nor is there evidence that Class Counsel has failed to vigorously litigate this action on behalf of the class.

Now turning to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The common questions in this case— (1) whether Defendant's marketing and advertising materials were likely to deceive reasonable consumers; (2) whether Class Members were harmed by Defendant's misleading advertising and omissions; (3) whether Class Members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and (4) whether Class Members are entitled to payment of restitution or damages plus interest thereon— predominate over individual questions among the class members. The Rule 23(b)(3) superiority inquiry looks to alternative methods of adjudication and whether maintenance of a class action would be fair and efficient. See *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir 1996). The Court finds that superiority is satisfied here because: (1) prosecuting or defending

separate actions at this stage would be impractical and inefficient; and (2) to the parties' knowledge, there is no other litigation concerning this controversy. *See* Prelim. App. Mot., ECF No. 94 at 19.

The Court finds that the prerequisites of Rule 23 have been satisfied for certification of the Class for settlement purposes because: Class Members are so numerous that joinder of all members is impracticable; there are questions of law and fact common to the Class; the claims and defenses of the Class Representative are typical of the claims and defenses of the Class she represents; the Class Representative has fairly and adequately protected the interests of the Class with regard to the claims of the Class she represents; common questions of law and fact predominate over questions affecting only individual Class Members, rendering the Class sufficiently cohesive to warrant a class settlement; and the certification of the Class is superior to individual litigation and/or settlement as a method for the fair and efficient resolution of this matter.

For purposes of the Settlement and this Final Approval Order and Judgment, the Court hereby finally certifies the following Class: All United States residents who, in the United States, during the Class Period, either (i) purchased a Shutterfly General Spend Groupon that was never redeemed; or, (ii) redeemed a Shutterfly General Spend Groupon. For avoidance of doubt, the Class includes purchasers of each of the following Shutterfly General Spend Groupons: GP4W, GP7C, GP7D, GP7E, GP7F, GP7G, GP7H, GP7T, GP7U, GP7V, GP7W, GP7X, GP7Y, GP7Z, GP8A, GP9A, GP9B, GP9C, GP9D, GP9E, GP9F, GP9G, GP9H, GP9J, GP9L, GP9N, GP9P, GPAG, GPAH, GPAL, GPAM, GPAN, GPAP, GPAQ, GPAR, GPAS, GPAT, GPA7, GPA8, GPA9, GPBA, GPBB, GPBV, GPBW, GPBX, GPBY, GPBZ, GPB8, GPB9, GPCA, GPCB, GPCC, GPCU, GPCV, GPCW, GPDA, GPDB, GPDC, GPDD, GPDE, GPDF, GPDG, GPDH, GPDJ, GPDQ, GPDR, GPDS, GPDT, and GPDU.

Excluded from the Class are (a) the undersigned judge and any member of her immediate family; (b) the Honorable Magistrate Virginia K. DeMarchi and any member of her immediate family; (c) any government entity; (d) Honorable Richard Kramer (Ret'd) and any member of his immediate family; (e) Defendant; (f) any entity in which Defendant has a controlling interest; (g)

any of Defendant's parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (h) all persons who have filed a timely Request for Exclusion to opt out of the Class.

For the purpose of this Settlement, the Court hereby finally approves Plaintiff as the Class Representative and the law firm of Gutride Safier LLP as Class Counsel.

## C.   NOTICE AND CLAIMS ADMINISTRATION

The Notice Plan provided notice to Class Members directly. The Court reaffirms the finding it made in the order granting preliminary approval that the notice plan provided the best practicable notice to the members of the class and satisfied the requirements of due process. The Court also finds, based on the evidence described above, that notice reached all Class Members for whom a valid email or mailing address was available through a reasonable search. This notice comports with due process. *See, e.g., Ellison v. Madden, Ltd.*, No. CV115935PSGAGRX, 2013 U.S. Dist. LEXIS 202269, at *3 (C.D. Cal. May 7, 2013) (approving a notice plan reaching 77%); *In re: Whirlpool Corp. Front–Loading Washer Prod. Liab. Litig.*, No. 1:08-WP-65000, 2016 U.S. Dist. LEXIS 130467, at *9 (N.D. Ohio Sept. 23, 2016) (approving notice plan reaching approximately 77.5 percent of class members).

## D.   FINAL APPROVAL OF SETTLEMENT

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate after considering whether: (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (d) the proposal treats Class

Members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, the Court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027.

For the reasons further detailed below and discussed at the Final Approval hearing, the Court finds that the proposed settlement is fair and appropriate under the Rule 23(e)(2) factors. Plaintiff's claims are based on the marketing and selling of the Shutterfly General Spend Groupons. There would be a battle of the experts regarding consumer understanding, materiality of the representations, and the computation of damages, if any. Proceeding to trial would have been costly; recovery was not guaranteed; and there was the possibility of protracted appeals. Counsel for both Parties were highly experienced and Plaintiff's counsel provided a detailed declaration explaining why they supported the Settlement, and there is no factual basis to support any allegation of collusion or self-dealing.

### 1.    Class Representative and Class Counsel Have Adequately Represented the Class.

In the Preliminary Approval Order, this Court found that the Class Representative and Class Counsel adequately represented the interests of the Class. This Court has seen no evidence to contradict my previous finding, and reconfirm it here. Class Counsel has vigorously prosecuted this action through discovery and formal mediation. Counsel therefore "possessed sufficient information to make an informed decision about settlement." *Hefler*, 2018 U.S. Dist. LEXIS 213045 *18.

### 2.    The Settlement Was Negotiated at Arm's Length.

This Court finds that the Settlement is the product of serious, non-collusive, arms' length

negotiations by experienced counsel with the assistance of a well-respected and experienced mediator, retired San Francisco Superior Court Judge Richard Kramer, at JAMS. *See, e.g., G. F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Hefler*, 2018 U.S. Dist. LEXIS 213045 *19 ("[T]he Settlement was the product of arm's length negotiations through two full-day mediation sessions and multiple follow-up calls supervised by former U.S. District Judge Layn Phillips."). Further, before agreeing upon the terms of the Settlement, the Parties conducted factual investigation, which included document production, interrogatories, and informal discovery. The record was thus sufficiently developed that the Parties were fully informed as to the viability of the claims and able to adequately evaluate the strengths and weaknesses of their respective positions and risks to both sides if the case did not settle.

The Court has independently and carefully reviewed the record for any signs of collusion and self-dealing, and finds that no collusion or self-dealing occurred. Specifically, the Court finds that Class Counsel did not compromise the claims of the Class in exchange for higher fees.

### 3.      The Relief to the Class is Adequate Recovery to the Class

Although not articulated as a separate factor in Rule 23(e), "[t]he relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment. "The Court therefore examines 'the amount offered in settlement.'" *Hefler*, 2018 U.S. Dist. LEXIS 213045 *18 (quoting *Hanlon*, 150 F.3d at 1026).

#### a.      Injunctive Relief

"Injunctions are the primary form of relief available under the UCL to protect consumers from unfair business practices, while restitution is a form of ancillary relief." *Kwikset v. Superior*

*Court*, 51 Cal. 4th 310, 337 (2011). The Settlement requires Defendant to change the representations it makes when it markets and advertises future Shutterfly General Spend Groupons beginning ninety (90) days after the Effective Date. The Parties bargained for and reached agreement that the Defendant would prominently state each of the following facts (unless such fact is untrue for the particular Shutterfly General Spend Groupon being offered): (i) "By purchasing this offer you will obtain a promotional code for use at the Shutterfly website."  (ii) "When you redeem the Groupon at Shutterfly, you cannot use any other Shutterfly promotional code on the same order to obtain additional discounts. Instead, you must pay the undiscounted price." And (iii) "When you redeem the Groupon at Shutterfly, you [also] cannot use any Shutterfly free shipping code on the same order. Instead, you must pay for shipping."

It is appropriate for the Court, in assessing whether the class is benefited by the settlement, to take into account the injunctive relief obtained, even if the Court is unable to determine the exact monetary value of such relief. *See Kumar v. Salov,* 737 Fed. Appx. 341, 342 (2018) (affirming settlement approval based on findings that class counsel reached an "excellent result" for the class, including achieving the class's non-monetary goal of "get[ting] the defendants to improve their practices)"; *Allen v. Bedolla*, 787 F.3d 1218, 1225 (9th Cir. 2015) (citing *Bluetooth*) ("As a whole, the settlement appears to afford valuable relief, much by injunction, that will benefit the class"); *In re Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014) ("a court need not determine the 'value' of particular injunctive relief"); *Laguna v. Coverall N. Am., Inc.,* 753 F.3d 918, 924 (9th Cir. 2014) (Ninth Circuit has "never required a district court to assign a monetary value to purely injunctive relief"), vacated on other grounds, 772 F.3d 608 (9th Cir. 2014); *cf. Allen* at 1225 (holding that district court could not award attorneys' fees on a percentage-of-benefit basis unless it made findings about value of that relief); *Bluetooth*, 645 F.3d at 941 (holding that lodestar-based award of fees is particularly "appropriate in class actions brought under fee-shifting statutes . . . where the relief sought—and obtained—is often primarily

injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation."). The settlement's inclusion of injunctive relief can be considered as a class benefit even if the injunction benefits not just Class Members, but the general public. *See, e.g.*, *In re TracFone Unlimited Service Plan Litigation,* 112 F. Supp. 3d 993, 1005 (N.D. Cal. 2015) ("The Court finds that the injunctive relief will have significant value for both class members and the general public.").

### b.      Monetary Relief

Defendant also agreed to provide monetary benefits to Class Members. Class Members who purchased a Shutterfly General Spend Groupon that was never redeemed will receive a Shipping Code for free shipping on a future purchase on the Shutterfly Website and a Promotional Code worth 110% of the original Promotional Value of the Shutterfly General Spend Groupon purchased. Class Members who redeemed a Shutterfly General Spend Groupon will receive a Shipping Code for free shipping on a future purchase on the Shutterfly Website and a Promotional Code worth 20% of the original Promotional Value of the Shutterfly General Spend Groupon unless they elected to file a Claim to receive a Cash Refund equal to 10% of the Promotional Value of the Groupon, plus 50% of the amount the Class Member paid Shutterfly for shipping in connection with the order in which the Groupon was redeemed. Cash Refunds are available only to Class Members who filed claims according to the instructions in the Long Form Notice. The Shipping Code and Promotional Codes will be distributed to Class Members automatically without the need for a claim.

Based on the record evidence and argument the parties submitted in connection with the Settlement, as well as the familiarity the Court has developed with this case, the Court finds that this monetary recovery is fair, reasonable and adequate, particularly given the overall claimed actual damages amount, risks of proceeding to trial, and the amount made available to claimants.

#### 4. The Strength of Plaintiff's Case and Risk of Continuing Litigation

No class had been certified prior to the Settlement. Plaintiff faced serious risk at the certification stage, and if she prevailed, at trial. Both class certification and trial likely would have required expert analysis to establish, among other things, that the marketing and advertising of the Shutterfly General Spend Groupon was misleading and material to consumer purchasing decisions and that the Class Members were damaged.

#### 5. Effectiveness of Distribution Method

As noted above, the Court concludes that the distribution method and claims process is reasonable. All Class Members automatically receive benefits under the Settlement, without the need to file a Claim. Class Members who redeemed a Shutterfly General Spend Groupon had the opportunity to submit a Claim via a relatively simple claim form with basic questions about class membership.

#### 6. The Terms of the Proposed Award of Attorneys' Fees and Expenses.

As noted in section E below, the Court finds the proposed award of Attorneys' Fees and Expenses is reasonable.

#### 7. Other Agreements

The Court is required to consider "any agreements required to be identified under Rule 23(e)(3)." The Parties have attested, and the Court finds, that there are no such agreements.

#### 8. The Proposal Treats Class Members Equitably Relative to Each Other

All Class Members who submitted a Valid Claim are entitled to the same relief under the Settlement. All Class Members who did not submit a claim are entitled to the same relief under the Settlement.

#### 9. The Response of Class Members

Out of an estimated 98,000 Class Members, there were three (3) opt-outs and no objections. (Id. ¶ 10.) In comparison, there were 2,425 Valid Claims, according to the report of the Claim Administrator. (Id. ¶ 21.) This is an overwhelmingly positive response. *See Churchill Village, LLC v. General Electric,* 361 F.3d 566, 577 (9th Cir. 2004) (explaining that a court may

infer appropriately that a class action settlement is fair, adequate, and reasonable when few class members object to it); *Zepeda v. PayPal, Inc*., 2017 WL 1113293, at *16 (N.D. Cal. Mar. 24, 2017) (holding "the indisputably low number of objections and opt-outs, standing alone, presents a sufficient basis upon which a court may conclude that the reaction to settlement by the class has been favorable); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."); *see also, e.g., In re Carrier IQ, Inc., Consumer Privacy Litig*., 2016 WL 4474366, at *4 (N.D. Cal. Aug. 25, 2016) (stating that, "[i]n an analysis of settlements where notice relied on media notice exclusively, the claims rate ranged between 0.002% and 9.378%, *with a median rate of 0.023%*") (emphasis added).

## 10.    Costs of Administering the Settlement

To date, the Claim Administrator has incurred $26,753.45 in costs to administer the Settlement. (Id. ¶ 23.) The Claim Administrator estimates that it will incur approximately $48,246.55 in additional costs to administer the Settlement through conclusion. (Id.) The Court finds that such amounts are reasonable.

## E.    ATTORNEYS' FEES

Class Counsel requests an award of $350,000.00 in attorneys' fees and expenses. Defendant does not oppose this request. *See, e.g., In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 2017 WL 1047834, at *4 (N.D. Cal., Mar. 17, 2017 ("Volkswagen's agreement not to oppose the application does not evidence collusion and was not obtained by Class Counsel to Class Members' detriment.") The record is undisputed that the settlement negotiation was overseen by an experienced mediator and that the attorneys' fees and expenses requested do not diminish the amount of monetary relief available to Class Members. *See, e.g., G. F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"). Thus, the Court finds that the negotiations about fees, costs, and an incentive award could not have had any negative impact on the benefits made available to Class Members.

This Court is required to analyze an attorneys' fee request based on either (1) the "lodestar" method or (2) a percentage of the total benefit made available to the class, including costs, fees, and injunctive relief. *See e.g.*, *Nwabueze v. AT&T, Inc.*, No. C 09-01529 SI, 2014 U.S. Dist. LEXIS 11766, at *2-3 (N.D. Cal. Jan. 29, 2014); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289, at *11-12 (E.D. Cal. Sept. 2, 2011); *Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 U.S. Dist. LEXIS 86266, at *13-14 (N.D. Cal. Nov. 16, 2007). The Court is not required to base attorney's fees based only on the amount paid to Class Members who submitted claims. *See Williams v. MGM-Pathe Communs. Co*., 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar."); *accord Ellsworth v. U.S. Bank, N.A.,* No. 3-12-cv-02506-LB, 2015 U.S. Dist. LEXIS 191662, at *4 (N.D. Cal. Sept. 24, 2015) ("precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the actual amount that is ultimately claimed"); *Miller v. Ghirardelli Chocolate Co.,* No. 12-cv-04936-LB, 2015 U.S. Dist. LEXIS 20725, at *5 (N.D. Cal. Feb. 20, 2015) (same). The Court concludes that the lodestar approach is appropriate for this case, particularly since the primary form of relief is injunctive.

### 1.   Plaintiff's Fees Request is Reasonable Under the Lodestar Approach.

Under the lodestar approach, "[t]he lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000); *see also Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'") (alteration in original) (internal citation omitted) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained and the contingent risk presented." *Id.*; *see also Serrano v. Priest ("Serrano III")*, 20 Cal. 3d 25, 48-49

(1977); *Ramos v. Countrywide Home Loans, Inc.* 82 Cal. App. 4th 615, 622 (2000); *Beasley v. Wells Fargo Bank,* 235 Cal. App. 3d 1407, 1418 (1991) (multipliers are used to compensate counsel for the risk of loss, and to encourage counsel to undertake actions that benefit the public interest). The Court should take into account the value of injunctive relief when assessing fees under the lodestar approach, but need not determine a specific monetary value associated with that relief. *See Hohenberg v. Drey (In re Ferrero Litig.)*, 583 F. App'x 665, 668 (9th Cir. 2014) ("Under the lodestar method, a court need not determine the 'value' of particular injunctive relief because fees are calculated through an assessment of time expended on the litigation . . . the injunctive relief in this case is meaningful and consistent with the relief requested in plaintiffs' complaint. . . The district court did not abuse its discretion in approving a settlement that compensated counsel under the lodestar method for procuring such relief."); *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 924 (9th Cir. 2014) *vacated on other grounds*, 772 F.3d 608 (9th Cir. 2014) ("[W]e have never required a district court to assign a monetary value to purely injunctive relief. To the contrary, we have stated that courts cannot 'judge with confidence the value of the terms of a settlement agreement, especially one in which, as here, the settlement provides for injunctive relief.'"); *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) (a district court still "should consider the value of the injunctive relief as a 'relevant circumstance'" in its fee determination).

Class Counsel has provided detailed declarations showing that it incurred a lodestar of $656,154.00. The Court finds that the hours claimed were reasonably worked and that the rates charged are reasonable and commensurate with those charged by attorneys with similar experience who appear in this Court. The Court also finds that Plaintiff's counsel represented their clients with skill and diligence and obtained an excellent result for the class, taking into account the possible outcomes at, and risks of proceeding to, trial.

Class counsel requests a fee award of $350,000.00, which equals approximately 51% of its lodestar. Thus, far from any "upward" multiplier, Class Counsel's requested fee actually results in a "negative" (more accurately, a "fractional") multiplier of 0.51. The fact that Plaintiff's counsel are seeking substantially less in fees than they reasonably incurred further demonstrates the

reasonableness of the fee award. *See, e.g.*, *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 690-91 (N.D. Cal. 2016) (holding fractional lodestar multiplier to be indication of reasonableness of fee request); *Johnson v. Triple Leaf Tea Inc.*, No. 3-14-cv-01570-MMC, 2015 U.S. Dist. LEXIS 170800, at *6 (N.D. Cal. Nov. 16, 2015) (finding where "Class Counsel's lodestar exceeded the negotiated award" to be "well within the range courts have allowed in the Ninth Circuit"); *Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 U.S. Dist. LEXIS 42637, at *4 (N.D. Cal. Mar. 31, 2015) ("Class Counsel's lodestar . . . result[s] in a negative multiplier of approximately .54. This is below the range found reasonable by other courts in California."); *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837, at *7 (N.D. Cal. Mar. 6, 2014) ("Plaintiffs' requested fee award is approximately 65% of the lodestar, which means that the requested fee award results in a so-called negative multiplier, suggesting that the percentage of the fund is reasonable and fair."); *Walsh v. Kindred Healthcare*, No. C 11-00050 JSW, 2013 U.S. Dist. LEXIS 176319, at *3 (N.D. Cal. Dec. 16, 2013) ("The Court concludes that, on the facts of this case, the lodestar is reasonable, especially in light of the fact that Class Counsel have applied a negative multiplier, and seek an award that is less than their base lodestar."); *Wehlage v. Evergreen at Arvin LLC*, No. 4:10-CV-05839-CW, 2012 U.S. Dist. LEXIS 144152, at *1 (N.D. Cal. Oct. 4, 2012) ("Class Counsel do not seek a multiplier on their lodestar, and in fact the requested fee is a negative multiplier (-.79). The Court finds that this award is appropriate here."); *Lymburner v. U.S. Fin. Funding, Inc.*, No. C-08-00325 EDL, 2012 U.S. Dist. LEXIS 14752, at *6 (N.D. Cal. Feb. 7, 2012) ("[T]he negative multiplier in this case supports the reasonableness of the fee request."); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, at *16 (N.D. Cal. Nov. 26, 2007) ("Even if the court accepted the unadjusted lodestar from plaintiffs' counsel ($922,884.75), the correlating multiplier of 0.74 would still reflect a negative multiplier, further suggesting that the requested percentage based fee is fair and reasonable.").

### 2. The Court is Not Obliged to "Cross-Check" Plaintiffs' Counsel's Lodestar.

The Court is not required to perform a percentage based cross-check and finds it inappropriate to do so here as the value of a permanent injunction is difficult to value monetarily.

*See Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 547 (9th Cir. 2016) (holding that if "classwide benefits are not easily monetized, a cross-check is entirely discretionary," and the district court may make its award based entirely on the lodestar).

A recent Ninth Circuit decision, *Chambers v. Whirlpool Corp.*, 980 F.3d 645 (9th Cir. 2020) ("*Whirlpool*"), provides that where 28 U.S.C § 1712 (of the Class Action Fairness Act ("CAFA")) applies to a settlement—i.e., where "coupons" are made available in a settlement—a court must apply a lodestar "cross-check," or in the alternative, articulate why it is not feasible in a particular case. *Id.*, at *26. Because the settlement in this case is not a "coupon settlement," section 1712 of CAFA and, by extension, *Whirlpool* do not apply. However, even if this settlement were to be deemed a "mixed" coupon settlement, the Court finds that the application of the lodestar methodology without the necessity of a cross-check is appropriate because, as articulated below, it is infeasible.

### 3.  This is not a Coupon Settlement, or Merely a "Mixed" Settlement Under 28 U.S.C § 1712.

The Ninth Circuit has established three factors to determine whether a settlement is a coupon settlement under 28 U.S.C. § 1712 of the Class Action Fairness Act ("CAFA"): (i) "whether class members have 'to hand over more of their own money before they can take advantage of' a credit"; (ii) "whether the credit is valid only 'for select products or services'"; and (iii) "how much flexibility the credit provides, including whether it expires or is freely transferrable." *In re Easysaver Rewards Litig.*, 906 F.3d 747, 762 (9th Cir. 2018) *(citing In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 951 (9th Cir. 2015)).

Here, each of the factors support the conclusion that the Promotional Codes are not "coupons" within the meaning of CAFA. The Shipping Codes are likely "coupons" within the meaning of CAFA, which would make this, at most, a "mixed" settlement under CAFA. However, there are two additional factors here which indicate the inapplicability of CAFA. First, persons who redeemed their Groupons are not limited to Promotional and Shipping Codes; they may obtain cash refunds. Second, while persons who did not redeem their Groupons are entitled only to Promotion and Shipping Codes, they are automatically being provided a more valuable version of

the exact item they purchased.  To put it another way, the original purchase of a Groupon that Class Members made was itself a purchase of a "coupon," and under the settlement they are getting a better coupon than they originally purchased. The coupon provisions of CAFA were designed to require more scrutiny of settlements that provided only a "coupon" towards a further purchase, instead of remedying the underlying issue that led to the litigation. Here the more valuable "coupon" does address the underlying allegation that the original coupon (i.e. Groupon) had less value than purchasers would have understood.

### a.  The Promotional Codes are not "Coupons" Within the Meaning of CAFA

Regarding the first factor, the Promotional Codes do not provide discounted products; they can be used to purchase products from Shutterfly's website and do not require Class Members to make any additional purchases. Thus, the Promotional Codes are not "coupons" under CAFA. *See True v. Am. Honda Motor Co*., 749 F. Supp. 2d 1052, 1075 (C.D. Cal. 2010); *see also Chaikin v. Lululemon USA Inc.,* No. 3:12-CV-02481-GPC-MDD, 2014 U.S. Dist. LEXIS 35258, at *7 (S.D. Cal. Mar. 14, 2014) (settlement providing $25 "credit vouchers" redeemable at Lululemon stores that "require[d] no additional purchase" was not a coupon settlement); *Foos,* 2013 U.S. Dist. LEXIS 136918, at *7-*8 (settlement providing $15 voucher for Ann Taylor merchandise with no minimum purchase required was not a coupon settlement); *Morey v. Louis Vuitton N. Am. Inc*., No. 11cv1517 WQH (BLM), 2014 U.S. Dist. LEXIS 3331, at *17 (S.D. Cal. Jan. 10, 2014) (settlement providing $41 "Merchandise Certificate" redeemable at Louis Vuitton retail stores was not coupon settlement); *Tchoboian v. FedEx Office & Print Servs., Inc*., No. SA CV 10-01009 JAK (MLGx), 2014 U.S. Dist. LEXIS 184376, at *6 (C.D. Cal. Mar 25, 2014) ("[C]ourts have distinguished between 'coupons,' which provide 'discounts on merchandise or services offered by the defendant,' and 'vouchers,' which provide 'free merchandise or services.'").

Regarding the second factor, the Promotional Codes can be redeemed toward most products and services offered by Shutterfly. The only excluded products are the same products that were excluded from the Shutterfly General Spend Groupons Class Members initially purchased.

Regarding the third factor, Promotional Codes are not "coupons" because they do not expire, can be used at any time, and are freely transferrable. *See c.f.*, *Chaikin,* 2014 U.S. Dist. LEXIS

35258, at *3 (approving a class action settlement offering vouchers that expire within six months); *Foos*, 2013 U.S. Dist. LEXIS 136918, at *3 (same); *Davis v. Cole Haan, Inc.*, No. C-11-01826-JSW, 2013 U.S. Dist. LEXIS 151813, at *3 (N.D. Cal. Oct. 21, 2013) (finding a class action settlement was a coupon settlement, in part, because of "significant limitations" including that "the vouchers expire after six months").

**b.** **This is Not a "Coupon" Settlement Because the Majority of the Class Can Obtain Cash Instead of the Promotional and Shipping Codes, and the Remainder Is Getting Relief That Directly Remedies the Underlying Alleged Harm.**

In *Whirlpool*, class members did not receive anything unless they filed a claim; they were required to file a claim to receive a coupon. Most *Whirlpool* class members could only claim a coupon; they were ineligible to receive any cash compensation. Only 4% of filed claims potentially involved cash. *See Whirlpool*, 980 F.3d at *10 (stating "put another way, only 4% of the 133,040 filed claims—at most—could potentially involve cash reimbursement.") By contrast, here Cash Refunds are available to 69% of the Class (those who redeemed Shutterfly General Spend Groupons).

Although Class Members who redeemed their Groupons and do nothing will automatically receive a Promotional Code and Shipping Code, this default provision does not change the analysis. *See Williamson v. McAfee, Inc.*, No. 5:14-cv-00158-EJD, 2017 U.S. Dist. LEXIS 15838 (N.D. Cal. Feb. 3, 2017) (settlement was "not a coupon settlement, since class members had the option to receive cash instead of value certificates, even though they received certificates by default."); *See Foos v. Ann, Inc.*, No. 11cv2794 L (MDD), 2013 U.S. Dist. LEXIS 136918, at *7-*8 (S.D. Cal. Sept. 23, 2013) ("having a coupon option does not necessarily transform a class action settlement into a coupon settlement under CAFA").

For the remaining Class Members (those who did not redeem), they will receive a free Shipping Code and Promotional Code worth 110% of the Promotional Value of their expired Groupon. However, the Court concludes that benefits are directly compensatory to the alleged underlying harm:  Plaintiffs alleged that the original advertising of the Shutterfly General Spend Groupon was misleading because the Groupon could not be used with free shipping codes and could not be combined with other offers. The Settlement addresses both issues: it provides

19

consumers free shipping *and* a higher dollar amount towards their purchase than originally promised.

### c. As At Most a "Mixed" Coupon/Non-Coupon Settlement, the Lodestar-Based Fee Is Appropriate Without Need For A Cross-Check.

Alternatively, this settlement can be deemed to be a "mixed" settlement because it "involv[es] coupon and non-coupon relief" under 1712(c). *See In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1184-85 (9th Cir. 2013) (holding section 1712(c) applies where a settlement provides both coupons and other relief, such as equitable relief). Under § 1712(c), the percentage-of-redemption-value method applies only to the portion of fees *attributable to obtaining the coupon relief*. 28 U.S.C. § 1712(c)(1) (stating that fees "based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (a)," which sets forth the percentage-of-redemption-value methodology). But the remaining portion of fees attributable to "non-coupon relief" is calculated under § 1712(b) as a reasonable lodestar amount times any appropriate multiplier. *See* 28 U.S.C. § 1712(b) (stating that where "a portion of the recovery of the coupons is not used to determine the attorney's fees," it "shall be based upon the amount of time class counsel reasonably expended"). In short, the total fee award for "mixed" settlements under § 1712(c) is the sum of: (i) "a reasonable contingency fee based on the actual redemption value of the coupons" (§ 1712(a)); and (ii) "a reasonable lodestar amount to compensate class counsel for any non-coupon relief obtained" (§ 1712(b)). *In re HP Inkjet Printer Litig.*, 716 at 1184-85 .

In *In re Easysaver Rewards Litigation*, the Ninth Circuit explained that a district court in "mixed" settlements may opt to use the "lodestar approach provided that it does so without reference to the dollar value of [the coupon relief]." 906 F.3d at 759. Here, Class Counsel has not sought *any* fees based on a percentage of dollar value of coupons, and only bases its request on the lodestar. Further, Class Counsel's request of $350,000 for combined fees and costs (equating to approximately $339,546.78 in fees and $10,453.22 in expenses), comes in well *below* the fee amount of $656,154.00 calculated using the lodestar method. Thus, far from any "upward" multiplier, Class Counsel's requested fee results in a fractional multiplier of .51; in other words, Class Counsel has effectively "written off" over 360 hours expended on this litigation. *See, e.g.*,

*Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 690-91 (N.D. Cal. 2016) (holding negative lodestar multiplier to be indication of reasonableness of fee request); *Johnson v. Triple Leaf Tea Inc.*, No. 3:14-cv-01570-MMC, 2015 U.S. Dist. LEXIS 170800 at *6 (N.D. Cal. Nov. 16, 2015) (finding where "Class Counsel's lodestar exceeded the negotiated award" to be "well within the range courts have allowed in the Ninth Circuit"); *Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 U.S. Dist. LEXIS 42637 at *4 (N.D. Cal. Mar. 31, 2015) ("Class Counsel's lodestar . . . result[s] in a negative multiplier of approximately .54. This is below the range found reasonable by other courts in California."); *Covillo v. Specialtys Café*, No. C-11-00594-DMR, 2014 U.S. Dist. LEXIS 29837 at *7 (N.D. Cal. Mar. 6, 2014) ("Plaintiffs' requested fee award is approximately 65% of the lodestar, which means that the requested fee award results in a so-called negative multiplier, suggesting that the percentage of the fund is reasonable and fair.")

The Court is satisfied that only a very small number of the hours worked in this litigation—and far fewer than the over 350 hours that are being written off—are attributable to the Shipping Code component of the Settlement. (Dkt. 94-1 ¶ 48.) The bulk of the fees incurred in this litigation are attributable to preventing Defendant from enforcing the arbitration agreement. (Id.) Plaintiff succeeded in invalidating that agreement and should be compensated for the time spent doing so. Plaintiff also succeeded in leading Defendant to change its practices with regard to its advertising of Shutterfly General Spend Groupons and to agree in settlement to improved disclosures. Finally, Plaintiff succeeded in obtaining Promotional Codes for all Class Members and Cash Benefits for any Class Member who submitted a simple claim form—a claim form that is simpler than would likely be required in a post-trial claim process for a smaller refund. The Shipping Codes, i.e., the coupon provision of the settlement, is just icing on the cake, for those who Class Members do not want to file a claim. It would be incongruent to reduce Plaintiff's Counsel's fee award because it negotiated for, and obtained, an additional automatic benefit for Class Members who decided not to make a claim, a benefit that is greater than could be obtained at trial.

**d. Regardless, a Lodestar Cross-Check Is Not Feasible or Practical.**

In this case, a "cross-check" of the lodestar (against a theoretical amount of benefit

conferred) is not feasible or practical. Nearly all the litigation was driven by the dispute over the arbitration provision. The value of the injunctive relief obtained (and other changed practices) cannot be easily monetized, so a cross-check that focused only on the Cash Benefits, Promotional Codes, and the Shipping Codes made available or redeemed would severely undervalue the Settlement benefits. *See, e.g., Coles v. City of Oakland,* No. C03-2961 TEH, 2007 U.S. Dist. LEXIS 100533, at *50 (N.D. Cal. Jan. 4, 2007) (holding that injunctive relief obtained served public interest and that attorneys who serve public interest should be rewarded with lodestar-based fee); *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1418 (1991) (multipliers are used to compensate counsel for the risk of loss, and to encourage counsel to undertake actions that benefit public interest); *Robertson v. Fleetwood Travel Trailers of California, Inc*., 144 Cal.App.4th 785, 820 (2006) (holding trial courts should calculate fee awards using the lodestar method "based on actual time expended, rather than a percentage of the recovery, so that pursuit of consumer warranty cases [is] economically feasible.")

     **e.  The Catalyst Theory Would Support A Lodestar Award Even In The Absence of Any Settlement Relief.**

Finally, even if the parties had not settled but had gone to trial, and even if Plaintiff had lost at trial, Plaintiff and her counsel might still be entitled to the full requested fee award under the lodestar analysis for their work prior to trial invalidating the arbitration provision. *A fortiorari,* they should not receive a lower fee having obtained additional relief for the class in settlement.

Section 1021.5 of the California Code of Civil Procedure authorizes a court (including a federal court) to award attorneys' fees to a party who has achieved "the enforcement of an important right affecting the public interest." *See id.*; *see also Klein v. City of Laguna Beach*, No. 13-56973, 810 F.3d 693, 701 (9th Cir. Jan. 14, 2016) ("When California plaintiffs prevail in federal court on California claims, they may obtain attorneys' fees under section 1021.5.") (citing *Mangold v. Cal. Pub. Utils. Comm'n,* 67 F.3d 1470, 1478 (9th Cir.1995)). To be eligible for a fee award pursuant to C.C.P. § 1021.5, a party need not win at summary judgment or trial. Rather, as the California Supreme Court has explained:

> The appropriate benchmarks in determining which party prevailed are (a) the situation immediately prior to the commencement of suit, and (b) the situation

1  today, and the role, if any, played by the litigation in effecting any changes between
2  the two.

*Maria P. v. Riles*, 43 Cal. 3d 1281, 1291 (1987) (internal citations omitted); accord *MacDonald v.*

*Ford Motor Co.*, No. 13-CV-02988-JST, 2015 WL 6745408, at *3 (N.D. Cal. Nov. 2, 2015).

A plaintiff who obtains changed practices, even during the litigation, meets the "prevailing

party" standard. *See, e.g., Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782,

790 (1989) (explaining that under certain statutes, a "prevailing party must be one who has

succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at

the conclusion of the litigation"). It is not even necessary for the plaintiff to obtain an injunction or

similar judicially enforceable result, if she was the "catalyst" for the desired result. *See Tipton-*

*Whittingham*, 316 F.3d at 1062, *certified question answered,* 34 Cal. 4th 604 (2004) ("California

law continues to recognize the catalyst theory and does not require 'a judicially recognized change

in the legal relationship between the parties' as a prerequisite for obtaining attorney fees under

Code of Civil Procedure section 1021.5."); *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553,

560-61 (2004), *as modified* (Jan. 12, 2005) (same); *accord Skaff v. Meridien N. Am. Beverly Hills,*

*LLC*, 506 F.3d 832, 844 (9th Cir. 2007).

Further, a lawsuit that primarily, or even entirely, achieves non-monetary benefits is still

eligible for a full lodestar fee. As the California Supreme Court has explained, "By permitting

prevailing [parties] to recover their attorney fees in addition to costs and expenses, our Legislature

has provided injured consumers strong encouragement to seek legal redress in a situation in which

a lawsuit might not otherwise have been economically feasible." *Murillo v. Fleetwood*

*Enterprises, Inc.*, 17 Cal.4th 985, 994 (1998); *see also Bluetooth*, 654 F.3d at 941 (holding that

lodestar award appropriate when the relief obtained is "not easily monetized," such as when

injunctive relief is part of the settlement; *Camacho*, 523 F.3d at 978 (holding the lodestar figure is

"presumptively a reasonable fee award.")

### f.   Reduction of the Fees Would Not Serve Class Member or Public Interests

Finally, it is important to note that reduction of the fees would not benefit the Class; rather, it

would exclusively enrich (and benefit) Defendant.

### F.   LITIGATION COSTS

Class counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters.); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Here, class counsel seeks reimbursement of $10,616.33  in litigation expenses and provide records that document their claim. Dkt. 94-1 ¶ 49 and Ex. 3; Supplemental Declaration of Seth Safier in Support of Plaintiff's Motion for Approval of Class Action Settlement ¶ 5.) The costs will be paid separately from amounts paid to Class Members who made Valid Claims and will not in any way reduce what is paid to them. No objection has been made to any cost item or amount and the submitted costs are reasonable.  Accordingly, the Court finds that these submissions support an award $10,616.33 in costs.

## G.   CLASS REPRESENTATIVE INCENTIVE AWARD

The district court must evaluate named plaintiffs' awards individually, using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit recently emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013). Here Plaintiff is seeking an Incentive Award of $5,000.

Here, the Plaintiff came forward to represent the interests of thousands of others, with very

little personally to gain, as her individual alleged damages were very small.  Plaintiff compiled documents and answered interrogatories in response to discovery requests, regularly corresponded with counsel telephonically and by email, traveled to and attended mediation, and took the substantial risk of litigation which, at a minimum, involves a risk of losing and paying the other side's costs. (Dkt. 94-1 ¶ 51.) Because false advertising laws depend, in part, on private enforcement, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others. Thus, the Court approves the $5,000 incentive award for Plaintiff.

## H.    COMPLIANCE WITH CLASS ACTION FAIRNESS ACT

The record establishes that Defendant served the required notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, with the documentation required by 28 U.S.C. § 1715(b)(1-8). (Dkt. 101 ¶¶ 7-8.)

## I.    REQUIRED CHANGES TO DEFENDANT'S ADVERTISING

As required by the Settlement Agreement, no later than ninety (90) days after the Effective Date of the Settlement Agreement, Shutterfly shall prominently state each of the following when advertising any Shutterfly General Spend Groupon for sale (unless such fact is untrue for the particular Shutterfly General Spend Groupon being offered):

(a)    "By purchasing this offer you will obtain a promotional code for use at the Shutterfly website."

(b)    "When you redeem the Groupon at Shutterfly, you cannot use any other Shutterfly promotional code on the same order to obtain additional discounts. Instead, you must pay the undiscounted price."

(c)    "When you redeem the Groupon at Shutterfly, you [also] cannot use any Shutterfly free shipping code on the same order. Instead, you must pay for shipping."

These obligations shall remain in effect for two years from the date of this Order Nothing in this paragraph shall be interpreted to interfere with Defendant's obligations to comply with all applicable state and federal laws.

**J.     DISTRIBUTION OF SETTLEMENT BENEFITS AND PAYMENT OF ADMINISTRATIVE COSTS**

No later than 35 days after the Effective Date, the Claim Administrator shall distribute Shipping Codes and Promotional Codes to eligible Class Members by sending the Benefits Notice to Class Members in the form provided in Exhibit B-4 of the Settlement Agreement. No later than 10 days after the Effective Date, Defendant shall pay the Claim Administrator the total amount necessary to pay all Cash Refunds, so that the Claim Administrator can distribute such Cash Refunds to eligible Class Members no later than 35 days after the Effective Date. Defendant shall also pay the Claim Administrator its reasonable costs and expenses in processing claims and administering the Settlement.

Upon completion of the implementation and administration of the Settlement, the Claim Administrator shall provide a declaration for filing with the Court containing the post-distribution information required by Local Rule 1 regarding Post-Distribution Accounting.

**K.     RELEASES AND EFFECT OF THIS ORDER**

**1.     Releases by Plaintiff and Class Members**

Upon the Effective Date, Class Representative and Class Members, including any person claiming derivative rights of the Class Representative or Class Member as such person's parent, child, heir, guardian, associate, co-owner, attorney, agent, administrator, executor, devisee, predecessor, successor, assignee, assigns, representative of any kind, shareholder, partner, director, employee or affiliate, shall have unconditionally, completely, and irrevocably released and discharged the Released Parties from the Released Claims. Upon the Effective Date, Class Representative and Class Members shall be forever barred from initiating, maintaining, or prosecuting any Released Claims against Released Parties. None of the Class Members releases claims to enforce the terms of the Settlement and none of the Class Members releases their rights to dispute or challenge, in any other proceeding, the validity or enforceability of any arbitration agreement that may exist between such Class Member and Defendant.

"Released Claims" means all claims that were, or could have been, asserted in the Litigation that arise out of or relate to (i) the allegations that the Shutterfly General Spend Groupon promotions were false, misleading or deceptive, (ii) the allegations that Shutterfly

committed breaches of contract or fraud in connection with the Shutterfly General Spend Groupon promotions, (iii) the allegations that Shutterfly is liable for damages or penalties for including and/or trying to enforce an unlawful or unenforceable arbitration agreement in its Terms of Use, or (iv) the allegations that Shutterfly engaged in unfair or unlawful business practices with respect to its General Spend Groupon promotions and/or the arbitration agreement in its Terms of Use. The Released Claims shall not release any Class Member's claims for personal injury against Defendant or the Released Parties or rights to enforce this Agreement.

### 2.    Additional Releases by Plaintiff

In addition to the releases granted by Plaintiff in the prior section, upon the Effective Date, Plaintiff, her predecessors, successors, agents, assigns, attorneys and members of their families) on the one hand, and Released Parties on the other hand, shall have unconditionally, completely, and irrevocably released and forever discharged each other from and shall be forever barred from instituting, maintaining, or prosecuting any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, whether based upon any violation of any state or federal statute or common law or regulation or otherwise, that Plaintiff, on the one hand, and Released Parties, on the other hand, have had in the past, or now have, whether or not related to the Released Claims.

### 3.    Waiver of Provisions of California Civil Code § 1542

By operation of this Order and Judgment, Plaintiff and Defendant shall with respect to the released claims set forth above in subsections 1 and 2, and Class Members shall with respect to the released claims set forth above in subsection 1, be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to section 1542 of the California Civil Code, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM

OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Plaintiff, Defendant and Class Members understand and acknowledge the significance of these waivers of California Civil Code section 1542 and any other applicable federal or state statute, case law, rule or regulation relating to limitations on releases.

### 4.    Other Effects of This Order

No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with the Settlement Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any Party of any fault, liability or wrongdoing of any kind whatsoever to any other Party. Neither the Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim made by the Class Members or Class Counsel, or of any wrongdoing or liability of the persons or entities released under this Order and Judgment and the Settlement Agreement, or (b) is or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any of the persons or entities released under this Order and Judgment and the Settlement Agreement, in any proceeding in any court, administrative agency, or other tribunal. Defendant's agreement not to oppose the entry of this Order and Judgment shall not be construed as an admission or concession by Defendant that class certification was appropriate in the Litigation or would be appropriate in any other action.

Except as provided in this Order, Plaintiff shall take nothing against Defendant by his Complaint. This Order shall constitute a final judgment binding the Parties and Class Members with respect to this Litigation.

The Litigation is hereby dismissed on the merits and with prejudice and final judgment shall be entered thereon, as set forth in this Order.

Without affecting the finality of the judgment hereby entered, the Court reserves jurisdiction over the implementation of the Settlement Agreement. In the event the Effective Date does not occur in accordance with the terms of the Settlement Agreement, then this Order and any

judgment entered thereon shall be rendered null and void and shall be vacated, and in such event, all orders and judgments entered and releases delivered in connection herewith shall be null and void and the Parties shall be returned to their respective positions ex ante.

Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any provisions of the Settlement Agreement.

Dated: December 7, 2021

Hon. Beth Labson Freeman
U.S. District Judge